# EXHIBIT A

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF KENT**

GRAND RIVER ASEPTIC
MANUFACTURING, INC.,

        Plaintiff,

Case No. 21-00338-CBB

Hon. Terence J. Ackert

v.

NEXUS PHARMACEUTICALS, INC.,
SHERRI SCOTT, an individual, and
JERROD WEIDENFELLER, an individual,

        Defendants.

| | |
|---|---|
| MILLER, CANFIELD, PADDOCK and STONE, p.l.c. | VARNUM, LLP |
| Joseph M. Infante (P68719) | Jon M. Bylsma (P48790) |
| Stephen M. Ragatzki (P81952) | Attorneys for Defendant/Counter-Plaintiff Nexus |
| Attorneys for Plaintiff/Counter-Defendant | PO Box 352 |
| 99 Monroe Avenue NW, Suite 1200 Grand Rapids, Michigan 49503 | Grand Rapids, MI 49501-0352 (616) 336-7000 |
| (616) 454-8656 | jmbylsma@varnumlaw.com |
| infante@millercanfield.com | |
| | |
| Bilal Zaheer (P00283) | SILVER & VAN ESSEN PC |
| LOCKE LORD LLP | Lee T. Silver (P36905) |
| Attorneys for Defendant/Counter-Plaintiff Nexus | Attorneys for Defendants Scott and Weidenfeller |
| 111 South Wacker Drive, Ste 4100 | 300 Ottawa Avenue NW, Suite 620 |
| Chicago, IL 60606 | Grand Rapids, MI 49503 |
| (312) 443-0700 | (616) 988-5600 |
| Bilal.zaheer@lockelord.com | ltsilver@silvervanessen.com |

**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

*THIS CASE INVOLVES A BUSINESS OR COMMERCIAL DISPUTE AS DEFINED IN MCL 600.8031 AND MEETS THE STATUTORY REQUIREMENTS TO BE ASSIGNED TO THE BUSINESS COURT.*

*There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in this Complaint.*

Plaintiff, Grand River Aseptic Manufacturing, Inc. ("GRAM"), by and through its

attorneys, Miller, Canfield, Paddock and Stone, PLC, for its First Amended Complaint against Defendants Nexus Pharmaceuticals, Inc. ("Nexus"), Sherri Scott, and Jerrod Weidenfeller, states as follows:

1.      GRAM is a Delaware corporation with its principal place of business in Grand Rapids, Michigan.

2.      Upon information and belief, Nexus is an Illinois corporation with its principal place of business in Lincolnshire, Illinois.

3.      Sherri Scott is an individual who, upon information and belief, resides in Gurnee, Illinois.

4.      Jerrod Weidenfeller is an individual residing in Kent County, Michigan.

5.      Jurisdiction is proper in this Court as GRAM seeks equitable relief and damages in excess of $25,000.

6.      Venue is proper in this Court as one of the Defendants resides in Kent County, Michigan and the actions giving rise to this lawsuit arose in Kent County, Michigan.

**GENERAL ALLEGATIONS**

7.      GRAM is a contract pharmaceutical manufacturer engaged in the business of filling, labeling, and packaging pharmaceutical products.

8.      GRAM uses current good manufacturing practices ("cGMPs") to perform pharmaceutical manufacturing, analytical testing, and regulatory filling for small molecules, biologics, and controlled substances.

9.      GRAM's pharmaceutical manufacturing includes the production of clinical trial materials for the pharmaceutical industry, including, without limitation, aseptic or lyophilized compounds.

10.     GRAM is regulated by the United States Food and Drug Administration ("FDA").

11.     Because of the specialized nature of the contract pharmaceutical manufacturing business and the stringent FDA regulations governing its practice, there are very few contract pharmaceutical manufacturers with the ability to manufacture aseptic or lyophilized compounds in the United States.

12.     Nexus is engaged in the development, bulk production, formulation, sale, and distribution of pharmaceutical products.

13.     Upon information and belief, before Nexus engaged GRAM, it did not have the ability to manufacture clinical trial materials for the pharmaceutical industry, including the manufacture of aseptic or lyophilized compounds on a commercial scale.

14.     GRAM and Nexus entered into a Commercial Supply Agreement, effective October 11, 2016.

15.     The purpose of the Commercial Supply Agreement was for GRAM to fill, package, inspect, label, and test pharmaceutical products for distribution and sale by Nexus.

16.     The Commercial Supply Agreement outlined the general relationship between GRAM and Nexus while contemplating that the parties would enter into individual Work Orders and quality agreements for the manufacture of specific products as Nexus' need arose.

17.     For example, on or about October 13, 2016, GRAM and Nexus entered into a Work Order for the production of Procainamide Injection, USP.

18.     As part of the Commercial Supply Agreement, Nexus agreed that during the term of the agreement and for a period of two years after its expiration or termination, Nexus "shall not, directly or indirectly, on [its] own behalf or on behalf of any other person or entity, whether as an agent, employee, consultant or in any other capacity, recruit or hire or assist in recruiting or hiring, any person who is, or was on (1) year prior to the date of such recruitment or hiring, an employee

(whether temporary or permanent) or independent contractor of [GRAM]." **Exhibit 1** at ¶ 21.1 (the "No-Hire Provision.").

19.     Prior to entering into the Commercial Supply Agreement, GRAM and Nexus entered into a Confidentiality Agreement on October 28, 2014.  **Exhibit 2**.

20.     The Confidentiality Agreement was incorporated into the Commercial Supply Agreement.  See **Ex. 1** at ¶ 18.2.

21.     Under the Confidentiality Agreement, the parties agreed that Nexus would be provided certain confidential information of GRAM, including "technology and information, whether in readable or in verbal form, relating to the products, services, business, personnel or commercial activities of the Parties, including without limitation: (a) formulas, compilations, programs, devices, concepts, inventions (whether or not patentable), designs, methods, techniques, marketing and commercial strategies, processes, data or specifications, know-how, business or financial information, research and development activities, product and marketing plans, customer and supplier information, and unique combinations of separate items, which individually may or may not be confidential, and which is not generally known to the public; (b) information acquired by a Party, by observation or otherwise, on the other Party's premises; (c) information or other work product developed by a Party in connection with this Agreement; and (d) information that a Party is under an obligation to third parties to maintain as confidential, but for which there is third party permission to share this information between the Parties."  **Ex. 2** at ¶ 1.

22.     Under the Confidentiality Agreement, "[a]ll Confidential and Proprietary Information supplied by [GRAM] will remain the property of and will be returned to [GRAM] or destroyed upon request.  No copies of any Confidential and Proprietary Information may be made without the express prior written permission of [GRAM]."  *Id.* at ¶ 7.

23.     In the event of a breach of the Confidentiality Agreement, GRAM "may be entitled to injunctive relief restraining the act or threatened act that constitutes or would constitute a breach of this Agreement." *Id.* at ¶ 13.

24.     The "obligations of confidentiality and non-use imposed upon" Nexus by the Confidentiality Agreement and Commercial Supply Agreement are in effect for ten years after the expiration of the Commercial Supply Agreement.   However, any confidential information constituting trade secrets were to be kept confidential indefinitely.  **Ex. 1** at ¶ 18.7.

**GRAM's Employees Work on the Nexus Projects**

25.     To manage its work for Nexus and other clients, GRAM has its employees work in teams.

26.     GRAM hired Scott on or about November 2016.

27.     GRAM employed Scott as GRAM's Manager of Microbiology.

28.     In her role as a manager/team leader, Scott oversaw a team of GRAM of employees.

29.     In her role as Manager of Microbiology, Scott was responsible for management of the QC Microbiologists performing environmental monitoring, water testing and other client-specific microbiology testing in support of aseptic manufacturing operations.

30.     Scott's duties included, but were not limited to: oversight of analysts performing complex microbial analysis, review of microbiology test results, assistance with method development and validation work, oversight of contract laboratories performing microbiological analysis on behalf of GRAM, monitoring facility and personnel performance with regards to contamination control, and investigation of out-of-trend/out-of-specification results.

31.     Scott managed these responsibilities for Nexus and additionally managed testing for all of their productions and validation testing of their products.

32.     Scott managed all microbiology related non-conformance results for Nexus's products.

33.     GRAM hired Weidenfeller on or about January 2016.

34.     GRAM employed Weidenfeller most recently as a QC Microbiologist II.

35.     Weidenfeller worked on Scott's team to support GRAM's work for Nexus.

36.     As a necessary requirement of their work, Scott, Weidenfeller, and GRAM's other employees are intimately familiar with GRAM's proprietary and confidential information and processes.

37.     To protect its proprietary and confidential information, GRAM makes its employees sign confidentiality agreements.

38.     As a condition of his employment with GRAM, on February 15, 2019, Weidenfeller signed a binding and enforceable Confidentiality, Proprietary Rights, and Arbitration Agreement (the "Proprietary Rights Agreement") with GRAM.  **Exhibit 3**.

39.     As a condition of her employment with GRAM, on March 4, 2019, Scott also signed a binding and enforceable Proprietary Rights Agreement with GRAM.  **Exhibit** 4.

40.     Weidenfeller and Scott agreed that "During the term of Employee's employment with the Company, and after the termination of such employment for any reason, whatsoever, Employee shall not disclose, divulge, or furnish any Confidential Information" to any person and return any Confidential Information in their possession.     **Exhibits 3 and 4**, ¶ 1(a).

41.     The Proprietary Rights Agreement defines "Confidential Information" as "any trade secret, confidential or proprietary information of the Company all other information and data that is not generally known to the Company's competitors including, without limitation, any confidential studies, data, calculations, software storage media or other compilation of

information, patent, patent application, copyright, trademark, trade name, service mark, service name, 'know-how,' customer or prospect lists, details of client or customer contract, pricing policies, sales techniques, confidential information relating to suppliers or providers, information relating to the special and particular needs of the Company's customers, operational methods, marketing plans or strategies, products and formulae, product development techniques or plans, business acquisition plans, computer programs (including source of object codes), processes, procedures, research or technical data, improvements or other proprietary or intellectual property of the Company including, without limitation, all Innovations (as hereinafter defined); whether or not in written or tangible form, and whether or not registered, and including all files, records, manuals, books, catalogues, memoranda, notes, summaries, plans, reports, records, documents and other evidence thereof." *Id.* at ¶ 1(b).

42.     Weidenfeller and Scott further agreed that in addition to other remedies, in the case of breach of the Proprietary Rights Agreement GRAM would be entitled to injunctive relief and to recover its reasonable attorneys' fees incurred. *Id.* at ¶ 3.

43.     On March 4, 2019, Scott also signed a binding and enforceable Non-Compete, Non-Solicitation, and Arbitration Agreement (the "Restrictive Covenant Agreement") with GRAM. **Exhibit 5**.

44.     By signing the Restrictive Covenant Agreement, Scott agreed "that for a period of twelve (12) months from the date on which Employee's employment with Company ends, regardless of the reason, s/he will not directly or indirectly engage in Competition with Company anywhere in the United States of America ('USA') as Company conducts business throughout the USA. 'Competition' means competing with the Company on Employee's own behalf, or having ownership in, operating, managing or working as an agent, employee, representative or consultant,

for a person or entity that produces clinical trial materials for the pharmaceutical industry, including, without limitation, aseptic or lyophilized compounds." *Id.*, ¶ 2. (the "Non-Compete Clause.")

45.     Scott further agreed for a period of twelve months following the end of her employment with GRAM, she would not "directly or indirectly, on Employee's own behalf or on behalf of any other person or entity, solicit, attempt to obtain, divert, take away, do business with any current customer(s) or prospective customer(s) of the Company or interfere in any way with the business relationship between the Company and any of its customers or prospective customers." *Id.*, ¶ 3. (the "Non-Interference Clause.")

46.     Scott further agreed "that for a period of twelve (12) months following the termination of Employee's employment with the Company for any reason, Employee will not directly or indirectly, on Employee's own behalf or on behalf of any other person or entity, solicit, recruit or hire any person who is an employee of Company or who was an employee of Company during the two (2) year period prior to termination of the Employee's employment with the Company, or encourage in any manner any of Company's employees or agents to terminate their employment or agency with Company." *Id.*, ¶ 4.    (the "Non-Solicitation Clause.")

47.     Scott further agreed if she breached her obligations, GRAM was entitled to injunctive relief and to recover its reasonable attorneys' fees incurred in enforcing the Restrictive Covenant Agreement. *Id.*, ¶ 7.

48.     On October 8, 2019, Nexus provided notice to GRAM that Nexus would not renew the Commercial Supply Agreement.

49.     Based on Nexus' notice, the Commercial Supply Agreement will terminate on October 11, 2021.[1]

50.     Upon information and belief, Nexus terminated the Commercial Supply Agreement with GRAM because Nexus has established, or is in the process of establishing, its own facility to compete with GRAM.

51.     Upon information and belief, Nexus entered into the Commercial Supply Agreement so that it could obtain GRAM's confidential information and processes so that it could use this information to establish its own competing facility.

52.     Upon information and belief, Nexus is utilizing GRAM's confidential information and trade secrets in breach of its confidentiality and non-use restrictions contained within the Commercial Supply Agreement and Confidentiality Agreement.

53.     After Nexus provided notice of its intent to terminate the Commercial Supply Agreement, but prior to the termination date, Nexus began soliciting GRAM's employees.

54.     This was a violation of the No-Hire Provision.

55.     On or about August 12, 2020, Scott resigned from her employment with GRAM.

56.     Before she left her employment with GRAM, she plugged a USB drive into her GRAM computer and downloaded 3,072 files to the USB drive.  A list of file names is attached as **Exhibit 7** and is referred to as "GRAM's Confidential Information."

57.     GRAM's Confidential Information includes, but is not limited to, GRAM's Standard Operating Procedures, testing protocols, training manuals, FDA qualification data and procedures, equipment validation, customer information, customer lists, and  pricing information.

---

[1] Due to Nexus' solicitation of GRAM's employees, discussed below, GRAM is providing separate notice to Nexus of the immediate termination of the Commercial Supply Agreement.

58.     After downloading GRAM's Confidential Information, Scott went to work for Nexus.

59.     Scott plugged the USB drive into her Nexus computer and uploaded the files she downloaded from GRAM's servers.

60.     Hiring Scott was a breach by Nexus of the No-Hire Provision.

61.     By going to work for Nexus, Scott breached the Non-Compete Clause.

62.     By going to work for Nexus, Scott breached the Non-Interference Clause.

63.     On December 28, 2020, GRAM's counsel sent a letter to Scott reminding her of Restrictive Covenant obligations.  **Exhibit 6**.

64.     On January 4, 2021, Weidenfeller submitted his resignation letter to GRAM.

65.     Before he left his employment at GRAM, Weidenfeller downloaded fifty confidential GRAM documents relating to qualifying GRAM's facility with the FDA.

66.     Thereafter, Weidenfeller went to work for Nexus.

67.     Hiring Weidenfeller is a breach by Nexus of the No-Hire Provision.

68.     Upon information and belief, Weidenfeller intends to assist Nexus in establishing its facility to compete with GRAM.

69.     Upon information and belief, Weidenfeller is aware of Nexus' no-hire restrictions.

70.     Upon information and belief, Weidenfeller is aware of Scott's Non-Compete restrictions.

71.     Upon information and belief, Weidenfeller is aware of Scott's Non-Interference restrictions.

72.     Upon information and belief, Nexus has hired Weidenfeller to obtain confidential information of GRAM to assist Nexus in establishing its competing facility.

73.     Upon information and belief, Scott, in coordination with Nexus, solicited Weidenfeller to leave GRAM and join Nexus.

74.     Upon information and belief, Nexus, in coordination with Scott, solicited Weidenfeller to leave GRAM and join Nexus.

75.     Upon information and belief, Scott and Weidenfeller, in coordination with Nexus, have solicited at least three other GRAM employees to leave GRAM and join Nexus.

76.     Upon information and belief, these GRAM employees currently have offers of employment from Nexus.

77.     Upon information and belief, Scott, Weidenfeller, and Nexus solicited these GRAM employees in efforts to develop Nexus' own processes and systems for producing clinical trial materials for the pharmaceutical industry, including, aseptic or lyophilized compounds, to become a direct competitor to GRAM.

78.     Upon information and belief, Scott, Weidenfeller, and Nexus have used GRAM's Confidential Information to save time and money in creating Standard Operating Procedures and other documents necessary for Nexus to manufacture pharmaceutical products and gain approval from the FDA.

79.     Scott created at least nine documents for Nexus using GRAM's Confidential Information.

80.     Upon information and belief, the use of GRAM's Confidential Information has saved Nexus millions of dollars in startup costs.

81.     Upon information and belief, the use of GRAM's Confidential Information accelerated the opening of Nexus' new facility months.

82.     Upon information and belief, Nexus has used, or will use, GRAM's Confidential Information to produce pharmaceuticals for its own use or third-party use.

83.     Shortly before filing this Complaint, GRAM specifically demanded that Nexus rescind the outstanding offers to GRAM employees.

84.     Nexus refused to rescind the offers to GRAM employees.

## COUNT I – BREACH OF CONTRACT BY SCOTT

85.     GRAM incorporates the allegations in paragraphs 1 through 75 as though fully restated herein.

86.     The Restrictive Covenant Agreement is a valid and binding contract between Scott and GRAM.

87.     In the Non-Compete Clause of the Restrictive Covenant Agreement, Scott agreed "that for a period of twelve (12) months from the date on which Employee's employment with Company ends, regardless of the reason, s/he will not directly or indirectly engage in Competition with Company anywhere in the United States of America ('USA') as Company conducts business throughout the USA."

88.     The Non-Compete Clause is reasonable.

89.     Nexus meets the definition of "Competition" in the Non-Compete Clause because it produces clinical trial materials for the pharmaceutical industry.  **Ex. 5** at ¶ 2.

90.     Scott breached the Non-Compete Clause of the Restrictive Covenant Agreement when she began working as an employee at Nexus.

91.     In the Non-Solicitation Clause of the Restrictive Covenant Agreement, Scott also agreed "that for a period of twelve (12) months following the termination of Employee's employment with the Company for any reason, Employee will not directly or indirectly, on

Employee's own behalf or on behalf of any other person or entity, solicit, recruit or hire any person who is an employee of Company or who was an employee of Company during the two (2) year period prior to termination of the Employee's employment with the Company, or encourage in any manner any of Company's employees or agents to terminate their employment or agency with Company."

92.     The Non-Solicitation Clause is reasonable.

93.     Scott breached the Non-Solicitation Clause of the Restrictive Covenant Agreement when she solicited Weidenfeller and at least three other GRAM employees to leave their employment at GRAM and come work for Nexus.

94.     In the Proprietary Rights Agreement, Scott agreed that she "shall not disclose, divulge, or furnish any Confidential Information (as hereinafter defined) to any individual, partnership, corporation, limited liability company, association, trust, unincorporated organization, or a government or agency or political subdivision thereof (a 'Person'), other than the Company or upon its written request, or use any Confidential Information directly or indirectly for Employee's own benefit or for the benefit of any other Person other than the Company, as such Confidential Information is strictly confidential and shall at all times remain the property of the Company." **Ex. 4** at ¶ 1(a).

95.     This restriction is reasonable.

96.     Upon information and belief, Scott disclosed GRAM's Confidential Information to Nexus in an effort for Nexus to develop its own pharmaceutical manufacturing practice to compete with GRAM.

97.     Scott breached the Proprietary Rights Agreement when she disclosed GRAM's Confidential Information to Nexus.

98.     GRAM has suffered, and continues to suffer, damages resulting from Scott's breaches of the Restrictive Covenant Agreement and Proprietary Rights Agreement.

WHEREFORE GRAM prays that this Court enter judgment in its favor and against Scott in an amount to be determined by the finder of fact, plus the statutory interest rate from the date of filing, and that the Court grant GRAM any other relief the Court deems appropriate.

## COUNT II – BREACH OF CONTRACT BY WEIDENFELLER

99.     GRAM incorporates the allegations in paragraphs 1 through 89 as though fully restated herein.

100.    The Proprietary Rights Agreement is a valid and binding contract between Weidenfeller and GRAM.

101.    GRAM has performed all of its obligations under the Proprietary Rights Agreement.

102.    In the Proprietary Rights Agreement, Weidenfeller agreed that he "shall not disclose, divulge, or furnish any Confidential Information (as hereinafter defined) to any individual, partnership, corporation, limited liability company, association, trust, unincorporated organization, or a government or agency or political subdivision thereof (a 'Person'), other than the Company or upon its written request, or use any Confidential Information directly or indirectly for Employee's own benefit or for the benefit of any other Person other than the Company, as such Confidential Information is strictly confidential and shall at all times remain the property of the Company." **Ex. 3** at ¶ 1(a).

103.    This restriction is reasonable.

104. Upon information and belief, Weidenfeller has disclosed or intends to disclose GRAM's Confidential Information to Nexus in an effort for Nexus to develop its own pharmaceutical manufacturing practice to compete with GRAM.

105. Weidenfeller breached the Proprietary Rights Agreement when he disclosed GRAM's Confidential Information to Nexus.

106. GRAM has suffered and will continue to suffer harm from Weidenfeller's continued breach of the Proprietary Rights Agreement.

107. Weidenfeller agreed that, if he breached the Proprietary Rights Agreement, GRAM may enforce the Proprietary Rights Agreement by "equitable relief, including temporary and permanent injunctive relief (without any requirement to post any bond or other security)" and that Weidenfeller "shall not oppose the granting of such relief." **Ex. 3** at ¶ 3.

108. Weidenfeller also agreed that GRAM "shall be entitled to recover all litigation costs and reasonable attorneys' fees incurred by it in enforcing any provision of this Agreement." ***Id.***

WHEREFORE GRAM prays that this Court enter judgment in its favor and against Weidenfeller in an amount to be determined by the finder of fact, plus the statutory interest rate from the date of filing, and that the Court grant GRAM any other relief the Court deems appropriate.

## COUNT III – BREACH OF CONTRACT BY NEXUS

109. GRAM incorporates the allegations in paragraphs 1 through 99 as though fully restated herein.

110. The Commercial Supply Agreement is a valid and enforceable contract between Nexus and GRAM.

111.    During the term of the Commercial Supply Agreement and for a period of two years after its expiration or termination, Nexus agreed that it would not directly or indirectly recruit or hire an employee or independent contractor of GRAM or a person who was an employee or independent contract of GRAM within one year of the recruitment or hiring.  **Ex. 1** at ¶ 21.1. (the "No-Hire Provision.").

112.    The No-Hire Provision is reasonable.

113.    Nexus breached the No-Hire Provision by recruiting and hiring Scott.

114.    Nexus breached the No-Hire Provision by recruiting and hiring Weidenfeller.

115.    Nexus breached the No-Hire Provision by recruiting and making offers to at least three additional GRAM employees.

116.    GRAM has been harmed by Nexus's breaches of the No-Hire Provision.

117.    GRAM and Nexus are also parties to the Confidentiality Agreement.

118.    The Confidentiality Agreement is a valid and enforceable contract.

119.    By signing the Confidentiality Agreement, GRAM agreed to disclose its Confidential and Proprietary Information to Nexus on the condition that the Confidential and Proprietary Information would remain GRAM's property.  Ex. 2, ¶¶ 1, 7.

120.    As the contractual relationship between GRAM and Nexus has dissolved, Nexus was required to return or destroy GRAM's Confidential and Proprietary Information.

121.    Upon information and belief, Nexus has misappropriated GRAM's Confidential and Proprietary Information in violation of the Confidentiality Agreement.

122.    GRAM has been harmed by Nexus's breach of the Confidentiality Agreement.

WHEREFORE GRAM prays that this Court enter judgment in its favor and against Nexus in an amount to be determined by the finder of fact, plus the statutory interest rate from the date of filing, and that the Court grant GRAM any other relief the Court deems appropriate.

## COUNT IV – TORTIOUS INTERFERENCE WITH CONTRACT BY NEXUS

123. GRAM incorporates the allegations in paragraphs 1 through 113 as though fully restated herein.

124. The Non-Compete Agreement is a valid and enforceable contract between Scott and GRAM.

125. The Proprietary Rights Agreement is a valid and enforceable contract between Scott and GRAM.

126. The Proprietary Rights Agreement is a valid and enforceable contract between Weidenfeller and GRAM.

127. Nexus had knowledge that Scott had signed a Non-Compete Agreement and Proprietary Rights Agreement with GRAM.

128. Nexus had knowledge that Weidenfeller had signed a Proprietary Rights Agreement with GRAM.

129. Upon information and belief, Nexus instigated Scott and Weidenfeller to breach their respective contracts with GRAM.

130. Upon information and belief, Nexus instigated Scott and Weidenfeller to breach their respective contracts with GRAM so that Nexus could hire Scott and Weidenfeller and exploit GRAM's Confidential Information.

131. At Nexus' instigation, Scott and Weidenfeller have breached their respective contracts with GRAM.

132.     Further, Nexus is aware that other employees of GRAM are subject to similar agreements as Scott and Weidenfeller.

133.     Even after GRAM demanded that Nexus rescind offers to these GRAM employees, Nexus refused.

134.     Nexus has no legal justification for its instigation.

135.     GRAM has suffered, and will continue to suffer, damages due to Nexus' tortious interferences with GRAM's contracts with Scott and Weidenfeller.

WHEREFORE GRAM prays that this Court enter judgment in its favor and against Nexus in an amount to be determined by the finder of fact, plus the statutory interest rate from the date of filing, and that the Court grant GRAM any other relief the Court deems appropriate.

## COUNT V – TORTIOUS INTERFERENCE WITH CONTRACT BY SCOTT

136.     GRAM incorporates the allegations in paragraphs 1 through 126 as though fully restated herein.

137.     The Proprietary Rights Agreement is a valid and enforceable contract between Weidenfeller and GRAM.

138.     Scott had knowledge that Weidenfeller had signed a Proprietary Rights Agreement with GRAM.

139.     Upon information and belief, Scott instigated Weidenfeller to breach his Proprietary Rights Agreement with GRAM so that Nexus could hire Weidenfeller and exploit GRAM's Confidential Information.

140.     At Scott's instigation, Weidenfeller have breached his Proprietary Rights Agreement with GRAM.

141.     Scott has no legal justification for its instigation.

142.    GRAM has suffered, and will continue to suffer, damages due to Scott's tortious interference with GRAM's contracts with Weidenfeller.

WHEREFORE GRAM prays that this Court enter judgment in its favor and against Scott in an amount to be determined by the finder of fact, plus the statutory interest rate from the date of filing, and that the Court grant GRAM any other relief the Court deems appropriate.

## COUNT VI – VIOLATION OF THE MICHIGAN UNIFORM TRADE SECRETS ACT BY ALL DEFENDANTS

143.    GRAM incorporates the allegations in paragraphs 1 through 133 as though fully restated herein.

144.    GRAM's Confidential Information, as identified in the Confidentiality Agreement and Proprietary Rights Agreements, meets the definition of "trade secret" in the Michigan Uniform Trade Secrets Act, MCL 445.1902(d).

145.    GRAM's trade secrets are more than general skills, knowledge, and experience.

146.    GRAM has taken reasonable steps to keep its trade secrets confidential by, *inter alia*, requiring its employees to sign Proprietary Rights Agreement and by requiring Nexus to sign a Confidentiality Agreement.

147.    Upon information and belief, Nexus obtained confidential information and trade secrets of GRAM as part of the Commercial Supply Agreement and is using or will use that confidential information and trade secrets to set up a facility to compete with GRAM.

148.    Upon information and belief, Scott and Weidenfeller have disclosed GRAM's trade secrets to Nexus.

149.    Nexus misappropriated GRAM's trade secrets in violation of MCL 445.1901 *et seq.* by hiring Scott and Weidenfeller with the knowledge that Scott and Weidenfeller are subject to

Proprietary Rights Agreements and by using information it obtained as part of the Commercial Supply Agreement.

150.    Scott and Weidenfeller misappropriated GRAM's trade secrets in violation of MCL 445.1901 *et seq.* when they disclosed the trade secrets to Nexus despite knowing that they were bound by the Proprietary Rights Agreement.

151.    GRAM has not consented to the disclosure of its trade secrets.

152.    Upon information and belief, Nexus has used or is planning to use GRAM's trade secrets without authorization.

153.    GRAM has been, or will be, harmed by Defendants' misappropriations of GRAM's trade secrets.

154.    Under MCL 445.1903, the Court may enjoin Defendants from misappropriating GRAM's trade secrets.

155.    Under MCL 445.1904, the Court may award GRAM damages for Defendants' misappropriation of GRAM's trade secrets.

WHEREFORE GRAM prays that this Court enter judgment in its favor and against Defendants in an amount to be determined by the finder of fact, plus the statutory interest rate from the date of filing, enjoin the use of GRAM's confidential information and trade secrets by Defendants and that the Court grant GRAM any other relief the Court deems appropriate.

## COUNT VII – INJUNCTIVE RELIEF AGAINST SCOTT

156.    GRAM incorporates the allegations in paragraphs 1 through 146 as though fully restated herein.

157.     The Non-Compete Agreement is a valid and enforceable contract between Scott and GRAM.

158.    The Proprietary Rights Agreement is a valid and enforceable contract between Scott and GRAM.

159.    GRAM has performed all of its obligations under the Non-Compete Agreement and Proprietary Rights Agreement.

160.    Scott breached the Non-Compete Agreement when she became an employee of Nexus and recruited Weidenfeller to terminate his employment with GRAM and join Nexus.

161.    Scott breached their Proprietary Rights Agreement with she disclosed GRAM's Confidential Information to Nexus.

162.    Injunctive relief is necessary to enforce Scott's obligations under the Non-Compete Agreement and Proprietary Rights Agreement.

163.    Injunctive relief is necessary to prevent Scott from using and misappropriating GRAM's Confidential Information in violation of the Proprietary Rights Agreement and the Michigan Uniform Trade Secrets Act.

164.    Scott agreed that, if she breached the Proprietary Rights Agreement, GRAM may enforce the Proprietary Rights Agreement by "equitable relief, including temporary and permanent injunctive relief (without any requirement to post any bond or other security)" and that Scott "shall not oppose the granting of such relief." **Ex. 4** at ¶ 3.

165.    Scott also agreed that GRAM "shall be entitled to recover all litigation costs and reasonable attorneys' fees incurred by it in enforcing any provision of this Agreement." ***Id.***

166.    Scott has also misappropriated GRAM's trade secrets within the meaning of the Michigan Uniform Trade Secrets Act.

167.    The Court should enjoin Scott from misappropriating GRAM's trade secrets pursuant to MCL 445.1903.

WHEREFORE GRAM prays that this Court enjoin Scott from disclosing GRAM's confidential information and trade secrets, enter judgment in its favor and against Scott in an amount to be determined by the finder of fact, plus the statutory interest rate from the date of filing, and that the Court grant GRAM any other relief the Court deems appropriate.

<u>**COUNT VIII – INJUNCTIVE RELIEF AGAINST WEIDENFELLER**</u>

168.    GRAM incorporates the allegations in paragraphs 1 through 158 as though fully restated herein.

169.    The Proprietary Rights Agreement is a valid and enforceable contract between Weidenfeller and GRAM.

170.    GRAM has performed all of its obligations under the Proprietary Rights Agreement.

171.    Weidenfeller breached the Proprietary Rights Agreement with he disclosed GRAM's Confidential Information to Nexus.

172.    Injunctive relief is necessary to enforce Weidenfeller's obligations under the Proprietary Rights Agreement.

173.    Injunctive relief is necessary to prevent Weidenfeller from using and misappropriating GRAM's Proprietary Rights Agreement in violation of the Confidentiality Agreement and the Michigan Uniform Trade Secrets Act.

174.    Weidenfeller agreed that, if he breached the Proprietary Rights Agreement, GRAM may enforce the Proprietary Rights Agreement by "equitable relief, including temporary and permanent injunctive relief (without any requirement to post any bond or other security)" and that Weidenfeller "shall not oppose the granting of such relief." **Ex. 3** at ¶ 3.

175.    Weidenfeller also agreed that GRAM "shall be entitled to recover all litigation costs and reasonable attorneys' fees incurred by it in enforcing any provision of this Agreement." ***Id.***

176.    Weidenfeller has also misappropriated GRAM's trade secrets within the meaning of the Michigan Uniform Trade Secrets Act.

177.    The Court should enjoin Weidenfeller from misappropriating GRAM's trade secrets pursuant to MCL 445.1903.

WHEREFORE GRAM prays that this Court enjoin Weidenfeller from disclosing GRAM's confidential information and trade secrets, enter judgment in its favor and against Weidenfeller in an amount to be determined by the finder of fact, plus the statutory interest rate from the date of filing, and that the Court grant GRAM any other relief the Court deems appropriate.

## COUNT IX – INJUNCTIVE RELIEF AGAINST NEXUS

178.    GRAM incorporates the allegations in paragraphs 1 through 168 as though fully restated herein.

179.    The Commercial Supply Agreement is a valid and enforceable contract between Nexus and GRAM.

180.    GRAM has performed all of its obligations under the Commercial Supply Agreement.

181.    Nexus breached the No-Hire Provision of the Commercial Supply Agreement when it hired Scott and Weidenfeller and solicited at least three additional GRAM employees.

182.    Injunctive relief is necessary to enforce Nexus's obligations under the Commercial Supply Agreement.

183.    The Confidentiality Agreement is also a valid and enforceable contract between Nexus and GRAM.

184.    GRAM has performed all of its obligations under the Confidentiality Agreement.

185.    Nexus breached the Confidentiality Agreement when it retained GRAM's Confidential and Proprietary Information after its relationship with GRAM had terminated.

186.    Upon information and belief, Nexus retained GRAM's Confidential and Proprietary Information with the intent to use it to develop a competing business practice to GRAM.

187.    Nexus agreed that if it breached or threatened to breach the Confidentiality Agreement, GRAM "may be entitled to injunctive relief restraining the act or threatened act that constitute or would constitute a breach of this Agreement."

188.    Nexus has also misappropriated GRAM's trade secrets within the meaning of the Michigan Uniform Trade Secrets Act.

189.    The Court should enjoin Nexus from misappropriating GRAM's trade secrets pursuant to MCL 445.1903.

WHEREFORE GRAM prays that this Court enjoin Nexus from any other GRAM employee, using or maintaining GRAM's confidential information and trade secrets, enter judgment in its favor and against Nexus in an amount to be determined by the finder of fact, plus the statutory interest rate from the date of filing, and that the Court grant GRAM any other relief the Court deems appropriate.

## COUNT X – UNJUST ENRICHMENT AGAINST NEXUS

190.    GRAM incorporates the allegations in paragraphs 1 through 180 as though fully restated herein.

191.    This count is brought in the alternative to GRAM's claims for breach of contract and claim under the Michigan Uniform Trade Secrets Act.

192.    GRAM provided Nexus with knowledge and expertise in the pharmaceutical manufacturing industry.

193.    Nexus has terminated its relationship with GRAM and retained the benefit of GRAM's knowledge and expertise, including several of GRAM's employees and their knowledge of GRAM's systems and processes.

194.    It would be inequitable to allow Nexus to retain GRAM's knowledge and expertise, including GRAM's employees and their knowledge of GRAM's systems and processes, without significant payment to GRAM.

WHEREFORE GRAM prays that this Court enter judgment in its favor and against Nexus in an amount to be determined by the finder of fact, plus the statutory interest rate from the date of filing, and that the Court grant GRAM any other relief the Court deems appropriate.

## COUNT XI – CIVIL CONSPIRACY AGAINST SCOTT AND NEXUS

195.    GRAM incorporates the allegations in paragraphs 1 through 185 as though fully restated herein.

196.    Scott and Nexus took a series of concerted steps with one another, including

(a)    Scott terminating her employment at GRAM at Nexus's request in violation of her Restrictive Covenant Agreement;

(b)    Scott disclosing GRAM's trade secrets and Confidential Information to Nexus, in violation of her Proprietary Rights Agreement with GRAM and the Michigan Uniform Trade Secrets Act;

(c)    Jointly encouraging Weidenfeller to terminate his employment with GRAM and recruiting him to accept a job at Nexus;

(d)    Hiring Weidenfeller to work at Nexus;

(e)    Encouraging Weidenfeller to unlawfully disclose GRAM's trade secrets, in violation of his Proprietary Rights Agreement with GRAM and the Michigan Uniform Trade Secrets Act; and

(f)    Recruiting at least three additional GRAM employees to leave their employment with GRAM and join Nexus, in violation of the No-Hire

Provision in the Commercial Supply Agreement and the Non-Solicitation Provision in Scott's Non-Compete Agreement.

197.    These actions were either an unlawful purpose or a lawful purpose accomplished by criminal or unlawful means.

198.    GRAM has suffered harm resulting from the unlawful purpose and/or unlawful means of the conspiracy.

WHEREFORE GRAM prays that this Court enter judgment in its favor and against Nexus and Scott in an amount to be determined by the finder of fact, plus the statutory interest rate from the date of filing, and that the Court grant GRAM any other relief the Court deems appropriate.

## COUNT XII – CIVIL VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, AGAINST NEXUS, SCOTT, AND WEIDENFELLER

199.    GRAM incorporates the allegations in paragraphs 1 through 194 as through fully restated herein.

200.    GRAM has taken reasonable measures to keep GRAM's Confidential Information secret, including marking its files "CONFIDENTIAL," requiring Nexus to sign the Confidentiality Agreement in **Exhibit 2,** and requiring employees like Scott and Weidenfeller to sign the Proprietary Rights Agreements in **Exhibits 3 and 4**.

201.    GRAM's Confidential Information derives independent economic value, both actual and potential, from not being generally know to, and not being readily ascertainable through proper means, by another person or entity like Nexus and Scott who can obtain economic value from the use of GRAM's Confidential Information.

202.    GRAM's Confidential Information meets the definition of "trade secret" within 18 U.S.C. § 1839(3).

203.    Scott and Weidenfeller knew or should have known that GRAM's Confidential Information was confidential and proprietary.

204.   Despite that knowledge, before Scott left her employment with GRAM, Scott downloaded from GRAM's computers/servers onto a USB drive GRAM's Confidential Information.

205.   Scott misappropriated GRAM's Confidential Information by downloading it with the intent to carry it away from GRAM, uploading it to onto her new computer at Nexus, and using it to replicate GRAM's practices and procedures for the benefit of Nexus.

206.   By transporting GRAM's Confidential Information from GRAM's facility in Grand Rapids, Michigan to Nexus's facilities in Illinois and/or Wisconsin, Scott has transported GRAM's Confidential Information across state lines.

207.   Despite his knowledge that GRAM's Confidential Information was confidential and proprietary, Weidenfeller downloaded fifty documents shortly before his employment at GRAM ended.

208.   Weidenfeller had no reason to access or download those documents during the course of his job duties for GRAM during the final weeks of his employment.

209.   Upon information and belief, Weidenfeller misappropriated GRAM's Confidential Information by downloading these files with the intent to carry them away from GRAM, transporting them to Nexus, across state lines, and using them to replicate GRAM's practices and procedures for the benefit of Nexus.

210.   GRAM did not authorize Scott or Weidenfeller to take any of GRAM's Confidential Information.

211.   Nexus misappropriated GRAM's Confidential Information by acquiring it from Scott and Weidenfeller and knowing or having reason to know that Scott and Weidenfeller used improper means to acquire it.

212.     Scott, Weidenfeller, and Nexus's actions to misappropriate GRAM's Confidential Information were willful and malicious.

213.     Nexus received GRAM's Confidential Information and currently possesses it, knowing that Scott and Weidenfeller obtained GRAM's Confidential Information without authorization.

214.     Nexus intends to use, and upon information and belief has used, GRAM's Confidential Information to expedite the FDA authorization process to become a contract manufacturing organization at its new facility in Wisconsin.

215.     Nexus intends to use GRAM's Confidential Information to manufacture pharmaceutical products for sale and distribution in interstate and/or foreign commerce.

216.     Nexus has used GRAM's Confidential Information to secure a contract to manufacture the Moderna COVID-19 vaccine and sell it in interstate and foreign commerce.

WHEREFORE, GRAM prays that this Court grant an injunction to prevent any actual or threatened misappropriation of GRAM's Confidential Information, require an independent digital forensic investigation into Nexus's servers to identify any of GRAM's Confidential Information contained therein, order the destruction of any of any documents or files containing any portion GRAM's Confidential Information, award GRAM a reasonable royalty for Nexus's misappropriation of GRAM's Confidential Information, and enter a money judgment in its favor and against Nexus, Weidenfeller, and Scott in an amount to be determined by the finder of fact, including double damages and attorney fees as authorized by 18 U.S.C. § 1836(b)(3).

## COUNT XIII – VIOLATION OF THE MICHIGAN UNIFORM TRADE SECRETS ACT, MCL 445.1901 et seq., AGAINST NEXUS, SCOTT, AND WEIDENFELLER

217.     GRAM incorporates the allegations in paragraphs 1 through 212 as through fully restated herein.

218. GRAM's Confidential Information is a "trade secret" within the meaning of MCL 445.1902(d).

219. Scott and Weidenfeller used improper means to misappropriate GRAM's Confidential Information by downloading it from GRAM's servers and delivering it to Nexus.

220. Nexus misappropriated GRAM's Confidential Information by acquiring it from Scott and Weidenfeller when it knew or should have known that Scott and Weidenfeller used improper means to acquire it.

221. Nexus intends to use, and upon information and belief has used, GRAM's Confidential Information to expedite the FDA authorization process to become a contract manufacturing organization at its new facility in Wisconsin.

222. Nexus intends to use GRAM's Confidential Information to manufacture pharmaceutical products for sale and distribution.

223. Nexus has used GRAM's Confidential Information to secure a contract to manufacture the Moderna COVID-19 vaccine and sell it in interstate and foreign commerce.

WHEREFORE, GRAM prays that this Court grant an injunction to prevent any actual or threatened misappropriation of GRAM's Confidential Information, require an independent digital forensic investigation into Nexus's servers to identify any of GRAM's Confidential Information contained therein, order the destruction of any of any documents or files containing any portion GRAM's Confidential Information, award GRAM a reasonable royalty for Nexus's misappropriation of GRAM's Confidential Information, and enter a money judgment in its favor and against Nexus, Weidenfeller, and Scott in an amount to be determined by the finder of fact.

## **PRAYER FOR RELIEF**

WHEREFORE, GRAM prays that this Court:

(a) Enter a temporary restraining order and permanent injunction prohibiting Scott from disclosing any of GRAM's Confidential Information to Nexus;

(b) Enter a temporary restraining order and permanent injunction prohibiting Weidenfeller from disclosing any of GRAM's Confidential Information to Nexus;

(c) Enter a temporary restraining order and permanent injunction prohibiting Nexus from soliciting or hiring any of GRAM's employees in violation of the No-Hire Provision of the Commercial Supply Agreement and requiring Nexus to destroy any of GRAM's Confidential Information in its possession;

(d) Enter a money judgment against Defendants, jointly and severally, in an amount to be determined by the finder of fact;

(e) Award GRAM a reasonable royalty from any revenues made by Nexus that were the result of the misappropriation of GRAM's Confidential Information;

(f) Order Defendants to pay GRAM's fees, costs, and expenses, including attorney fees, incurred in enforcing the terms of the Confidentiality Agreement, Restrictive Covenant Agreement, Proprietary Rights Agreements, and Commercial Supply Agreement; and

(g) Award GRAM any other relief this Court deems appropriate.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: _____
    Joseph M. Infante (P68719)
    Leigh M. Schultz (P71038)
    Stephen M. Ragatzki (P81952)
    Attorneys for Plaintiff
    99 Monroe Avenue NW, Suite 1200
    Grand Rapids, Michigan 49503
    (616) 454-8656
    infante@millercanfield.com
    schultzl@millercanfield.com
    ragatzki@millercanfield.com

Dated: May 10, 2021

37572289.3/151564.00006

- 30 -

# Exhibit 1

## COMMERCIAL SUPPLY AGREEMENT

THIS COMMERCIAL SUPPLY AGREEMENT (as amended in accordance with its terms, this "Agreement") is effective as of October 11, 2016 (the "Effective Date"), by and between Nexus Pharmaceuticals, Inc., an Illinois corporation with a place of business at 175 E. Hawthorn Parkway, Suite 155, Vernon Hills, IL 60061 ("CLIENT") and Grand River Aseptic Manufacturing, Inc., a Delaware corporation with a place of business at 140 Front Avenue SW, Suite 3, Grand Rapids, MI 49504 ("GRAM") (each, a "Party" and together, the "Parties").

WHEREAS, CLIENT is engaged in the development, bulk production, formulation, sale and distribution of pharmaceutical products;

WHEREAS, GRAM is engaged in the filling, labeling and packaging of pharmaceutical products;

WHEREAS, CLIENT and GRAM desire to have GRAM fill, package, inspect, label, and test pharmaceutical products for distribution and sale by CLIENT.

NOW, THEREFORE, in consideration of the terms, conditions and mutual covenants set forth in this Agreement and other good and valuable consideration, the Parties, intending to be legally bound, agree as follows:

### Article 1. Definitions and Agreements

As used in this Agreement, the following words and phrases shall have the following meanings and grammatical variations thereof and shall have corresponding meanings (the singular shall be interpreted as including the plural and vice versa, unless the context clearly indicates otherwise):

1.1     "Affiliate" of a Party means any entity that controls or is controlled by such Party, or is under common control with such Party. For purposes of this definition, an entity shall be deemed to control another entity if it owns or controls, directly or indirectly, at least fifty percent (50%) of the voting equity of another entity.

1.2     "ANDA" means the FDA-required Abbreviated New Drug Application.

1.3     "Annual Forecast" is defined in Section 4.1.

1.4     "Annual Obligation" is defined in Section 4.3.

1.5     "Applicable Legal Requirements" is defined in Section 7.1.

1.6     "Batch" means a specific quantity of a Product comprising a number of Units mutually agreed upon in writing between CLIENT and GRAM, and that (a) is intended to have uniform character and quality within specified limits, and (b) is Produced according to a single manufacturing order during the same cycle of Production.

1.7     "GRAM SOPs" means GRAM's Standard Operating Procedures, a copy of which has been provided to CLIENT, which shall be deemed reviewed and approved by CLIENT prior to entering into each Work Order.

GRAM Comments 9/30/16

     1.8    "Bulk Drug Substance" means the bulk form of the active ingredient used as the raw material in the Production of Product.

     1.9    "CLIENT Trademarks" means the proprietary mark(s) for Product owned by CLIENT as stated in a Work Order.

     1.10    "Components" means all components used by GRAM in the Production of Product under this Agreement. Components are listed in the Work Order and are identified as Components supplied by CLIENT ("CLIENT Supplied Components") and Components supplied by GRAM ("GRAM Supplied Components").

     1.11    "Component Specifications" means the specifications and testing to be performed for the Components, as set forth in the Work Order.

     1.12    "Confidential Information" means all confidential or proprietary information and data provided by one Party to the other Party, except any portion of such information and data which:

         (i)    is known to the recipient as evidenced by its written records before receipt thereof from the disclosing Party;

         (ii)    is disclosed to the recipient by a third person who has the right to make such disclosure;

         (iii)    is or becomes part of the public domain through no fault of the recipient; or

         (iv)    the recipient can reasonably establish is independently developed by recipient without use of the information or data disclosed by the disclosing Party.

     1.13    "Contract Requirements" means one hundred percent (100%) of the quantity of a Product sold and/or distributed by CLIENT in the United States and all other parts of the world.

     1.14    "Current Good Manufacturing Practices" or "cGMP" means (a) the good manufacturing practices required by the FDA and set forth in the FD&C Act or FDA Regulations (including without limitation 21 CFR 210 and 211), policies or guidelines, in effect at any time during the Term, for the Production and testing of pharmaceutical materials as applied solely to Products, and (b) the corresponding requirements of each applicable Regulatory Authority.

     1.15    "Delivery Date" means the date that Product is delivered to a common carrier designated by CLIENT.

     1.16    "Effective Date" means the date of this Agreement as set forth above.

     1.17    "FDA" means the United States Food and Drug Administration or any successor entity thereto.

     1.18    "FD&C Act" means the United States Federal Food, Drug and Cosmetic Act, as may be amended from time to time.

GRAM Comments 9/30/16

1.19    "Long Range Forecast" is defined in Section 4.1.

1.20    "Master Batch Record" means, with respect to each Presentation of Product to be Produced under this Agreement, a formal set of instructions for the Production of each Presentation of such Product. The Master Batch Record shall be developed and maintained in GRAM's standard format by GRAM, using CLIENT's master formula and technical support.

1.21    "NDA" means the FDA-required New Drug Application.

1.22    "Presentation" means the specific formula and Components for a Product.

1.23    "Produce" or "Production" means the formulation, filling, packaging, inspecting, labeling, and testing of Product by GRAM in accordance with this Agreement, including the Work Order.

1.24    "Product" means formulated Bulk Drug Substance in syringes and/or vials in final packaged and labeled forms as specified in the Work Order and Produced after the first Regulatory Approval therefore.

1.25    "Product Specifications" means, with respect to each Product, the specifications and testing to be performed for the Bulk Drug Substance, the Product, and/or the stability program that are set forth in GRAM's SOPs and the Master Batch Records. The Product Specifications include all tests that GRAM is required to conduct or cause to be conducted as specified in the Work Order. The Product Specifications may be modified from time to time only by a written agreement of CLIENT and GRAM.

1.26    "Purchase Order" means written orders from CLIENT to GRAM which shall specify (a) the quantity of Product ordered, (b) shipping instructions, (c) delivery dates, and (d) delivery destinations.

1.27    "Quality Agreement" is defined in Section 2.1.

1.28    "Regulatory Approval" means all authorizations by the appropriate Regulatory Authority necessary for commercial sale in a jurisdiction, including without limitation, approval of labeling, price, reimbursement and Production.

1.29    "Regulatory Authority" means those agencies or authorities responsible for regulation of the Products in the United States and overseas. GRAM shall have no obligation to Produce Product in compliance with the requirements of a Regulatory Authority not specified in the applicable Work Order.

1.30    "Released Executed Batch Record" means the completed batch record and associated deviation reports, investigation reports, and Certificates of Analysis created for each Batch of Product.

1.31    "Rolling Forecast" is defined in Section 4.1.

1.32    "Testing Standards and Procedures" means, with respect to each Product Produced under this Agreement, the written standards and procedures for evaluating compliance with the applicable Product Specifications, as mutually agreed upon in writing by CLIENT and GRAM, and incorporated in the applicable Work Order.

1.33   "Unit" means an individually packaged dose of a Product, including by way of example only, a vial or prefilled syringe, as specified in the applicable Work Order.

1.34   "Work Order" means the manual containing the parameters for the Production of each Presentation of Product which shall be developed by GRAM and agreed to in writing by CLIENT for each Presentation of Product under this Agreement, which may include, without limitation, the Product, Product Specifications, Components, Component Specifications, Regulatory Authorities, the countries where such Product will be sold, Presentations, Reschedule Fees and pricing for such Product Produced under this Agreement, as set forth in Section 2.2.

## Article 2.  Quality Agreement and Work Orders

2.1   Quality Agreement. Concurrently with each Work Order, the Parties will execute a mutually acceptable quality agreement ("Quality Agreement"), which will allocate the roles and responsibilities to each Party with respect to quality control and regulatory compliance as they apply to the services provided by GRAM to CLIENT under the Work Order. In the event of a conflict between this Agreement, a Work Order and/or a Quality Agreement, the Quality Agreement shall prevail as it relates to quality control and regulatory compliance, and, without limitation, this Agreement shall prevail as it relates to limitations of damages or liabilities.

2.2   Work Order. For each Presentation of Product to be Produced under this Agreement, the Parties shall agree in writing upon a Work Order. GRAM shall deliver two (2) copies of each Work Order to CLIENT at least two (2) calendar weeks prior to the date of initial Production of the applicable Presentation of Product. CLIENT shall either sign such Work Order and return one (1) copy to GRAM or shall return an amended Work Order acceptable to CLIENT, in each case within five (5) business days of receipt of such Work Order from GRAM. If such amended Work Order is not acceptable to GRAM, then GRAM shall so notify CLIENT within five (5) business days of GRAM's receipt of such amended Work Order, and the Parties shall promptly meet in order to resolve in good faith any outstanding disagreements with respect to such amended Work Order. In no event shall GRAM be required to schedule or commence the Production of the Presentation of the applicable Product until a Work Order for such Presentation of Product has been approved in writing by both GRAM and CLIENT.

2.3   Amendment of Plans. Each Work Order may be amended from time to time, as the Parties experience with the development, Production, testing and use of the applicable Product warrants, only upon the mutual written agreement of CLIENT and GRAM.

2.4   No Amendment of Agreement. In the event that the terms of any Work Order are inconsistent with the terms of this Agreement, this Agreement shall control, unless otherwise explicitly agreed to in writing by the Parties. No Work Order shall be deemed to amend this Agreement. Upon execution of any Work Order, such plan shall be deemed to be incorporated herein and by reference and made a part of this Agreement.

2.5   Effect of Failure to Execute Plans or Addendum. No failure to execute a Work Order with respect to a particular Product will relieve either Party of any obligation accruing with respect to such Product prior to such failure to execute. CLIENT shall reimburse GRAM for all non-cancelable costs incurred by GRAM for work performed with respect to such Product.

**Article 3. Purchase and Supply of Product**

3.1     Agreement to Purchase and Supply; Exclusively.  Pursuant to the terms and conditions of this Agreement, CLIENT shall purchase from GRAM the Contract Requirements of Product, and GRAM shall use good faith efforts to Produce and deliver to CLIENT the Contract Requirements of Product in accordance with Article 4 of this Agreement. During the Term, CLIENT shall not: purchase or otherwise obtain from any person or entity other than GRAM, any Product, or otherwise Produce any Product itself or through any Affiliate. With regard to the Production of Procainamide, GRAM will Produce Procainamide exclusively for CLIENT during the Term with regard to any indication (as determined by the FDA) of Procainamide.

3.2     Bulk Drug Substance and Components Delivery.  CLIENT, at its expense, shall deliver or cause to be delivered, in a timely manner, (a) all Bulk Drug Substance required to satisfy the terms of this Agreement and applicable certificate of analysis therefore and (b) all other CLIENT Supplied Components, all to be delivered to GRAM at least sixty (60) days in advance of the date set forth in the applicable Work Order for Production of such Product.  Except as may specifically be set forth in the Work Order, on receipt of the Bulk Drug Substance and CLIENT Supplied Components as set forth above, GRAM will develop material specifications, which require approval by CLIENT.  GRAM is responsible for all release testing and release of the drug substance for Production.

3.3     Bulk Drug Substance and Component Delivery Delays. GRAM shall have no responsibility for delays in delivery of Product caused by delays in receipt of Bulk Drug Substance or Components, including those Components supplied by both GRAM and CLIENT.  Notwithstanding anything in this Agreement to the contrary, in the event that GRAM receives the Bulk Drug Substance for development or Production of Product from CLIENT with less time than requested in the applicable Work Order prior to the scheduled date of development or Production of such Product, but within sufficient time to develop or Produce such Product on such scheduled date as determined by GRAM in its sole discretion, GRAM shall charge CLIENT an additional fee of Five Thousand and no/100 Dollars ($5,000.00), which shall be paid promptly to GRAM prior to development or Production and GRAM shall develop or Produce such Product as per the original schedule.  Notwithstanding anything in this Agreement to the contrary, in the event that GRAM receives the Bulk Drug Substance for development or Production of Product from CLIENT with less time than requested in the applicable Work Order prior to the scheduled date of development or Production of such Product, and without sufficient time to develop or Produce such Product on the scheduled date as determined by GRAM in its sole discretion, GRAM shall reschedule development or Production of such Product and shall charge CLIENT the applicable Reschedule Fee as specified in the Work Order.

3.4     Material Safety Data Sheet. CLIENT shall provide GRAM a Material Safety Data Sheet for Bulk Drug Substance, excipients and for each Product.  GRAM shall immediately notify CLIENT of any unusual health or environmental occurrence known to GRAM relating to the Product, including, but not limited to, any claim or complaint by any employee of GRAM or any of its Affiliates or third parties that the operations of GRAM pursuant to this Agreement have resulted in any adverse health or safety effect on an employee or third party.  GRAM agrees to advise CLIENT immediately of any safety or toxicity problems of which it becomes aware regarding the Product.

3.5     Vendor and Supplier Audit and Certification.  CLIENT shall certify and audit all Product-related vendors and suppliers. GRAM will accept CLIENT vendors, suppliers and audit qualifications only

GRAM Comments 9/30/16

if GRAM is allowed to review CLIENT qualification documentation and agrees that the vendor or supplier can be added to GRAM's program.

3.6     Purchase of Materials. As specified in the Work Order, GRAM shall purchase, at CLIENT's expense, all packaging materials, primary container Components and secondary packaging materials required to Produce the Product. CLIENT shall reimburse GRAM for its actual costs for such materials and Components within thirty (30) days after delivery of an invoice therefore to CLIENT. GRAM shall control packaging materials listed in the Work Order and shall assist CLIENT with evaluation and purchase of modified materials in the event that CLIENT requests a change in Presentation. GRAM shall not initiate any changes to materials without written approval from CLIENT.

3.7     GRAM Supplied Components. GRAM will purchase the GRAM Supplied Components in quantities sufficient to meet CLIENT's Purchase Orders for Product consistent with Article 4. CLIENT shall reimburse GRAM for its actual costs for the GRAM Supplied Components within thirty (30) days after delivery of an invoice therefore to CLIENT.

3.8     Importer of Record. In the event any material or equipment to be supplied by CLIENT, including without limitation CLIENT Supplied Components and Bulk Drug Substance, is imported into the United States for delivery to GRAM ("Imported Goods"), such Imported Goods shall be imported DDP GRAM's facility in Grand Rapids, Michigan (Incoterms 2010). CLIENT shall be the "Importer of Record" of such Imported Goods. As the Importer of Record, CLIENT shall be responsible for all aspects of the Imported Goods including, without limitation (a) customs and other regulatory clearance of Imported Goods, (b) payment of all tariffs, duties, customs, fees, expenses and charges payable in connection with the importation and delivery of the Imported Goods, and (c) keeping all records, documents, correspondence and tracking information required by applicable laws, rules and regulations arising out of or in connection with the importation or delivery of the Imported Goods.

3.9     Storage.

3.10.1   *Product Storage.* If GRAM has adequate space in its current facility in Grand Rapids, Michigan, as determined in GRAM's sole discretion, GRAM will store Product for CLIENT after the Product release, and with regard to any such storage, CLIENT shall pay to GRAM those storage fees set forth in the applicable Work Order, pursuant to the terms of the applicable Work Order.

3.10.2   *Bulk Drug Substance and Component Storage.* If GRAM has adequate space in its current facility in Grand Rapids, Michigan, as determined in GRAM's sole discretion, GRAM will store Bulk Drug Substance and Components for CLIENT, and with regard to any such storage, CLIENT shall pay to GRAM those storage fees set forth in the applicable Work Order.

3.10.3   *Third Party Storage.* GRAM shall be permitted to store Product, Bulk Drug Substance and Components in third party storage facilities with the prior written consent of CLIENT, which consent shall not be unreasonably withhold, conditioned or delayed. GRAM shall have no liability for, and CLIENT releases all claims against GRAM arising out of, any damage or loss to Product, Bulk Drug Substance or Components arising out of, or in connection with, the storage in such third-party facilities.

GRAM Comments 9/30/16

## Article 4. Forecasts, Orders, and Capacity

4.1     Forecasts and Order Limits.

4.1.1     Commencing on the Effective Date, and prior to July 1 of each year thereafter, CLIENT will provide to GRAM in writing a non-binding annual forecast for each calendar year during the remainder of the Term of CLIENT's estimated Contract Requirements for each Product (the "Long Range Forecast").  Commencing on the Effective Date, and prior to the tenth (10th) calendar day of each month thereafter, CLIENT will provide GRAM in writing a twelve (12) month rolling forecast of CLIENT's estimated Contract Requirements for each Product (the "Rolling Forecast").  GRAM specifically agrees that such Long Range Forecasts and Rolling Forecasts submitted by CLIENT will be for general planning purposes only, and shall not be binding on CLIENT or GRAM.  Commencing on the Effective Date, and prior to July 1 of each calendar year thereafter, CLIENT will provide to GRAM in writing a non-binding monthly forecast of CLIENT's Contract Requirements for each Product for the next succeeding calendar year (the "Annual Forecast").

4.1.2     During each calendar quarter, GRAM shall supply CLIENT with the quantity of Product ordered by CLIENT, unless the quantity for any calendar quarter exceeds one hundred twenty (120%) of the Annual Forecast for such calendar quarter, in which event GRAM shall use good faith efforts to supply quantities in excess of one hundred twenty percent (120%) of the Annual Forecast for such calendar quarter.

4.2     Purchase Orders.  Prior to or on the tenth (10th) calendar day of each month, CLIENT shall submit Purchase Orders to GRAM covering CLIENT's purchases of Product pursuant to this Agreement.  CLIENT shall not, without the written consent of GRAM, designate a delivery date in a Purchase Order earlier than ninety (90) calendar days from the date CLIENT submits the Purchase Order.  GRAM shall provide a confirmation of receipt of each Purchase Order setting forth the delivery date that GRAM will meet and setting forth GRAM's filling date for such order.  Upon CLIENT's receipt of the confirmation, such Purchase Order shall become a "Firm Purchase Order."  If GRAM is unable to meet the specified delivery date, except when caused by CLIENT's delay in delivery of Bulk Drug Substance, GRAM shall so notify CLIENT and provide to CLIENT an alternative delivery date which shall not be more than thirty (30) calendar days later than the initial delivery date designated by CLIENT in its Purchase Order.  In the event that CLIENT cancels a Firm Purchase Order, CLIENT shall pay, as liquidated damages and not as a penalty, the Purchase Price of the Product in the Firm Purchase Order.  In the event that CLIENT modifies a Firm Purchase Order, CLIENT shall pay, as liquidated damages and not as a penalty, the applicable Reschedule Fee as specified in the Work Order.  To the extent of any conflict between Purchase Orders submitted by CLIENT and this Agreement, this Agreement shall control.

4.3     Annual Obligation.  CLIENT shall be obligated to purchase from GRAM at least the following minimum Batches of Procainamide in each calendar year during the Term of this Agreement (the "Annual Obligation"), which Annual Obligation shall be pro-rated for any partial calendar year: 150,000 Units of 2mL Procainamide (total value of $590,000) and 100,000 Units of 10mL Procainamide (total value of $667,500).  Within thirty (30) days after the end of each calendar year, CLIENT shall pay to GRAM the difference between the Purchase Price of Product actually purchased pursuant to Sections 4.1 and 4.2 by CLIENT and the Purchase Price of the Annual Obligation of Product.

4.4    Annual Order Increases.  In any calendar year during the Term of this Agreement, in no event shall GRAM be obligated to Produce more than one-hundred twenty percent (120%) of the quantity of Product Produced by GRAM in the preceding calendar year; provided, however, GRAM will use good faith efforts to meet such increased demand.

## Article 5. Price; GDUFA Fee

5.1    Product Purchase Price.  The price to be paid by CLIENT for Product ("Purchase Price") shall be set forth in the Work Order.

5.2    Purchase Price Adjustment.  Upon the first anniversary of the date of this Agreement and on each anniversary thereafter, the Purchase Price of such Product may be adjusted as mutually agreed by the Parties to reflect changes in the cost of materials provided by GRAM and labor costs paid by GRAM in connection with the Production of such Product.  If no agreement is reached on an adjustment, GRAM may increase the Purchase Price by a percentage which may not exceed the percentage change in the U.S. PPI (Producer Price Index) for the previous 12 months.  GRAM shall provide CLIENT with written notice not less than thirty (30) days prior to any Purchase Price increase, which notice shall set forth the amount of such Purchase Price increase.

5.3    GDUFA Fee.  Each calendar year GRAM must pay a GDUFA (Generic Drug User Fee Amendments of 2012, as amended, or any successor law) manufacturing site fee for GRAM's facility located at 140 Front Avenue SW, Ste. 3, Grand Rapids, MI 49504 (the "Site Fee").  To partially reimburse GRAM for the Site Fee, (i) upon the execution of this Agreement, CLIENT shall pay to GRAM Twenty-Five Thousand Dollars ($25,000), and (ii) by September 1 of each subsequent year (beginning September 1, 2017) during the Term, CLIENT shall pay to GRAM ten percent (10%) of the Site Fee due by GRAM during such year (the "Site Fee Payment").  Upon the expiration or termination of this Agreement, CLIENT shall pay to GRAM a prorated portion of the Site Fee Payment.

## Article 6. Shipment and Invoicing

6.1    Delivery Terms.  GRAM shall deliver all Product to CLIENT or to a location designated by CLIENT in the Purchase Order.  All shipments shall be delivered EXW GRAM's facility in Grand Rapids, Michigan (Incoterms 2010), freight collect, by a common carrier designated by CLIENT in the Purchase Order, at CLIENT's expense; provided, however, GRAM shall be responsible for the loading of Product on departure and shall bear all costs of such loading.  CLIENT shall procure, at its cost, insurance covering damage or loss of Product during shipping.  All shipping instructions of CLIENT shall be accompanied by the name and address of the recipient and the shipping date.

6.2    Exporter of Record.  CLIENT shall be the exporter of record for any Product shipped out of the United States, as CLIENT remains the owner of Product.  CLIENT warrants that all shipments of Product exported from the United States will be made in compliance with all applicable United States export laws and regulations and all applicable import laws and regulations into the country of importation. CLIENT shall be responsible for obtaining and paying for any licenses or other governmental authorization(s) necessary for the exportation from the United States.  CLIENT shall select and pay the freight forwarder who shall solely be CLIENT's agent.  CLIENT and its freight forwarder shall be solely responsible for preparing and filing the Shipper's Export Declaration and any other documentation required for the export.

    6.3    Foreign Corrupt Practices Act. CLIENT acknowledges that it is not the agent of GRAM and represents and warrants that CLIENT has not, and covenants that it and its Affiliates and agents will not, pay anything of value to any government employee in connection with the resale of Product or otherwise violate the Foreign Corrupt Practices Act, as amended.

    6.4    Payment Terms. CLIENT shall pay all invoices within thirty (30) days of the invoice date, subject, as applicable, to the terms of each applicable Work Order. Product will be invoiced by GRAM upon the quality assurance release of the finished Product. Payments shall be made in U.S. dollars by check delivered to GRAM by overnight delivery with a reputable overnight delivery service or by wire transfer as directed by GRAM. Each invoice shall be payable by CLIENT in accordance with the terms noted above. Any payment due under this Agreement not received within the times noted above shall bear interest at the lesser of (a) the maximum rate permitted by law, or (b) 1.5% per month on the outstanding balance compounded monthly.

    6.5    Default in Payment Obligations. In addition to all other remedies available to GRAM in the event of a CLIENT default, if CLIENT fails to make payments as required under this Agreement, GRAM may refuse all further Purchase Orders, refuse to develop or Produce any Product or provide any other services until CLIENT's account is paid in full, modify the foregoing terms of payment, place the account on a letter of credit basis, require full or partial payment in advance, suspend deliveries of Product until CLIENT provides assurance of performance reasonably satisfactory to GRAM, and/or take other reasonable means as GRAM may determine.

## Article 7. Acceptance of Product

    7.1    Product Conformity. GRAM shall Produce Product in accordance with cGMP and any other applicable federal laws or regulations as set forth in the Work Order ("Applicable Legal Requirements"). Production deviations and investigations which occur during Production of Product and which do not cause the Production to be non-compliant with cGMP shall not be deemed to cause such Product to be non-conforming under this Article 7. Within fifteen (15) calendar days from the date of shipment of both Product and the Released Executed Batch Record to CLIENT, CLIENT shall determine whether the Product conforms to Applicable Legal Requirements, the Quality Agreement, GRAM's Product Specifications, Master Batch Record, GRAM SOPs and the Work Order (collectively the "Product Requirements").

        7.1.1    If (a) any Batch of Product conforms to the Product Requirements, or (b) CLIENT fails to notify GRAM within the applicable time period that any Batch of Product does not conform to the Product Requirements, then CLIENT shall be deemed to have accepted Product and waived its right to revoke acceptance or make any claim that such Product does not conform to the Product Requirements.

        7.1.2    If CLIENT believes any Batch of Product does not conform to the Product Requirements, it shall notify GRAM immediately by telephone including a detailed explanation of the non-conformity and shall confirm such notice in writing via overnight delivery to GRAM. Upon receipt of such notice, GRAM will investigate such alleged non-conformity, and (i) if GRAM agrees such Product is non-conforming, deliver to CLIENT a corrective action plan within thirty (30) calendar days after receipt of CLIENT's written notice of non-conformity, or such additional time as is reasonably required if such investigation or plan requires data from sources other than CLIENT or GRAM, or (ii) if GRAM disagrees with CLIENT's determination that the Batch of

Product is non-conforming, GRAM shall so notify CLIENT by telephone within the thirty (30) calendar day period and confirm such notice in writing by overnight delivery.

7.1.3   If the Parties dispute whether a Batch of Product is conforming or non-conforming, samples of the Batch of Product will be submitted to a mutually acceptable laboratory or consultant for resolution, whose determination of conformity or non-conformity, and the cause thereof if non-conforming, shall be binding upon the Parties absent manifest error. CLIENT shall bear the costs of such laboratory or consultant, except as set forth in Section 7.2.3.

7.2     Remedies for Non-Conforming Product.

7.2.1   In the event GRAM agrees that a Batch of Product is non-conforming or the laboratory determines that the shipment of Product is non-conforming, GRAM shall replace such non-conforming Product within the latter of (i) sixty (60) calendar days from receipt of replacement Bulk Drug Substance from CLIENT or (ii) sixty (60) calendar days from the date of determination by the third party of non-conformity or agreement by GRAM of such non-conformity.

7.2.2   CLIENT shall pay for all Product, including replacement Product and the cost of Bulk Drug Substance therefore, except as specifically set forth in Section 7.2.3.

7.2.3   In the event GRAM agrees, or the laboratory or consultant determines, that Product is non-conforming solely as a result of the negligence or willful misconduct of GRAM, GRAM shall incur the cost of Production of the replacement Product, shall reimburse CLIENT for its actual cost of the Bulk Drug Substance for its replacement Product, which cost shall not exceed the Purchase Price of Product, and shall bear the costs of such laboratory or consultant.

7.3     Non-Conforming Bulk Drug Substance. If Product is rejected by CLIENT, and such Product's failure to meet the Product Requirements is the result of non-conforming Bulk Drug Substance or any other components or materials supplied by CLIENT, then such non-conformity shall be deemed not to be non-conforming for purposes of this Article 7 or otherwise.

**Article 8. Term and Termination**

8.1     Initial Term. This Agreement shall be effective on the Effective Date and shall continue for sixty (60) months thereafter (the "Initial Term"), unless earlier terminated in accordance with the terms of this Agreement. This Agreement will be renewed automatically for two (2) additional twenty-four (24) month periods commencing at the expiration of the Initial Term and any extensions thereof unless either the CLIENT or GRAM terminates this Agreement by giving the other Party written notice of intent to terminate at least twenty-four (24) months prior to the expiration of the Initial Term or any extension thereof. The Initial Term as may be extended is referred to in this Agreement as the "Term."

8.2     Termination for Breach. Either Party may terminate this Agreement upon the material breach of any provision of this Agreement by the other Party if such breach is not cured by the breaching Party within ten (10) calendar days for monetary defaults and thirty (30) calendar days for non-monetary defaults (or such additional time reasonably necessary to cure such non-monetary default provided the breaching Party has commenced a cure within the thirty (30) day period and is diligently pursuing completion of such cure) after receipt by the breaching Party of written notice of such default. At the

option of the non-breaching Party, such termination may be with respect to the entire Agreement, or only with respect to Product that is subject to the breach.

8.3     Termination for Financial Matters.  This Agreement may be terminated immediately by either Party by giving the other Party written notice thereof in the event such other Party makes a general assignment for the benefit of its creditors, or proceedings of a case are commenced in any court of competent jurisdiction by or against such Party seeking (a) such Party's reorganization, liquidation, dissolution, arrangement or winding up, or the composition or readjustment of its debts, (b) the appointment of a receiver or trustee for or over such Party's property, or (c) similar relief in respect of such Party under any law relating to bankruptcy, insolvency, reorganization, winding up or composition or adjustment of debt; and such proceedings shall continue undismissed, or an order with respect to the foregoing shall be entered and continue unstated, for a period of more than sixty (60) days.

8.4     Termination Without Cause. Either Party may terminate this Agreement at any time with at least two (2) years prior written notice to the other Party, in a writing that clearly states that such Party wishes to terminate this Agreement and which states the effective date of such termination (which date shall be at least two (2) years after the written notice).

8.5     Non-Cancelable Costs and Expenses.  In the event of the termination or cancellation of this Agreement, except by CLIENT as a result of a breach by GRAM under Section 8.2 or 8.3, CLIENT shall (a) reimburse GRAM for all Components ordered prior to termination and not cancelable at no cost to GRAM, and (b) pay GRAM for all outstanding Firm Orders (which GRAM shall fill and deliver to CLIENT). In addition, in the event of termination or cancellation for any reason, CLIENT shall pay prices described in Article 5 for (i) all work-in-process commenced by GRAM and (ii) all finished goods of GRAM (which finished goods shall be delivered to CLIENT unless otherwise directed by CLIENT). GRAM shall ship such materials and finished goods to CLIENT pursuant to Section 6.1. CLIENT shall make payment for all expenses described in this Section 8.5 thirty (30) days from the invoice date.

8.6     Termination Damages.  In addition to the costs and expenses payable in Section 8.5, in the event of termination or cancellation of this Agreement, except by CLIENT as a result of a breach by GRAM under Section 8.2 or 8.3, CLIENT shall pay GRAM, as liquidated damages and not as a penalty, (i) eighty percent (80%) of the Annual Obligation, as defined in Section 4.3, for the next succeeding calendar year after the calendar year in which termination or cancellation occurs, (ii) sixty percent (60%) of the Annual Obligation for the second succeeding calendar year after the calendar year in which termination or cancellation occurs, and (iii) fifty (50%) of the Annual Obligation of any subsequent calendar year during the Term. Notwithstanding the foregoing in this Section 8.6, if this Agreement is terminated by either Party pursuant to Section 8.4, CLIENT shall pay GRAM any Annual Obligation during the Term (for example, during the two (2) year period prior to the termination of this Agreement but after the notice of termination under Section 8.4) but CLIENT shall not otherwise be obligated to pay GRAM any amounts under this Section 8.6 for periods after the termination of this Agreement.

8.7     Survival. Termination, expiration, cancellation or abandonment of this Agreement through any means or for any reason, except as set forth in Section 13.1, shall be without prejudice to the rights and remedies of either Party with respect to any antecedent breach of any of the provisions of this Agreement. Any expiration or termination of this Agreement shall not relieve either Party from obligations that are expressly indicated, or that by their nature are contemplated, to survive such expiration or termination.

GRAM Comments 9/30/16

**Article 9. Production of Product**

9.1     Presence of CLIENT. Subject to compliance with reasonable rules and regulations of GRAM, CLIENT shall have the right to be present during Production of Product.

9.2     Audits. CLIENT shall have the right to audit GRAM's facilities to determine compliance with (i) cGMP and (ii) applicable federal, state, and local laws, regulations and rules as set forth in the Work Order. Such audits shall be scheduled at mutually agreeable times upon reasonable advance written notice to GRAM, shall be at CLIENT's expense, and shall not occur more than one (1) time per calendar year unless required by GRAM's compliance status or CLIENT's obligations as a license holder or by CLIENT's customs. If CLIENT requests additional audits which are not due to GRAM's compliance status and GRAM agrees to such audits, CLIENT will incur fees as reasonably determined by GRAM. Such fees shall be paid promptly upon completion of such audits. In connection with performing such audits, CLIENT shall comply with all reasonable rules and regulations promulgated by GRAM. All information disclosed or reviewed in such inspections shall be deemed to be the property of GRAM and GRAM's Confidential Information.

9.3     Testing. GRAM shall test, or cause to be tested by third party testing facilities audited by GRAM, in accordance with the Product Specifications, each Batch of Product Produced pursuant to this Agreement before delivery to CLIENT. A certificate of analysis for each Batch of Product delivered to CLIENT shall set forth the items tested by GRAM, specifications, and test results. GRAM shall send, or cause to be sent, such certificates along with one (1) copy of the Released Executed Batch Record and certificate of product release to CLIENT prior to or at the same time of shipment of Product to CLIENT. As required by the FDA, CLIENT shall assume full responsibility for final release of each lot of the Product.

9.4     Stability Testing. At CLIENT's cost and expense, CLIENT or a Party selected by CLIENT shall perform all stability testing required to be performed on clinical, development, and/or Production Batches of Product. If performed by GRAM, such testing shall be performed in accordance with the procedures set out in the Product-specific GRAM SOPs for the stability protocol and the Work Order.

9.5     Permits and Licenses. CLIENT shall have sole responsibility, at its expense, for obtaining all permits and licenses necessary or required for the sale, marketing and commercialization of each Product Produced by GRAM under this Agreement. GRAM shall be responsible, at its expense, to obtain and maintain all permits and licenses required for it to carry out its development and Production obligations under this Agreement.

9.6     Regulatory Requirements. Each Party promptly shall notify the other of new regulatory requirements of which it becomes aware which are relevant to the Production of a Product under this Agreement and which are required by the FDA, any other applicable Regulatory Authority or other applicable laws or governmental regulations, and shall confer with each other with respect to the best means to comply with such requirements.

9.7     Drug Master File. GRAM shall file and maintain the appropriate Type V Drug Master File ("DMF") and related reference applications (e.g. Site Master File) for its Production of each Product under this Agreement in accordance with 21 CFR 314.420, as may be amended from time to time, at GRAM's expense.

GRAM Comments 9/30/16

9.8    Quality Review. At CLIENT's cost and expense and as set forth in the applicable Work Order, GRAM shall be responsible for evaluating the quality of the Product to determine the need for changes in the Specifications, manufacturing processes and/or controlled documents. GRAM shall provide CLIENT a copy of the examination results and recommendations, if any.

9.9    Customer Complaints and Adverse Events. CLIENT, as required by cGMP, shall maintain all customer complaint and adverse event files.  Any such complaints received by GRAM shall be forwarded to CLIENT.  CLIENT shall be responsible for the review of the complaint or adverse event to determine the need for an investigation or the need to report to the FDA as required by cGMP.  CLIENT shall send to GRAM all Product performance or manufacturing-related complaints which require investigation and shall provide to GRAM all Product which is the subject of such complaints. GRAM shall conduct an investigation for each Product performance or manufacturing-related complaint and shall report findings and follow-up of each investigation to CLIENT.  CLIENT shall make these complaint files available to GRAM in the event they are required during an FDA inspection.

9.10    Changes in Manufacturing.

9.10.1   *Changes to Master Batch Records and Product Specifications.* GRAM agrees to inform CLIENT within fifteen (15) days of the result of any regulatory development or changes to Product-specific GRAM SOPs that materially affect the Production of Product. GRAM shall notify CLIENT of and require written approval from CLIENT for changes to Master Batch Records and Product Specifications prior to Production of subsequent Batches of Product. CLIENT shall approve or deny GRAM's suggested changes within thirty (30) days of GRAM's request for written approval.

9.10.2   *Product-Specific Changes.* If facility, equipment, process or system changes are required of GRAM as a result of requirements set forth by the FDA or any other Regulatory Authority, and such regulatory changes apply primarily to the development or Production and supply of one or more Products, then CLIENT and GRAM will review such requirements and agree in good faith and in writing to such regulatory changes, and CLIENT shall bear 100% of the reasonable costs thereof.

9.10.3   *General Changes.* If such regulatory changes apply generally to one or more Products as well as to other products produced by GRAM for itself or for third parties, then CLIENT shall pay a pro rata amount, as reasonably determined by GRAM, of the reasonable cost of such regulatory changes based upon the proportion of time that such facility is dedicated to the Production of Products relative to the production of such other products.

9.11    Equipment Expenses. If GRAM is required to obtain specialized equipment in order to Produce Product for CLIENT, the costs of such equipment shall be paid by CLIENT. GRAM shall advise CLIENT of the specialized equipment required and the estimated costs associated with the purchase and installation of such equipment. If CLIENT, in its sole discretion, determines that it does not desire to pay the costs for such equipment, then CLIENT shall have the right to terminate this Agreement with respect to such Product for which such equipment is required only, on ninety (90) days prior written notice to GRAM. CLIENT shall be invoiced for all approved costs after installation and acceptance of such equipment by GRAM, and CLIENT shall make payments promptly thereafter.

GRAM Comments 9/30/16

9.12    Ownership of Equipment. Upon termination or expiration of this Agreement, GRAM, at its option, shall either (i) transfer ownership of the specialized equipment paid for by CLIENT to CLIENT, or (ii) purchase such equipment by paying CLIENT the then current book value of such equipment. Depreciation of such equipment shall be calculated in accordance with general accepted accounting principles.

**Article 10. Regulatory**

10.1    Regulatory Approvals. CLIENT will diligently pursue Regulatory Approval of marketing licenses for each Product Produced by GRAM under this Agreement. CLIENT will advise GRAM of document requirements in support of NDA and/or ANDA and similar applications required of foreign governments and agencies including amendments, license applications, supplements and maintenance of such. GRAM will provide documents and assist CLIENT in preparation of submissions to Regulatory Authorities (both U.S and foreign) designated by CLIENT in support of CLIENT's NDAs, ANDAs, similar applications required of foreign governments and licenses. Prior to submission to the Regulatory Authority, CLIENT will provide GRAM with a copy of the CMC section for review and comment. A final copy of the CMC section will be provided by CLIENT to GRAM upon submission to the Regulatory Authority. Upon Regulatory Approval, CLIENT will notify GRAM within two (2) days of such approval and the anticipated date of Product launch to the market.

10.2    Regulatory Authority Inspections. At CLIENT's request, GRAM will authorize Regulatory Authorities to review related applications on CLIENT's behalf. GRAM will notify CLIENT within five (5) calendar days of all contacts with Regulatory Authorities (both written and verbal) related to each Product. GRAM shall inform CLIENT of the result of any regulatory inspection which directly affects the Production of a Product, including any notice of inspection, notice of violation or other similar notice received by GRAM affecting Production, facility, testing, storage or handling of a Product. In the event of an FDA inspection which directly involves a Product, CLIENT shall be immediately informed of the issuance of the Notice of Inspection (FDA Form 482). In the event that there are Inspectional Observations (FDA Form 483), CLIENT shall be informed immediately and shall have the opportunity to review and provide GRAM with comments to GRAM's response. CLIENT shall provide its comments to the response of these observations within five (5) calendar days. The contents of GRAM's response shall be determined by GRAM in its sole discretion.

**Article 11. Trademarks**

11.1    CLIENT grants to GRAM a non-exclusive, royalty free license to use the CLIENT Trademarks for the sole purpose of allowing GRAM to fulfill its responsibilities under this Agreement. Such license shall not be transferable in whole or in part.

11.2    CLIENT shall be solely responsible for selecting, registering and enforcing the CLIENT Trademarks used to identify the Product and, except as set forth in Section 11.1, shall have sole and exclusive rights in such CLIENT Trademarks.

**Article 12. Representations and Warranties**

12.1    Mutual Representations and Warranties. Each Party represents and warrants to the other Party that (i) the person executing this Agreement is authorized to execute this Agreement, (ii) this Agreement is legal and valid and the obligations binding upon such Party are enforceable in accordance

with their terms, and (iii) the execution, delivery and performance of this Agreement does not conflict with any agreement, instrument or understanding, oral or written, to which such Party may be bound, nor violate any law or regulation of any court, governmental body or administrative or other agency having jurisdiction over it.

12.2   <u>GRAM Representations and Warranties</u>. GRAM represents and warrants that Product shall be Produced in accordance with cGMP. GRAM represents and warrants that it has obtained (or will obtain prior to Producing Product), and will remain in compliance with during the Term, all permits, licenses and other authorizations ("<u>Permits</u>") which are required under U.S. federal, state and local laws, rules and regulations applicable to the Production only of Product as specified in the Work Order; provided, however, GRAM shall have no obligation to obtain Permits relating to the sale, marketing, distribution or use of Bulk Drug Substance or Product or with respect to the labeling of Product. GRAM makes no representation or warranty with respect to, and shall have no responsibility for, the sale, marketing, distribution or use of the Bulk Drug Substance or Product or any other components or materials supplied by CLIENT, the content of the labeling or as to printed materials specified by CLIENT or its consignee.

12.3   <u>Disclaimer of Representations and Warranties</u>. Except for those representations and warranties set forth in Sections 12.1 and 12.2 of this Agreement, GRAM makes no representations or warranties, written, oral, express or implied, with respect to Product or the development or Production of Product or the services provided to CLIENT under this Agreement. IN PARTICULAR, ALL WARRANTIES, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NONINFRINGEMENT, ARE HEREBY DISCLAIMED BY GRAM. NO WARRANTIES OF GRAM MAY BE CHANGED BY ANY REPRESENTATIVES OF GRAM. CLIENT accepts Product subject to the terms hereof.

12.4   <u>CLIENT Representations and Warranties</u>. CLIENT represents and warrants that (a) it has the right to give GRAM any information provided by CLIENT under this Agreement, and that GRAM has the right to use such information for the development and Production of Product, and (b) CLIENT has no knowledge of any (i) patents or other intellectual property rights that would be infringed by GRAM's development or Production of Product under this Agreement, or (ii) proprietary rights of third parties that would be violated by GRAM's performance under this Agreement. CLIENT further represents and warrants that the Bulk Drug Substance provided to GRAM under this Agreement (1) conforms to the Bulk Drug Substance Specifications and (2) is not adulterated or misbranded within the meaning of the FD&C Act.

## Article 13. Limitation of Liability and Waiver of Subrogation

13.1   <u>Limitation of Liability</u>. Except as expressly set forth in Article 14, each Party acknowledges and agrees that GRAM's sole liability on any claim of any kind, including without limitation negligence, strict or product liability, statutory violations, or breach of warranty or contract, for any loss or damage arising out of or connected with this Agreement, a Work Order or a Quality Agreement, or the performance or breach thereof by GRAM, or the development or Production of Product, and CLIENT's sole and exclusive remedy, is limited to those remedies set forth in Section 7.2 (and with regard to Product recalls, Section 16.1) and in GRAM's sole discretion, to either replace the non-conforming Product or reimburse CLIENT for the Purchase Price for the non-conforming Product. Notwithstanding anything to the contrary in this Agreement, a Work Order or a Quality Agreement, UNDER NO CIRCUMSTANCES SHALL GRAM BE LIABLE TO CLIENT OR ANY THIRD PARTY FOR ANY INDIRECT, SPECIAL,

INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, INCLUDING LOST PROFITS AND SALES, OF ANY KIND OR NATURE IN CONNECTION WITH PRODUCT, THIS AGREEMENT, A WORK ORDER OR A QUALITY AGREEMENT OR ANY SERVICES PROVIDED TO CLIENT UNDER THIS AGREEMENT, A WORK ORDER OR A QUALITY AGREEMENT, including but not limited to, the cost of cover or the cost of a recall in connection with, or by reason of the development or Production and delivery of, Product, whether such claims are founded in tort, contract or otherwise. Except as expressly set forth in Article 14, the foregoing constitutes the sole and exclusive remedy of CLIENT and the sole and exclusive liability of GRAM for breach of this Agreement, a Work Order or a Quality Agreement by GRAM or otherwise. CLIENT shall not be entitled to any other rights or remedies against GRAM (under this Agreement, a Work Order, a Quality Agreement, at law, in equity or otherwise). All claims by CLIENT for breach of or otherwise related to this Agreement, a Work Order or a Quality Agreement shall be brought within one (1) year after the cause of action accrued or shall be deemed waived.

13.2    Waiver of Subrogation. All GRAM Supplied Components and equipment used by GRAM in the Production of Product (collectively, "GRAM Property") shall at all times remain the property of GRAM and GRAM assumes risk of loss for such property until delivery of Product to a common carrier as specified under Section 6.1. GRAM hereby waives any and all rights of recovery against CLIENT and its Affiliates, and against any of their respective directors, officers, employees, agents or representatives, for any loss or damage to GRAM Property to the extent the loss of damage is covered or could be covered by insurance (whether or not such insurance is described in this Agreement). CLIENT assumes all risk of loss for all CLIENT Supplied Components, all Bulk Drug Substance supplied by CLIENT, and all Product (collectively, "CLIENT Property"). CLIENT hereby waives any and all rights of recovery against GRAM and its Affiliates, and against any of their respective directors, officers, employees, agents or representatives, for any loss or damage to the CLIENT Property to the extent the loss of damage is covered or could be covered by insurance (whether or not such insurance is described in this Agreement).

13.3    Waiver of Claims. GRAM makes no representation or warranty, and CLIENT expressly waives all claims against GRAM and its Affiliates, and any of their respective agents or employees, arising out of or in connection with any claims relating to the stability, efficacy, safety, or toxicity of Product developed, formulated, packaged, manufactured or Produced in accordance with the applicable Work Order.

**Article 14. Indemnification**

14.1    CLIENT Indemnification. CLIENT shall pay, reimburse, indemnify, defend and hold harmless GRAM and its Affiliates and any of their respective directors, officers, employees, subcontractors, agents and representatives (collectively the "Indemnified Parties") from and against any and all liabilities, obligations, penalties, claims, judgments, demands, actions, disbursements of any kind and nature, suits, losses, damages, costs and expenses (including, without limitation, reasonable attorney's fees) (collectively, "Damages"), including without limitation property damage, personal injury and Damages allegedly resulting in whole or in part by the negligent acts or omission of the Indemnified Parties or for acts or omissions for which the Indemnified Parties otherwise would be strictly liable, arising out of or in connection with (a) the storage, promotion, labeling, marketing, distribution, use or sale of Bulk Drug Substance or Product, (b) CLIENT's negligence or willful misconduct, (c) CLIENT's breach of this Agreement, or (d) any claim that the use, sale, Production, development, marketing or distribution of Bulk Drug Substance or Product by GRAM or CLIENT violates any patent, trademark, copyright or other proprietary rights of any third party; except to the extent any of the foregoing is caused primarily by the

negligence or willful misconduct of GRAM or primarily by the breach by GRAM of its obligations under this Agreement.

14.2    GRAM Indemnification. GRAM shall pay, reimburse, indemnify, defend and hold harmless CLIENT and its Affiliates and any of their respective directors, officers, employees, subcontractors, agents and representatives from and against any and all Damages (a) resulting primarily from GRAM's negligence or willful misconduct, or (b) arising out of or in connection with GRAM's breach of this Agreement; except to the extent any of the foregoing is caused primarily by the negligence or willful misconduct of CLIENT or primarily by the breach by CLIENT of its obligations under this Agreement.

14.3    Indemnitee Obligations. A Party (the "Indemnitee") which intends to claim indemnification under this Article 14 shall promptly notify the other Party (the "Indemnitor") in writing of any action, claim or other matter in respect of which the Indemnitee or any of its Affiliates, or any of their respective directors, officers, employees, subcontractors, agents or representatives, intend to claim such indemnification; provided, however, that failure to provide such notice within a reasonable period of time shall not relieve the Indemnitor of any of its obligations under this Article 14 except to the extent the Indemnitor is actually prejudiced by such failure. The Indemnitee shall permit, and shall cause its Affiliates, and their respective directors, officers, employees, subcontractors, agents and representatives to permit, the Indemnitor, at its discretion, to settle any such action, claim or other matter, and the Indemnitee agrees to the complete control of such defense or settlement by the Indemnitor.  Notwithstanding the foregoing, the Indemnitor shall not enter into any settlement that would adversely affect the Indemnitee's rights under this Article 14, or impose any obligations on the Indemnitee in addition to those set forth herein, in order for it to exercise such rights, without Indemnitee's prior written consent, which shall not be unreasonably withheld, conditioned or delayed.  No such action, claim or other matter shall be settled without the prior written consent of the Indemnitor, which shall not be unreasonably withheld, conditioned or delayed.  The Indemnitee, its Affiliates, and their respective directors, officers, employees, subcontractors, agents and representatives shall fully cooperate with the Indemnitor and its legal representatives in the investigation and defense of any action, claim or other matter covered by the indemnification obligations of this Article 14.  The Indemnitee shall have the right, but not the obligation, to be represented in such defense by counsel of its own selection and at its own expense.

14.4    Injunction.  In the event that the development, Production or sale of a Product is enjoined due to alleged infringement by either Party of the proprietary rights of a third party, such action shall be deemed a material breach of this Agreement by CLIENT.

14.5    Limitation. Notwithstanding anything to the contrary set forth in this Agreement, a Work Order or a Quality Agreement, GRAM's sole liability under this Article 14 for any Damages (or otherwise for any claims, actions, losses, damages, injuries, defects, costs, expenses or other liabilities arising out of or connected with this Agreement, a Work Order or a Quality Agreement, or the performance or breach of this Agreement, a Work Order or a Quality Agreement, or the Production, sale or use of Product) on any claim of any kind (or series of related claims, including without limitation claims arising from a common source or issue), including negligence, strict or product liability, statutory violations, or breach of warranty or contract, shall in no case exceed the greater of $100,000 (which would include any insurance proceeds used to satisfy GRAM's liability) or an amount equal to the insurance proceeds actually received by GRAM (and not used by GRAM for its own or third party damages or expenses) in relation to the applicable claim (or series of related claims, including without limitation claims arising from a common source or issue).

**Article 15. Insurance.**

15.1 <u>CLIENT Insurance</u>. CLIENT shall procure and maintain, during the Term and for a period of one (1) year beyond the expiration date of Product, Commercial General Liability Insurance, including without limitation, Product Liability and Contractual Liability coverage (the "<u>CLIENT Insurance</u>"). The CLIENT Insurance shall cover amounts not less than ten million dollars ($10,000,000) combined single limit and shall be with an insurance carrier reasonably acceptable to GRAM. GRAM shall be named as an additional insured on the CLIENT Insurance and CLIENT promptly shall deliver a certificate of CLIENT Insurance and endorsement of additional insured to GRAM evidencing such coverage. If CLIENT fails to furnish such certificates or endorsements, or if at any time during the Term GRAM is notified of the cancellation or lapse of the CLIENT Insurance, and CLIENT fails to rectify the same within ten (10) calendar days after notice from GRAM, in addition to all other remedies available to GRAM under this Agreement, GRAM, at its option, may obtain the CLIENT Insurance and CLIENT promptly shall reimburse GRAM for the cost of the same. Any deductible and/or self-insurance retention shall be the sole responsibility of CLIENT.

15.2 <u>GRAM Insurance</u>. GRAM is, and shall during the Term remain, insured as follows: worker's compensation as required by Applicable Law; employer's liability insurance not less than $1,000,000; bodily injury and property damage insurance not less than $2,000,000 (combined single limit, per occurrence); and product liability insurance not less than $10,000,000 (combined single limit, per occurrence).

**Article 16. Recall of Product**

16.1 In the event CLIENT shall be required to recall any Product because such Product may violate local, state or federal laws or regulations, the laws or regulations of any applicable foreign government or agency or the Product Specifications, or in the event that CLIENT elects to institute a voluntary recall, CLIENT shall be responsible for coordinating such recall. CLIENT promptly shall notify GRAM if any Product is the subject of a recall and provide GRAM with a copy of all documents relating to such recall. GRAM shall cooperate with CLIENT in connection with any recall, at CLIENT's expense. In the event a recall is necessary because both (i) GRAM has delivered a non-conforming Product to CLIENT, and (ii) such non-conformity is primarily due to the negligence of GRAM, GRAM will bear all reasonable costs associated with such recall (including but not limited to costs associated with receiving and administering the recalled Product and notification of the recall to those persons whom CLIENT deems appropriate); notwithstanding the foregoing, in no event shall GRAM's liability for costs associated with such recall exceed the purchase price paid to GRAM by CLIENT for the Product which is the subject of such recall. In all other cases CLIENT shall be responsible for all of the costs and expenses of any recall of Product.

**Article 17. Intellectual Property and Inventions.**

17.1 <u>Existing Intellectual Property</u>. Except as the Parties may otherwise expressly agree in writing, each Party shall continue to own its existing patents, trademarks, copyrights, trade secrets and other intellectual property, without conferring any interests therein to the other Party. Without limiting the generality of the preceding sentence, CLIENT shall retain all right, title and interest arising under the U.S. Patent Act, U.S. Trademark Act, U.S. Copyright Act and all other applicable laws, rules and regulations in and to all Products, Bulk Drug Substance, labeling and trademarks associated therewith (collectively, "<u>CLIENT's Intellectual Property</u>"). Neither GRAM nor any third party shall acquire any right, title or

interest in CLIENT's Intellectual Property by virtue of this Agreement or otherwise, except to the extent expressly provided herein or as necessary for GRAM to perform its obligations under this Agreement.

17.2    Individually Owned Inventions. Except as the Parties may otherwise agree in writing, all Inventions (as defined herein) which are conceived, reduced to practice, or created by a Party in the course of performing its obligations under this Agreement shall be solely owned and subject to use and exploitation by the inventing Party without a duty to account to the other Party. For purposes of this Agreement, "Invention" means information relating to any innovation, improvement, development, discovery, computer program, device, trade secret, method, know-how, process, technique or the like, whether or not written or otherwise, fixed in any form or medium, regardless of the media on which contained and whether or not patentable or copyrightable.

17.3    Jointly Owned Inventions. All Inventions which are conceived, reduced to practice, or created jointly by the Parties and/or their respective agents (i.e., employees or agents who would be or are properly named as co-inventors under the laws of the United States on any patent application claiming such inventions) in the course of the performance of this Agreement shall be owned jointly by the Parties. Each Party shall have full rights to exploit such Inventions for its own commercial purposes without any obligation to the other. The Parties shall share equally in the cost of mutually agreed patent filings with respect to all such jointly owned Inventions. The decision to file for patent coverage on jointly owned Inventions shall be mutually agreed upon, and the Parties shall select a mutually acceptable patent counsel to file and prosecute patent applications based on such joint Inventions.

17.4    Disclaimer. Except as otherwise expressly provided in this Agreement or as necessary for GRAM to perform its obligations under this Agreement, nothing contained in this Agreement shall be construed or interpreted, either expressly or by implication, estoppel or otherwise, as: (i) a grant, transfer or other conveyance by either Party to the other of any right, title, license or other interest of any kind in any of its Inventions or other intellectual property, (ii) creating an obligation on the part of either Party to make any such grant, transfer or other conveyance, or (iii) requiring either Party to participate with the other Party in any cooperative development program or project of any kind or to continue with any such program or project.

17.5    Rights in Intellectual Property. The Party owning any intellectual property shall have the world wide right to control the drafting, filing, prosecution and maintenance of patents covering the Inventions relating to such intellectual property, including decisions about the countries in which to file patent applications. Patent costs associated with the patent activities described in this Section shall be borne by the sole owner. Each Party will cooperate with the other Party in the filing and prosecution of patent applications. Such cooperation will include, but not be limited to, furnishing supporting data and affidavits for the prosecution of patent applications and completing and signing forms needed for the prosecution, assignment and maintenance of patent applications.

17.6    Confidentiality of Intellectual Property. Intellectual property shall be deemed to be the Confidential Information of the Party owning such intellectual property. The protection of each Party's Confidential Information is described in Article 18. Any disclosure of information by one Party to the other under the provisions of this Article 17 shall be treated as the disclosing Party's Confidential Information under this Agreement. It shall be the responsibility of the Party preparing a patent application to obtain the written permission of the other Party to use or disclose the other Party's Confidential Information in the patent application before the application is filed and for other disclosures made during the prosecution of the patent application.

## Article 18. Confidential Information, Nondisclosure and Publicity

18.1     Confidentiality. In the course of the performance of this Agreement each Party may, from time to time, disclose Confidential Information to the other Party. Except as otherwise provided in this Article 18, each Party shall not disclose Confidential Information of the other Party to any third parties, and each Party shall take all reasonable steps to prevent the disclosure of Confidential Information of the other Party to third parties. However, no provision of this Agreement shall be construed so as to preclude disclosure of Confidential Information as may be reasonably necessary to secure from any governmental agency necessary approvals or licenses.

18.2     Prior Confidentiality Agreement. This Agreement, by reference, incorporates the Confidentiality Agreement signed by CLIENT and GRAM on October 28, 2014, which is made a part hereof as though fully set forth herein.

18.3     Third Party Disclosure. GRAM shall be permitted to disclose Product information to third party developmental and analytical services providers in connection with the performance of its obligations under this Agreement provided such providers shall be subject to confidentiality agreements. Either Party may disclose Confidential Information of the disclosing Party to those Affiliates, agents and consultants who need to know such information to accomplish the purposes of this Agreement (collectively, "Permitted Recipients"); provided such Permitted Recipients are bound to maintain such Confidential Information in confidence.

18.4     Litigation and Governmental Disclosure. Each Party may disclose Confidential Information under this Agreement to the extent such disclosure is reasonably necessary for prosecuting or defending litigation, complying with applicable governmental regulations or conducting pre-clinical or clinical trials, provided that if a Party is required by law or regulation to make any such disclosure of the other Party's Confidential Information it will, except where impractical for necessary disclosures (for example in the event of a medical emergency), give reasonable advance notice to the other Party of such disclosure requirement and will use good faith efforts to assist such other Party to secure a protective order or confidential treatment of such Confidential Information required to be disclosed.

18.5     Limitation of Disclosure. The Parties agree that, except as otherwise may be required by applicable laws, regulations, rules or orders, including without limitation the rules and regulations promulgated by the United States Securities and Exchange Commission, and except as may be authorized in this Article 18, no information concerning this Agreement and the transactions contemplated herein shall be made public by either Party without the prior written consent of the other Party.

18.6     Publicity and SEC Filings. The Parties agree that the public announcement of the execution of this Agreement shall only be by one or more press releases mutually agreed to by the Parties. The failure of a Party to return a draft of a press release with its proposed amendments or modifications to such press release to the other Party within five (5) days of such Party's receipt of such press release shall be deemed as such Party's approval of such press release as received by such Party. Each Party agrees that it shall cooperate fully and in a timely manner with the other with respect to all disclosures to the Securities and Exchange Commission and any other governmental or regulatory agencies, including requests for confidential treatment of Confidential Information of either Party included in any such disclosure.

GRAM Comments 9/30/16

18.7    Duration of Confidentiality. All obligations of confidentiality and non-use imposed upon the Parties under this Agreement shall expire ten (10) years after the expiration or earlier termination of this Agreement; provided, however, that Confidential Information that constitutes trade secrets of a Party shall be kept confidential indefinitely, subject to this Article 18.

## Article 19. Force Majeure

19.1    Any delay in the performance of any of the duties or obligations of either Party (except the payment of money) caused by an event outside the affected Party's reasonable control shall not be considered a breach of this Agreement, and unless provided to the contrary herein, the time required for performance shall be extended for a period equal to the period of such delay.  Such events shall include without limitation, acts of God; acts of public enemies; insurrections; riots; injunctions; embargoes; fires; explosions; floods; shortages of material or energy; delays in the delivery of raw materials; acts or orders of any government or agency thereof or other causes beyond the reasonable control of the Party so affected, whether or not foreseeable. The Party so affected shall give prompt notice to the other Party of such cause and a good faith estimate of the continuing effect of the force majeure condition and duration of the affected Party's nonperformance, and shall take whatever reasonable steps are appropriate to relieve the effect of such causes.

## Article 20. Notices

20.1    All notices under this Agreement shall be delivered by facsimile (confirmed by overnight delivery), or by overnight delivery with a reputable overnight delivery service, to the following address of the respective Parties:

If to CLIENT:

Nexus Pharmaceuticals, Inc.
175 E. Hawthorn Parkway, Suite 155
Vernon Hills, IL 60061
Facsimile: (888) 806-4617

If to GRAM:

Grand River Aseptic Manufacturing, Inc.
140 Front Avenue SW, Suite 3
Grand Rapids, MI 49504
Attn: Tom J. Ross, President and CEO
Facsimile: (616) 776-5584

With a copy to:

Kristian A. Werling
McDermott Will & Emery
225 W. Monroe Street
Suite 5500
Chicago, IL 60606

With a copy to:

Miller, Canfield, Paddock and Stone, P.L.C.
Attn: Thomas G. Appleman
840 W. Long Lake Road, Suite 200
Troy, MI 48098
Facsimile No.: 248-879-2001

Notices shall be effective on the day following the date of transmission if sent by facsimile, and on the second business day following the date of delivery to the overnight delivery service if sent by overnight delivery.  A Party may change its address listed above by notice to the other Party given in accordance with this Article.

GRAM Comments 9/30/16

**Article 21. General Provisions**

21.1    Non-Solicitation. During the Term and for a period of two (2) years after the expiration or termination of this Agreement for whatever reason, each Party shall not, directly or indirectly, on such Party's own behalf or on behalf of any person or entity, whether as an agent, employee, consultant or in any other capacity, recruit or hire or assist others in recruiting or hiring, any person who is, or was one (1) year prior to the date of such recruitment or hiring, an employee (whether temporary or permanent) or independent contractor of the other Party. The Parties agree that the terms contained in this Section are reasonable in all respects. In the event a court determines that any part of this Section is unreasonable, the court may limit the application of such part, or modify such part, and proceed to enforce this Section as so limited or modified.

21.2    Governing Law. This Agreement is being delivered and executed in the State of Michigan. In any action brought regarding the validity, construction and enforcement of this Agreement, it shall be governed in all respects by the laws of the State of Delaware, without regard to any conflicts of laws or principles thereof and excluding the United Nations Convention on the International Sale of Goods. EACH PARTY HERETO HEREBY WAIVES TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY RELATED INSTRUMENT.

21.3    Assignment. This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective successors and permitted assigns, and may not be assigned by either Party without the prior written consent of the other, which consent shall not be unreasonably withheld, conditioned or delayed, except that no consent shall be required in the case of a transaction involving the merger, consolidation or sale of substantially all of the assets of the Party seeking such assignment and such transaction relates to the business covered by this Agreement and the resulting entity assumes all the obligations under this Agreement. GRAM may, without such consent, assign this Agreement to an Affiliate of GRAM, provided that the assignee assumes all obligations of GRAM under this Agreement. This Agreement is not intended and shall not be construed to create any rights in any parties other than CLIENT and GRAM and no other person or entity shall have or assert any rights as a third party beneficiary under this Agreement.

21.4    Alliances. GRAM agrees that CLIENT shall have the right to enter into alliances with third parties who may engage in joint (with CLIENT) or unilateral marketing and promoting of the Product or any combination of products that includes the Product.

21.5    Obligations to Third Parties. Each Party represents and warrants that this Agreement is not inconsistent with any contractual obligations of such Party, expressed or implied, undertaken with any third party.

21.6    Taxes. CLIENT shall pay all federal, state, municipal, foreign or other sales, use, excise, import, property, value added, or other similar taxes, assessments or tariffs assessed upon or levied against the sale of Product to CLIENT pursuant to this Agreement or the sale or distribution of Product by CLIENT (or at CLIENT's sole expense, defend against the imposition of such taxes and expenses). GRAM shall notify CLIENT of any such taxes that any governmental authority is seeking to collect from GRAM, and CLIENT may assume the defense thereof in GRAM's name, if necessary, and GRAM agrees to reasonably cooperate in such defense to the extent of the capacity of GRAM, at CLIENT's expense.  GRAM shall pay

all federal, state, municipal or other taxes on the income resulting from the sale by GRAM of Product to CLIENT under this Agreement, including but not limited to, gross income, adjusted gross income, supplemental net income, gross receipts, excess profit taxes, or other similar taxes.

21.7    Entire Agreement. This Agreement constitutes the entire agreement between the Parties concerning the subject matter hereof and supersedes all written or oral prior representations, warranties, agreements or understandings with respect to the subject matter hereof.

21.8    Severability. In the event that any term or provision of this Agreement shall violate any applicable statute, ordinance, or rule of law in any jurisdiction in which it is used, or otherwise be unenforceable, such provision shall be ineffective to the extent of such violation without invalidating any other provision of this Agreement.

21.9    Waiver and Modification of Agreement. No waiver or modification of any of the terms of this Agreement shall be valid unless in writing and signed by authorized representatives of both Parties. The failure by either Party to enforce any rights under this Agreement shall not be construed as a waiver of such rights nor shall a waiver by either Party in one or more instances be construed as constituting a continuing waiver or as a waiver in other instances. No course of dealing or usage of trade shall be used to modify the terms and conditions of this Agreement.

21.10    Independent Contractor. GRAM shall act as an independent contractor for CLIENT in providing the services required under this Agreement and shall not be considered an agent of, or joint venturer with, CLIENT. Unless otherwise provided herein to the contrary, GRAM shall furnish all expertise, labor, supervision, machining and equipment necessary for performance under this Agreement and shall obtain and maintain all building and other permits and licenses required under applicable law.

21.11    Attorney's Fees. The successful Party in any litigation or other dispute resolution proceeding to enforce the terms and conditions of this Agreement shall be entitled to recover from the other Party reasonable attorney's fees and related costs involved in connection with such litigation or dispute resolution proceeding.

21.12    Headings. The headings used in this Agreement are for convenience only and are not part of this Agreement.

IN WITNESS WHEREOF, the Parties have each caused this Agreement to be executed by their duly-authorized representatives as of the Effective Date.

NEXUS PHARMACEUTICALS, INC.

By: _Usman Ahmed_

Name: _Usn Ad_

Title: _CFO_

27535625.4\151564-00001

GRAND RIVER ASEPTIC
MANUFACTURING, INC.

By: _Thomas J Ross_

Name:    Thomas J. Ross

Title:    President and CEO

# Exhibit 2



## MUTUAL CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT

This Mutual Confidentiality and Nondisclosure Agreement (the "Agreement"), made and entered into as of this 28th day of October, 2014, by and between GRAND RIVER ASEPTIC MANUFACTURING, INC., a corporation organized under the laws of the State of Delaware having an address of 140 Front Avenue SW, Suite 3, Grand Rapids, MI  49504 ("Grand River"), and Nexus Pharmaceuticals, a corporation organized under the laws of the State of Illinois having an address of  175 E Hawthorn Pkwy Vernon Hills, IL 60061 (each referred to as "Party" and both collectively referred to as "the Parties").

### BACKGROUND

WHEREAS, the parties hereto desire to explore and discuss a possible transaction relating to the formulation development and aseptic fill of an injectable drug product (the "Transaction");

WHEREAS, in connection with the Transaction, the parties will be given access to Confidential Information (as defined below) relating to each other's businesses and affairs; and

WHEREAS, the parties hereto wish to set forth their understanding with respect to the provision, retention and return of such Confidential Information during and after the discussions relating to the Transaction.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and obligations hereinafter set forth, the sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows.

1.  For purposes of this Agreement, "Confidential and Proprietary Information" means technology and information, whether in readable or in verbal form, relating to the products, services, business, personnel or commercial activities of the Parties, including, without limitation: (a) formulas, compilations, programs, devices, concepts, inventions (whether or not patentable), designs, methods, techniques, marketing and commercial strategies, processes, data or specifications, know-how, business or financial information, research and development activities, product and marketing plans, customer and supplier information, and unique combinations of separate items, which individually may or may not be confidential, and which is not generally known to the public; (b) information acquired by a Party, by observation or otherwise, on the other Party's premises; (c) information or other work product developed by a Party in connection with this Agreement; and (d) information that a Party is under an obligation to third parties to maintain as confidential, but for which there is third party permission to share this information between the Parties.

2.  Notwithstanding the definition of "Confidential and Proprietary Information" or any other provision of this Agreement, a receiving Party will not be required to treat any information received from the other Party as Confidential and Proprietary Information if and to the extent a receiving Party can establish by a preponderance of the evidence that:

(a) such information is or becomes generally known or available, by publication, commercial use or otherwise, without breach or violation of any confidentiality or other obligation; (b) such information was known by the receiving Party at the time of disclosure by the other Party and was not subject to any obligation of confidentiality; (c) such information was rightfully communicated to the receiving Party by a third party free of any obligation of confidentiality; or (d) such information was developed by employees or agents of the receiving Party independent of and without reference to Confidential and Proprietary Information of the other Party.

3.   A Party receiving Confidential and Proprietary Information will use reasonable care not to disclose such information to any third party, except as provided herein. "Reasonable care" will be the same degree of care which the receiving party normally accords its own proprietary and confidential information. A Party receiving Confidential and Proprietary Information will limit disclosure of the other Party's Confidential and Proprietary Information to employees and agents on a need-to-know basis in performance of activities directly related to this Agreement and who have signed confidentiality agreements prohibiting disclosure of any Confidential and Proprietary Information. Neither Party will publish or announce, publicly or privately, any potential or actual business relationship or transaction with the other Party without the other Party's prior written consent. If a Party becomes legally compelled by law, process or order of any court or governmental agency to disclose any Confidential and Proprietary Information that Party will promptly notify the disclosing Party so that a protective order or other appropriate action may be immediately taken to protect such information to the extent possible. This Agreement will not preclude a Party from working with others in any connection, provided that the obligations of this Agreement are respected.

4.   No right, license, title or interest, either express or implied, under any patent, copyright, trade secret, trademark or other property right is granted hereunder. The relationship of the Parties will be that of independent contractors, and nothing contained in this Agreement will be deemed to create any relationship of agency, joint venture or partnership. Neither Party will have any power to commit, contract for or otherwise obligate the other Party. None of the Confidential and Proprietary Information that may be disclosed or exchanged by the Parties under this Agreement will constitute any representation, warranty, assurance, guarantee or inducement of any kind by either Party to the other Party. Neither Party will have any liability or responsibility to the other Party for errors or omissions in any decisions made in reliance upon any Confidential and Proprietary Information disclosed under this Agreement.

5.   Neither Party will assign or transfer any rights or obligations under this Agreement without the prior written consent of the other Party, except to a successor in ownership of substantially all of the assets of that Party, which successor in ownership will expressly assume in writing the performance of the terms and conditions of this Agreement.

6.   The Parties do not make any representations or warranties, express or implied, regarding the value or suitability for any purpose of the Confidential and Proprietary Information.

2

7.  All Confidential and Proprietary Information supplied by a Party will remain the property of and will be returned to the disclosing Party or destroyed upon request. No copies of any Confidential and Proprietary Information may be made without the express prior written permission of the disclosing Party.

8.  In executing this Agreement, each Party warrants and represents that it has a right to enter into this Agreement and that the Agreement does not violate policies, if any, of institutions with which the Party is affiliated or any other contract or relationship of the Party.

9.  If any term or provision of this Agreement is, to any extent, ruled invalid or unenforceable, the remainder of this Agreement will not be affected, and each other term and provision of this Agreement will be valid and will be enforced to the fullest extent permitted by law.

10. This Agreement is in addition to and does not supersede any prior agreements of confidentiality or nondisclosure between the Parties. This Agreement is not, and will not be construed to be, an obligation to enter into any other agreement or contract or to result in any claim whatsoever by either Party against the other Party for reimbursement of costs for any effort expended.

11. The Parties agree to comply with all relevant and applicable state and federal laws and regulations pertaining to the confidentiality of the Confidential and Proprietary Information and to execute such confidentiality agreements as may be required by such laws and/or regulations.

12. This Agreement and the rights and obligations of the Parties, including all matters of construction, validity and performance, will, in all respects, be governed by the laws of the State of Michigan.

13. In the event that a breach of this Agreement by either Party occurs or is threatened, the other Party may be entitled to injunctive relief restraining the act or threatened act that constitutes or would constitute a breach of this Agreement. In addition, the aggrieved Party will be entitled to receive damages to the extent allowable under the laws of the State of Michigan, or other available relief for any breach.

14. This Agreement is effective as of the date first written above and will apply to all Confidential and Proprietary Information provided by either Party to the other Party under this Agreement. This Agreement will terminate upon written notice from either Party to the other Party with respect to any disclosures after the date of notice, but the confidentiality obligations of this Agreement shall continue in effect after the termination date indefinitely as to Confidential and Proprietary Information disclosed prior to the termination date, unless both Parties otherwise consent in writing. All obligations created by this Agreement will survive change or termination of the Parties' business relationship.

3

15.    Thomas J. Ross shall be the Official Correspondent for Grand River.  In addition, in the event that correspondence with other personnel of Grand River becomes necessary, copies of such correspondence should be sent to Mr. Ross electronically at tross@grandriveraseptic mfg.com or by hardcopy to Grand River Aseptic Manufacturing, Inc. at 140 Front Avenue SW, Suite 3, Grand Rapids, MI 49504 so that he may keep a complete file on our interaction.  In a similar manner, Omair Ahmed shall be the official correspondent for Company.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and delivered by their respective appropriate officers, thereunto duly authorized, as of the date first written above.

GRAND RIVER ASEPTIC MANUFACTURING, INC.

By: _____

Name:  Thomas J. Ross
Title:    President

COMPANY NAME

By: _____

Name: Omair Ahmed
Title:  VP Business Development

4

# Exhibit 3

# CONFIDENTIALITY, PROPRIETARY RIGHTS, AND ARBITRATION AGREEMENT

This CONFIDENTIALITY, PROPRIETARY RIGHTS, AND ARBITRATION AGREEMENT (this "Agreement"), dated March 1, 2019, between Grand River Aseptic Manufacturing, Inc., a Delaware corporation (the "Company"), and Jerrod Weidenfeller (the "Employee").

## RECITALS

A.     The Company has employed Employee and desires reasonable protection of its confidential information and proprietary rights and innovations which it has developed and will develop at substantial expense.

B.     The execution and delivery of this Agreement is a condition to the Company's willingness to employ or continue to Employee, and Employee desires to make his or her agreements set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of Employee's employment or continued employment with the Company, the parties hereto hereby agree as follows:

**1.     Confidential Information.**

(a)     During the term of Employee's employment with the Company, and after the termination of such employment for any reason whatsoever, Employee shall not disclose, divulge or furnish any Confidential Information (as hereinafter defined) to any individual, partnership, corporation, limited liability company, association, trust, unincorporated organization, or a government or agency or political subdivision thereof (a "Person"), other than the Company or upon its written request, or use any Confidential Information directly or indirectly for Employee's own benefit or for the benefit of any other Person other than the Company, as such Confidential Information is strictly confidential and shall at all times remain the property of the Company. Upon the termination of Employee's employment for any reason whatsoever, Employee shall promptly turn over to the Company all business correspondence, letters, papers, reports, customer lists, financial statements, credit reports or Confidential Information or other documents or property of the Company in the possession or control of Employee, all of which are and shall continue to be the sole and exclusive property of the Company.

(b)     For purposes of this Agreement, the term "Confidential Information" means any trade secret, confidential or proprietary information of the Company all other information and data that is not generally known to the Company's competitors including, without limitation, any confidential studies, data, calculations, software storage media or other compilation of information, patent, patent application, copyright, trademark, trade name, service mark, service name, "know-how," customer or prospect lists, details of client or customer contracts, pricing policies, sales techniques, confidential information relating to suppliers or providers, information relating to the special and particular needs of the Company's customers, operational methods, marketing plans or strategies, products and formulae, product development techniques or plans, business acquisition plans, computer programs (including source of object codes), processes,

procedures, research or technical data, improvements or other proprietary or intellectual property of the Company including, without limitation, all Innovations (as hereinafter defined); whether or not in written or tangible form, and whether or not registered, and including all files, records, manuals, books, catalogues, memoranda, notes, summaries, plans, reports, records, documents and other evidence thereof.

**2.      Innovations and Inventions.**

(a)      For purposes of this Agreement, the term "Innovations" means all processes, machines, manufactures, compositions of matter, improvements, inventions (whether or not protectable under patent laws), works of authorship, information fixed in any tangible medium of expression (whether or not protectable under copyright laws), mask works, trademarks, trade names, trade dress, trade secrets, know-how, ideas (whether or not protectable under trade secret laws), and all other subject matter protectable under patent, copyright, moral rights, mask work, trademark, trade secret or other laws, and includes without limitation all new or useful art, combinations, discoveries, formulae, manufacturing techniques, technical developments, discoveries, artwork, software, and designs. "Innovations" includes "Inventions," which is defined to mean any inventions protectable under patent laws. It is also understood that Innovations subject to copyright shall be works made for hire.

(b)      Employee represents that Employee has neither conceived, reduced to practice, created, derived, developed nor made any Innovations applicable to the business of the Company or relating in any way to its demonstrably anticipated research and development prior to the date of this Agreement (collectively, the "Prior Innovations") to which Employee has any rights.

(c)      In addition, Employee hereby agrees promptly to disclose and describe to the Company, and hereby does and will assign to the Company or the Company's designee, Employee's entire right, title, and interest in and to, each of the Innovations, and any associated intellectual property rights, which Employee may solely or jointly conceive, reduce to practice, create, derive, develop or make during the period of his employment with the Company, which either (i) relate, at the time of conception, reduction to practice, creation, derivation, development, or making of such Innovation, to the Company's business or actual or demonstrably anticipated research or development, or (ii) were developed on any amount of the Company's time or with the use of any of the Company's equipment, supplies, facilities or trade secret information, or (iii) resulted from any work performed by Employee for the Company. Employee will execute such applications, assignments or other documents as may be necessary or convenient to vest in the Company full title to each such Innovation and as may be necessary or convenient to obtain United States and foreign patents, copyrights and trademarks thereon to the extent the Company may so choose.

(d)      If and to the extent that the provisions of this Section 2 are ineffective or insufficient to assign and transfer to the Company all right, title and interest in and to any Innovation applicable to the business of the Company (including any Prior Innovation), Employee hereby grants to the Company or its designees an irrevocable, royalty free, worldwide license to practice all applicable patent, copyright, moral right, mask work, trade secret and other intellectual

property rights relating to any such Innovation (including any Prior Innovation).  Further, if and to the extent that any of the rights, title and interest in and to any such Innovation (including any Prior Innovation) cannot be licensed by Employee to the Company, Employee hereby irrevocably waives and agrees never to assert such non-licensable rights, title and interest against the Company or any of the Company's successors in interest to such non-licensable rights.

(e)     If the Company is unable for any reason to secure Employee's signature to any document required to file, prosecute, register, or memorialize the assignment of any patent, copyright, mask work or other applications or to enforce any patent, copyright, mask work, moral right, trade secret or other proprietary right under any Confidential Information (including improvements thereof) or any Innovations (including derivative works, improvements, renewals, extensions, continuations, divisionals, continuations in part, continuing patent applications, reissues, and reexaminations), Employee hereby irrevocably designates and appoints the Company and its duly authorized officers and agents as Employee's agents and attorneys-in-fact to act for and on behalf of Employee, (i) to execute, file, prosecute, register and memorialize the assignment of any such application, (ii) to execute and file any documentation required for such enforcement, and (iii) to do all other lawfully permitted acts to further the filing, prosecution, registration, memorialization of assignment, issuance, and enforcement of patents, copyrights, mask works, moral rights, trade secrets or other rights under any Confidential Information or Innovation, all with the same legal force and effect as if executed by Employee.

## 3.    Remedies.

Employee agrees that money damages would not be a sufficient remedy for any breach or threatened breach of the terms of this Agreement and that, in addition to all other remedies available hereunder or otherwise, the Company shall be entitled to equitable relief, including temporary and permanent injunctive relief (without any requirement to post any bond or other security), in the event of any such breach, and that Employee shall not oppose the granting of such relief.  Such relief shall not be exclusive but shall be cumulative and shall be in addition to damages and any other rights or remedies otherwise available to the Company at law or in equity.  In addition to all other relief to which they shall be entitled, the Company shall be entitled to recover all litigation costs and reasonable attorneys' fees incurred by it in enforcing any provision of this Agreement.

## 4.    Independent Covenants.

All of the covenants in this Agreement shall be construed as agreements independent of any other provision of this Agreement or any other agreement between the parties hereto, and the existence of any claim or cause of action by any party hereto against any other party or other person, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement of this Agreement, and no material or other breach of any contractual or legal duty by any party shall be held sufficient to excuse or terminate Employee's obligations under this Agreement or to preclude the Company from obtaining injunctive relief as aforesaid.

## 5.    Severability.

The invalidity or unenforceability of any provisions of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.   Should any clause, portion or provision of this Agreement be unenforceable or invalid for any reason, such unenforceability or invalidity shall not affect the enforceability or validity of the remainder of such provision or of this Agreement.   Should any covenant, restriction, provision or clause of this Agreement be held unreasonable or contrary to public policy for any reason the parties agree that such provision shall automatically be deemed modified such that the contested provision will have the closest effect permitted by applicable law to the original form and shall be given effect and enforced as so modified to whatever extent would be reasonable and enforceable under applicable law.

6.      **Amendment; Waiver.**

No provision of this Agreement may be waived, amended or otherwise modified unless such waiver, amendment or modification is agreed to in a writing and signed by the parties hereto.  No waiver of any breach of any provision of this Agreement shall be deemed a waiver of similar or dissimilar provisions at the same or at any prior or subsequent time.  No agreements or representations, oral or otherwise, express or implied, with respect to the subject matter hereof have been made by either party which are not expressly set forth in this Agreement.

7.      **Assignment; Successors.**

This Agreement may not be assigned by Employee but shall be binding upon and inure to the benefit of Employee and the Company and its successors and assigns, by operation of law or otherwise (whether by merger, consolidation, sale of all or substantially all of the Company's assets or otherwise).  The Company may assign or transfer its rights and obligations under this Agreement without notice or further consent.

8.      **Survival.**

The respective obligations of, and benefits accorded to, the parties as provided in shall survive termination of Employee's employment with the Company.

9.      **Counterparts.**

This Agreement may be executed in the original or by telecopy or electronic transmission of a .pdf file containing an executed signature page, in any number of counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same instrument.

10.     **Governing Law.**

This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan, without regard to the conflicts of laws principles thereof.

11.     **Arbitration.**

The Parties acknowledge and agree that any controversy or claim arising out of Employee's employment with the Company (including, but not limited to, any claim of discrimination, retaliation or harassment; any claim under any state or federal civil rights statute or common law; and any claim for breach of this Agreement) shall be settled solely by arbitration in the County of Kent, State of Michigan, in accordance with the rules of the American Arbitration Association then pertaining.   This paragraph, however, does not prevent or prohibit the Company from seeking and obtaining temporary or preliminary injunctive relief from a court of law due to Employee's actual or threatened breach of paragraphs 1 or 2 above. Seeking such equitable relief in a court of law shall not prejudice the Company's right to demand Arbitration under this Paragraph in order to seek equitable or legal relief.

The decision of the Arbitrator shall be final and binding and neither party shall have any right of appeal therefrom.  Judgment upon the award rendered by the Arbitrator may be entered in the Circuit Court for the County of Kent.

The demand for arbitration must be submitted, in writing, to Company or to Employee and to the American Arbitration Association at 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043.  The demand must be received by the American Arbitration Association within one hundred eighty (180) days after the alleged violation, misconduct, breach or incident which gives rise to the request for arbitration.  Failure to file the demand with the American Arbitration Association within the said one hundred eighty (180) day time period shall constitute a full and complete waiver of the claim, and a complete waiver of any right to compensation, benefits or damages.  If the written demand for arbitration is not filed within the said one hundred eighty (180) day period, it is forever barred.   The Parties shall bear their own attorneys fees associated with the arbitration except as otherwise provided by paragraph 3 of this Agreement.

EMPLOYEE UNDERSTANDS THAT THIS AGREEMENT CONSTITUTES A WAIVER OF ANY RIGHT TO ADJUDICATE CLAIMS AGAINST THE COMPANY IN COURT, AND THAT EMPLOYEE IS OPTING INSTEAD TO ARBITRATE ANY SUCH CLAIMS.

12.     **At-Will Status.**

This Agreement in no way affects the Employee's at-will status.  The Parties agree that Employee's employment can be terminated with or without cause, and with or without notice, at any time, at the option of either the Company or the Employee.

IN WITNESS WHEREOF, this Confidentiality, Proprietary Rights and Arbitration Agreement has been duly executed and delivered by each of the parties hereto as of the date first written above.

GRAND RIVER ASEPTIC MANUFACTURING, INC.

By _Jill Quillen_____

    Jill Quillen, HR Manager

"EMPLOYEE":

_____

Name Printed: _Jerrod  Weidenfeller_____

Date: _2/15/19_____

# Exhibit 4

# CONFIDENTIALITY, PROPRIETARY RIGHTS, AND ARBITRATION AGREEMENT

This CONFIDENTIALITY, PROPRIETARY RIGHTS, AND ARBITRATION AGREEMENT (this "Agreement"), dated March 1, 2019, between Grand River Aseptic Manufacturing, Inc., a Delaware corporation (the "Company"), and Sherri Scott (the "Employee").

## RECITALS

A.     The Company has employed Employee and desires reasonable protection of its confidential information and proprietary rights and innovations which it has developed and will develop at substantial expense.

B.     The execution and delivery of this Agreement is a condition to the Company's willingness to employ or continue to Employee, and Employee desires to make his or her agreements set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of Employee's employment or continued employment with the Company, the parties hereto hereby agree as follows:

1.     **Confidential Information.**

(a)     During the term of Employee's employment with the Company, and after the termination of such employment for any reason whatsoever, Employee shall not disclose, divulge or furnish any Confidential Information (as hereinafter defined) to any individual, partnership, corporation, limited liability company, association, trust, unincorporated organization, or a government or agency or political subdivision thereof (a "Person"), other than the Company or upon its written request, or use any Confidential Information directly or indirectly for Employee's own benefit or for the benefit of any other Person other than the Company, as such Confidential Information is strictly confidential and shall at all times remain the property of the Company. Upon the termination of Employee's employment for any reason whatsoever, Employee shall promptly turn over to the Company all business correspondence, letters, papers, reports, customer lists, financial statements, credit reports or Confidential Information or other documents or property of the Company in the possession or control of Employee, all of which are and shall continue to be the sole and exclusive property of the Company.

(b)     For purposes of this Agreement, the term "Confidential Information" means any trade secret, confidential or proprietary information of the Company all other information and data that is not generally known to the Company's competitors including, without limitation, any confidential studies, data, calculations, software storage media or other compilation of information, patent, patent application, copyright, trademark, trade name, service mark, service name, "know-how," customer or prospect lists, details of client or customer contracts, pricing policies, sales techniques, confidential information relating to suppliers or providers, information relating to the special and particular needs of the Company's customers, operational methods, marketing plans or strategies, products and formulae, product development techniques or plans, business acquisition plans, computer programs (including source of object codes), processes, procedures, research or technical data, improvements or other proprietary or intellectual property

of the Company including, without limitation, all Innovations (as hereinafter defined); whether or not in written or tangible form, and whether or not registered, and including all files, records, manuals, books, catalogues, memoranda, notes, summaries, plans, reports, records, documents and other evidence thereof.

**2.     Innovations and Inventions.**

(a)     For purposes of this Agreement, the term "<u>Innovations</u>" means all processes, machines, manufactures, compositions of matter, improvements, inventions (whether or not protectable under patent laws), works of authorship, information fixed in any tangible medium of expression (whether or not protectable under copyright laws), mask works, trademarks, trade names, trade dress, trade secrets, know-how, ideas (whether or not protectable under trade secret laws), and all other subject matter protectable under patent, copyright, moral rights, mask work, trademark, trade secret or other laws, and includes without limitation all new or useful art, combinations, discoveries, formulae, manufacturing techniques, technical developments, discoveries, artwork, software, and designs. "<u>Innovations</u>" includes "<u>Inventions</u>," which is defined to mean any inventions protectable under patent laws. It is also understood that Innovations subject to copyright shall be works made for hire.

(b)     Employee represents that Employee has neither conceived, reduced to practice, created, derived, developed nor made any Innovations applicable to the business of the Company or relating in any way to its demonstrably anticipated research and development prior to the date of this Agreement (collectively, the "<u>Prior Innovations</u>") to which Employee has any rights.

(c)     In addition, Employee hereby agrees promptly to disclose and describe to the Company, and hereby does and will assign to the Company or the Company's designee, Employee's entire right, title, and interest in and to, each of the Innovations, and any associated intellectual property rights, which Employee may solely or jointly conceive, reduce to practice, create, derive, develop or make during the period of his employment with the Company, which either (i) relate, at the time of conception, reduction to practice, creation, derivation, development, or making of such Innovation, to the Company's business or actual or demonstrably anticipated research or development, or (ii) were developed on any amount of the Company's time or with the use of any of the Company's equipment, supplies, facilities or trade secret information, or (iii) resulted from any work performed by Employee for the Company. Employee will execute such applications, assignments or other documents as may be necessary or convenient to vest in the Company full title to each such Innovation and as may be necessary or convenient to obtain United States and foreign patents, copyrights and trademarks thereon to the extent the Company may so choose.

(d)     If and to the extent that the provisions of this <u>Section 2</u> are ineffective or insufficient to assign and transfer to the Company all right, title and interest in and to any Innovation applicable to the business of the Company (including any Prior Innovation), Employee hereby grants to the Company or its designees an irrevocable, royalty free, worldwide license to practice all applicable patent, copyright, moral right, mask work, trade secret and other intellectual property rights relating to any such Innovation (including any Prior Innovation). Further, if and to

the extent that any of the rights, title and interest in and to any such Innovation (including any Prior Innovation) cannot be licensed by Employee to the Company, Employee hereby irrevocably waives and agrees never to assert such non-licensable rights, title and interest against the Company or any of the Company's successors in interest to such non-licensable rights.

(e)     If the Company is unable for any reason to secure Employee's signature to any document required to file, prosecute, register, or memorialize the assignment of any patent, copyright, mask work or other applications or to enforce any patent, copyright, mask work, moral right, trade secret or other proprietary right under any Confidential Information (including improvements thereof) or any Innovations (including derivative works, improvements, renewals, extensions, continuations, divisionals, continuations in part, continuing patent applications, reissues, and reexaminations), Employee hereby irrevocably designates and appoints the Company and its duly authorized officers and agents as Employee's agents and attorneys-in-fact to act for and on behalf of Employee, (i) to execute, file, prosecute, register and memorialize the assignment of any such application, (ii) to execute and file any documentation required for such enforcement, and (iii) to do all other lawfully permitted acts to further the filing, prosecution, registration, memorialization of assignment, issuance, and enforcement of patents, copyrights, mask works, moral rights, trade secrets or other rights under any Confidential Information or Innovation, all with the same legal force and effect as if executed by Employee.

**3.    Remedies.**

Employee agrees that money damages would not be a sufficient remedy for any breach or threatened breach of the terms of this Agreement and that, in addition to all other remedies available hereunder or otherwise, the Company shall be entitled to equitable relief, including temporary and permanent injunctive relief (without any requirement to post any bond or other security), in the event of any such breach, and that Employee shall not oppose the granting of such relief. Such relief shall not be exclusive but shall be cumulative and shall be in addition to damages and any other rights or remedies otherwise available to the Company at law or in equity. In addition to all other relief to which they shall be entitled, the Company shall be entitled to recover all litigation costs and reasonable attorneys' fees incurred by it in enforcing any provision of this Agreement.

**4.    Independent Covenants.**

All of the covenants in this Agreement shall be construed as agreements independent of any other provision of this Agreement or any other agreement between the parties hereto, and the existence of any claim or cause of action by any party hereto against any other party or other person, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement of this Agreement, and no material or other breach of any contractual or legal duty by any party shall be held sufficient to excuse or terminate Employee's obligations under this Agreement or to preclude the Company from obtaining injunctive relief as aforesaid.

**5.    Severability.**

The invalidity or unenforceability of any provisions of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect. Should any clause, portion or provision of this Agreement be unenforceable or invalid for any reason, such unenforceability or invalidity shall not affect the enforceability or validity of the remainder of such provision or of this Agreement. Should any covenant, restriction, provision or clause of this Agreement be held unreasonable or contrary to public policy for any reason the parties agree that such provision shall automatically be deemed modified such that the contested provision will have the closest effect permitted by applicable law to the original form and shall be given effect and enforced as so modified to whatever extent would be reasonable and enforceable under applicable law.

6.      **Amendment; Waiver.**

No provision of this Agreement may be waived, amended or otherwise modified unless such waiver, amendment or modification is agreed to in a writing and signed by the parties hereto. No waiver of any breach of any provision of this Agreement shall be deemed a waiver of similar or dissimilar provisions at the same or at any prior or subsequent time. No agreements or representations, oral or otherwise, express or implied, with respect to the subject matter hereof have been made by either party which are not expressly set forth in this Agreement.

7.      **Assignment; Successors.**

This Agreement may not be assigned by Employee but shall be binding upon and inure to the benefit of Employee and the Company and its successors and assigns, by operation of law or otherwise (whether by merger, consolidation, sale of all or substantially all of the Company's assets or otherwise). The Company may assign or transfer its rights and obligations under this Agreement without notice or further consent.

8.      **Survival.**

The respective obligations of, and benefits accorded to, the parties as provided in shall survive termination of Employee's employment with the Company.

9.      **Counterparts.**

This Agreement may be executed in the original or by telecopy or electronic transmission of a .pdf file containing an executed signature page, in any number of counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same instrument.

10.      **Governing Law.**

This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan, without regard to the conflicts of laws principles thereof.

11.     **Arbitration.**

The Parties acknowledge and agree that any controversy or claim arising out of Employee's employment with the Company (including, but not limited to, any claim of discrimination, retaliation or harassment; any claim under any state or federal civil rights statute or common law; and any claim for breach of this Agreement) shall be settled solely by arbitration in the County of Kent, State of Michigan, in accordance with the rules of the American Arbitration Association then pertaining.   This paragraph, however, does not prevent or prohibit the Company from seeking and obtaining temporary or preliminary injunctive relief from a court of law due to Employee's actual or threatened breach of paragraphs 1 or 2 above. Seeking such equitable relief in a court of law shall not prejudice the Company's right to demand Arbitration under this Paragraph in order to seek equitable or legal relief.

The decision of the Arbitrator shall be final and binding and neither party shall have any right of appeal therefrom.  Judgment upon the award rendered by the Arbitrator may be entered in the Circuit Court for the County of Kent.

The demand for arbitration must be submitted, in writing, to Company or to Employee and to the American Arbitration Association at 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043.  The demand must be received by the American Arbitration Association within one hundred eighty (180) days after the alleged violation, misconduct, breach or incident which gives rise to the request for arbitration.  Failure to file the demand with the American Arbitration Association within the said one hundred eighty (180) day time period shall constitute a full and complete waiver of the claim, and a complete waiver of any right to compensation, benefits or damages.  If the written demand for arbitration is not filed within the said one hundred eighty (180) day period, it is forever barred.   The Parties shall bear their own attorneys fees associated with the arbitration except as otherwise provided by paragraph 3 of this Agreement.

EMPLOYEE UNDERSTANDS THAT THIS AGREEMENT CONSTITUTES A WAIVER OF ANY RIGHT TO ADJUDICATE CLAIMS AGAINST THE COMPANY IN COURT, AND THAT EMPLOYEE IS OPTING INSTEAD TO ARBITRATE ANY SUCH CLAIMS.

12.     **At-Will Status.**

This Agreement in no way affects the Employee's at-will status.  The Parties agree that Employee's employment can be terminated with or without cause, and with or without notice, at any time, at the option of either the Company or the Employee.

IN WITNESS WHEREOF, this Confidentiality, Proprietary Rights and Arbitration Agreement has been duly executed and delivered by each of the parties hereto as of the date first written above.

GRAND RIVER ASEPTIC MANUFACTURING, INC.

By _____

Jill Quillen, HR Manager

"EMPLOYEE":

_____

Name Printed: _Sherri Scott_____

Date: _3/4/19_____

# Exhibit 5

## NON-COMPETE, NON-SOLICITATION, AND ARBITRATION AGREEMENT

This Non-Compete, Non-Solicitation, and Arbitration Agreement ("Agreement") is entered into and effective as of March 1, 2019, by and between Grand River Aseptic Manufacturing, Inc., a Delaware corporation ("Company"), and Sherri Scott ("Employee").

### Recitals

WHEREAS, in the course of Employee's employment with the Company, Employee has had or will have access to information concerning the Company's unique business strategies and processes, specialized procedures, research and development plans and results, operations procedures, designs, financial information, services, pricing, and customers;

WHEREAS, Employee has had or will have direct contact with Company's customers, and likely has been or will be involved in the Company's relationships with its customers;

WHEREAS, Employee has also been provided with information and training concerning the Company's unique processes and techniques, services, practices and customers, which is not generally known in the industry;

WHEREAS, Employee recognizes that the Company has made a substantial investment in training Employee, that the information provided to Employee by the Company is confidential and provides a business advantage to the Company and/or its customers, and that the Company's relationships with its customers are of substantial value to the Company;

WHEREAS, Employee acknowledges that, for the above stated reasons, the restrictions contained in this Agreement are reasonable to protect the Company, its customers, and their respective business interests, business information, and relationships.

### Agreement

NOW, THEREFORE, in consideration for the Employee's employment or continued employment with the Company, the parties agree as follows:

1.     <u>At-Will Status</u>. This Agreement in no way affects the Employee's at-will status. The Parties agree that Employee's employment can be terminated with or without cause, and with or without notice, at any time, at the option of either the Company or the Employee.

2.     <u>Non-Compete</u>. Employee agrees that for a period of twelve (12) months from the date on which Employee's employment with Company ends, regardless of the reason, s/he will not directly or indirectly engage in Competition with Company anywhere in the United States of America ("USA") as Company conducts business throughout the USA. "Competition" means competing with the Company on Employee's own behalf, or having ownership in, operating, managing or working, as an agent, employee, representative or consultant, for a person or entity that produces clinical trial materials for the pharmaceutical industry, including, without limitation, aseptic or lyophilized compounds.

3.      Non-Solicitation of Customers. Employee specifically acknowledges that during the term of this Agreement, Employee will obtain and have access to, confidential information pertaining to Company's customers, prospective customers, that such data is a valuable and unique asset of Company's business and that the success or failure of Company's business is dependent to a significant degree upon its ability to establish and maintain close and continuing personal contacts and working relationships with customers and prospective customers and to develop services and proposals that are specifically devised, refined and adjusted to meet, satisfy and coincide with the interests and requirements of customers and prospective customers. Employee agrees that during the course of Employee's employment with the Company and for a period of twelve (12) months following the termination of that employment for any reason, Employee will not directly or indirectly, on Employee's own behalf or on behalf of any other person or entity, solicit, attempt to obtain, divert, take away, do business with any current customer(s) or prospective customer(s) of the Company or interfere in any way with the business relationship between the Company and any of its customers or prospective customers.   For purposes of this Agreement, "current customer" shall mean a person or entity that has purchased goods or services from the Company within twenty-four (24) months preceding the date of termination of Employee's employment with the Company and any leads or prospects on which Employee and/or the Company were working or from whom Employee and/or the Company solicited business during the twelve (12) months preceding the date of termination of Employee's employment with the Company.

4.      Non-Solicitation of Employees.  Employee agrees that for a period of twelve (12) months following the termination of Employee's employment with the Company for any reason, Employee will not directly or indirectly, on Employee's own behalf or on behalf of any other person or entity, solicit, recruit or hire any person who is an employee of Company or who was an employee of Company during the two (2) year period prior to termination of the Employee's employment with the Company, or encourage in any manner any of Company's employees or agents to terminate their employment or agency with Company.

5.      Reasonable Restrictions. Employee acknowledges and agrees that the terms of this Agreement are reasonable with respect to their duration, geographical area and scope, and that the restrictions imposed upon Employee under this Agreement are reasonable and necessary for the protection of the Company's Confidential Information, customer and employee relationships and business goodwill.  Employee further acknowledges and agrees that the restrictions imposed hereunder will not pose any substantial hardship on Employee and that Employee will reasonably be able to earn a livelihood without violating any provision of this Agreement.

6.      Judicial/Arbitral Modification of Agreement. If any provision of this Agreement is found to be invalid or unenforceable, it shall be modified by an arbitrator or court of competent jurisdiction in such a manner as to be valid and fully enforceable to the maximum extent permitted by law.

7.      Enforcement.  Employee understands and acknowledges that if s/he violates any provision of this Agreement, Company will be entitled to immediate injunctive relief prohibiting Employee from further violating this Agreement, as well as money damages and any other relief available by law.  In addition, Employee will pay Company's reasonable attorney's fees and costs

involved in enforcing this Agreement.   In the event Employee violates any provision this Agreement in which there is a specific time period during which Employee is prohibited from taking certain actions or from engaging in certain activities, then, in such event, such violation shall toll the running of such time period from the date of such violation until such violation shall cease.  Employee acknowledges and agrees that his obligations under this Agreement shall apply regardless of the reason for the termination of his employment with Company and regardless of whether the termination was initiated by Company or Employee.

8.     Choice of Law. This Agreement shall be governed by and construed according to the laws of the State of Michigan.

9.     Arbitration.  The Parties acknowledge and agree that any controversy or claim arising out of Employee's employment with the Company (including, but not limited to, any claim of discrimination, retaliation or harassment; any claim under any state or federal civil rights statute or common law; and any claim for breach of this Agreement) shall be settled solely by arbitration in the County of Kent, State of Michigan, in accordance with the rules of the American Arbitration Association then pertaining.   This paragraph, however, does not prevent or prohibit the Company from seeking and obtaining temporary or preliminary injunctive relief from a court of law due to Employee's actual or threatened breach of paragraphs 2 through 4 above. Seeking such equitable relief in a court of law shall not prejudice the Company's right to demand Arbitration under this Paragraph in order to seek equitable or legal relief.

The decision of the Arbitrator shall be final and binding and neither party shall have any right of appeal therefrom.  Judgment upon the award rendered by the Arbitrator may be entered in the Circuit Court for the County of Kent.

The demand for arbitration must be submitted, in writing, to Company or to Employee and to the American Arbitration Association at 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043.  The demand must be received by the American Arbitration Association within one hundred eighty (180) days after the alleged violation, misconduct, breach or incident which gives rise to the request for arbitration.  Failure to file the demand with the American Arbitration Association within the said one hundred eighty (180) day time period shall constitute a full and complete waiver of the claim, and a complete waiver of any right to compensation, benefits or damages.  If the written demand for arbitration is not filed within the said one hundred eighty (180) day period, it is forever barred.  The Parties shall bear their own attorneys fees associated with the arbitration except as otherwise provided by paragraph 7 of this Agreement.

EMPLOYEE UNDERSTANDS THAT THIS AGREEMENT CONSTITUTES A WAIVER OF ANY RIGHT TO ADJUDICATE CLAIMS AGAINST THE COMPANY IN COURT, AND THAT EMPLOYEE IS OPTING INSTEAD TO ARBITRATE ANY SUCH CLAIMS.

10.     Survival.  The respective obligations of, and benefits accorded to, the parties as provided in shall survive termination of Employee's employment with the Company.

11.     Counterparts.  This Agreement may be executed in the original or by telecopy or electronic transmission of a .pdf file containing an executed signature page, in any number of

counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, this Non-Compete, Non-Solicitation and Arbitration Agreement has been duly executed and delivered by each of the parties hereto as of the date first written above.

GRAND RIVER ASEPTIC MANUFACTURING, INC.

By _____

Jill Quillen, HR Manager

"EMPLOYEE":

_____

Name Printed: _Sherri Scott_____

Date: __3/4/19_____

# Exhibit 6

Founded in 1852
by Sidney Davy Miller

# MILLER CANFIELD

LEIGH M. SCHULTZ
TEL (269) 388-6810
FAX (269) 382-0244
E-MAIL schultzl@millercanfield.com

**Miller, Canfield, Paddock and Stone, P.L.C.**
277 South Rose Street, Suite 5000
Kalamazoo, Michigan  49007
TEL (269) 381-7030
FAX (269) 382-0244
www.millercanfield.com

MICHIGAN
ILLINOIS
NEW YORK
OHIO
WASHINGTON, D.C.
CANADA
CHINA
MEXICO
POLAND
QATAR

December 28, 2020

**VIA OVERNIGHT MAIL**
Sherri Scott
2024 Westfield Drive
Gurnee, IL 60031
missbers@aol.com

> Re:   **Grand River Aseptic Manufacturing Inc. Confidentiality, Proprietary Rights, and Non-Competition Agreement**

Dear Ms. Scott,

Please be advised that we represent Grand River Aseptic Manufacturing Inc. ("GRAM" or the "Company"). We understand that you resigned from your employment with GRAM on or about August 12, 2020. We are writing to remind you that, despite your resignation, you have continuing obligations to GRAM under the Non-Compete, Non-Solicitation, and Arbitration Agreement (the "Non-Compete Agreement") that you signed on or about March 4, 2019.

Specifically, you agreed that:

> For a period of twelve (12) months following the termination of [your] employment with the Company for any reason, [you] will not directly or indirectly, on [your] own behalf or on behalf of any other person or entity, solicit, recruit, or hire any person who is an employee of Company or who was an employee of Company during the two (2) year period prior to termination of [your] employment with the Company, or encourage in any manner any of Company's employees or agents to terminate their employment or agency with Company.

You also agreed that you would not ever divulge or furnish any of the Company's Confidential Information to any third-party, and/or use any of the Company's Confidential Information directly or indirectly for your own benefit or for the benefit of any third-party. In addition, you agreed that you would not engage in any competition with the Company or solicit or do business with customers of the Company for a period of 12 months after your employment ended.

## MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

Ms. Sherri Scott                                    -2-                                    December 28, 2020

You also signed a separate Confidentiality, Proprietary Rights, and Arbitration Agreement that remains in full force and effect.  I have enclosed an additional copy of both Agreements for your records.

It has come to GRAM's attention that you may be attempting to solicit GRAM employees in violation of the Non-Compete Agreement.  The letter is to remind you of your contractual obligations and to notify you that if you engage in any conduct that violates either Agreement or Michigan law, GRAM will take all necessary steps to enforce the applicable Agreement and will seek payment from your for any costs and attorneys' fees that the Company incurs as a result.

Very truly yours,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

Leigh M. Schultz

LMS/cjs

Enclosures

cc:     Grand River Aseptic Manufacturing, Inc.

## NON-COMPETE, NON-SOLICITATION,
## AND ARBITRATION AGREEMENT

This Non-Compete, Non-Solicitation, and Arbitration Agreement ("Agreement") is entered into and effective as of March 1, 2019, by and between Grand River Aseptic Manufacturing, Inc., a Delaware corporation ("Company"), and Sherri Scott ("Employee").

### Recitals

WHEREAS, in the course of Employee's employment with the Company, Employee has had or will have access to information concerning the Company's unique business strategies and processes, specialized procedures, research and development plans and results, operations procedures, designs, financial information, services, pricing, and customers;

WHEREAS, Employee has had or will have direct contact with Company's customers, and likely has been or will be involved in the Company's relationships with its customers;

WHEREAS, Employee has also been provided with information and training concerning the Company's unique processes and techniques, services, practices and customers, which is not generally known in the industry;

WHEREAS, Employee recognizes that the Company has made a substantial investment in training Employee, that the information provided to Employee by the Company is confidential and provides a business advantage to the Company and/or its customers, and that the Company's relationships with its customers are of substantial value to the Company;

WHEREAS, Employee acknowledges that, for the above stated reasons, the restrictions contained in this Agreement are reasonable to protect the Company, its customers, and their respective business interests, business information, and relationships.

### Agreement

NOW, THEREFORE, in consideration for the Employee's employment or continued employment with the Company, the parties agree as follows:

1.    <u>At-Will Status</u>. This Agreement in no way affects the Employee's at-will status. The Parties agree that Employee's employment can be terminated with or without cause, and with or without notice, at any time, at the option of either the Company or the Employee.

2.    <u>Non-Compete</u>. Employee agrees that for a period of twelve (12) months from the date on which Employee's employment with Company ends, regardless of the reason, s/he will not directly or indirectly engage in Competition with Company anywhere in the United States of America ("USA") as Company conducts business throughout the USA. "Competition" means competing with the Company on Employee's own behalf, or having ownership in, operating, managing or working, as an agent, employee, representative or consultant, for a person or entity that produces clinical trial materials for the pharmaceutical industry, including, without limitation, aseptic or lyophilized compounds.

3.    <u>Non-Solicitation of Customers.</u> Employee specifically acknowledges that during the term of this Agreement, Employee will obtain and have access to, confidential information pertaining to Company's customers, prospective customers, that such data is a valuable and unique asset of Company's business and that the success or failure of Company's business is dependent to a significant degree upon its ability to establish and maintain close and continuing personal contacts and working relationships with customers and prospective customers and to develop services and proposals that are specifically devised, refined and adjusted to meet, satisfy and coincide with the interests and requirements of customers and prospective customers. Employee agrees that during the course of Employee's employment with the Company and for a period of twelve (12) months following the termination of that employment for any reason, Employee will not directly or indirectly, on Employee's own behalf or on behalf of any other person or entity, solicit, attempt to obtain, divert, take away, do business with any current customer(s) or prospective customer(s) of the Company or interfere in any way with the business relationship between the Company and any of its customers or prospective customers.   For purposes of this Agreement, "current customer" shall mean a person or entity that has purchased goods or services from the Company within twenty-four (24) months preceding the date of termination of Employee's employment with the Company and any leads or prospects on which Employee and/or the Company were working or from whom Employee and/or the Company solicited business during the twelve (12) months preceding the date of termination of Employee's employment with the Company.

4.    <u>Non-Solicitation of Employees.</u>  Employee agrees that for a period of twelve (12) months following the termination of Employee's employment with the Company for any reason, Employee will not directly or indirectly, on Employee's own behalf or on behalf of any other person or entity, solicit, recruit or hire any person who is an employee of Company or who was an employee of Company during the two (2) year period prior to termination of the Employee's employment with the Company, or encourage in any manner any of Company's employees or agents to terminate their employment or agency with Company.

5.    <u>Reasonable Restrictions</u>. Employee acknowledges and agrees that the terms of this Agreement are reasonable with respect to their duration, geographical area and scope, and that the restrictions imposed upon Employee under this Agreement are reasonable and necessary for the protection of the Company's Confidential Information, customer and employee relationships and business goodwill.  Employee further acknowledges and agrees that the restrictions imposed hereunder will not pose any substantial hardship on Employee and that Employee will reasonably be able to earn a livelihood without violating any provision of this Agreement.

6.    <u>Judicial/Arbitral Modification of Agreement</u>. If any provision of this Agreement is found to be invalid or unenforceable, it shall be modified by an arbitrator or court of competent jurisdiction in such a manner as to be valid and fully enforceable to the maximum extent permitted by law.

7.    <u>Enforcement</u>.  Employee understands and acknowledges that if s/he violates any provision of this Agreement, Company will be entitled to immediate injunctive relief prohibiting Employee from further violating this Agreement, as well as money damages and any other relief available by law.   In addition, Employee will pay Company's reasonable attorney's fees and costs

involved in enforcing this Agreement.   In the event Employee violates any provision this Agreement in which there is a specific time period during which Employee is prohibited from taking certain actions or from engaging in certain activities, then, in such event, such violation shall toll the running of such time period from the date of such violation until such violation shall cease.  Employee acknowledges and agrees that his obligations under this Agreement shall apply regardless of the reason for the termination of his employment with Company and regardless of whether the termination was initiated by Company or Employee.

      8.    <u>Choice of Law</u>. This Agreement shall be governed by and construed according to the laws of the State of Michigan.

      9.    <u>Arbitration.</u>   The Parties acknowledge and agree that any controversy or claim arising out of Employee's employment with the Company (including, but not limited to, any claim of discrimination, retaliation or harassment; any claim under any state or federal civil rights statute or common law; and any claim for breach of this Agreement) shall be settled solely by arbitration in the County of Kent, State of Michigan, in accordance with the rules of the American Arbitration Association then pertaining.   This paragraph, however, does not prevent or prohibit the Company from seeking and obtaining temporary or preliminary injunctive relief from a court of law due to Employee's actual or threatened breach of paragraphs 2 through 4 above. Seeking such equitable relief in a court of law shall not prejudice the Company's right to demand Arbitration under this Paragraph in order to seek equitable or legal relief.

      The decision of the Arbitrator shall be final and binding and neither party shall have any right of appeal therefrom.  Judgment upon the award rendered by the Arbitrator may be entered in the Circuit Court for the County of Kent.

      The demand for arbitration must be submitted, in writing, to Company or to Employee and to the American Arbitration Association at 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043.  The demand must be received by the American Arbitration Association within one hundred eighty (180) days after the alleged violation, misconduct, breach or incident which gives rise to the request for arbitration.  Failure to file the demand with the American Arbitration Association within the said one hundred eighty (180) day time period shall constitute a full and complete waiver of the claim, and a complete waiver of any right to compensation, benefits or damages.  If the written demand for arbitration is not filed within the said one hundred eighty (180) day period, it is forever barred.  The Parties shall bear their own attorneys fees associated with the arbitration except as otherwise provided by paragraph 7 of this Agreement.

      EMPLOYEE UNDERSTANDS THAT THIS AGREEMENT CONSTITUTES A WAIVER OF ANY RIGHT TO ADJUDICATE CLAIMS AGAINST THE COMPANY IN COURT, AND THAT EMPLOYEE IS OPTING INSTEAD TO ARBITRATE ANY SUCH CLAIMS.

      10.    <u>Survival</u>.  The respective obligations of, and benefits accorded to, the parties as provided in shall survive termination of Employee's employment with the Company.

      11.    <u>Counterparts</u>.  This Agreement may be executed in the original or by telecopy or electronic transmission of a .pdf file containing an executed signature page, in any number of

counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, this Non-Compete, Non-Solicitation and Arbitration Agreement has been duly executed and delivered by each of the parties hereto as of the date first written above.

GRAND RIVER ASEPTIC MANUFACTURING, INC.

By _____
   Jill Quillen, HR Manager

"EMPLOYEE":

_____

Name Printed: _Sherri Scott_____

Date: __3/4/19_____

# CONFIDENTIALITY, PROPRIETARY RIGHTS, AND ARBITRATION AGREEMENT

This CONFIDENTIALITY, PROPRIETARY RIGHTS, AND ARBITRATION AGREEMENT (this "Agreement"), dated March 1, 2019, between Grand River Aseptic Manufacturing, Inc., a Delaware corporation (the "Company"), and Sherri Scott (the "Employee").

## RECITALS

A.     The Company has employed Employee and desires reasonable protection of its confidential information and proprietary rights and innovations which it has developed and will develop at substantial expense.

B.     The execution and delivery of this Agreement is a condition to the Company's willingness to employ or continue to Employee, and Employee desires to make his or her agreements set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of Employee's employment or continued employment with the Company, the parties hereto hereby agree as follows:

1.     **Confidential Information.**

(a)     During the term of Employee's employment with the Company, and after the termination of such employment for any reason whatsoever, Employee shall not disclose, divulge or furnish any Confidential Information (as hereinafter defined) to any individual, partnership, corporation, limited liability company, association, trust, unincorporated organization, or a government or agency or political subdivision thereof (a "Person"), other than the Company or upon its written request, or use any Confidential Information directly or indirectly for Employee's own benefit or for the benefit of any other Person other than the Company, as such Confidential Information is strictly confidential and shall at all times remain the property of the Company. Upon the termination of Employee's employment for any reason whatsoever, Employee shall promptly turn over to the Company all business correspondence, letters, papers, reports, customer lists, financial statements, credit reports or Confidential Information or other documents or property of the Company in the possession or control of Employee, all of which are and shall continue to be the sole and exclusive property of the Company.

(b)     For purposes of this Agreement, the term "Confidential Information" means any trade secret, confidential or proprietary information of the Company all other information and data that is not generally known to the Company's competitors including, without limitation, any confidential studies, data, calculations, software storage media or other compilation of information, patent, patent application, copyright, trademark, trade name, service mark, service name, "know-how," customer or prospect lists, details of client or customer contracts, pricing policies, sales techniques, confidential information relating to suppliers or providers, information relating to the special and particular needs of the Company's customers, operational methods, marketing plans or strategies, products and formulae, product development techniques or plans, business acquisition plans, computer programs (including source of object codes), processes, procedures, research or technical data, improvements or other proprietary or intellectual property

of the Company including, without limitation, all Innovations (as hereinafter defined); whether or not in written or tangible form, and whether or not registered, and including all files, records, manuals, books, catalogues, memoranda, notes, summaries, plans, reports, records, documents and other evidence thereof.

## 2.   Innovations and Inventions.

(a)   For purposes of this Agreement, the term "Innovations" means all processes, machines, manufactures, compositions of matter, improvements, inventions (whether or not protectable under patent laws), works of authorship, information fixed in any tangible medium of expression (whether or not protectable under copyright laws), mask works, trademarks, trade names, trade dress, trade secrets, know-how, ideas (whether or not protectable under trade secret laws), and all other subject matter protectable under patent, copyright, moral rights, mask work, trademark, trade secret or other laws, and includes without limitation all new or useful art, combinations, discoveries, formulae, manufacturing techniques, technical developments, discoveries, artwork, software, and designs. "Innovations" includes "Inventions," which is defined to mean any inventions protectable under patent laws. It is also understood that Innovations subject to copyright shall be works made for hire.

(b)   Employee represents that Employee has neither conceived, reduced to practice, created, derived, developed nor made any Innovations applicable to the business of the Company or relating in any way to its demonstrably anticipated research and development prior to the date of this Agreement (collectively, the "Prior Innovations") to which Employee has any rights.

(c)   In addition, Employee hereby agrees promptly to disclose and describe to the Company, and hereby does and will assign to the Company or the Company's designee, Employee's entire right, title, and interest in and to, each of the Innovations, and any associated intellectual property rights, which Employee may solely or jointly conceive, reduce to practice, create, derive, develop or make during the period of his employment with the Company, which either (i) relate, at the time of conception, reduction to practice, creation, derivation, development, or making of such Innovation, to the Company's business or actual or demonstrably anticipated research or development, or (ii) were developed on any amount of the Company's time or with the use of any of the Company's equipment, supplies, facilities or trade secret information, or (iii) resulted from any work performed by Employee for the Company. Employee will execute such applications, assignments or other documents as may be necessary or convenient to vest in the Company full title to each such Innovation and as may be necessary or convenient to obtain United States and foreign patents, copyrights and trademarks thereon to the extent the Company may so choose.

(d)   If and to the extent that the provisions of this Section 2 are ineffective or insufficient to assign and transfer to the Company all right, title and interest in and to any Innovation applicable to the business of the Company (including any Prior Innovation), Employee hereby grants to the Company or its designees an irrevocable, royalty free, worldwide license to practice all applicable patent, copyright, moral right, mask work, trade secret and other intellectual property rights relating to any such Innovation (including any Prior Innovation). Further, if and to

the extent that any of the rights, title and interest in and to any such Innovation (including any Prior Innovation) cannot be licensed by Employee to the Company, Employee hereby irrevocably waives and agrees never to assert such non-licensable rights, title and interest against the Company or any of the Company's successors in interest to such non-licensable rights.

(e)     If the Company is unable for any reason to secure Employee's signature to any document required to file, prosecute, register, or memorialize the assignment of any patent, copyright, mask work or other applications or to enforce any patent, copyright, mask work, moral right, trade secret or other proprietary right under any Confidential Information (including improvements thereof) or any Innovations (including derivative works, improvements, renewals, extensions, continuations, divisionals, continuations in part, continuing patent applications, reissues, and reexaminations), Employee hereby irrevocably designates and appoints the Company and its duly authorized officers and agents as Employee's agents and attorneys-in-fact to act for and on behalf of Employee, (i) to execute, file, prosecute, register and memorialize the assignment of any such application, (ii) to execute and file any documentation required for such enforcement, and (iii) to do all other lawfully permitted acts to further the filing, prosecution, registration, memorialization of assignment, issuance, and enforcement of patents, copyrights, mask works, moral rights, trade secrets or other rights under any Confidential  Information or Innovation, all with the same legal force and effect as if executed by Employee.

**3.     Remedies.**

Employee agrees that money damages would not be a sufficient remedy for any breach or threatened breach of the terms of this Agreement and that, in addition to all other remedies available hereunder or otherwise, the Company shall be entitled to equitable relief, including temporary and permanent injunctive relief (without any requirement to post any bond or other security), in the event of any such breach, and that Employee shall not oppose the granting of such relief.  Such relief shall not be exclusive but shall be cumulative and shall be in addition to damages and any other rights or remedies otherwise available to the Company at law or in equity.  In addition to all other relief to which they shall be entitled, the Company shall be entitled to recover all litigation costs and reasonable attorneys' fees incurred by it in enforcing any provision of this Agreement.

**4.     Independent Covenants.**

All of the covenants in this Agreement shall be construed as agreements independent of any other provision of this Agreement or any other agreement between the parties hereto, and the existence of any claim or cause of action by any party hereto against any other party or other person, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement of this Agreement, and no material or other breach of any contractual or legal duty by any party shall be held sufficient to excuse or terminate Employee's obligations under this Agreement or to preclude the Company from obtaining injunctive relief as aforesaid.

**5.     Severability.**

The invalidity or unenforceability of any provisions of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect. Should any clause, portion or provision of this Agreement be unenforceable or invalid for any reason, such unenforceability or invalidity shall not affect the enforceability or validity of the remainder of such provision or of this Agreement. Should any covenant, restriction, provision or clause of this Agreement be held unreasonable or contrary to public policy for any reason the parties agree that such provision shall automatically be deemed modified such that the contested provision will have the closest effect permitted by applicable law to the original form and shall be given effect and enforced as so modified to whatever extent would be reasonable and enforceable under applicable law.

**6.     Amendment; Waiver.**

No provision of this Agreement may be waived, amended or otherwise modified unless such waiver, amendment or modification is agreed to in a writing and signed by the parties hereto. No waiver of any breach of any provision of this Agreement shall be deemed a waiver of similar or dissimilar provisions at the same or at any prior or subsequent time. No agreements or representations, oral or otherwise, express or implied, with respect to the subject matter hereof have been made by either party which are not expressly set forth in this Agreement.

**7.     Assignment; Successors.**

This Agreement may not be assigned by Employee but shall be binding upon and inure to the benefit of Employee and the Company and its successors and assigns, by operation of law or otherwise (whether by merger, consolidation, sale of all or substantially all of the Company's assets or otherwise). The Company may assign or transfer its rights and obligations under this Agreement without notice or further consent.

**8.     Survival.**

The respective obligations of, and benefits accorded to, the parties as provided in shall survive termination of Employee's employment with the Company.

**9.     Counterparts.**

This Agreement may be executed in the original or by telecopy or electronic transmission of a .pdf file containing an executed signature page, in any number of counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same instrument.

**10.     Governing Law.**

This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan, without regard to the conflicts of laws principles thereof.

11.     **Arbitration.**

The Parties acknowledge and agree that any controversy or claim arising out of Employee's employment with the Company (including, but not limited to, any claim of discrimination, retaliation or harassment; any claim under any state or federal civil rights statute or common law; and any claim for breach of this Agreement) shall be settled solely by arbitration in the County of Kent, State of Michigan, in accordance with the rules of the American Arbitration Association then pertaining.   This paragraph, however, does not prevent or prohibit the Company from seeking and obtaining temporary or preliminary injunctive relief from a court of law due to Employee's actual or threatened breach of paragraphs 1 or 2 above. Seeking such equitable relief in a court of law shall not prejudice the Company's right to demand Arbitration under this Paragraph in order to seek equitable or legal relief.

The decision of the Arbitrator shall be final and binding and neither party shall have any right of appeal therefrom.  Judgment upon the award rendered by the Arbitrator may be entered in the Circuit Court for the County of Kent.

The demand for arbitration must be submitted, in writing, to Company or to Employee and to the American Arbitration Association at 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043.  The demand must be received by the American Arbitration Association within one hundred eighty (180) days after the alleged violation, misconduct, breach or incident which gives rise to the request for arbitration.  Failure to file the demand with the American Arbitration Association within the said one hundred eighty (180) day time period shall constitute a full and complete waiver of the claim, and a complete waiver of any right to compensation, benefits or damages.  If the written demand for arbitration is not filed within the said one hundred eighty (180) day period, it is forever barred.  The Parties shall bear their own attorneys fees associated with the arbitration except as otherwise provided by paragraph 3 of this Agreement.

EMPLOYEE UNDERSTANDS THAT THIS AGREEMENT CONSTITUTES A WAIVER OF ANY RIGHT TO ADJUDICATE CLAIMS AGAINST THE COMPANY IN COURT, AND THAT EMPLOYEE IS OPTING INSTEAD TO ARBITRATE ANY SUCH CLAIMS.

12.     **At-Will Status.**

This Agreement in no way affects the Employee's at-will status.  The Parties agree that Employee's employment can be terminated with or without cause, and with or without notice, at any time, at the option of either the Company or the Employee.

IN WITNESS WHEREOF, this Confidentiality, Proprietary Rights and Arbitration Agreement has been duly executed and delivered by each of the parties hereto as of the date first written above.

GRAND RIVER ASEPTIC MANUFACTURING, INC.

By _Jill Quillen_____
Jill Quillen, HR Manager

"EMPLOYEE":

_____

Name Printed: _Sherri Scott_____

Date: _3/4/19_____

# Exhibit 7

| Document # | Doc ID Beg | File Name |
|---|---|---|
| 1 | GRAMNEXUS0000000001 | BTR_FIRST_QC_LYT_001_Page_01.png |
| 2 | GRAMNEXUS0000000002 | BTR_FIRST_QC_LYT_001_Page_02.png |
| 3 | GRAMNEXUS0000000003 | BTR_FIRST_QC_LYT_001_Page_03.png |
| 4 | GRAMNEXUS0000000004 | BTR_FIRST_QC_LYT_001_Page_04.png |
| 5 | GRAMNEXUS0000000005 | BTR_FIRST_QC_LYT_001_Page_05.png |
| 6 | GRAMNEXUS0000000006 | BTR_FIRST_QC_LYT_001_Page_06.png |
| 7 | GRAMNEXUS0000000007 | BTR_FIRST_QC_LYT_001_Page_07.png |
| 8 | GRAMNEXUS0000000008 | BTR_FIRST_QC_LYT_001_Page_08.png |
| 9 | GRAMNEXUS0000000009 | BTR_FIRST_QC_LYT_001_Page_09.png |
| 10 | GRAMNEXUS0000000010 | BTR_FIRST_QC_LYT_001_Page_10.png |
| 11 | GRAMNEXUS0000000011 | BTR_FIRST_QC_LYT_001_Page_11.png |
| 12 | GRAMNEXUS0000000012 | BTR_FIRST_QC_LYT_001_Page_12.png |
| 13 | GRAMNEXUS0000000013 | BTR_FIRST_QC_LYT_001_Page_13.png |
| 14 | GRAMNEXUS0000000014 | BTR_FIRST_QC_LYT_001_Page_14.png |
| 15 | GRAMNEXUS0000000015 | BTR_FIRST_QC_LYT_001_Page_15.png |
| 16 | GRAMNEXUS0000000016 | BTR_FIRST_QC_LYT_001_Page_16.png |
| 17 | GRAMNEXUS0000000017 | BTR_FIRST_QC_LYT_001_Page_17.png |
| 18 | GRAMNEXUS0000000018 | BTR_FIRST_QC_LYT_001_Page_18.png |
| 19 | GRAMNEXUS0000000019 | BTR_FIRST_QC_LYT_001_Page_19.png |
| 20 | GRAMNEXUS0000000020 | BTR_FIRST_QC_LYT_001_Page_20.png |
| 21 | GRAMNEXUS0000000021 | BTR_FIRST_QC_LYT_001_Page_21.png |
| 22 | GRAMNEXUS0000000022 | BTR_FIRST_QC_LYT_001_Page_22.png |
| 23 | GRAMNEXUS0000000023 | BTR_FIRST_QC_LYT_001_Page_23.png |
| 24 | GRAMNEXUS0000000024 | BTR_FIRST_QC_LYT_001_Page_24.png |
| 25 | GRAMNEXUS0000000025 | BTR_FIRST_QC_LYT_001_Page_25.png |
| 26 | GRAMNEXUS0000000026 | Autoclave SOP.docx |
| 27 | GRAMNEXUS0000000027 | Copy of GRAM Micro Documents to Draft(SAS)(CCH)1.xlsx |
| 28 | GRAMNEXUS0000000028 | CORP-SOP-0027 revision (SAS).docx |
| 29 | GRAMNEXUS0000000029 | CORP-SOP-0077 Compressed Gas Sampling.docx |
| 30 | GRAMNEXUS0000000030 | CORP-SOP-0101 rev 05(SAS)(JLL) (AZ).docx |
| 31 | GRAMNEXUS0000000031 | LAB-FRM-103A Compressed Gas QC Report.docx |
| 32 | GRAMNEXUS0000000032 | Template-0001 rev 03.docx |
| 33 | GRAMNEXUS0000000033 | VITEK 2 Compact (V9) Admin SOP.docx |
| 34 | GRAMNEXUS0000000034 | VITEK 2 Compact (V9) Operational SOP.docx |
| 35 | GRAMNEXUS0000000035 | 202 CAPA.docx |
| 36 | GRAMNEXUS0000000036 | Audit Commitment Extension Memo.docx |
| 37 | GRAMNEXUS0000000037 | CA 170015 extension.docx |
| 38 | GRAMNEXUS0000000038 | CA-170004 closure.docx |
| 39 | GRAMNEXUS0000000039 | CA-170004 extension 2.docx |
| 40 | GRAMNEXUS0000000040 | CA-170004 extension 3.docx |
| 41 | GRAMNEXUS0000000041 | CA-170004 extension.docx |
| 42 | GRAMNEXUS0000000042 | CA-170016 completion memo.docx |
| 43 | GRAMNEXUS0000000043 | CA-170016 extension 2.docx |
| 44 | GRAMNEXUS0000000044 | CA-170016 extension 3.docx |
| 45 | GRAMNEXUS0000000045 | CA-170016 extension.docx |
| 46 | GRAMNEXUS0000000046 | CAPA EM mold.docx |
| 47 | GRAMNEXUS0000000047 | CAPA Extension Memo Template.docx |
| 48 | GRAMNEXUS0000000048 | CAPA Form for EIR-180091.docx |
| 49 | GRAMNEXUS0000000049 | CAPA-160011 eff memo.docx |
| 50 | GRAMNEXUS0000000050 | CAPA-170027 Extension 2.docx |
| 51 | GRAMNEXUS0000000051 | CAPA-170027 update for Nexus.docx |
| 52 | GRAMNEXUS0000000052 | CAPA-180039.docx |
| 53 | GRAMNEXUS0000000053 | CAPA-180045.docx |
| 54 | GRAMNEXUS0000000054 | COR-170007.docx |
| 55 | GRAMNEXUS0000000055 | COR-170008 ext.docx |
| 56 | GRAMNEXUS0000000056 | COR-170019.docm |
| 57 | GRAMNEXUS0000000057 | COR-170020.docm |
| 58 | GRAMNEXUS0000000058 | COR-180021 ext 1.docx |
| 59 | GRAMNEXUS0000000059 | Corrective Action Due Date Extension Template.docx |
| 60 | GRAMNEXUS0000000060 | dis eff ext audit - hesperian.docx |
| 61 | GRAMNEXUS0000000061 | dis eff ext audit.docx |
| 62 | GRAMNEXUS0000000062 | Diseff ext.docx |
| 63 | GRAMNEXUS0000000063 | INTCAPA-170013 ext 1.docx |

| 64 | GRAMNEXUS0000000064 | INTCAPA-170013 ext 2.docx |
| 65 | GRAMNEXUS0000000065 | INTCAPA-170018.docx |
| 66 | GRAMNEXUS0000000066 | INTCAPA-180004 ext 1.docx |
| 67 | GRAMNEXUS0000000067 | INTCAPA-180005 ext 1.docx |
| 68 | GRAMNEXUS0000000068 | INTCAPA-180016 ext 1.docx |
| 69 | GRAMNEXUS0000000069 | INTCAPA-180016 ext 2.docx |
| 70 | GRAMNEXUS0000000070 | INTCAPA-180016 ext 3.docx |
| 71 | GRAMNEXUS0000000071 | INTCAPA-180020 ext 1.docx |
| 72 | GRAMNEXUS0000000072 | INTCAPA-180025 ext 1.docx |
| 73 | GRAMNEXUS0000000073 | INTCAPA-180025 ext 2.docx |
| 74 | GRAMNEXUS0000000074 | INTCAPA-180028 ext 1.docx |
| 75 | GRAMNEXUS0000000075 | LAB-TM-127 Conductivity in Bulk Water.docx |
| 76 | GRAMNEXUS0000000076 | LIR-180015 Corrections.docm |
| 77 | GRAMNEXUS0000000077 | Memo for CA-160095.docx |
| 78 | GRAMNEXUS0000000078 | Memo for CA-170015.docx |
| 79 | GRAMNEXUS0000000079 | Memo for CAPA-170027.pdf |
| 80 | GRAMNEXUS0000000080 | Memo INTCAPA-170030.docx |
| 81 | GRAMNEXUS0000000081 | Memo INTCAPA-180017.docx |
| 82 | GRAMNEXUS0000000082 | Memo INTCAPA-180030.docx |
| 83 | GRAMNEXUS0000000083 | Nonconformance Correction Form.docm |
| 84 | GRAMNEXUS0000000084 | PA 150012 extension 2 sas.docx |
| 85 | GRAMNEXUS0000000085 | PA 150012 extension.docx |
| 86 | GRAMNEXUS0000000086 | PA-170004 ext1.docx |
| 87 | GRAMNEXUS0000000087 | PA-170004 task 5.docx |
| 88 | GRAMNEXUS0000000088 | PA-170004 task 6.docx |
| 89 | GRAMNEXUS0000000089 | PA170004 Plan.docx |
| 90 | GRAMNEXUS0000000090 | Q4 2019 Godfrey Water(SAS).docx |
| 91 | GRAMNEXUS0000000091 | Sherri Scott.docx |
| 92 | GRAMNEXUS0000000092 | NCR-0418 211 N-2 (SAS).docx |
| 93 | GRAMNEXUS0000000093 | Scott_Sherri1.doc |
| 94 | GRAMNEXUS0000000094 | Sr. Validation Engineer Application.docx |
| 95 | GRAMNEXUS0000000095 | 20-025 Sr. Validation Engineer.docx |
| 96 | GRAMNEXUS0000000096 | 026-146B.pdf |
| 97 | GRAMNEXUS0000000097 | 026-146A.pdf |
| 98 | GRAMNEXUS0000000098 | PQ cal July.docx |
| 99 | GRAMNEXUS0000000099 | Microworks Sample Sub 5-21-20.doc |
| 100 | GRAMNEXUS0000000100 | June Cal.docx |
| 101 | GRAMNEXUS0000000101 | CORP-SOP-0249 Annual Requalification SOP Dynamic (JW) (002)-KNB.docx |
| 102 | GRAMNEXUS0000000101.0001 | Microsoft_Visio_Drawing14.vsdx |
| 103 | GRAMNEXUS0000000101.0002 | Microsoft_Visio_Drawing16.vsdx |
| 104 | GRAMNEXUS0000000101.0003 | Microsoft_Visio_Drawing15.vsdx |
| 105 | GRAMNEXUS0000000101.0004 | Microsoft_Visio_Drawing.vsdx |
| 106 | GRAMNEXUS0000000101.0005 | Microsoft_Visio_Drawing1.vsdx |
| 107 | GRAMNEXUS0000000101.0006 | Microsoft_Visio_Drawing2.vsdx |
| 108 | GRAMNEXUS0000000101.0007 | Microsoft_Visio_Drawing3.vsdx |
| 109 | GRAMNEXUS0000000101.0008 | Microsoft_Visio_Drawing4.vsdx |
| 110 | GRAMNEXUS0000000101.0009 | Microsoft_Visio_Drawing5.vsdx |
| 111 | GRAMNEXUS0000000101.0010 | Microsoft_Visio_Drawing6.vsdx |
| 112 | GRAMNEXUS0000000101.0011 | Microsoft_Visio_Drawing7.vsdx |
| 113 | GRAMNEXUS0000000101.0012 | Microsoft_Visio_Drawing8.vsdx |
| 114 | GRAMNEXUS0000000101.0013 | Microsoft_Visio_Drawing9.vsdx |
| 115 | GRAMNEXUS0000000101.0014 | Microsoft_Visio_Drawing10.vsdx |
| 116 | GRAMNEXUS0000000101.0015 | Microsoft_Visio_Drawing11.vsdx |
| 117 | GRAMNEXUS0000000101.0016 | Microsoft_Visio_Drawing12.vsdx |
| 118 | GRAMNEXUS0000000101.0017 | Microsoft_Visio_Drawing13.vsdx |
| 119 | GRAMNEXUS0000000102 | GRAM Capabilities - Quality Control.pptx |
| 120 | GRAMNEXUS0000000103 | Today's things.docx |
| 121 | GRAMNEXUS0000000104 | PO spore susp.xlsx |
| 122 | GRAMNEXUS0000000105 | 020-148 Endo Test Dilution.pdf |
| 123 | GRAMNEXUS0000000106 | PQ Protocol - Vial Washer 20_03-31(SAS).docx |
| 124 | GRAMNEXUS0000000107 | lexus 2020.pdf |
| 125 | GRAMNEXUS0000000108 | subaru 2020.pdf |
| 126 | GRAMNEXUS0000000109 | Mold Memo.doc |
| 127 | GRAMNEXUS0000000110 | Q4 2019 Front Water(SAS).docx |

| 128 | GRAMNEXUS0000000111 | GRAM Change of Status.docx |
|-----|---------------------|---------------------------|
| 129 | GRAMNEXUS0000000112 | Micro Fluff.docx |
| 130 | GRAMNEXUS0000000113 | Argos Box Mold.pdf |
| 131 | GRAMNEXUS0000000114 | Micro ID Process Training.pptx |
| 132 | GRAMNEXUS0000000115 | bugs.docx |
| 133 | GRAMNEXUS0000000116 | colony morphology.docx |
| 134 | GRAMNEXUS0000000117 | WD NVP Data.docx |
| 135 | GRAMNEXUS0000000118 | VAL-1617-SUM (Weigh and Dispense Booth EMPQ)(SAS)(JW) .docx |
| 136 | GRAMNEXUS0000000119 | Copy of VAL-1617 Trending(sas).xlsx |
| 137 | GRAMNEXUS0000000120 | Q3 2019 EM (SAS).docx |
| 138 | GRAMNEXUS0000000121 | Q3 2019 Godfrey Water.docx |
| 139 | GRAMNEXUS0000000122 | Q3 2019 Godfrey Water (SAS).docx |
| 140 | GRAMNEXUS0000000123 | Q3 2019 Front Water (SAS).docx |
| 141 | GRAMNEXUS0000000124 | Q3 2019 Compressed Gas (SAS).docx |
| 142 | GRAMNEXUS0000000125 | TOC Training Capex.docx |
| 143 | GRAMNEXUS0000000126 | Sample Plan Table _2 (SAS).docx |
| 144 | GRAMNEXUS0000000127 | List for James.docx |
| 145 | GRAMNEXUS0000000128 | CAPEX Form Template.docx |
| 146 | GRAMNEXUS0000000129 | WD EM Scchedule.docx |
| 147 | GRAMNEXUS0000000130 | NCR-0218(SAS).docx |
| 148 | GRAMNEXUS0000000130.0001 | Microsoft_Visio_Drawing.vsdx |
| 149 | GRAMNEXUS0000000131 | CORP-SOP-0556(SAS).docx |
| 150 | GRAMNEXUS0000000132 | Test Cyp Endotoxin.xlsx |
| 151 | GRAMNEXUS0000000133 | CHM-0050(SAS).docx |
| 152 | GRAMNEXUS0000000134 | PO MW Benz.xlsx |
| 153 | GRAMNEXUS0000000135 | Copy of 2020 Headcount Planning - Colleen (2019.09.03)SAS.xlsx |
| 154 | GRAMNEXUS0000000136 | MicroWorks Sample Submission Form Benz.doc |
| 155 | GRAMNEXUS0000000137 | Purchase Order Template.xlsx |
| 156 | GRAMNEXUS0000000138 | GRAM Disciplinary Form VJ(SAS).docx |
| 157 | GRAMNEXUS0000000139 | GRAM Disciplinary Form VJ (SAS).docx |
| 158 | GRAMNEXUS0000000140 | Baseline Static SAS.vsdx |
| 159 | GRAMNEXUS0000000141 | Butterworth Incubator Refrigerator Freezers(SAS).docx |
| 160 | GRAMNEXUS0000000142 | Weigh Dispense EMPQ (CCH).docx |
| 161 | GRAMNEXUS0000000143 | Q2 2019 Water Final.docx |
| 162 | GRAMNEXUS0000000144 | Q2 2019 EM.docx |
| 163 | GRAMNEXUS0000000145 | weigh dispense matrix.docx |
| 164 | GRAMNEXUS0000000146 | Q2 2019 Water (SAS).docx |
| 165 | GRAMNEXUS0000000147 | CORP-SOP-0088 rev 12(sas).docx |
| 166 | GRAMNEXUS0000000147.0001 | Microsoft_Visio_Drawing.vsdx |
| 167 | GRAMNEXUS0000000148 | Contamination Control Policy SAS.docx |
| 168 | GRAMNEXUS0000000148.0001 | Microsoft_Visio_Drawing.vsdx |
| 169 | GRAMNEXUS0000000148.0002 | Microsoft_Visio_Drawing1.vsdx |
| 170 | GRAMNEXUS0000000149 | Sr QA CC interview questions.docx |
| 171 | GRAMNEXUS0000000150 | Quality Control - Capex Assessment Form-Weigh-Dispense.docx |
| 172 | GRAMNEXUS0000000151 | Quality Control - Capex Assessment Form-Rev1.docx |
| 173 | GRAMNEXUS0000000152 | STA-0005 T0 Data.pdf |
| 174 | GRAMNEXUS0000000153 | Contam Control.vsdx |
| 175 | GRAMNEXUS0000000154 | michbio stuff.docx |
| 176 | GRAMNEXUS0000000155 | MichBio- Lab Slides(SAS).pptx |
| 177 | GRAMNEXUS0000000156 | Contam Control.pdf |
| 178 | GRAMNEXUS0000000157 | Contamination Control Policy 5-21-19.docx |
| 179 | GRAMNEXUS0000000157.0001 | Microsoft_Visio_Drawing.vsdx |
| 180 | GRAMNEXUS0000000158 | Copy of Current Clients and Associated Drug Products 5.13.19.xlsx |
| 181 | GRAMNEXUS0000000159 | Copy of GRAM Lab Equipment List - CRB(SAS).xls |
| 182 | GRAMNEXUS0000000160 | NCR Extension request template (CCH).docx |
| 183 | GRAMNEXUS0000000161 | Tech Transfer Plan 018-154A(SAS).docx |
| 184 | GRAMNEXUS0000000161.0001 | Microsoft_Visio_Drawing.vsdx |
| 185 | GRAMNEXUS0000000162 | LIR Media Fill VAL-1485 190015 (SAS).docx |
| 186 | GRAMNEXUS0000000163 | interview questions - girard.docx |
| 187 | GRAMNEXUS0000000164 | Attachment 1 to LIR-190014(SAS).docx |
| 188 | GRAMNEXUS0000000164.0001 | Microsoft_Visio_Drawing.vsdx |
| 189 | GRAMNEXUS0000000165 | Purchase Order Dis Eff new floor.xlsx |
| 190 | GRAMNEXUS0000000166 | EI-2_SCORES_SHERRI_SCOTT.pdf |
| 191 | GRAMNEXUS0000000167 | Micro responses FDA (DMF).docx |

| 192 | GRAMNEXUS0000000168 | FDA deficiency 3 (a) (b) Review(SAS).docx |
| 193 | GRAMNEXUS0000000169 | Attachment #1 to NCR-0059 - Report.docx |
| 194 | GRAMNEXUS0000000169.0001 | Microsoft_Visio_Drawing.vsdx |
| 195 | GRAMNEXUS0000000169.0002 | Microsoft_Visio_Drawing1.vsdx |
| 196 | GRAMNEXUS0000000170 | NCR-0064 (Deviation)(SAS).docx |
| 197 | GRAMNEXUS0000000171 | 2018 Summary EM Report(SAS).docx |
| 198 | GRAMNEXUS0000000172 | CORP-FRM-0464 Annual Requalifcation Grey side(SAS).docx |
| 199 | GRAMNEXUS0000000173 | CORP-SOP-0249_Annual Room Requal(SAS).docx |
| 200 | GRAMNEXUS0000000173.0001 | Microsoft_Visio_Drawing1.vsdx |
| 201 | GRAMNEXUS0000000173.0002 | Microsoft_Visio_Drawing.vsdx |
| 202 | GRAMNEXUS0000000173.0003 | Microsoft_Visio_Drawing4.vsdx |
| 203 | GRAMNEXUS0000000173.0004 | Microsoft_Visio_Drawing3.vsdx |
| 204 | GRAMNEXUS0000000173.0005 | Microsoft_Visio_Drawing2.vsdx |
| 205 | GRAMNEXUS0000000174 | 2018 Q4 EM Report (SAS).docx |
| 206 | GRAMNEXUS0000000175 | USP EM.PNG |
| 207 | GRAMNEXUS0000000176 | DCR for STA-0005.docx |
| 208 | GRAMNEXUS0000000177 | STA-0005 In-Use Micro final.docx |
| 209 | GRAMNEXUS0000000178 | C albicans 10K.pdf |
| 210 | GRAMNEXUS0000000179 | P aeruginosa 10K.pdf |
| 211 | GRAMNEXUS0000000180 | S aureus 10K.pdf |
| 212 | GRAMNEXUS0000000181 | E coli 10K.pdf |
| 213 | GRAMNEXUS0000000182 | Position Request and Approval Form Supervisor.docx |
| 214 | GRAMNEXUS0000000183 | org chart.vsdx |
| 215 | GRAMNEXUS0000000184 | Position Request and Approval Form.docx |
| 216 | GRAMNEXUS0000000185 | STA-0005 In-Use Micro final(SAS).docx |
| 217 | GRAMNEXUS0000000186 | Template-0102_Vendor Chg. Notification - stoppers.docm |
| 218 | GRAMNEXUS0000000187 | 2018 Q4 EM Report(SAS).docx |
| 219 | GRAMNEXUS0000000188 | Micro SOP TM Forms.xls |
| 220 | GRAMNEXUS0000000189 | 020 stability data sheet.docx |
| 221 | GRAMNEXUS0000000190 | EndotoxinSampleTestingForm 015 API.pdf |
| 222 | GRAMNEXUS0000000191 | DCR for MD13022.docx |
| 223 | GRAMNEXUS0000000192 | Facility Readiness 02.docx |
| 224 | GRAMNEXUS0000000193 | 006 Endotoxin.docx |
| 225 | GRAMNEXUS0000000194 | 015 stability failure chart.docx |
| 226 | GRAMNEXUS0000000195 | 2018 Q4 QMR Water(JW).docx |
| 227 | GRAMNEXUS0000000196 | 2018 Q4 QMR Water (SAS).docx |
| 228 | GRAMNEXUS0000000197 | STA-0005 In-Use Micro.docx |
| 229 | GRAMNEXUS0000000198 | List of Micro Equipment.xlsx |
| 230 | GRAMNEXUS0000000199 | ▮▮▮▮▮ list.docx |
| 231 | GRAMNEXUS0000000200 | Copy of Master Calibration List.xlsx |
| 232 | GRAMNEXUS0000000201 | CHM-0038_rev 01(IDV)SAS.docx |
| 233 | GRAMNEXUS0000000202 | BSC EM.pdf |
| 234 | GRAMNEXUS0000000203 | Copy of GRAM Lab Equipment List - CRB final.xls |
| 235 | GRAMNEXUS0000000204 | API-0011(TMH)_ARR(comments)SAS.docx |
| 236 | GRAMNEXUS0000000205 | 2019 Goals QC Micro.xlsx |
| 237 | GRAMNEXUS0000000206 | 2019 Goal SAS.docx |
| 238 | GRAMNEXUS0000000207 | Levo micro in-use protocol-GRAM(SAS).docx |
| 239 | GRAMNEXUS0000000208 | QA-160 cal report.pdf |
| 240 | GRAMNEXUS0000000209 | 020 In Use Protocol.docx |
| 241 | GRAMNEXUS0000000210 | Levo micro in-use protocol-GRAM.docx |
| 242 | GRAMNEXUS0000000211 | ▮▮▮▮▮▮▮▮ Injection Comp.docx |
| 243 | GRAMNEXUS0000000212 | Micro January Weekend Schedule.docx |
| 244 | GRAMNEXUS0000000213 | CORP-SOP-0477 CCIT Template-0001 rev 03x(SAS).docx |
| 245 | GRAMNEXUS0000000214 | 2018 Q3 EM Report(SAS).docx |
| 246 | GRAMNEXUS0000000215 | 2018 Q3 QMR Water(SAS).docx |
| 247 | GRAMNEXUS0000000216 | rabs.docx |
| 248 | GRAMNEXUS0000000217 | EIR-180077 rev.docx |
| 249 | GRAMNEXUS0000000217.0001 | Microsoft_Visio_Drawing1.vsdx |
| 250 | GRAMNEXUS0000000217.0002 | Microsoft_Visio_Drawing.vsdx |
| 251 | GRAMNEXUS0000000218 | EM Changes SAS.docx |
| 252 | GRAMNEXUS0000000219 | NVP.pdf |
| 253 | GRAMNEXUS0000000220 | CORP-SOP-0074 Rev. 21(SAS)(CCH)(JLLv2).docx |
| 254 | GRAMNEXUS0000000220.0001 | Microsoft_Visio_Drawing10.vsdx |
| 255 | GRAMNEXUS0000000220.0002 | Microsoft_Visio_Drawing11.vsdx |

| 256 | GRAMNEXUS0000000220.0003 | Microsoft_Visio_Drawing9.vsdx |
|---|---|---|
| 257 | GRAMNEXUS0000000220.0004 | Microsoft_Visio_Drawing8.vsdx |
| 258 | GRAMNEXUS0000000220.0005 | Microsoft_Visio_Drawing1.vsdx |
| 259 | GRAMNEXUS0000000220.0006 | Microsoft_Visio_Drawing.vsdx |
| 260 | GRAMNEXUS0000000220.0007 | Microsoft_Visio Drawing2.vsdx |
| 261 | GRAMNEXUS0000000220.0008 | Microsoft_Visio_Drawing7.vsdx |
| 262 | GRAMNEXUS0000000220.0009 | Microsoft_Visio_Drawing3.vsdx |
| 263 | GRAMNEXUS0000000220.0010 | Microsoft_Visio_Drawing6.vsdx |
| 264 | GRAMNEXUS0000000220.0011 | Microsoft_Visio_Drawing5.vsdx |
| 265 | GRAMNEXUS0000000220.0012 | Microsoft_Visio_Drawing4.vsdx |
| 266 | GRAMNEXUS0000000221 | November Stability Schedule.docx |
| 267 | GRAMNEXUS0000000222 | CORP-FRM-0413 rev 05 (JW)(SAS)(JLL) reformat.docx |
| 268 | GRAMNEXUS0000000223 | Cont NVP chart.docx |
| 269 | GRAMNEXUS0000000224 | 024-142A-FOR_v02a(SAS).docx |
| 270 | GRAMNEXUS0000000225 | VAL-1389_Protocol_Client 024-142A(SAS).docx |
| 271 | GRAMNEXUS0000000226 | CC-0055 Memo.docx |
| 272 | GRAMNEXUS0000000227 | API-0029 C of A with sample prep.docx |
| 273 | GRAMNEXUS0000000228 | Benefits login.docx |
| 274 | GRAMNEXUS0000000229 | CORP-FRM-0416 rev 02.docx |
| 275 | GRAMNEXUS0000000230 | CORP-FRM-0247 rev 03.docx |
| 276 | GRAMNEXUS0000000231 | Copy of API spreadsheet(SAS).xlsx |
| 277 | GRAMNEXUS0000000232 | Bacillus timeline post fixed.docx |
| 278 | GRAMNEXUS0000000232.0001 | Microsoft_Visio_Drawing.vsdx |
| 279 | GRAMNEXUS0000000233 | Aseptic Qual memo for Deseree.docx |
| 280 | GRAMNEXUS0000000234 | VAL-1229-SUM 9-20-18 (JLL comments)SAS.docm |
| 281 | GRAMNEXUS0000000235 | EndotoxinSampleTestingForm 015 FP.pdf |
| 282 | GRAMNEXUS0000000236 | EndotoxinSampleTestingForm 015 stability.pdf |
| 283 | GRAMNEXUS0000000237 | 2018-118 - QC lab layout and UPS system - Signed.pdf |
| 284 | GRAMNEXUS0000000238 | EP Viable Limits.docx |
| 285 | GRAMNEXUS0000000239 | LIR-180030 SAS.docx |
| 286 | GRAMNEXUS0000000240 | 2018 Q2 EM Report.docx |
| 287 | GRAMNEXUS0000000241 | 32p35 (SAS).doc |
| 288 | GRAMNEXUS0000000242 | 010 hydroxy.doc |
| 289 | GRAMNEXUS0000000243 | ███████████████ Injection Work Order - v1(SAS).docx |
| 290 | GRAMNEXUS0000000244 | Facility Changes for ████.docx |
| 291 | GRAMNEXUS0000000245 | ███████████ Injection Work Order 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 v1(SAS).docx |
| 292 | GRAMNEXUS0000000246 | INTCAPA-180009 Memo (002)SAS.docx |
| 293 | GRAMNEXUS0000000247 | CR Memo for 015.docx |
| 294 | GRAMNEXUS0000000248 | EndotoxinSampleTestingForm.pdf |
| 295 | GRAMNEXUS0000000249 | Copy of Copy of GRAM Lab Equipment List - CRB(SAS) - JW Updates - 08.01.18 - SAS updates 8-3-18.xls |
| 296 | GRAMNEXUS0000000250 | June-July EM numbers.xlsx |
| 297 | GRAMNEXUS0000000251 | SGS letter.docx |
| 298 | GRAMNEXUS0000000252 | Expense report Jolly Pumpkin.xlsx |
| 299 | GRAMNEXUS0000000253 | organism calendar.xlsx |
| 300 | GRAMNEXUS0000000254 | CORP-FRM-0005 5-22(SAS).docx |
| 301 | GRAMNEXUS0000000255 | Sample Submission Form SGS.pdf |
| 302 | GRAMNEXUS0000000256 | 2018 Q1 EM Report (SAS).docx |
| 303 | GRAMNEXUS0000000257 | 2018 Q1 Water Report.pdf |
| 304 | GRAMNEXUS0000000258 | 2018 Q1 EM Report.pdf |
| 305 | GRAMNEXUS0000000259 | 2018 Q1 QMR WaterSAS.docx |
| 306 | GRAMNEXUS0000000260 | EIR's FDA.xlsx |
| 307 | GRAMNEXUS0000000261 | Media fill GP results.xlsx |
| 308 | GRAMNEXUS0000000262 | NV EIR Data thru Q1 2018.xlsx |
| 309 | GRAMNEXUS0000000263 | Copy of NV EIR Data.xlsx |
| 310 | GRAMNEXUS0000000264 | bioballs 10K.PNG |
| 311 | GRAMNEXUS0000000265 | Copy of Q1 2018 Recovery Rates.xlsx |
| 312 | GRAMNEXUS0000000266 | Investigation questions for SGS.docx |
| 313 | GRAMNEXUS0000000267 | APR NV Trend.docx |
| 314 | GRAMNEXUS0000000268 | Steritest brochure.pdf |
| 315 | GRAMNEXUS0000000269 | NCR Log_2018 SAS working.xlsx |
| 316 | GRAMNEXUS0000000270 | Cleaning Solution LpH.docx |
| 317 | GRAMNEXUS0000000271 | Data Integrity PA.xlsx |
| 318 | GRAMNEXUS0000000272 | Copy of Lab Equipment and Personnel for Expansion (SAS).xlsx |
| 319 | GRAMNEXUS0000000273 | Syringe Fill Forms.docx |

| 320 | GRAMNEXUS0000000274 | 2017 Q4 EM Report.docx |
|---|---|---|
| 321 | GRAMNEXUS0000000275 | micro 1 micro tech.docx |
| 322 | GRAMNEXUS0000000276 | SCOTT Certification of Health Care Provider.pdf |
| 323 | GRAMNEXUS0000000277 | Copy of Q3-Q4 white side NV for EIR.xlsx |
| 324 | GRAMNEXUS0000000278 | EL calculation for 015.docx |
| 325 | GRAMNEXUS0000000279 | QC MIcro TM's.docx |
| 326 | GRAMNEXUS0000000280 | Scott - 2017 Performance Assessment (DRAFT)(SAS).docx |
| 327 | GRAMNEXUS0000000281 | Lab Equipment.xlsx |
| 328 | GRAMNEXUS0000000282 | FPRS-0049 018-139A(RB)_Formatted(DWF)(SAS)(RB)SAS.docx |
| 329 | GRAMNEXUS0000000283 | PA170003 Data Integrity Micro.xlsx |
| 330 | GRAMNEXUS0000000284 | 2016 compressed gas.docx |
| 331 | GRAMNEXUS0000000285 | Disinfectant efficacy protocol.pdf |
| 332 | GRAMNEXUS0000000286 | Disinfectant Efficacy Final Report.pdf |
| 333 | GRAMNEXUS0000000287 | 020-132A_Submission Sample Plan (RB)(SAS).docx |
| 334 | GRAMNEXUS0000000288 | VAL-1118 Thermal Cycling Stability Study (020)(IDV).docx |
| 335 | GRAMNEXUS0000000289 | PA-170004 (CCH)(SAS).docx |
| 336 | GRAMNEXUS0000000290 | Aseptic Qual memo for Cody.docx |
| 337 | GRAMNEXUS0000000291 | AutoIDCards.docx |
| 338 | GRAMNEXUS0000000292 | AutoIDCards.pdf |
| 339 | GRAMNEXUS0000000293 | lab plan.pdf |
| 340 | GRAMNEXUS0000000294 | bioburden refs.PNG |
| 341 | GRAMNEXUS0000000295 | outstanding cofa's.xlsx |
| 342 | GRAMNEXUS0000000296 | Batch Release Schedule - 2017.04.14 SAS updates.xlsx |
| 343 | GRAMNEXUS0000000297 | Copy of 2017 Job Code Review(SAS).xlsx |
| 344 | GRAMNEXUS0000000298 | Copy of Site Goals - QA Support (SAS).xlsx |
| 345 | GRAMNEXUS0000000299 | Doug stuff 2.docx |
| 346 | GRAMNEXUS0000000300 | Doug stuff.docx |
| 347 | GRAMNEXUS0000000301 | Bioburden Notification.docx |
| 348 | GRAMNEXUS0000000302 | BI Memo.docx |
| 349 | GRAMNEXUS0000000303 | Nexus CMC ANDA Info (DMF)SAS comments.docx |
| 350 | GRAMNEXUS0000000304 | Audit Commitment Extension Memo.docx |
| 351 | GRAMNEXUS0000000305 | Client 009 Notification(SAS).docx |
| 352 | GRAMNEXUS0000000306 | ISO 6 and 7 trend limits.xlsx |
| 353 | GRAMNEXUS0000000307 | Custopharm Proposal - Calcitonin - JW v1 (SAS).docx |
| 354 | GRAMNEXUS0000000308 | DRAFT - Technical Microbiology Specialist Job Description.docx |
| 355 | GRAMNEXUS0000000309 | Memo Template.docx |
| 356 | GRAMNEXUS0000000310 | Q4 slides.pptx |
| 357 | GRAMNEXUS0000000310.0001 | oleObject3 |
| 358 | GRAMNEXUS0000000310.0002 | oleObject2 |
| 359 | GRAMNEXUS0000000310.0003 | oleObject1 |
| 360 | GRAMNEXUS0000000310.0004 | Microsoft_Excel_Worksheet1.xlsx |
| 361 | GRAMNEXUS0000000310.0005 | Microsoft_Excel_Worksheet2.xlsx |
| 362 | GRAMNEXUS0000000310.0006 | Microsoft_Excel_Worksheet4.xlsx |
| 363 | GRAMNEXUS0000000310.0007 | Microsoft_Excel_Worksheet3.xlsx |
| 364 | GRAMNEXUS0000000310.0008 | Microsoft_Excel_Worksheet5.xlsx |
| 365 | GRAMNEXUS0000000310.0009 | Microsoft_Excel_Worksheet8.xlsx |
| 366 | GRAMNEXUS0000000310.0010 | Microsoft_Excel_Worksheet6.xlsx |
| 367 | GRAMNEXUS0000000310.0011 | Microsoft_Excel_Worksheet7.xlsx |
| 368 | GRAMNEXUS0000000311 | Copy of Purchase Order Template.xlsx |
| 369 | GRAMNEXUS0000000312 | management review.PNG |
| 370 | GRAMNEXUS0000000313 | Perrigo batches.docx |
| 371 | GRAMNEXUS0000000314 | December 6th GRAM Management Meeting Minutes.docx |
| 372 | GRAMNEXUS0000000315 | Fill EM for MFG Training Outline - comment.docx |
| 373 | GRAMNEXUS0000000316 | 2016-1020_New Work First Floor - v4.docx |
| 374 | GRAMNEXUS0000000317 | Notes.docx |
| 375 | GRAMNEXUS0000000318 | EI-2_SCORES_SHERRI_SCOTT.pdf |
| 376 | GRAMNEXUS0000000319 | ~$R-180034.docx |
| 377 | GRAMNEXUS0000000320 | Copy of Copy of GRAM Lab Equipment List - CRB(SAS) - JW Updates - 08.01.18 - SAS updates 8-3-18.xls |
| 378 | GRAMNEXUS0000000321 | Copy of GRAM Lab Equipment List - CRB final.xls |
| 379 | GRAMNEXUS0000000322 | Copy of GRAM Lab Equipment List - CRB(SAS).xls |
| 380 | GRAMNEXUS0000000323 | deviation blanket.vsdx |
| 381 | GRAMNEXUS0000000324 | Welcome Packet.pdf |
| 382 | GRAMNEXUS0000000325 | Membership Agreement & Disclosures.pdf |
| 383 | GRAMNEXUS0000000326 | Micro SOP TM Forms.xls |

| 384 | GRAMNEXUS0000000327 | ~$ch Transfer Plan 018-154A(SAS).docx |
| 385 | GRAMNEXUS0000000328 | ~$I Memo.docx |
| 386 | GRAMNEXUS0000000329 | ~$mo Template.docx |
| 387 | GRAMNEXUS0000000330 | ~$ott_Sherri1.doc |
| 388 | GRAMNEXUS0000000331 | ~WRL0001.tmp |
| 389 | GRAMNEXUS0000000332 | ~WRL0002.tmp |
| 390 | GRAMNEXUS0000000333 | ~WRL0003.tmp |
| 391 | GRAMNEXUS0000000334 | ~WRL0004.tmp |
| 392 | GRAMNEXUS0000000335 | ~WRL0005.tmp |
| 393 | GRAMNEXUS0000000336 | ~WRL0605.tmp |
| 394 | GRAMNEXUS0000000337 | ~WRL2047.tmp |
| 395 | GRAMNEXUS0000000338 | Colleen report 01-07-19.docx |
| 396 | GRAMNEXUS0000000339 | Colleen report 01-14-19.docx |
| 397 | GRAMNEXUS0000000340 | Colleen report 01-21-19.docx |
| 398 | GRAMNEXUS0000000341 | Colleen report 01-28-19.docx |
| 399 | GRAMNEXUS0000000342 | Colleen report 02-11-19.docx |
| 400 | GRAMNEXUS0000000343 | Colleen report 02-18-19.docx |
| 401 | GRAMNEXUS0000000344 | Colleen report 03-04-19.docx |
| 402 | GRAMNEXUS0000000345 | Colleen report 03-11-19.docx |
| 403 | GRAMNEXUS0000000346 | Colleen report 03-19-19.docx |
| 404 | GRAMNEXUS0000000347 | Colleen report 03-25-19.docx |
| 405 | GRAMNEXUS0000000348 | Colleen report 04-01-19.docx |
| 406 | GRAMNEXUS0000000349 | Colleen report 04-08-19.docx |
| 407 | GRAMNEXUS0000000350 | Colleen report 04-15-19.docx |
| 408 | GRAMNEXUS0000000351 | Colleen report 04-22-19.docx |
| 409 | GRAMNEXUS0000000352 | Colleen report 04-29-19.docx |
| 410 | GRAMNEXUS0000000353 | Colleen report 05-06-19.docx |
| 411 | GRAMNEXUS0000000354 | Colleen report 05-13-19.docx |
| 412 | GRAMNEXUS0000000355 | Colleen report 05-20-19.docx |
| 413 | GRAMNEXUS0000000356 | Colleen report 05-28-19.docx |
| 414 | GRAMNEXUS0000000357 | Colleen report 06-10-19.docx |
| 415 | GRAMNEXUS0000000358 | Colleen report 08-12-19.docx |
| 416 | GRAMNEXUS0000000359 | Colleen report 08-19-19.docx |
| 417 | GRAMNEXUS0000000360 | Colleen report 09-03-19.docx |
| 418 | GRAMNEXUS0000000361 | Colleen report 09-09-19.docx |
| 419 | GRAMNEXUS0000000362 | Colleen report 09-16-19.docx |
| 420 | GRAMNEXUS0000000363 | Colleen report 09-23-19.docx |
| 421 | GRAMNEXUS0000000364 | Colleen report 09-30-19.docx |
| 422 | GRAMNEXUS0000000365 | Colleen report 10-07-19.docx |
| 423 | GRAMNEXUS0000000366 | Colleen report 10-1-18.docx |
| 424 | GRAMNEXUS0000000367 | Colleen report 10-15-18.docx |
| 425 | GRAMNEXUS0000000368 | Colleen report 10-22-18.docx |
| 426 | GRAMNEXUS0000000369 | Colleen report 10-22-19.docx |
| 427 | GRAMNEXUS0000000370 | Colleen report 10-28-19.docx |
| 428 | GRAMNEXUS0000000371 | Colleen report 10-29-18.docx |
| 429 | GRAMNEXUS0000000372 | Colleen report 10-8-18.docx |
| 430 | GRAMNEXUS0000000373 | Colleen report 11-04-19.docx |
| 431 | GRAMNEXUS0000000374 | Colleen report 11-05-18.docx |
| 432 | GRAMNEXUS0000000375 | Colleen report 11-12-18.docx |
| 433 | GRAMNEXUS0000000376 | Colleen report 11-18-19.docx |
| 434 | GRAMNEXUS0000000377 | Colleen report 11-26-18.docx |
| 435 | GRAMNEXUS0000000378 | Colleen report 12-03-18.docx |
| 436 | GRAMNEXUS0000000379 | Colleen report 12-10-18.docx |
| 437 | GRAMNEXUS0000000380 | Colleen report 7-16-18.docx |
| 438 | GRAMNEXUS0000000381 | Colleen report 7-2-18.docx |
| 439 | GRAMNEXUS0000000382 | Colleen report 7-23-18.docx |
| 440 | GRAMNEXUS0000000383 | Colleen report 7-30-18.docx |
| 441 | GRAMNEXUS0000000384 | Colleen report 7-9-18.docx |
| 442 | GRAMNEXUS0000000385 | Colleen report 8-20-18.docx |
| 443 | GRAMNEXUS0000000386 | Colleen report 8-27-18.docx |
| 444 | GRAMNEXUS0000000387 | Colleen report 8-6-18.docx |
| 445 | GRAMNEXUS0000000388 | Colleen report 9-10-18.docx |
| 446 | GRAMNEXUS0000000389 | Colleen report 9-17-18.docx |
| 447 | GRAMNEXUS0000000390 | Colleen report 9-24-18.docx |

| 448 | GRAMNEXUS0000000391 | Colleen report 9-4-18.docx |
|---|---|---|
| 449 | GRAMNEXUS0000000392 | Colleen weekly document 5-21-18.docx |
| 450 | GRAMNEXUS0000000393 | Colleen weekly document 5-29-18.docx |
| 451 | GRAMNEXUS0000000394 | Colleen weekly document 6-25-18.docx |
| 452 | GRAMNEXUS0000000395 | Colleen weekly document 6-5-18.docx |
| 453 | GRAMNEXUS0000000396 | Copy of GRAM Micro Documents to Draft(SAS).xlsx |
| 454 | GRAMNEXUS0000000397 | TOC Training Capex(SAS).docx |
| 455 | GRAMNEXUS0000000398 | ~$lleen report 06-10-19.docx |
| 456 | GRAMNEXUS0000000399 | Custopharm-Calcitonin Injection - Meeting Agenda - 2017 07 31.pdf |
| 457 | GRAMNEXUS0000000400 | 146F92DC.tmp |
| 458 | GRAMNEXUS0000000400.0001 | Microsoft_Excel_Worksheet2.xlsx |
| 459 | GRAMNEXUS0000000400.0002 | Microsoft_Excel_Worksheet1.xlsx |
| 460 | GRAMNEXUS0000000401 | 170059 Att 1.docx |
| 461 | GRAMNEXUS0000000402 | 29678004.tmp |
| 462 | GRAMNEXUS0000000402.0001 | Microsoft_Excel_Worksheet2.xlsx |
| 463 | GRAMNEXUS0000000402.0002 | Microsoft_Excel_Worksheet3.xlsx |
| 464 | GRAMNEXUS0000000402.0003 | Microsoft_Excel_Worksheet1.xlsx |
| 465 | GRAMNEXUS0000000402.0004 | Microsoft_Excel_Worksheet4.xlsx |
| 466 | GRAMNEXUS0000000402.0005 | Microsoft_Excel_Worksheet5.xlsx |
| 467 | GRAMNEXUS0000000403 | 2D4D7FE8.tmp |
| 468 | GRAMNEXUS0000000403.0001 | Microsoft_Excel_Worksheet1.xlsx |
| 469 | GRAMNEXUS0000000403.0002 | Microsoft_Excel_Worksheet2.xlsx |
| 470 | GRAMNEXUS0000000403.0003 | Microsoft_Excel_Worksheet4.xlsx |
| 471 | GRAMNEXUS0000000403.0004 | Microsoft_Excel_Worksheet3.xlsx |
| 472 | GRAMNEXUS0000000404 | 6D468A4F.tmp |
| 473 | GRAMNEXUS0000000404.0001 | Microsoft_Excel_Worksheet1.xlsx |
| 474 | GRAMNEXUS0000000404.0002 | Microsoft_Excel_Worksheet2.xlsx |
| 475 | GRAMNEXUS0000000404.0003 | Microsoft_Excel_Worksheet4.xlsx |
| 476 | GRAMNEXUS0000000404.0004 | Microsoft_Excel_Worksheet3.xlsx |
| 477 | GRAMNEXUS0000000405 | 9CBAD4C3.tmp |
| 478 | GRAMNEXUS0000000405.0001 | Microsoft_Excel_Worksheet1.xlsx |
| 479 | GRAMNEXUS0000000405.0002 | Microsoft_Excel_Worksheet2.xlsx |
| 480 | GRAMNEXUS0000000405.0003 | Microsoft_Excel_Worksheet4.xlsx |
| 481 | GRAMNEXUS0000000405.0004 | Microsoft_Excel_Worksheet3.xlsx |
| 482 | GRAMNEXUS0000000406 | Copy of 010 lot endotoxin results.xlsx |
| 483 | GRAMNEXUS0000000407 | D5AA1D2D.tmp |
| 484 | GRAMNEXUS0000000407.0001 | Microsoft_Excel_Worksheet2.xlsx |
| 485 | GRAMNEXUS0000000407.0002 | Microsoft_Excel_Worksheet1.xlsx |
| 486 | GRAMNEXUS0000000408 | DR-160176 Review.docx |
| 487 | GRAMNEXUS0000000409 | DR-170010 - List of Affected Products.docx |
| 488 | GRAMNEXUS0000000410 | dr-170010 Attachment 3 010 Scope (SAS).docx |
| 489 | GRAMNEXUS0000000411 | DR-170010 FINAL(SAS).docx |
| 490 | GRAMNEXUS0000000412 | DR-170024 (Client Review) Comments MD 06APR17(SAS).docx |
| 491 | GRAMNEXUS0000000413 | DR-170024 (KR)(SAS) (CCH)1.docx |
| 492 | GRAMNEXUS0000000414 | DR-170024 (KR)(SAS).docx |
| 493 | GRAMNEXUS0000000415 | DR-170024(SAS).docx |
| 494 | GRAMNEXUS0000000416 | DR-170059.docx |
| 495 | GRAMNEXUS0000000417 | DR-170154 SAS comments.docx |
| 496 | GRAMNEXUS0000000418 | DR-170154 SAS KEL with RC.docx |
| 497 | GRAMNEXUS0000000419 | DR-170177 (KR updated after converstaion) SWB v2 (002)(CCH)SAS.docx |
| 498 | GRAMNEXUS0000000420 | DR-170177 (KR updated after converstaion) SWB v2 SAS.docx |
| 499 | GRAMNEXUS0000000421 | GRAM Change of Status.docx |
| 500 | GRAMNEXUS0000000422 | NaCl correction COR-170017.docm |
| 501 | GRAMNEXUS0000000423 | Nonconformance Correction Form.docm |
| 502 | GRAMNEXUS0000000424 | Q4 2019 EM(SAS).docx |
| 503 | GRAMNEXUS0000000425 | Q4 slides.pptx |
| 504 | GRAMNEXUS0000000425.0001 | Microsoft_Excel_Worksheet2.xlsx |
| 505 | GRAMNEXUS0000000425.0002 | Microsoft_Excel_Worksheet3.xlsx |
| 506 | GRAMNEXUS0000000425.0003 | Microsoft_Excel_Worksheet1.xlsx |
| 507 | GRAMNEXUS0000000425.0004 | Microsoft_Excel_Worksheet4.xlsx |
| 508 | GRAMNEXUS0000000425.0005 | Microsoft_Excel_Worksheet5.xlsx |
| 509 | GRAMNEXUS0000000426 | Root cause investigation DR17024 (CCH)(SAS).docx |
| 510 | GRAMNEXUS0000000427 | Root cause investigation DR17024 final.docx |
| 511 | GRAMNEXUS0000000428 | Root cause investigation NaCl buffer.docx |

| 512 | GRAMNEXUS0000000429 | 160089 pic.docx |
| 513 | GRAMNEXUS0000000430 | EIR-160081.docx |
| 514 | GRAMNEXUS0000000431 | EIR-160082 SWBv1 SAS1.docx |
| 515 | GRAMNEXUS0000000431.0001 | Microsoft_Visio_Drawing1.vsdx |
| 516 | GRAMNEXUS0000000432 | EIR-160085.docx |
| 517 | GRAMNEXUS0000000433 | EIR-160086 (CCH)(SAS) (2).docx |
| 518 | GRAMNEXUS0000000434 | EIR-160086 (CCH)(SAS).docx |
| 519 | GRAMNEXUS0000000435 | EIR-160086 SWBv1 SAS.docx |
| 520 | GRAMNEXUS0000000436 | EIR-160086.docx |
| 521 | GRAMNEXUS0000000437 | EIR-160087(SAS).docx |
| 522 | GRAMNEXUS0000000438 | EIR-160087.docx |
| 523 | GRAMNEXUS0000000439 | EIR-160089.docx |
| 524 | GRAMNEXUS0000000440 | EIR-170021 SWBv1(SAS).docx |
| 525 | GRAMNEXUS0000000441 | EIR-170021 SWBv2(SAS).docx |
| 526 | GRAMNEXUS0000000442 | EIR-170025.docx |
| 527 | GRAMNEXUS0000000443 | EIR-170052 Extension.docx |
| 528 | GRAMNEXUS0000000444 | EIR-170063 SWB v01 SAS v01.docx |
| 529 | GRAMNEXUS0000000444.0001 | Microsoft_Visio_Drawing1.vsdx |
| 530 | GRAMNEXUS0000000445 | EIR-170063 SWB v01 SAS.docx |
| 531 | GRAMNEXUS0000000445.0001 | Microsoft_Visio_Drawing1.vsdx |
| 532 | GRAMNEXUS0000000446 | EIR-170063 SWB v02 SAS v02.docx |
| 533 | GRAMNEXUS0000000446.0001 | Microsoft_Visio_Drawing1.vsdx |
| 534 | GRAMNEXUS0000000447 | EIR-170063 SWB v02 SAS v03.docx |
| 535 | GRAMNEXUS0000000447.0001 | Microsoft_Visio_Drawing1.vsdx |
| 536 | GRAMNEXUS0000000448 | EIR-170064 SAS.docx |
| 537 | GRAMNEXUS0000000448.0001 | Microsoft_Visio_Drawing1.vsdx |
| 538 | GRAMNEXUS0000000449 | EIR-170084.docx |
| 539 | GRAMNEXUS0000000449.0001 | Microsoft_Visio_Drawing1.vsdx |
| 540 | GRAMNEXUS0000000450 | EIR-180001.pdf |
| 541 | GRAMNEXUS0000000451 | EIR-180002.pdf |
| 542 | GRAMNEXUS0000000452 | EIR-180003.pdf |
| 543 | GRAMNEXUS0000000453 | EIR-180004.pdf |
| 544 | GRAMNEXUS0000000454 | EIR-180005.pdf |
| 545 | GRAMNEXUS0000000455 | EIR-180006.pdf |
| 546 | GRAMNEXUS0000000456 | EIR-180007.pdf |
| 547 | GRAMNEXUS0000000457 | EIR-180008 Extension 2.docx |
| 548 | GRAMNEXUS0000000458 | EIR-180014 Extension 1.docx |
| 549 | GRAMNEXUS0000000459 | EIR-180014.pdf |
| 550 | GRAMNEXUS0000000460 | EIR-180015 Extension 1.docx |
| 551 | GRAMNEXUS0000000461 | EIR-180016.pdf |
| 552 | GRAMNEXUS0000000462 | EIR-180019 Extension 1.docx |
| 553 | GRAMNEXUS0000000463 | EIR-180020.docx |
| 554 | GRAMNEXUS0000000464 | EIR-180020.pdf |
| 555 | GRAMNEXUS0000000465 | EIR-180021.docx |
| 556 | GRAMNEXUS0000000466 | EIR-180021.pdf |
| 557 | GRAMNEXUS0000000467 | EIR-180022 Extension 1.docx |
| 558 | GRAMNEXUS0000000468 | EIR-180022.pdf |
| 559 | GRAMNEXUS0000000469 | EIR-180025.pdf |
| 560 | GRAMNEXUS0000000470 | EIR-180027.pdf |
| 561 | GRAMNEXUS0000000471 | EIR-180028.pdf |
| 562 | GRAMNEXUS0000000472 | EIR-180029.pdf |
| 563 | GRAMNEXUS0000000473 | EIR-180030.pdf |
| 564 | GRAMNEXUS0000000474 | EIR-180031.pdf |
| 565 | GRAMNEXUS0000000475 | EIR-180034.pdf |
| 566 | GRAMNEXUS0000000476 | EIR-180036.pdf |
| 567 | GRAMNEXUS0000000477 | EIR-180037.pdf |
| 568 | GRAMNEXUS0000000478 | EIR-180038.pdf |
| 569 | GRAMNEXUS0000000479 | EIR-180047.pdf |
| 570 | GRAMNEXUS0000000480 | EIR-180049.pdf |
| 571 | GRAMNEXUS0000000481 | EIR-180050.pdf |
| 572 | GRAMNEXUS0000000482 | EIR-180052.pdf |
| 573 | GRAMNEXUS0000000483 | EIR-180053.pdf |
| 574 | GRAMNEXUS0000000484 | EIR-180055.pdf |
| 575 | GRAMNEXUS0000000485 | EIR-180057.pdf |

| 576 | GRAMNEXUS0000000486 | EIR-180058.pdf |
| 577 | GRAMNEXUS0000000487 | EIR-180060 SAS.docx |
| 578 | GRAMNEXUS0000000487.0001 | Microsoft_Visio_Drawing.vsdx |
| 579 | GRAMNEXUS0000000487.0002 | Microsoft_Visio_Drawing1.vsdx |
| 580 | GRAMNEXUS0000000488 | EIR-180061.docx |
| 581 | GRAMNEXUS0000000488.0001 | Microsoft_Visio_Drawing.vsdx |
| 582 | GRAMNEXUS0000000489 | EIR-180061.pdf |
| 583 | GRAMNEXUS0000000490 | EIR-180062.pdf |
| 584 | GRAMNEXUS0000000491 | EIR-180064.pdf |
| 585 | GRAMNEXUS0000000492 | EIR-180074.pdf |
| 586 | GRAMNEXUS0000000493 | EIR-180075.pdf |
| 587 | GRAMNEXUS0000000494 | NCR-0177.docx |
| 588 | GRAMNEXUS0000000495 | NCR-0178.docx |
| 589 | GRAMNEXUS0000000495.0001 | Microsoft_Visio_Drawing1.vsdx |
| 590 | GRAMNEXUS0000000495.0002 | Microsoft_Visio_Drawing.vsdx |
| 591 | GRAMNEXUS0000000495.0003 | Microsoft_Visio_Drawing2.vsdx |
| 592 | GRAMNEXUS0000000496 | NCR-0206 DS #7 (SAS).docx |
| 593 | GRAMNEXUS0000000497 | Q3 white side NV for EIR.xlsx |
| 594 | GRAMNEXUS0000000498 | Room 211 Non viable trends.docx |
| 595 | GRAMNEXUS0000000499 | EIR 170015.pdf |
| 596 | GRAMNEXUS0000000500 | EIR-170001.pdf |
| 597 | GRAMNEXUS0000000501 | EIR-170002.pdf |
| 598 | GRAMNEXUS0000000502 | EIR-170003.pdf |
| 599 | GRAMNEXUS0000000503 | EIR-170004.pdf |
| 600 | GRAMNEXUS0000000504 | EIR-170005.pdf |
| 601 | GRAMNEXUS0000000505 | EIR-170010.pdf |
| 602 | GRAMNEXUS0000000506 | EIR-170014.pdf |
| 603 | GRAMNEXUS0000000507 | EIR-170016.pdf |
| 604 | GRAMNEXUS0000000508 | EIR-170019.pdf |
| 605 | GRAMNEXUS0000000509 | EIR-170024.pdf |
| 606 | GRAMNEXUS0000000510 | EIR-170032.pdf |
| 607 | GRAMNEXUS0000000511 | EIR-170035.pdf |
| 608 | GRAMNEXUS0000000512 | EIR-170038.pdf |
| 609 | GRAMNEXUS0000000513 | EIR-170039.pdf |
| 610 | GRAMNEXUS0000000514 | EIR-170043.pdf |
| 611 | GRAMNEXUS0000000515 | EIR-170045.pdf |
| 612 | GRAMNEXUS0000000516 | EIR-170046.pdf |
| 613 | GRAMNEXUS0000000517 | EIR-170048.pdf |
| 614 | GRAMNEXUS0000000518 | EIR-170051.pdf |
| 615 | GRAMNEXUS0000000519 | EIR-170052.pdf |
| 616 | GRAMNEXUS0000000520 | EIR-170054.pdf |
| 617 | GRAMNEXUS0000000521 | EIR-170058.pdf |
| 618 | GRAMNEXUS0000000522 | EIR-170063.pdf |
| 619 | GRAMNEXUS0000000523 | EIR-170064.pdf |
| 620 | GRAMNEXUS0000000524 | EIR-170065.pdf |
| 621 | GRAMNEXUS0000000525 | EIR-170073 Revised.pdf |
| 622 | GRAMNEXUS0000000526 | EIR-170081.pdf |
| 623 | GRAMNEXUS0000000527 | EIR-170082.pdf |
| 624 | GRAMNEXUS0000000528 | EIR-170084.pdf |
| 625 | GRAMNEXUS0000000529 | EIR-170085.pdf |
| 626 | GRAMNEXUS0000000530 | EIR-170089.pdf |
| 627 | GRAMNEXUS0000000531 | EIR-170090.pdf |
| 628 | GRAMNEXUS0000000532 | EIR-170091.pdf |
| 629 | GRAMNEXUS0000000533 | EIR-170095.pdf |
| 630 | GRAMNEXUS0000000534 | EIR-170096.pdf |
| 631 | GRAMNEXUS0000000535 | EIR-170003 (003).docx |
| 632 | GRAMNEXUS0000000536 | EIR-170004 (002) SAS.docx |
| 633 | GRAMNEXUS0000000537 | EIR-170004 (002) table added.docx |
| 634 | GRAMNEXUS0000000538 | EIR-170015.pdf |
| 635 | GRAMNEXUS0000000539 | EIR-170021.docx |
| 636 | GRAMNEXUS0000000540 | EIR-170026 SWBv01 (SAS).docx |
| 637 | GRAMNEXUS0000000541 | EIR-170041 swbv01 sas.docx |
| 638 | GRAMNEXUS0000000542 | NCR-0361 BLP #5 (SAS).docx |
| 639 | GRAMNEXUS0000000543 | PQ Requirements.docx |

| 640 | GRAMNEXUS0000000544 | 2020 Micro Butterworth Budget.xlsx |
| 641 | GRAMNEXUS0000000545 | ANA Agar PO.pdf |
| 642 | GRAMNEXUS0000000546 | ANA Agar PO.xlsx |
| 643 | GRAMNEXUS0000000547 | butter equip setpoints.xlsx |
| 644 | GRAMNEXUS0000000548 | Butterworth Classififed Spaces IOQ.docx |
| 645 | GRAMNEXUS0000000549 | Butterworth EMPQ C-D MC reformat.docx |
| 646 | GRAMNEXUS0000000550 | Butterworth EMPQ C-D.docx |
| 647 | GRAMNEXUS0000000551 | Butterworth room dimensions.docx |
| 648 | GRAMNEXUS0000000552 | Carboy PO.xlsx |
| 649 | GRAMNEXUS0000000553 | CART order.xlsx |
| 650 | GRAMNEXUS0000000554 | Cart PO.xlsx |
| 651 | GRAMNEXUS0000000555 | CC-0175 Scope (SAS) REV.docx |
| 652 | GRAMNEXUS0000000556 | Copy of Copy of WO 2307 MFG and LAB BTR On-Boarding.xlsx |
| 653 | GRAMNEXUS0000000557 | Copy of GRAM Micro Documents to Draft(SAS)(CCH).xlsx |
| 654 | GRAMNEXUS0000000558 | Copy of GRAM Micro Documents to Draft(SAS)(CCH)1.xlsx |
| 655 | GRAMNEXUS0000000559 | Cycle Decn BI #1.pdf |
| 656 | GRAMNEXUS0000000560 | Cycle Decon BI#2.pdf |
| 657 | GRAMNEXUS0000000561 | Dis Eff Matrix surfaces.xlsx |
| 658 | GRAMNEXUS0000000562 | Dis Eff Matrix.xlsx |
| 659 | GRAMNEXUS0000000563 | EM media PO 2-8 11449.xlsx |
| 660 | GRAMNEXUS0000000564 | EM media PO 2.xlsx |
| 661 | GRAMNEXUS0000000565 | EM media PO.xlsx |
| 662 | GRAMNEXUS0000000566 | EMQ_GRAM Butterworth Facility_SCN 20APR20_DRAFT for REVIEW.docx |
| 663 | GRAMNEXUS0000000567 | GRAM PO 11410.pdf |
| 664 | GRAMNEXUS0000000568 | GRAM SOP Administration of the Vitek 2 Compact System.docx |
| 665 | GRAMNEXUS0000000569 | IC-XT 100mm CofA.pdf |
| 666 | GRAMNEXUS0000000570 | IC-XT Rodac CofA.pdf |
| 667 | GRAMNEXUS0000000571 | Iso Run 1 with ID.pdf |
| 668 | GRAMNEXUS0000000572 | Iso Run 2.pdf |
| 669 | GRAMNEXUS0000000573 | Iso Run 3.pdf |
| 670 | GRAMNEXUS0000000574 | lab stools PO.xlsx |
| 671 | GRAMNEXUS0000000575 | Lab water memo.doc |
| 672 | GRAMNEXUS0000000576 | M10-20-00 - EQUIPMENT PLAN LEVEL 2 OVERALL_R2 (002).pdf |
| 673 | GRAMNEXUS0000000577 | Manuals Memo.pdf |
| 674 | GRAMNEXUS0000000578 | Memo for AI-0363.pdf |
| 675 | GRAMNEXUS0000000579 | MicroWorks Sample Submission Form endo.doc |
| 676 | GRAMNEXUS0000000580 | MW EMPQ PO.xlsx |
| 677 | GRAMNEXUS0000000581 | MW Endo PO.xlsx |
| 678 | GRAMNEXUS0000000582 | office PO.xlsx |
| 679 | GRAMNEXUS0000000583 | PO 11120 VWR.pdf |
| 680 | GRAMNEXUS0000000584 | PO 11359 Charles River 5-27-20.pdf |
| 681 | GRAMNEXUS0000000585 | PO for hose barbs.xlsx |
| 682 | GRAMNEXUS0000000586 | PQ Requirements.docx |
| 683 | GRAMNEXUS0000000587 | STERIVAP SL_np_en 2018-02_V03_USA.pdf |
| 684 | GRAMNEXUS0000000588 | STERIVAP SL_ns_en 2015-07_V1.01.pdf |
| 685 | GRAMNEXUS0000000589 | VAL-1702 Tunnel Protocol Deviation 1 10mL vials.docx |
| 686 | GRAMNEXUS0000000590 | VW run 3 2ml.xlsx |
| 687 | GRAMNEXUS0000000591 | vwr order.xlsx |
| 688 | GRAMNEXUS0000000592 | Weigh Dispense EMPQ.docx |
| 689 | GRAMNEXUS0000000592.0001 | Microsoft_Visio_Drawing4.vsdx |
| 690 | GRAMNEXUS0000000592.0002 | Microsoft_Visio_Drawing.vsdx |
| 691 | GRAMNEXUS0000000592.0003 | Microsoft_Visio_Drawing1.vsdx |
| 692 | GRAMNEXUS0000000592.0004 | Microsoft_Visio_Drawing2.vsdx |
| 693 | GRAMNEXUS0000000592.0005 | Microsoft_Visio_Drawing5.vsdx |
| 694 | GRAMNEXUS0000000592.0006 | Microsoft_Visio_Drawing6.vsdx |
| 695 | GRAMNEXUS0000000592.0007 | Microsoft_Visio_Drawing7.vsdx |
| 696 | GRAMNEXUS0000000592.0008 | Microsoft_Visio_Drawing3.vsdx |
| 697 | GRAMNEXUS0000000593 | ~$tterworth EMPQ C-D.docx |
| 698 | GRAMNEXUS0000000594 | 1325.pdf |
| 699 | GRAMNEXUS0000000595 | BTR_FIRST_QC_LYT_001 1325.pdf |
| 700 | GRAMNEXUS0000000596 | Butterworth EMPQ C-D MC.docx |
| 701 | GRAMNEXUS0000000597 | 13693 Harvest Lane Energy Costs.docx |
| 702 | GRAMNEXUS0000000598 | 2017 Scott S Form 1040 Individual Tax Return_Records.pdf |
| 703 | GRAMNEXUS0000000599 | 2018 Scott S Form 1040 Individual Tax Return_Records.pdf |

| 704 | GRAMNEXUS0000000600 | 20190419_BANK_four_star_checking_8440.pdf |
| 705 | GRAMNEXUS0000000601 | 20190430_BANK_bonus_savings_0613.pdf |
| 706 | GRAMNEXUS0000000602 | 20190520_BANK_four_star_checking_8440.pdf |
| 707 | GRAMNEXUS0000000603 | 20190531_BANK_bonus_savings_0613.pdf |
| 708 | GRAMNEXUS0000000604 | 20190619_BANK_four_star_checking_8440.pdf |
| 709 | GRAMNEXUS0000000605 | Consumers usage.pdf |
| 710 | GRAMNEXUS0000000606 | Gas usage.docx |
| 711 | GRAMNEXUS0000000607 | House Checklist.docx |
| 712 | GRAMNEXUS0000000608 | https___docs.libertymutual.pdf |
| 713 | GRAMNEXUS0000000609 | license.pdf |
| 714 | GRAMNEXUS0000000610 | Micro Tech questions.docx |
| 715 | GRAMNEXUS0000000611 | Pay 5-31-19.pdf |
| 716 | GRAMNEXUS0000000612 | Pay 6-14-19.pdf |
| 717 | GRAMNEXUS0000000613 | purchase agreement.pdf |
| 718 | GRAMNEXUS0000000614 | Scott - Fremont Home Application 2017-05-26.pdf |
| 719 | GRAMNEXUS0000000615 | scott home only.pdf |
| 720 | GRAMNEXUS0000000616 | Scott Prequal.pdf |
| 721 | GRAMNEXUS0000000617 | Scott.2017-04-21.pdf |
| 722 | GRAMNEXUS0000000618 | Scott.2017-05-05.pdf |
| 723 | GRAMNEXUS0000000619 | Sell Letter.docx |
| 724 | GRAMNEXUS0000000620 | Sheri Scott on Beechwood 6-19-17.pdf |
| 725 | GRAMNEXUS0000000621 | Sherri Scott 2015 Tax Return_T15_For_Filing.pdf |
| 726 | GRAMNEXUS0000000622 | Sparrow receipt.docx |
| 727 | GRAMNEXUS0000000623 | W2 17-18.pdf |
| 728 | GRAMNEXUS0000000624 | ~2016 Scott S Form 1040 Individual Tax Return_Records.pdf |
| 729 | GRAMNEXUS0000000625 | custom.hpdata |
| 730 | GRAMNEXUS0000000626 | 190015 Hypothesis(SAS).docx |
| 731 | GRAMNEXUS0000000627 | Attachment #1 to LIR-190015 final.docx |
| 732 | GRAMNEXUS0000000628 | Attachment #3 LIR-180015.docx |
| 733 | GRAMNEXUS0000000629 | Attachment 1 to LIR-190014 4-23-19 (SAS).docx |
| 734 | GRAMNEXUS0000000630 | Attachment 1 to LIR-190014 4-23-19(sas).docx |
| 735 | GRAMNEXUS0000000631 | Attachment 1 to LIR-190021.docx |
| 736 | GRAMNEXUS0000000632 | Attachment 1 to LIR-190026(SAS).docx |
| 737 | GRAMNEXUS0000000633 | Attachment 1 to LIR-190040 final.docx |
| 738 | GRAMNEXUS0000000634 | Attachment 1 to LIR-190057(SAS).docx |
| 739 | GRAMNEXUS0000000635 | Attachment 1 to LIR-190065 (CMD)(SAS).docx |
| 740 | GRAMNEXUS0000000636 | Attachment 1 to LIR-190065 (SAS).docx |
| 741 | GRAMNEXUS0000000637 | CLIR Extension 170008-2.docx |
| 742 | GRAMNEXUS0000000638 | CLIR Extension 170008.docx |
| 743 | GRAMNEXUS0000000639 | CLIR-170008.docx |
| 744 | GRAMNEXUS0000000640 | CLIR-170008.pdf |
| 745 | GRAMNEXUS0000000641 | CLIR-180002.docx |
| 746 | GRAMNEXUS0000000642 | CLIR-180002.pdf |
| 747 | GRAMNEXUS0000000643 | LIR 170007.docx |
| 748 | GRAMNEXUS0000000644 | LIR 170014.docx |
| 749 | GRAMNEXUS0000000645 | LIR 180006 A1.docx |
| 750 | GRAMNEXUS0000000646 | LIR Extension 170007.docx |
| 751 | GRAMNEXUS0000000647 | LIR Extension 170010.docx |
| 752 | GRAMNEXUS0000000648 | LIR Extension 170014-2.docx |
| 753 | GRAMNEXUS0000000649 | LIR Extension 170014-3.docx |
| 754 | GRAMNEXUS0000000650 | LIR Extension 170014.docx |
| 755 | GRAMNEXUS0000000651 | LIR Extension 170032.docx |
| 756 | GRAMNEXUS0000000652 | LIR Extension 170033.docx |
| 757 | GRAMNEXUS0000000653 | LIR-170007 QA impact (CCH)(SAS).docx |
| 758 | GRAMNEXUS0000000654 | LIR-170010.docx |
| 759 | GRAMNEXUS0000000655 | LIR-170014 ext.pdf |
| 760 | GRAMNEXUS0000000656 | LIR-170023 - Attachment #5 SAS.docx |
| 761 | GRAMNEXUS0000000657 | LIR-170023.docx |
| 762 | GRAMNEXUS0000000658 | LIR-170023.pdf |
| 763 | GRAMNEXUS0000000659 | LIR-170032.docx |
| 764 | GRAMNEXUS0000000660 | LIR-170032.pdf |
| 765 | GRAMNEXUS0000000661 | LIR-170033.docx |
| 766 | GRAMNEXUS0000000662 | LIR-170033.pdf |
| 767 | GRAMNEXUS0000000663 | LIR-180006.pdf |

| 768 | GRAMNEXUS0000000664 | LIR-180007 Attachment 2.docx |
| 769 | GRAMNEXUS0000000665 | LIR-180007 Attachment 3.docx |
| 770 | GRAMNEXUS0000000666 | LIR-180007.pdf |
| 771 | GRAMNEXUS0000000667 | LIR-180015 (CCH).docx |
| 772 | GRAMNEXUS0000000668 | LIR-180015.docx |
| 773 | GRAMNEXUS0000000669 | LIR-180015_JLL comments SAS.docx |
| 774 | GRAMNEXUS0000000670 | LIR-180016 _comments.docx |
| 775 | GRAMNEXUS0000000671 | LIR-180016.docx |
| 776 | GRAMNEXUS0000000672 | LIR-180016.pdf |
| 777 | GRAMNEXUS0000000673 | LIR-180030 Att 2.docx |
| 778 | GRAMNEXUS0000000674 | LIR-190012(SAS) (002).docx |
| 779 | GRAMNEXUS0000000675 | LIR-190012(SAS).docx |
| 780 | GRAMNEXUS0000000676 | LIR-190012(SAS)1.docx |
| 781 | GRAMNEXUS0000000677 | LIR-190012.docx |
| 782 | GRAMNEXUS0000000678 | LIR-190014 05-09-19.docx |
| 783 | GRAMNEXUS0000000679 | LIR-190014 05-13-19(SAS).docx |
| 784 | GRAMNEXUS0000000680 | LIR-190015 FINAL.docx |
| 785 | GRAMNEXUS0000000681 | LIR-190015(SAS) (JLL)1.docx |
| 786 | GRAMNEXUS0000000682 | LIR-190015(SAS).docx |
| 787 | GRAMNEXUS0000000683 | LIR-190021(SAS).docx |
| 788 | GRAMNEXUS0000000684 | LIR-190021.pdf |
| 789 | GRAMNEXUS0000000685 | LIR-190026 Final.docx |
| 790 | GRAMNEXUS0000000686 | LIR-190026(SAS).docx |
| 791 | GRAMNEXUS0000000687 | LIR-190026.pdf |
| 792 | GRAMNEXUS0000000688 | LIR-190029 7-16-19 (CMD) (003)(SAS).docx |
| 793 | GRAMNEXUS0000000689 | LIR-190031 Endotoxin OOS API-0003 (CMD).docx |
| 794 | GRAMNEXUS0000000690 | LIR-190031 Endotoxin OOS API-0003(SAS).docx |
| 795 | GRAMNEXUS0000000691 | LIR-190031 Endotoxin OOS API-0003.docx |
| 796 | GRAMNEXUS0000000692 | LIR-190031 Hypothesis Testing CK 7-31-2019(SAS).docx |
| 797 | GRAMNEXUS0000000693 | LIR-190031 Hypothesis Testing.docx |
| 798 | GRAMNEXUS0000000694 | LIR-190032 (CCH).docx |
| 799 | GRAMNEXUS0000000695 | LIR-190032.docx |
| 800 | GRAMNEXUS0000000696 | LIR-190032.pdf |
| 801 | GRAMNEXUS0000000697 | LIR-190036 (SAS) (CMD) Final.docx |
| 802 | GRAMNEXUS0000000698 | LIR-190036 (SAS).docx |
| 803 | GRAMNEXUS0000000699 | LIR-190040 final.docx |
| 804 | GRAMNEXUS0000000700 | LIR-190057(SAS).docx |
| 805 | GRAMNEXUS0000000701 | LIR-190065 (CMD)(SAS).docx |
| 806 | GRAMNEXUS0000000702 | LIR-190065 (SAS).docx |
| 807 | GRAMNEXUS0000000703 | LIR-190066 (SAS).docx |
| 808 | GRAMNEXUS0000000704 | LIR-190070(SAS)(JLL).docx |
| 809 | GRAMNEXUS0000000705 | LIR-190070(SAS).docx |
| 810 | GRAMNEXUS0000000706 | LIR-200017.docx |
| 811 | GRAMNEXUS0000000707 | water and steam butter.docx |
| 812 | GRAMNEXUS0000000708 | 006-138A validation protocol (SAS).docx |
| 813 | GRAMNEXUS0000000708.0001 | Microsoft_Visio_Drawing.vsdx |
| 814 | GRAMNEXUS0000000709 | 020-132A PPQ_01b(SAS).docx |
| 815 | GRAMNEXUS0000000710 | 020-148B COA template_rev 01(SAS).docx |
| 816 | GRAMNEXUS0000000711 | 020-148C COA template_rev 01(SAS).docx |
| 817 | GRAMNEXUS0000000712 | 18-154A COA Template (SAS).docx |
| 818 | GRAMNEXUS0000000713 | 55-60 Benchtop Incubator(SAS).docm |
| 819 | GRAMNEXUS0000000714 | API-0005 VAI-1012_Report(SAS).docm |
| 820 | GRAMNEXUS0000000715 | API-0007 (5)_formatted (SAS).docx |
| 821 | GRAMNEXUS0000000716 | API-0008 (2)(SAS).docx |
| 822 | GRAMNEXUS0000000717 | API-0008 DCR2 (SAS).docx |
| 823 | GRAMNEXUS0000000718 | API-0008(SAS).docx |
| 824 | GRAMNEXUS0000000719 | API-0012 rev 02(IDV)(SAS).docx |
| 825 | GRAMNEXUS0000000720 | API-0018 rev 04(SAS).docx |
| 826 | GRAMNEXUS0000000721 | API-0022(RB) (1)SAS.docx |
| 827 | GRAMNEXUS0000000722 | API-0024 (RB) BB_Formatted (003) - PMN TRACK CHANGES (sas).docx |
| 828 | GRAMNEXUS0000000723 | API-0025 RW(RB) (1) (1) (RB)(SAS).docx |
| 829 | GRAMNEXUS0000000724 | API-0026 (002)(SAS).docx |
| 830 | GRAMNEXUS0000000725 | API-0029 rev 01(SAS).docx |
| 831 | GRAMNEXUS0000000726 | API-0030 rev 01(SAS).docx |

| 832 | GRAMNEXUS0000000727 | API-0033_final draft .docx |
| 833 | GRAMNEXUS0000000728 | APR SOP with responsibilities and table(SAS).docx |
| 834 | GRAMNEXUS0000000729 | BB water form.docx |
| 835 | GRAMNEXUS0000000730 | BD Rodac CofA.pdf |
| 836 | GRAMNEXUS0000000731 | Benchtop Incubator URS(SAS).docm |
| 837 | GRAMNEXUS0000000732 | BI Strip or Ampule Test Form(SAS).docx |
| 838 | GRAMNEXUS0000000733 | BTL-0002 v04 DCR.docx |
| 839 | GRAMNEXUS0000000734 | c albicans MDA19003 rev 02.docx |
| 840 | GRAMNEXUS0000000735 | c albicans MDA19003.docx |
| 841 | GRAMNEXUS0000000736 | CAPA-0013 Plan.docx |
| 842 | GRAMNEXUS0000000737 | CHM-0007 rev 03(SAS).docx |
| 843 | GRAMNEXUS0000000738 | CHM-0007 rev 03(SAS)1.docx |
| 844 | GRAMNEXUS0000000739 | CHM-0009 SAS.docx |
| 845 | GRAMNEXUS0000000740 | CHM-0023 (2)SAS.docx |
| 846 | GRAMNEXUS0000000741 | CHM-0023_Acetic Acid USP SAS.docx |
| 847 | GRAMNEXUS0000000742 | CHM-0024_Phenol USP SAS.docx |
| 848 | GRAMNEXUS0000000743 | CHM-0025 (3)(SAS).docx |
| 849 | GRAMNEXUS0000000744 | CHM-0025_Sodium Acetate USP SAS.docx |
| 850 | GRAMNEXUS0000000745 | CHM-0026_Castor Oil SAS.docx |
| 851 | GRAMNEXUS0000000746 | CHM-0029 rev 02.docx |
| 852 | GRAMNEXUS0000000747 | CHM-0038_rev 01(SAS).docx |
| 853 | GRAMNEXUS0000000748 | CHM-0040_rev 01 dw(SAS).docx |
| 854 | GRAMNEXUS0000000749 | CHM-0047 Spec (DJS)(SAS).docx |
| 855 | GRAMNEXUS0000000750 | CHM-0050(SAS).docx |
| 856 | GRAMNEXUS0000000751 | Compressed Gas QC Report - SAS.docx |
| 857 | GRAMNEXUS0000000752 | Conductivity result form.docm |
| 858 | GRAMNEXUS0000000753 | Containment Room EM.docx |
| 859 | GRAMNEXUS0000000753.0001 | Microsoft_Visio_Drawing.vsdx |
| 860 | GRAMNEXUS0000000754 | Contam Control.pdf |
| 861 | GRAMNEXUS0000000755 | Contamination Control Policy -KNB (1)(SAS).docx |
| 862 | GRAMNEXUS0000000755.0001 | Microsoft_Visio_Drawing.vsdx |
| 863 | GRAMNEXUS0000000756 | Controlled Area Monitoring SOP SAS.docx |
| 864 | GRAMNEXUS0000000756.0001 | Microsoft_Visio_Drawing12.vsdx |
| 865 | GRAMNEXUS0000000756.0002 | Microsoft_Visio_Drawing13.vsdx |
| 866 | GRAMNEXUS0000000756.0003 | Microsoft_Visio_Drawing14.vsdx |
| 867 | GRAMNEXUS0000000756.0004 | Microsoft_Visio_Drawing15.vsdx |
| 868 | GRAMNEXUS0000000756.0005 | Microsoft_Visio_Drawing.vsdx |
| 869 | GRAMNEXUS0000000756.0006 | Microsoft_Visio_Drawing1.vsdx |
| 870 | GRAMNEXUS0000000756.0007 | Microsoft_Visio_Drawing2.vsdx |
| 871 | GRAMNEXUS0000000756.0008 | Microsoft_Visio_Drawing3.vsdx |
| 872 | GRAMNEXUS0000000756.0009 | Microsoft_Visio_Drawing4.vsdx |
| 873 | GRAMNEXUS0000000756.0010 | Microsoft_Visio_Drawing5.vsdx |
| 874 | GRAMNEXUS0000000756.0011 | Microsoft_Visio_Drawing6.vsdx |
| 875 | GRAMNEXUS0000000756.0012 | Microsoft_Visio_Drawing7.vsdx |
| 876 | GRAMNEXUS0000000756.0013 | Microsoft_Visio_Drawing8.vsdx |
| 877 | GRAMNEXUS0000000756.0014 | Microsoft_Visio_Drawing9.vsdx |
| 878 | GRAMNEXUS0000000756.0015 | Microsoft_Visio_Drawing10.vsdx |
| 879 | GRAMNEXUS0000000756.0016 | Microsoft_Visio_Drawing11.vsdx |
| 880 | GRAMNEXUS0000000757 | CORP-FRM-0005 6-29-18.docx |
| 881 | GRAMNEXUS0000000758 | CORP-FRM-0022 (SAS).docx |
| 882 | GRAMNEXUS0000000759 | CORP-FRM-0022.docx |
| 883 | GRAMNEXUS0000000760 | CORP-FRM-0044 Gowning Requalification Form.docx |
| 884 | GRAMNEXUS0000000761 | CORP-FRM-0045 Rev 11 (JW)(SAS).docx |
| 885 | GRAMNEXUS0000000762 | CORP-FRM-0045 Rev 11 (JW)(SAS)reformat.docx |
| 886 | GRAMNEXUS0000000763 | CORP-FRM-0045.docx |
| 887 | GRAMNEXUS0000000764 | CORP-FRM-0046 rev 15 (JW)(JLL)(SAS).docx |
| 888 | GRAMNEXUS0000000765 | CORP-FRM-0046 rev 15.docx |
| 889 | GRAMNEXUS0000000766 | CORP-FRM-0046 Whiteside EM Form(SAS).docx |
| 890 | GRAMNEXUS0000000767 | CORP-FRM-0055 rev 04.docx |
| 891 | GRAMNEXUS0000000768 | CORP-FRM-0055(SAS).docx |
| 892 | GRAMNEXUS0000000769 | CORP-FRM-0055(SAS)1.docx |
| 893 | GRAMNEXUS0000000770 | corp-frm-0055.docx |
| 894 | GRAMNEXUS0000000771 | CORP-FRM-0057 DCR.docx |
| 895 | GRAMNEXUS0000000772 | CORP-FRM-0139 Rev 07.docx |

| 896 | GRAMNEXUS0000000773 | CORP-FRM-0192 R05 DCR.docx |
| 897 | GRAMNEXUS0000000774 | CORP-FRM-0192 _Annual Requal Form(SAS).docx |
| 898 | GRAMNEXUS0000000775 | CORP-FRM-0247 rev 03 (JLLv2)SAS.docx |
| 899 | GRAMNEXUS0000000776 | CORP-FRM-0247 rev 03.docx |
| 900 | GRAMNEXUS0000000777 | CORP-FRM-0273 APA Operator Qual.docx |
| 901 | GRAMNEXUS0000000778 | CORP-FRM-0413 3-12-19(SAS).docx |
| 902 | GRAMNEXUS0000000779 | CORP-FRM-0413 CK 2-26-19(SAS).docx |
| 903 | GRAMNEXUS0000000780 | CORP-FRM-0413 rev 05 (JW)(SAS)(JLL) 12pt.docx |
| 904 | GRAMNEXUS0000000781 | CORP-FRM-0413 rev 05 (JW)(SAS)(JLL) reformat 2.docx |
| 905 | GRAMNEXUS0000000782 | CORP-FRM-0413 rev 05 (JW)(SAS)(JLL).docx |
| 906 | GRAMNEXUS0000000783 | CORP-FRM-0413 rev 05 (JW)(SAS).docx |
| 907 | GRAMNEXUS0000000784 | CORP-FRM-0413 rev 05.docx |
| 908 | GRAMNEXUS0000000785 | CORP-FRM-0416 R02 new template (JLL).docm |
| 909 | GRAMNEXUS0000000786 | CORP-FRM-0416 R02 new template.docm |
| 910 | GRAMNEXUS0000000787 | CORP-FRM-0416 R03.docm |
| 911 | GRAMNEXUS0000000788 | CORP-FRM-0416 rev 02 (JLL)Reformat (1).docx |
| 912 | GRAMNEXUS0000000789 | CORP-FRM-0416 rev 02 (JLL)Reformat.docx |
| 913 | GRAMNEXUS0000000790 | CORP-FRM-0416 rev 02 rebuild.docx |
| 914 | GRAMNEXUS0000000791 | CORP-FRM-0416 rev 02 rebuild.pdf |
| 915 | GRAMNEXUS0000000792 | CORP-FRM-0416 rev 02.docx |
| 916 | GRAMNEXUS0000000793 | CORP-FRM-0438(SAS).docm |
| 917 | GRAMNEXUS0000000794 | CORP-FRM-0438.docx |
| 918 | GRAMNEXUS0000000795 | CORP-FRM-0438_02.docm |
| 919 | GRAMNEXUS0000000796 | CORP-FRM-0464 R01 DCR.docx |
| 920 | GRAMNEXUS0000000797 | CORP-FRM-0466 rev 02 (JW)(SAS).docx |
| 921 | GRAMNEXUS0000000798 | CORP-FRM-0466.docx |
| 922 | GRAMNEXUS0000000799 | CORP-FRM-0527 DCR.docx |
| 923 | GRAMNEXUS0000000800 | CORP-FRM-0591 DCR.docx |
| 924 | GRAMNEXUS0000000801 | CORP-LOG-0044.docx |
| 925 | GRAMNEXUS0000000802 | CORP-LOG-0047 Microbiology Lab Sanitization Check Log (SAS).docx |
| 926 | GRAMNEXUS0000000803 | CORP-LOG-0141 SAS.docm |
| 927 | GRAMNEXUS0000000804 | CORP-LOG-0141.docm |
| 928 | GRAMNEXUS0000000805 | CORP-LOG-0151 DCR.docx |
| 929 | GRAMNEXUS0000000806 | CORP-LOG-0151_Lab Cleaning Log.docm |
| 930 | GRAMNEXUS0000000807 | CORP-LOG-0153 Micro EM Log(SAS).docx |
| 931 | GRAMNEXUS0000000808 | CORP-LOG-0161 rev 02.docx |
| 932 | GRAMNEXUS0000000809 | CORP-LOG-0161.docx |
| 933 | GRAMNEXUS0000000810 | CORP-POL-0013 Laboratory Safety-Chemicall Hygiene.docx |
| 934 | GRAMNEXUS0000000811 | CORP-RAR-0017 (JLL)(SAS).docx |
| 935 | GRAMNEXUS0000000812 | CORP-SOP-0010 7-11-18(SAS).docx |
| 936 | GRAMNEXUS0000000813 | CORP-SOP-0027 revision (SAS).docx |
| 937 | GRAMNEXUS0000000814 | CORP-SOP-0027 revision 20.docx |
| 938 | GRAMNEXUS0000000815 | CORP-SOP-0027 Water and Pure Steam Sampling FINAL(SAS).docx |
| 939 | GRAMNEXUS0000000816 | CORP-SOP-0045 (1-16-19)(SAS).docx |
| 940 | GRAMNEXUS0000000817 | CORP-SOP-0051 EIR.docx |
| 941 | GRAMNEXUS0000000818 | CORP-SOP-0051 Environmental Investigation Reports (AVB) (CCH) (SAS).docx |
| 942 | GRAMNEXUS0000000819 | CORP-SOP-0051 Environmental Investigation Reports.docx |
| 943 | GRAMNEXUS0000000820 | CORP-SOP-0051 rev 08.docx |
| 944 | GRAMNEXUS0000000821 | CORP-SOP-0071 7-02-18(SAS).docx |
| 945 | GRAMNEXUS0000000822 | CORP-SOP-0073 Aseptic Gowning Qualification Program(JLL)(SAS).docx |
| 946 | GRAMNEXUS0000000823 | CORP-SOP-0074 DCR.docx |
| 947 | GRAMNEXUS0000000824 | CORP-SOP-0074 Rev 20 (SAS).docx |
| 948 | GRAMNEXUS0000000824.0001 | Microsoft_Visio_Drawing11.vsdx |
| 949 | GRAMNEXUS0000000824.0002 | Microsoft_Visio_Drawing9.vsdx |
| 950 | GRAMNEXUS0000000824.0003 | Microsoft_Visio_Drawing10.vsdx |
| 951 | GRAMNEXUS0000000824.0004 | Microsoft_Visio_Drawing8.vsdx |
| 952 | GRAMNEXUS0000000824.0005 | Microsoft_Visio_Drawing7.vsdx |
| 953 | GRAMNEXUS0000000824.0006 | Microsoft_Visio_Drawing1.vsdx |
| 954 | GRAMNEXUS0000000824.0007 | Microsoft_Visio_Drawing.vsdx |
| 955 | GRAMNEXUS0000000824.0008 | Microsoft_Visio_Drawing2.vsdx |
| 956 | GRAMNEXUS0000000824.0009 | Microsoft_Visio_Drawing3.vsdx |
| 957 | GRAMNEXUS0000000824.0010 | Microsoft_Visio_Drawing6.vsdx |
| 958 | GRAMNEXUS0000000824.0011 | Microsoft_Visio_Drawing5.vsdx |
| 959 | GRAMNEXUS0000000824.0012 | Microsoft_Visio_Drawing4.vsdx |

| 960 | GRAMNEXUS0000000825 | CORP-SOP-0074 Rev. 19(SAS).docx |
| 961 | GRAMNEXUS0000000825.0001 | Microsoft_Visio_Drawing11.vsdx |
| 962 | GRAMNEXUS0000000825.0002 | Microsoft_Visio_Drawing9.vsdx |
| 963 | GRAMNEXUS0000000825.0003 | Microsoft_Visio_Drawing10.vsdx |
| 964 | GRAMNEXUS0000000825.0004 | Microsoft_Visio_Drawing2.vsdx |
| 965 | GRAMNEXUS0000000825.0005 | Microsoft_Visio_Drawing8.vsdx |
| 966 | GRAMNEXUS0000000825.0006 | Microsoft_Visio_Drawing1.vsdx |
| 967 | GRAMNEXUS0000000825.0007 | Microsoft_Visio_Drawing.vsdx |
| 968 | GRAMNEXUS0000000825.0008 | Microsoft_Visio_Drawing7.vsdx |
| 969 | GRAMNEXUS0000000825.0009 | Microsoft_Visio_Drawing6.vsdx |
| 970 | GRAMNEXUS0000000825.0010 | Microsoft_Visio_Drawing3.vsdx |
| 971 | GRAMNEXUS0000000825.0011 | Microsoft_Visio_Drawing5.vsdx |
| 972 | GRAMNEXUS0000000825.0012 | Microsoft_Visio_Drawing4.vsdx |
| 973 | GRAMNEXUS0000000826 | CORP-SOP-0074 Rev. 21(SAS)(CCH)(JLLv2).docx |
| 974 | GRAMNEXUS0000000826.0001 | Microsoft_Visio_Drawing10.vsdx |
| 975 | GRAMNEXUS0000000826.0002 | Microsoft_Visio_Drawing11.vsdx |
| 976 | GRAMNEXUS0000000826.0003 | Microsoft_Visio_Drawing9.vsdx |
| 977 | GRAMNEXUS0000000826.0004 | Microsoft_Visio_Drawing1.vsdx |
| 978 | GRAMNEXUS0000000826.0005 | Microsoft_Visio_Drawing.vsdx |
| 979 | GRAMNEXUS0000000826.0006 | Microsoft_Visio_Drawing3.vsdx |
| 980 | GRAMNEXUS0000000826.0007 | Microsoft_Visio_Drawing2.vsdx |
| 981 | GRAMNEXUS0000000826.0008 | Microsoft_Visio_Drawing4.vsdx |
| 982 | GRAMNEXUS0000000826.0009 | Microsoft_Visio_Drawing8.vsdx |
| 983 | GRAMNEXUS0000000826.0010 | Microsoft_Visio_Drawing7.vsdx |
| 984 | GRAMNEXUS0000000826.0011 | Microsoft_Visio_Drawing6.vsdx |
| 985 | GRAMNEXUS0000000826.0012 | Microsoft_Visio_Drawing5.vsdx |
| 986 | GRAMNEXUS0000000827 | CORP-SOP-0074 Rev. 21(SAS)(CCH)1.docx |
| 987 | GRAMNEXUS0000000827.0001 | Microsoft_Visio_Drawing10.vsdx |
| 988 | GRAMNEXUS0000000827.0002 | Microsoft_Visio_Drawing11.vsdx |
| 989 | GRAMNEXUS0000000827.0003 | Microsoft_Visio_Drawing9.vsdx |
| 990 | GRAMNEXUS0000000827.0004 | Microsoft_Visio_Drawing3.vsdx |
| 991 | GRAMNEXUS0000000827.0005 | Microsoft_Visio_Drawing2.vsdx |
| 992 | GRAMNEXUS0000000827.0006 | Microsoft_Visio_Drawing.vsdx |
| 993 | GRAMNEXUS0000000827.0007 | Microsoft_Visio_Drawing1.vsdx |
| 994 | GRAMNEXUS0000000827.0008 | Microsoft_Visio_Drawing4.vsdx |
| 995 | GRAMNEXUS0000000827.0009 | Microsoft_Visio_Drawing8.vsdx |
| 996 | GRAMNEXUS0000000827.0010 | Microsoft_Visio_Drawing7.vsdx |
| 997 | GRAMNEXUS0000000827.0011 | Microsoft_Visio_Drawing6.vsdx |
| 998 | GRAMNEXUS0000000827.0012 | Microsoft_Visio_Drawing5.vsdx |
| 999 | GRAMNEXUS0000000828 | CORP-SOP-0074 Rev. 21(SAS).docx |
| 1000 | GRAMNEXUS0000000828.0001 | Microsoft_Visio_Drawing10.vsdx |
| 1001 | GRAMNEXUS0000000828.0002 | Microsoft_Visio_Drawing11.vsdx |
| 1002 | GRAMNEXUS0000000828.0003 | Microsoft_Visio_Drawing9.vsdx |
| 1003 | GRAMNEXUS0000000828.0004 | Microsoft_Visio_Drawing3.vsdx |
| 1004 | GRAMNEXUS0000000828.0005 | Microsoft_Visio_Drawing2.vsdx |
| 1005 | GRAMNEXUS0000000828.0006 | Microsoft_Visio_Drawing.vsdx |
| 1006 | GRAMNEXUS0000000828.0007 | Microsoft_Visio_Drawing1.vsdx |
| 1007 | GRAMNEXUS0000000828.0008 | Microsoft_Visio_Drawing4.vsdx |
| 1008 | GRAMNEXUS0000000828.0009 | Microsoft_Visio_Drawing8.vsdx |
| 1009 | GRAMNEXUS0000000828.0010 | Microsoft_Visio_Drawing7.vsdx |
| 1010 | GRAMNEXUS0000000828.0011 | Microsoft_Visio_Drawing6.vsdx |
| 1011 | GRAMNEXUS0000000828.0012 | Microsoft_Visio_Drawing5.vsdx |
| 1012 | GRAMNEXUS0000000829 | CORP-SOP-0074(SAS).docx |
| 1013 | GRAMNEXUS0000000829.0001 | Microsoft_Visio_Drawing.vsdx |
| 1014 | GRAMNEXUS0000000830 | CORP-SOP-0076 rev 17 (JLL)(SAS).docx |
| 1015 | GRAMNEXUS0000000831 | CORP-SOP-0076 rev 17 (JLL)(SAS)1.docx |
| 1016 | GRAMNEXUS0000000832 | CORP-SOP-0088 Use and Sanitization of the Microbiology Lab Hood(SAS).docx |
| 1017 | GRAMNEXUS0000000833 | CORP-SOP-0088 Use and Sanitization of the Microbiology Lab HoodEWY8-17(SAS).docx |
| 1018 | GRAMNEXUS0000000834 | CORP-SOP-0091 RCA 082118SAS.docx |
| 1019 | GRAMNEXUS0000000835 | CORP-SOP-0091 RCA2.docx |
| 1020 | GRAMNEXUS0000000836 | CORP-SOP-0093 Operation of the Drager Aerotest (SAS).docx |
| 1021 | GRAMNEXUS0000000836.0001 | Microsoft_Visio_Drawing1.vsdx |
| 1022 | GRAMNEXUS0000000837 | CORP-SOP-0097 Non-Viable Air Particulate Sampling v9.docx |
| 1023 | GRAMNEXUS0000000838 | CORP-SOP-0098(SAS).docx |

| 1024 | GRAMNEXUS0000000839 | CORP-SOP-0101 rev 05(SAS).docx |
| 1025 | GRAMNEXUS0000000840 | CORP-SOP-0132 rev 09(SAS).docx |
| 1026 | GRAMNEXUS0000000841 | CORP-SOP-0194 OMC GE Sievers 900 TOC Analyzer and Autosampler.docx |
| 1027 | GRAMNEXUS0000000842 | CORP-SOP-0227 Population verification of Bioball Multishot-550 7-2-18(SAS).docx |
| 1028 | GRAMNEXUS0000000843 | CORP-SOP-0236 Product Sampling-v08_10Dec2018(SAS).docx |
| 1029 | GRAMNEXUS0000000844 | CORP-SOP-0249 Annual Requalification SOP Dynamic (JW).docx |
| 1030 | GRAMNEXUS0000000844.0001 | Microsoft_Visio_Drawing14.vsdx |
| 1031 | GRAMNEXUS0000000844.0002 | Microsoft_Visio_Drawing16.vsdx |
| 1032 | GRAMNEXUS0000000844.0003 | Microsoft_Visio_Drawing15.vsdx |
| 1033 | GRAMNEXUS0000000844.0004 | Microsoft_Visio_Drawing.vsdx |
| 1034 | GRAMNEXUS0000000844.0005 | Microsoft_Visio_Drawing1.vsdx |
| 1035 | GRAMNEXUS0000000844.0006 | Microsoft_Visio_Drawing2.vsdx |
| 1036 | GRAMNEXUS0000000844.0007 | Microsoft_Visio_Drawing3.vsdx |
| 1037 | GRAMNEXUS0000000844.0008 | Microsoft_Visio_Drawing4.vsdx |
| 1038 | GRAMNEXUS0000000844.0009 | Microsoft_Visio_Drawing5.vsdx |
| 1039 | GRAMNEXUS0000000844.0010 | Microsoft_Visio_Drawing6.vsdx |
| 1040 | GRAMNEXUS0000000844.0011 | Microsoft_Visio_Drawing7.vsdx |
| 1041 | GRAMNEXUS0000000844.0012 | Microsoft_Visio_Drawing8.vsdx |
| 1042 | GRAMNEXUS0000000844.0013 | Microsoft_Visio_Drawing9.vsdx |
| 1043 | GRAMNEXUS0000000844.0014 | Microsoft_Visio_Drawing10.vsdx |
| 1044 | GRAMNEXUS0000000844.0015 | Microsoft_Visio_Drawing11.vsdx |
| 1045 | GRAMNEXUS0000000844.0016 | Microsoft_Visio_Drawing12.vsdx |
| 1046 | GRAMNEXUS0000000844.0017 | Microsoft_Visio_Drawing13.vsdx |
| 1047 | GRAMNEXUS0000000845 | CORP-SOP-0249 Annual Requalification SOP v4.docx |
| 1048 | GRAMNEXUS0000000845.0001 | Microsoft_Visio_Drawing2.vsdx |
| 1049 | GRAMNEXUS0000000845.0002 | Microsoft_Visio_Drawing3.vsdx |
| 1050 | GRAMNEXUS0000000845.0003 | Microsoft_Visio_Drawing4.vsdx |
| 1051 | GRAMNEXUS0000000845.0004 | Microsoft_Visio_Drawing.vsdx |
| 1052 | GRAMNEXUS0000000845.0005 | Microsoft_Visio_Drawing1.vsdx |
| 1053 | GRAMNEXUS0000000846 | CORP-SOP-0249 DCR.docx |
| 1054 | GRAMNEXUS0000000847 | CORP-SOP-0249_Annual Room Requal(SAS).docx |
| 1055 | GRAMNEXUS0000000847.0001 | Microsoft_Visio_Drawing4.vsdx |
| 1056 | GRAMNEXUS0000000847.0002 | Microsoft_Visio_Drawing.vsdx |
| 1057 | GRAMNEXUS0000000847.0003 | Microsoft_Visio_Drawing3.vsdx |
| 1058 | GRAMNEXUS0000000847.0004 | Microsoft_Visio_Drawing2.vsdx |
| 1059 | GRAMNEXUS0000000847.0005 | Microsoft_Visio_Drawing1.vsdx |
| 1060 | GRAMNEXUS0000000848 | CORP-SOP-0251 Rev 06.docx |
| 1061 | GRAMNEXUS0000000849 | CORP-SOP-0290 Facility Start Up(SAS).docm |
| 1062 | GRAMNEXUS0000000850 | CORP-SOP-0405 DCR.docx |
| 1063 | GRAMNEXUS0000000851 | CORP-SOP-0405 Lab Cleaning v02.docm |
| 1064 | GRAMNEXUS0000000852 | CORP-SOP-0405 R04.docm |
| 1065 | GRAMNEXUS0000000853 | CORP-SOP-0432 R02.docx |
| 1066 | GRAMNEXUS0000000854 | CORP-SOP-0464 rev 02.docx |
| 1067 | GRAMNEXUS0000000854.0001 | Microsoft_Visio_Drawing.vsdx |
| 1068 | GRAMNEXUS0000000855 | CORP-SOP-0549 DCR.docx |
| 1069 | GRAMNEXUS0000000856 | CORP-SOP-0550 DCR.docx |
| 1070 | GRAMNEXUS0000000857 | CORP-SOP-0554 Rabs Monitoring (2).docx |
| 1071 | GRAMNEXUS0000000857.0001 | Microsoft_Visio_Drawing.vsdx |
| 1072 | GRAMNEXUS0000000857.0002 | Microsoft_Visio_Drawing1.vsdx |
| 1073 | GRAMNEXUS0000000857.0003 | Microsoft_Visio_Drawing2.vsdx |
| 1074 | GRAMNEXUS0000000857.0004 | Microsoft_Visio_Drawing3.vsdx |
| 1075 | GRAMNEXUS0000000857.0005 | Microsoft_Visio_Drawing4.vsdx |
| 1076 | GRAMNEXUS0000000858 | CORP-SOP-0556 (GRAM).docx |
| 1077 | GRAMNEXUS0000000859 | CORP-SOP-0562.docx |
| 1078 | GRAMNEXUS0000000859.0001 | Microsoft_Visio_Drawing.vsdx |
| 1079 | GRAMNEXUS0000000860 | CORP-SOP-0591 Compressed Gas Sampling at Butterworth SAS.docx |
| 1080 | GRAMNEXUS0000000861 | CORP-SOP-0591 Compressed Gas Sampling at Butterworth.docx |
| 1081 | GRAMNEXUS0000000862 | CORP-SOP-0591 DCR.docx |
| 1082 | GRAMNEXUS0000000863 | CORP-SOP-0591 R02 DCR.docx |
| 1083 | GRAMNEXUS0000000864 | CR-17-0671 Settling Plate Form V.2 SAS.docx |
| 1084 | GRAMNEXUS0000000865 | CR-18-0926 EM SOP Rev. 21(SAS)(JLL)1.docx |
| 1085 | GRAMNEXUS0000000866 | CR-18-0926 EM SOP Rev. 21(SAS).docx |
| 1086 | GRAMNEXUS0000000867 | CR-18-1166.docx |
| 1087 | GRAMNEXUS0000000868 | CR-20-0787 BI Strip.docx |

| 1088 | GRAMNEXUS0000000869 | DCR Corp-frm-0044 Gowning Requalification Form Rev 8.docx |
|------|----------------------|------------------------------------------------------------|
| 1089 | GRAMNEXUS0000000870 | DCR CORP-FRM-0139.docx |
| 1090 | GRAMNEXUS0000000871 | DCR CORP-LOG-0187 12-6-19.docx |
| 1091 | GRAMNEXUS0000000872 | DCR for CHM-0029.docx |
| 1092 | GRAMNEXUS0000000873 | DCR for CORP-DS-0003.docx |
| 1093 | GRAMNEXUS0000000874 | DCR for CORP-FRM-0022.docx |
| 1094 | GRAMNEXUS0000000875 | DCR for CORP-FRM-0044.docx |
| 1095 | GRAMNEXUS0000000876 | DCR For CORP-FRM-0045 R11.docx |
| 1096 | GRAMNEXUS0000000877 | DCR for CORP-FRM-0046 R15 (JW)(JLL)(SAS).docx |
| 1097 | GRAMNEXUS0000000878 | DCR For CORP-FRM-0046 R15.docx |
| 1098 | GRAMNEXUS0000000879 | DCR for CORP-FRM-0055 rev 05.docx |
| 1099 | GRAMNEXUS0000000880 | DCR for CORP-FRM-0055.docx |
| 1100 | GRAMNEXUS0000000881 | DCR for CORP-FRM-0077.docx |
| 1101 | GRAMNEXUS0000000882 | DCR For CORP-FRM-0247 R03 (JLL).docx |
| 1102 | GRAMNEXUS0000000883 | DCR For CORP-FRM-0247 R03.docx |
| 1103 | GRAMNEXUS0000000884 | DCR for CORP-FRM-0247.docx |
| 1104 | GRAMNEXUS0000000885 | DCR for CORP-FRM-0273.docx |
| 1105 | GRAMNEXUS0000000886 | DCR For CORP-FRM-0413 R05 (JLL)SAS.docx |
| 1106 | GRAMNEXUS0000000887 | DCR For CORP-FRM-0413 R05.docx |
| 1107 | GRAMNEXUS0000000888 | DCR for CORP-FRM-0413.docx |
| 1108 | GRAMNEXUS0000000889 | DCR For CORP-FRM-0416 R02.docx |
| 1109 | GRAMNEXUS0000000890 | DCR For CORP-FRM-0416 R03.docx |
| 1110 | GRAMNEXUS0000000891 | DCR for CORP-FRM-0438 rev 04.docx |
| 1111 | GRAMNEXUS0000000892 | DCR for CORP-FRM-0438.docx |
| 1112 | GRAMNEXUS0000000893 | DCR for CORP-FRM-0466 R02.docx |
| 1113 | GRAMNEXUS0000000894 | DCR For CORP-FRM-0468 R02.docx |
| 1114 | GRAMNEXUS0000000895 | DCR for CORP-FRM-0523.docx |
| 1115 | GRAMNEXUS0000000896 | DCR for CORP-FRM-0532.docx |
| 1116 | GRAMNEXUS0000000897 | DCR for CORP-LOG-0014.docx |
| 1117 | GRAMNEXUS0000000898 | DCR for CORP-LOG-0044.docx |
| 1118 | GRAMNEXUS0000000899 | DCR for CORP-LOG-0046.docx |
| 1119 | GRAMNEXUS0000000900 | DCR for CORP-LOG-0047.docx |
| 1120 | GRAMNEXUS0000000901 | DCR for CORP-LOG-0053.docx |
| 1121 | GRAMNEXUS0000000902 | DCR for CORP-LOG-0141 SAS.docx |
| 1122 | GRAMNEXUS0000000903 | DCR for CORP-LOG-0141.docx |
| 1123 | GRAMNEXUS0000000904 | DCR for CORP-LOG-0161.docx |
| 1124 | GRAMNEXUS0000000905 | DCR for CORP-POL-0013.docx |
| 1125 | GRAMNEXUS0000000906 | DCR for CORP-SOP-0010 1-30-20.docx |
| 1126 | GRAMNEXUS0000000907 | DCR For CORP-SOP-0010.docx |
| 1127 | GRAMNEXUS0000000908 | DCR for CORP-SOP-0027 rev 20.docx |
| 1128 | GRAMNEXUS0000000909 | DCR for CORP-SOP-0027.docx |
| 1129 | GRAMNEXUS0000000910 | DCR for CORP-SOP-0051.docx |
| 1130 | GRAMNEXUS0000000911 | DCR for CORP-SOP-0073.docx |
| 1131 | GRAMNEXUS0000000912 | DCR for CORP-SOP-0088.docx |
| 1132 | GRAMNEXUS0000000913 | DCR for CORP-SOP-0093.docx |
| 1133 | GRAMNEXUS0000000914 | DCR For CORP-SOP-0097 V09.docx |
| 1134 | GRAMNEXUS0000000915 | DCR for CORP-SOP-0097.docx |
| 1135 | GRAMNEXUS0000000916 | DCR for CORP-SOP-0098.docx |
| 1136 | GRAMNEXUS0000000917 | DCR for CORP-SOP-0130 rev.docx |
| 1137 | GRAMNEXUS0000000918 | DCR for CORP-SOP-0130.docx |
| 1138 | GRAMNEXUS0000000919 | DCR for CORP-SOP-0194.docx |
| 1139 | GRAMNEXUS0000000920 | DCR for CORP-SOP-0251.docx |
| 1140 | GRAMNEXUS0000000921 | DCR for CORP-SOP-0405.docx |
| 1141 | GRAMNEXUS0000000922 | DCR for CORP-SOP-0432 R03.docx |
| 1142 | GRAMNEXUS0000000923 | DCR for CORP-SOP-0432.docx |
| 1143 | GRAMNEXUS0000000924 | DCR for CORP-SOP-0464.docx |
| 1144 | GRAMNEXUS0000000925 | DCR for CORP-SOP-0558.docx |
| 1145 | GRAMNEXUS0000000926 | DCR for CORP-SOP-0608.docx |
| 1146 | GRAMNEXUS0000000927 | DCR for GRAM-MTM-1000 6-29-18(sas).docx |
| 1147 | GRAMNEXUS0000000928 | DCR for GRAM-TM-0001(SAS).docx |
| 1148 | GRAMNEXUS0000000929 | DCR for GRAM-TM-0004 rev 08.docx |
| 1149 | GRAMNEXUS0000000930 | DCR for GRAM-TM-0004.docx |
| 1150 | GRAMNEXUS0000000931 | DCR for GRAM-TM-0010.docx |
| 1151 | GRAMNEXUS0000000932 | DCR for GRAM-TM-0013.docx |

| 1152 | GRAMNEXUS0000000933 | DCR for GRAM-TM-0016 (SAS).docx |
| 1153 | GRAMNEXUS0000000934 | DCR for GRAM-TM-0016.docx |
| 1154 | GRAMNEXUS0000000935 | DCR for GRAM-TM-0018 rev 05.docx |
| 1155 | GRAMNEXUS0000000936 | DCR for GRAM-TM-0018.docx |
| 1156 | GRAMNEXUS0000000937 | DCR for GRAM-TM-0026.docx |
| 1157 | GRAMNEXUS0000000938 | DCR for GRAM-TM-0030.docx |
| 1158 | GRAMNEXUS0000000939 | DCR for GS13077.docx |
| 1159 | GRAMNEXUS0000000940 | DCR for MD11001.docx |
| 1160 | GRAMNEXUS0000000941 | DCR For MD11013.docx |
| 1161 | GRAMNEXUS0000000942 | DCR for MD13022.docx |
| 1162 | GRAMNEXUS0000000943 | DCR for MDA17002.docx |
| 1163 | GRAMNEXUS0000000944 | DCR for MDA19001.docx |
| 1164 | GRAMNEXUS0000000945 | DCR for MDA19002 rev 02.docx |
| 1165 | GRAMNEXUS0000000946 | DCR for MDA19002.docx |
| 1166 | GRAMNEXUS0000000947 | DCR for MDA19003 rev 02.docx |
| 1167 | GRAMNEXUS0000000948 | DCR for MDA19003.docx |
| 1168 | GRAMNEXUS0000000949 | DCR for MDA19004 rev 02.docx |
| 1169 | GRAMNEXUS0000000950 | DCR for MDA19004.docx |
| 1170 | GRAMNEXUS0000000951 | DCR for MDA19005 rev 02.docx |
| 1171 | GRAMNEXUS0000000952 | DCR for MDA19005.docx |
| 1172 | GRAMNEXUS0000000953 | DCR for MDA19006.docx |
| 1173 | GRAMNEXUS0000000954 | DCR for MDA20003.docx |
| 1174 | GRAMNEXUS0000000955 | DCR for MDA20006.docx |
| 1175 | GRAMNEXUS0000000956 | DCR for MDA20007.docx |
| 1176 | GRAMNEXUS0000000957 | DCR for MDA20008.docx |
| 1177 | GRAMNEXUS0000000958 | DCR for STA-0005-SUM.docx |
| 1178 | GRAMNEXUS0000000959 | DCR for STA-0005.docx |
| 1179 | GRAMNEXUS0000000960 | DCR for VAL-1141.docx |
| 1180 | GRAMNEXUS0000000961 | DCR for VAL-1162-AD1-SUM.docx |
| 1181 | GRAMNEXUS0000000962 | DCR for VAL-1162-AD1.docx |
| 1182 | GRAMNEXUS0000000963 | DCR for VAL-1162-SUM.docx |
| 1183 | GRAMNEXUS0000000964 | DCR for VAL-1162.docx |
| 1184 | GRAMNEXUS0000000965 | DCR for VAL-1252.docx |
| 1185 | GRAMNEXUS0000000966 | DCR for VAL-1378-SUM.docx |
| 1186 | GRAMNEXUS0000000967 | DCR for VAL-1414.docx |
| 1187 | GRAMNEXUS0000000968 | DCR for VAL-1617.docx |
| 1188 | GRAMNEXUS0000000969 | DCR MDA18001 2-2-18 (SAS).docx |
| 1189 | GRAMNEXUS0000000970 | DCR TM-0026 v7 SAS.docx |
| 1190 | GRAMNEXUS0000000971 | DCRF GRAM-TM-0007 .docx |
| 1191 | GRAMNEXUS0000000972 | de gown em.docx |
| 1192 | GRAMNEXUS0000000972.0001 | Microsoft_Visio_Drawing.vsdx |
| 1193 | GRAMNEXUS0000000973 | deviation blanket.vsdx |
| 1194 | GRAMNEXUS0000000974 | Disinfectant Efficacy Final Report.pdf |
| 1195 | GRAMNEXUS0000000975 | Disinfectant Efficacy Protocol.pdf |
| 1196 | GRAMNEXUS0000000976 | Double Door Refrigerator URS(SAS).docm |
| 1197 | GRAMNEXUS0000000977 | Draft Sterilizer SOP 051220 dm_eas comment.docx |
| 1198 | GRAMNEXUS0000000978 | e coli MDA19005 rev 02.docx |
| 1199 | GRAMNEXUS0000000979 | e coli MDA19005.docx |
| 1200 | GRAMNEXUS0000000980 | Endotoxin URS(SAS).docx |
| 1201 | GRAMNEXUS0000000981 | FPRS-0044_rev 02 (SAS).docx |
| 1202 | GRAMNEXUS0000000982 | FPRS-0049 018-139A(RB)_Formatted(DWF)(SAS).docx |
| 1203 | GRAMNEXUS0000000983 | FPRS-0049 sas.docx |
| 1204 | GRAMNEXUS0000000984 | FPRS-0049, 018-139A, Template-0002 Rev4 Update (IDV) dw SAS.docx |
| 1205 | GRAMNEXUS0000000985 | FPRS-0050 (SAS).docx |
| 1206 | GRAMNEXUS0000000986 | FPRS-0064 rev 01(SAS).docx |
| 1207 | GRAMNEXUS0000000987 | FPRS-0065_empty vial(SAS).docx |
| 1208 | GRAMNEXUS0000000988 | FPRS-0068 rev 01(SAS).docx |
| 1209 | GRAMNEXUS0000000989 | FPRS-0071_redline.docx |
| 1210 | GRAMNEXUS0000000990 | FPRS-0073 rev 01 Draft.docx |
| 1211 | GRAMNEXUS0000000991 | FPRS0004 010-117B Rev8 (2)(SAS).docx |
| 1212 | GRAMNEXUS0000000992 | FPRS0004 010-117B Rev9 (SAS).docx |
| 1213 | GRAMNEXUS0000000993 | FPRS0004 DCR Rev8(SAS).docx |
| 1214 | GRAMNEXUS0000000994 | FPRS0006 Rev08 (2)(SAS).docx |
| 1215 | GRAMNEXUS0000000995 | FPRS0021 rev 04 (SAS).docx |

| 1216 | GRAMNEXUS0000000996 | FPRS0027, 014-121A, Template-0002, Rev4 dw(SAS).docx |
| 1217 | GRAMNEXUS0000000997 | FPRS0031 rev 04 (SAS).docx |
| 1218 | GRAMNEXUS0000000998 | gowning room EM.docx |
| 1219 | GRAMNEXUS0000000998.0001 | Microsoft_Visio_Drawing.vsdx |
| 1220 | GRAMNEXUS0000000999 | GRAM Vitek 2 Compact Analyst Qualification Form (1).docx |
| 1221 | GRAMNEXUS0000001000 | GRAM Vitek 2 Compact Identification Result Form (1).docx |
| 1222 | GRAMNEXUS0000001001 | GRAM Vitek 2 Compact QC Card Release Form.docx |
| 1223 | GRAMNEXUS0000001002 | GRAM-MTM-1000 7-2-18 (SAS)_.docx |
| 1224 | GRAMNEXUS0000001002.0001 | Microsoft_Visio_Drawing.vsdx |
| 1225 | GRAMNEXUS0000001002.0001.0001 | Microsoft_Word_Document.docx |
| 1226 | GRAMNEXUS0000001003 | GRAM-TM-0001 5-22(SAS)(JLL)rev.docx |
| 1227 | GRAMNEXUS0000001004 | GRAM-TM-0001 5-22(SAS).docx |
| 1228 | GRAMNEXUS0000001005 | GRAM-TM-0001 6-29-18(SAS).docx |
| 1229 | GRAMNEXUS0000001006 | GRAM-TM-0004 SAS (CCH) 1.docx |
| 1230 | GRAMNEXUS0000001007 | GRAM-TM-0004 SAS.docx |
| 1231 | GRAMNEXUS0000001008 | GRAM-TM-0004(SAS).docx |
| 1232 | GRAMNEXUS0000001009 | GRAM-TM-0010 TOC Analysis of WFI and Pure Steam-1.docx |
| 1233 | GRAMNEXUS0000001010 | GRAM-TM-0010 TOC Analysis of WFI and Pure Steam.docx |
| 1234 | GRAMNEXUS0000001011 | GRAM-TM-0011 5-23(SAS).docx |
| 1235 | GRAMNEXUS0000001012 | GRAM-TM-0012 DCR.docx |
| 1236 | GRAMNEXUS0000001013 | GRAM-TM-0012 Microbial Count of Water Samples (JW).docx |
| 1237 | GRAMNEXUS0000001014 | GRAM-TM-0013 11May18 (SAS).docx |
| 1238 | GRAMNEXUS0000001015 | GRAM-TM-0016 (SAS).docx |
| 1239 | GRAMNEXUS0000001016 | GRAM-TM-0016 Revision 10 SAS (CCH) 1.docx |
| 1240 | GRAMNEXUS0000001017 | GRAM-TM-0016 Revision 10 SAS.docx |
| 1241 | GRAMNEXUS0000001018 | GRAM-TM-0018 Conductivity in Bulk Water (SAS).docx |
| 1242 | GRAMNEXUS0000001019 | GRAM-TM-0018 Conductivity in Bulk Water rev 05.docx |
| 1243 | GRAMNEXUS0000001020 | GRAM-TM-0018.docx |
| 1244 | GRAMNEXUS0000001021 | GRAM-TM-0026 SAS.docx |
| 1245 | GRAMNEXUS0000001022 | GRAM-TM-0043 (SAS).docx |
| 1246 | GRAMNEXUS0000001023 | GRAM-TM-0065 Bioburden Validation.docm |
| 1247 | GRAMNEXUS0000001024 | GS13077 (SAS).docx |
| 1248 | GRAMNEXUS0000001025 | GS13077 new temp.docx |
| 1249 | GRAMNEXUS0000001026 | GxP Assessment Particle Counter-1.docx |
| 1250 | GRAMNEXUS0000001027 | Incubator URS VAL-1432(SAS).docm |
| 1251 | GRAMNEXUS0000001028 | IOQ Protocol - TOC -jsg-11-11-19 formated (SAS).docx |
| 1252 | GRAMNEXUS0000001029 | LAB-LOG-118B Microbiology Lab Sanitization Check Log (SAS).docx |
| 1253 | GRAMNEXUS0000001030 | LpH prep Log.docm |
| 1254 | GRAMNEXUS0000001031 | Machinability Study - VAL-1698 BS Fill Line 6R Container 061620(SAS).docx |
| 1255 | GRAMNEXUS0000001032 | Material Specification Template SAB DEX.docx |
| 1256 | GRAMNEXUS0000001033 | Material Specification Template.docx |
| 1257 | GRAMNEXUS0000001034 | MD11013.docx |
| 1258 | GRAMNEXUS0000001035 | MD13020(SAS).docx |
| 1259 | GRAMNEXUS0000001036 | MD13020(SAS1).docx |
| 1260 | GRAMNEXUS0000001037 | MD13022 2-11-19.docx |
| 1261 | GRAMNEXUS0000001038 | MD13022 2-21-19.docx |
| 1262 | GRAMNEXUS0000001039 | MD13022 Specification.docx |
| 1263 | GRAMNEXUS0000001040 | MD13024 (SAS).docx |
| 1264 | GRAMNEXUS0000001041 | MDA17001_Geobacillus(SAS).docx |
| 1265 | GRAMNEXUS0000001042 | MDA17002 400 ml.docx |
| 1266 | GRAMNEXUS0000001043 | MDA17002_TSA Pour Plate(SAS).docx |
| 1267 | GRAMNEXUS0000001044 | MDA17003_SDA Pour Plate(SAS).docx |
| 1268 | GRAMNEXUS0000001045 | MDA18001Mini Spore StripsEWY2-2-18.1(SAS).docx |
| 1269 | GRAMNEXUS0000001046 | MDA19001.docx |
| 1270 | GRAMNEXUS0000001047 | MDA19001SAS.docx |
| 1271 | GRAMNEXUS0000001048 | MDA19006 SDA with Anti (JLL)(SAS).docx |
| 1272 | GRAMNEXUS0000001049 | MDA19006 SDA with Anti Rev.docx |
| 1273 | GRAMNEXUS0000001050 | MDA19006 SDA with Anti.docx |
| 1274 | GRAMNEXUS0000001051 | MDA20004.docx |
| 1275 | GRAMNEXUS0000001052 | MDA20006.docx |
| 1276 | GRAMNEXUS0000001053 | MDA20007.docx |
| 1277 | GRAMNEXUS0000001054 | MDA20008.docx |
| 1278 | GRAMNEXUS0000001055 | MET ONE 3400 Portable Air Particle Counter.docx |
| 1279 | GRAMNEXUS0000001056 | Micro ID Log 12-5-19.docm |

| | | |
|---|---|---|
| 1280 | GRAMNEXUS0000001057 | Micro ID System URS(SAS).docm |
| 1281 | GRAMNEXUS0000001058 | Nitrates Form(SAS).docm |
| 1282 | GRAMNEXUS0000001059 | Nitrates TM (1) CK(SAS).docx |
| 1283 | GRAMNEXUS0000001059.0001 | Microsoft_Visio_Drawing1.vsdx |
| 1284 | GRAMNEXUS0000001059.0001.0001 | Microsoft_Word_Document.docx |
| 1285 | GRAMNEXUS0000001060 | Nitrates TM (1) CK(SAS)IVO.docx |
| 1286 | GRAMNEXUS0000001060.0001 | Microsoft_Visio_Drawing1.vsdx |
| 1287 | GRAMNEXUS0000001060.0001.0001 | Microsoft_Word_Document.docx |
| 1288 | GRAMNEXUS0000001061 | p aeruginosa MDA19002 rev 02.docx |
| 1289 | GRAMNEXUS0000001062 | p aeruginosa MDA19002.docx |
| 1290 | GRAMNEXUS0000001063 | pH Meter URS val-1417(SAS).docm |
| 1291 | GRAMNEXUS0000001064 | PQ Protocol - OVN Tunnel 20_04-29.docx |
| 1292 | GRAMNEXUS0000001065 | RABS Bird's Eye View.vsdx |
| 1293 | GRAMNEXUS0000001066 | Rev CORP-FRM-0138 Media Growth Promotion Form DE VJ (change after Sherri comments).docx |
| 1294 | GRAMNEXUS0000001067 | s aureus MDA19004 rev 02.docx |
| 1295 | GRAMNEXUS0000001068 | s aureus MDA19004.docx |
| 1296 | GRAMNEXUS0000001069 | Settling Plate Form V.2.docx |
| 1297 | GRAMNEXUS0000001070 | Single Door Fridge URS(SAS).docm |
| 1298 | GRAMNEXUS0000001071 | SOP OMC M9 TOC.docx |
| 1299 | GRAMNEXUS0000001072 | STA-0005 Approval.pdf |
| 1300 | GRAMNEXUS0000001073 | STA-0005 In-Use Micro final(SAS)(JH)BB.docx |
| 1301 | GRAMNEXUS0000001074 | STA-0005 In-Use Micro final.docx |
| 1302 | GRAMNEXUS0000001075 | STA-0005-SUM Final.docm |
| 1303 | GRAMNEXUS0000001076 | STA-0005-SUM.docm |
| 1304 | GRAMNEXUS0000001077 | STA-0005_in USE micro growth stability report for T0 time_approved page.pdf |
| 1305 | GRAMNEXUS0000001078 | STP-0006 V02(SAS).docx |
| 1306 | GRAMNEXUS0000001079 | STP-0007 V03(SAS).docx |
| 1307 | GRAMNEXUS0000001080 | STP-0008 v04(SAS).docx |
| 1308 | GRAMNEXUS0000001081 | STP-0022 v01 Final.docx |
| 1309 | GRAMNEXUS0000001082 | STP-0022 v01c.docx |
| 1310 | GRAMNEXUS0000001083 | Syring Filler Study report(SAS).docm |
| 1311 | GRAMNEXUS0000001084 | Syringe Filler Disinfection Validation(SAS).docm |
| 1312 | GRAMNEXUS0000001085 | Syringe Filler EM Protocol - DP.docm |
| 1313 | GRAMNEXUS0000001086 | Syringe Filler EM Protocol.docm |
| 1314 | GRAMNEXUS0000001087 | Template-0014 rev 03.docx |
| 1315 | GRAMNEXUS0000001088 | Template-0017 rev 03 (SAS).docx |
| 1316 | GRAMNEXUS0000001089 | Testosterone Enanthate API-0032(SAS).docx |
| 1317 | GRAMNEXUS0000001090 | transition room em.docx |
| 1318 | GRAMNEXUS0000001090.0001 | Microsoft_Visio_Drawing.vsdx |
| 1319 | GRAMNEXUS0000001091 | TSA storage.pdf |
| 1320 | GRAMNEXUS0000001092 | VAL-1093 (SAS).docx |
| 1321 | GRAMNEXUS0000001093 | VAL-1094 Validation Template-1 EWY 7-17-18(SAS)_.docm |
| 1322 | GRAMNEXUS0000001094 | VAL-1141 Settling Plate Exposure study SAS.docm |
| 1323 | GRAMNEXUS0000001095 | VAL-1141 Settling Plate Exposure study summary.docm |
| 1324 | GRAMNEXUS0000001096 | VAL-1141 Sum Settling Plates.docm |
| 1325 | GRAMNEXUS0000001097 | VAL-1155-SUM SAS.docm |
| 1326 | GRAMNEXUS0000001098 | VAL-1160-SUM sas.docx |
| 1327 | GRAMNEXUS0000001099 | VAL-1162-AD1 DE Additional Surface Testing for Grand River Protocol.pdf |
| 1328 | GRAMNEXUS0000001100 | VAL-1162-SUM AD1 DE Additional Surface Testing for Grand River Final Report.pdf |
| 1329 | GRAMNEXUS0000001101 | VAL-1173 - 2018 (1)(SAS).docm |
| 1330 | GRAMNEXUS0000001102 | VAL-1173 - 2018 (SAS).docm |
| 1331 | GRAMNEXUS0000001103 | VAL-1173 rev 01(SAS).docm |
| 1332 | GRAMNEXUS0000001104 | VAL-1173-SUM(SAS).docm |
| 1333 | GRAMNEXUS0000001105 | VAL-1199 ASB 01_19_18 SAS.docx |
| 1334 | GRAMNEXUS0000001106 | VAL-1229 - 2018 (SAS).docm |
| 1335 | GRAMNEXUS0000001107 | VAL-1229-SUM 9-24-18(SAS).docm |
| 1336 | GRAMNEXUS0000001108 | VAL-1252 Summary Report (SAS).docx |
| 1337 | GRAMNEXUS0000001109 | VAL-1252 Summary Report (SAS)bb fix.docx |
| 1338 | GRAMNEXUS0000001110 | VAL-1343 WFI System URS (CAM)(SAS)(SCN).docx |
| 1339 | GRAMNEXUS0000001111 | VAL-1343 WFI System URS (CAM)(SAS).docx |
| 1340 | GRAMNEXUS0000001112 | VAL-1352 (URS for Clean Compressed Air) SAS.docm |
| 1341 | GRAMNEXUS0000001113 | VAL-1352 (URS for Clean Compressed Air)(sas).docm |
| 1342 | GRAMNEXUS0000001114 | VAL-1363-SUM(BS)(SAS).docm |

| 1343 | GRAMNEXUS0000001115 | VAL-1383 SAS.docm |
|------|---------------------|-------------------|
| 1344 | GRAMNEXUS0000001116 | VAL-1383-SUM(SAS).docm |
| 1345 | GRAMNEXUS0000001117 | VAL-1393 Validation Template-Rev 01 SAS Particulate reader db(SAS).docm |
| 1346 | GRAMNEXUS0000001118 | VAL-1393-SUM Validation Template-Rev 01(SAS).docm |
| 1347 | GRAMNEXUS0000001119 | VAL-1394-SUM Validation Template-Rev 01(SAS).docm |
| 1348 | GRAMNEXUS0000001120 | VAL-1476 DCR (Media Fill GP).docx |
| 1349 | GRAMNEXUS0000001121 | VAL-1476-SUM(sas)(JLL).docm |
| 1350 | GRAMNEXUS0000001122 | VAL-1617-SUM DCR.docx |
| 1351 | GRAMNEXUS0000001123 | VAL-1644 Butterworth CCA PQ.docx |
| 1352 | GRAMNEXUS0000001124 | VAL-1645 Butterworth Nitrogen PQ.docx |
| 1353 | GRAMNEXUS0000001125 | VAL-1658 Micro ID IOPQ.docx |
| 1354 | GRAMNEXUS0000001126 | VAL-1791_v01b Protocol.docx |
| 1355 | GRAMNEXUS0000001127 | VAL-1800 Media Fill Protocol Template Rev 3(SAS).docx |
| 1356 | GRAMNEXUS0000001128 | VAL-1812 DCR.docx |
| 1357 | GRAMNEXUS0000001129 | VAL-1817 DCR.docx |
| 1358 | GRAMNEXUS0000001130 | VAL-1817 Butterworth Isolator EMPQ.docx |
| 1359 | GRAMNEXUS0000001131 | VAL-PPQ-0414 009-115B including split batch(RB)(SAS).docx |
| 1360 | GRAMNEXUS0000001132 | WD Form.docm |
| 1361 | GRAMNEXUS0000001133 | Weigh Dispense EMPQ(SAS).docx |
| 1362 | GRAMNEXUS0000001133.0001 | Microsoft_Visio_Drawing.vsdx |
| 1363 | GRAMNEXUS0000001133.0002 | Microsoft_Visio_Drawing1.vsdx |
| 1364 | GRAMNEXUS0000001133.0003 | Microsoft_Visio_Drawing2.vsdx |
| 1365 | GRAMNEXUS0000001133.0004 | Microsoft_Visio_Drawing3.vsdx |
| 1366 | GRAMNEXUS0000001133.0005 | Microsoft_Visio_Drawing4.vsdx |
| 1367 | GRAMNEXUS0000001133.0006 | Microsoft_Visio_Drawing5.vsdx |
| 1368 | GRAMNEXUS0000001133.0007 | Microsoft_Visio_Drawing6.vsdx |
| 1369 | GRAMNEXUS0000001133.0008 | Microsoft_Visio_Drawing7.vsdx |
| 1370 | GRAMNEXUS0000001134 | Weigh Dispense EMPQ.docx |
| 1371 | GRAMNEXUS0000001134.0001 | Microsoft_Visio_Drawing5.vsdx |
| 1372 | GRAMNEXUS0000001134.0002 | Microsoft_Visio_Drawing.vsdx |
| 1373 | GRAMNEXUS0000001134.0003 | Microsoft_Visio_Drawing1.vsdx |
| 1374 | GRAMNEXUS0000001134.0004 | Microsoft_Visio_Drawing2.vsdx |
| 1375 | GRAMNEXUS0000001134.0005 | Microsoft_Visio_Drawing3.vsdx |
| 1376 | GRAMNEXUS0000001134.0006 | Microsoft_Visio_Drawing4.vsdx |
| 1377 | GRAMNEXUS0000001134.0007 | Microsoft_Visio_Drawing6.vsdx |
| 1378 | GRAMNEXUS0000001134.0008 | Microsoft_Visio_Drawing7.vsdx |
| 1379 | GRAMNEXUS0000001135 | WFI NF Mono.pdf |
| 1380 | GRAMNEXUS0000001136 | WFI NF Monograph.pdf |
| 1381 | GRAMNEXUS0000001137 | ~$-18-0926 EM SOP Rev. 21(SAS).docx |
| 1382 | GRAMNEXUS0000001138 | ~$igh Dispense EMPQ.docx |
| 1383 | GRAMNEXUS0000001139 | ~$RP-SOP-0074 Rev. 21(SAS).docx |
| 1384 | GRAMNEXUS0000001140 | ~WRL0001.tmp |
| 1385 | GRAMNEXUS0000001141 | ~WRL1186.tmp |
| 1386 | GRAMNEXUS0000001142 | ~WRL3264.tmp |
| 1387 | GRAMNEXUS0000001143 | BD SabDex with Chloramphenicol.pdf |
| 1388 | GRAMNEXUS0000001144 | CC 17-0019 Assessment QC.docx |
| 1389 | GRAMNEXUS0000001145 | CC 17-0029 Assessment.docx |
| 1390 | GRAMNEXUS0000001146 | CC Initiation for CHM-0004.docm |
| 1391 | GRAMNEXUS0000001147 | CC-0028 Micro.docx |
| 1392 | GRAMNEXUS0000001148 | CC-0037 Micro.docx |
| 1393 | GRAMNEXUS0000001149 | CC-0043 Micro.docx |
| 1394 | GRAMNEXUS0000001150 | CC-0045 Micro.docx |
| 1395 | GRAMNEXUS0000001151 | cc-0055 docs.xlsx |
| 1396 | GRAMNEXUS0000001152 | CC-0055 Micro.docx |
| 1397 | GRAMNEXUS0000001153 | CC-0071 QC Micro assessment(SAS).docx |
| 1398 | GRAMNEXUS0000001154 | CC-0072 Micro.docx |
| 1399 | GRAMNEXUS0000001155 | CC-0073 Micro.docx |
| 1400 | GRAMNEXUS0000001156 | CC-0105 Micro Assessment.docx |
| 1401 | GRAMNEXUS0000001157 | CC-0107 Micro.docx |
| 1402 | GRAMNEXUS0000001158 | CC-0115 Micro.docx |
| 1403 | GRAMNEXUS0000001159 | CC-0125 Micro.docx |
| 1404 | GRAMNEXUS0000001160 | CC-0146 Micro.docx |
| 1405 | GRAMNEXUS0000001161 | CC-0151 Micro.docx |
| 1406 | GRAMNEXUS0000001162 | CC-0155 Micro Assessment.docx |

| 1407 | GRAMNEXUS0000001163 | CC-0155 Micro Assessment_KEL_CK_SAS.docx |
| 1408 | GRAMNEXUS0000001164 | CC-0159 Micro.docx |
| 1409 | GRAMNEXUS0000001165 | CC-0160 Micro.docx |
| 1410 | GRAMNEXUS0000001166 | CC-0175 Scope (SAS).docx |
| 1411 | GRAMNEXUS0000001167 | CC-0177 Micro assessment.docx |
| 1412 | GRAMNEXUS0000001168 | CC-0177 Micro.docx |
| 1413 | GRAMNEXUS0000001169 | CC-0184 Micro assessment.docx |
| 1414 | GRAMNEXUS0000001170 | CC-0198 Micro assessment.docx |
| 1415 | GRAMNEXUS0000001171 | CC-0237 Micro Assessment.docx |
| 1416 | GRAMNEXUS0000001172 | CC-0248 Micro Assessment.docx |
| 1417 | GRAMNEXUS0000001173 | CC-0252 Micro Assessment.docx |
| 1418 | GRAMNEXUS0000001174 | CC-0253 Micro.docx |
| 1419 | GRAMNEXUS0000001175 | CC-0255 Micro Assessment rev 1.docx |
| 1420 | GRAMNEXUS0000001176 | CC-0255 Micro Assessment.docx |
| 1421 | GRAMNEXUS0000001177 | CC-0263 Micro Assessment.docx |
| 1422 | GRAMNEXUS0000001178 | CC-0271 Micro.docx |
| 1423 | GRAMNEXUS0000001179 | CC-0278 Micro.docx |
| 1424 | GRAMNEXUS0000001180 | CC-0281 Micro.docx |
| 1425 | GRAMNEXUS0000001181 | CC-0285 Micro.docx |
| 1426 | GRAMNEXUS0000001182 | CC-17-0015 micro assessment.docx |
| 1427 | GRAMNEXUS0000001183 | CC-17-0015 micro assessment.pdf |
| 1428 | GRAMNEXUS0000001184 | CC-17-0020 Implementation.docx |
| 1429 | GRAMNEXUS0000001185 | CC-17-0020 Plan.docx |
| 1430 | GRAMNEXUS0000001186 | CC-17-0034 micro assessment.docx |
| 1431 | GRAMNEXUS0000001187 | CC-17-0043 micro assessment.docx |
| 1432 | GRAMNEXUS0000001188 | CC-17-0054 micro assessment.docx |
| 1433 | GRAMNEXUS0000001189 | CC-17-0055 micro assessment.docx |
| 1434 | GRAMNEXUS0000001190 | CC-17-0056 micro assessment.docx |
| 1435 | GRAMNEXUS0000001191 | CC-17-0057 micro assessment.docx |
| 1436 | GRAMNEXUS0000001192 | CC-17-0058 micro assessment.docx |
| 1437 | GRAMNEXUS0000001193 | CC-17-0060 micro assessment.docx |
| 1438 | GRAMNEXUS0000001194 | CC-17-0061 micro assessment.docx |
| 1439 | GRAMNEXUS0000001195 | CC-17-0063 micro assessment.docx |
| 1440 | GRAMNEXUS0000001196 | CC-17-0065 micro assessment.docx |
| 1441 | GRAMNEXUS0000001197 | CC-17-0071 micro assessment.docx |
| 1442 | GRAMNEXUS0000001198 | CC-17-0080 micro assessment.docx |
| 1443 | GRAMNEXUS0000001199 | CC-17-0090 micro assessment.docx |
| 1444 | GRAMNEXUS0000001200 | CC-17-0109 micro assessment.docx |
| 1445 | GRAMNEXUS0000001201 | CC-18-0011 micro assessment.docx |
| 1446 | GRAMNEXUS0000001202 | CC-18-0011 micro assessment.pdf |
| 1447 | GRAMNEXUS0000001203 | CC-18-0018 micro assessment.docx |
| 1448 | GRAMNEXUS0000001204 | CC-18-0018 micro assessment.pdf |
| 1449 | GRAMNEXUS0000001205 | ChangeControl cc-17-0006 sterility.docx |
| 1450 | GRAMNEXUS0000001206 | ChangeControl Plan 17-0059.docx |
| 1451 | GRAMNEXUS0000001207 | ChangeControl_170003.docx |
| 1452 | GRAMNEXUS0000001208 | ChangeControl_Template-0051.docx |
| 1453 | GRAMNEXUS0000001209 | ChangeControl_Template-0053 for endo.docx |
| 1454 | GRAMNEXUS0000001210 | ChangeControl_Template-0055 implementation.docx |
| 1455 | GRAMNEXUS0000001211 | CHM-0050 BB.pdf |
| 1456 | GRAMNEXUS0000001212 | CHM-0050 Endo.pdf |
| 1457 | GRAMNEXUS0000001213 | Compressed Air Testing CC -micro assessment.docx |
| 1458 | GRAMNEXUS0000001214 | CORP-FRM-0273 APA Operator Qual.docx |
| 1459 | GRAMNEXUS0000001215 | DCR-CORP-SOP-0556.docx |
| 1460 | GRAMNEXUS0000001216 | Endotoxin Screen CC request.docm |
| 1461 | GRAMNEXUS0000001217 | Nitrate CC.docm |
| 1462 | GRAMNEXUS0000001218 | Scope for CC-0175 10-25-19(SAS).docx |
| 1463 | GRAMNEXUS0000001219 | ~$ 17-0019 Assessment QC.docx |
| 1464 | GRAMNEXUS0000001220 | ~$trate CC.docm |
| 1465 | GRAMNEXUS0000001221 | 006-150A Endo 1.docx |
| 1466 | GRAMNEXUS0000001222 | 006-150A Endo 2.docx |
| 1467 | GRAMNEXUS0000001223 | 006-150A Endo 3.docx |
| 1468 | GRAMNEXUS0000001224 | 006-150A Endo Dev.docx |
| 1469 | GRAMNEXUS0000001225 | API-0023 lot ADEN131-1R BB.docx |
| 1470 | GRAMNEXUS0000001226 | API-0023 lot ADEN131-1R endo.docx |

| 1471 | GRAMNEXUS0000001227 | API-0030 CofA's.pdf |
| 1472 | GRAMNEXUS0000001228 | API-0030 Endo 1.docx |
| 1473 | GRAMNEXUS0000001229 | API-0030 Endo 2.docx |
| 1474 | GRAMNEXUS0000001230 | API-0030 lot 4001-3-009-18 BB.docx |
| 1475 | GRAMNEXUS0000001231 | API-0030 lot 4001-3-010-18 BB.docx |
| 1476 | GRAMNEXUS0000001232 | Bioburden CofA Template.docx |
| 1477 | GRAMNEXUS0000001233 | CHM-0007 endo val data.pdf |
| 1478 | GRAMNEXUS0000001234 | CHM-0016 lot K48111957 BB.docx |
| 1479 | GRAMNEXUS0000001235 | CHM-0016 lot K48111957 BB.pdf |
| 1480 | GRAMNEXUS0000001236 | CofA example.docx |
| 1481 | GRAMNEXUS0000001237 | Endotoxin CofA Template.docx |
| 1482 | GRAMNEXUS0000001238 | 010-117 lot A-17-008 BB.docx |
| 1483 | GRAMNEXUS0000001239 | 010-117 lot L-16-094 BB.docx |
| 1484 | GRAMNEXUS0000001240 | 010-117 lot L-16-096 BB.docx |
| 1485 | GRAMNEXUS0000001241 | 010-117A-B lot A-17-008 BB.pdf |
| 1486 | GRAMNEXUS0000001242 | 010-117A-B lot L-16-094 BB.pdf |
| 1487 | GRAMNEXUS0000001243 | 010-117A-B lot L-16-096 BB.pdf |
| 1488 | GRAMNEXUS0000001244 | 010-140A lot B-18-021 BB 2.docx |
| 1489 | GRAMNEXUS0000001245 | 010-140A lot B-18-021 BB2.pdf |
| 1490 | GRAMNEXUS0000001246 | 010-140A lot B-18-021 endo 3.docx |
| 1491 | GRAMNEXUS0000001247 | 010-140A lot B-18-021 Endo-3.pdf |
| 1492 | GRAMNEXUS0000001248 | 010-140A lot B-18-022 BB 3.docx |
| 1493 | GRAMNEXUS0000001249 | 010-140A lot B-18-022 BB3.pdf |
| 1494 | GRAMNEXUS0000001250 | 010-140A lot J-17-091 BB 1.docx |
| 1495 | GRAMNEXUS0000001251 | 010-140A lot J-17-091 BB1.pdf |
| 1496 | GRAMNEXUS0000001252 | 010-140A lot J-17-091 endo 1.docx |
| 1497 | GRAMNEXUS0000001253 | 010-140A lot J-17-091 Endo-1.pdf |
| 1498 | GRAMNEXUS0000001254 | 010-140A lot K-17-098 endo 2.docx |
| 1499 | GRAMNEXUS0000001255 | 010-140A lot K-17-098 Endo-2.pdf |
| 1500 | GRAMNEXUS0000001256 | API-0008 lot 533310 BB.docx |
| 1501 | GRAMNEXUS0000001257 | API-0008 lot S33310 BB.pdf |
| 1502 | GRAMNEXUS0000001258 | API-0008 lot S87192 BB.docx |
| 1503 | GRAMNEXUS0000001259 | API-0008 lot S87192 BB.pdf |
| 1504 | GRAMNEXUS0000001260 | API-0008 lot T19863 BB.docx |
| 1505 | GRAMNEXUS0000001261 | API-0008 lot T19863 BB.pdf |
| 1506 | GRAMNEXUS0000001262 | API-0024 ZHPCy17001 BB.docx |
| 1507 | GRAMNEXUS0000001263 | API-0024 ZHPCy17001 endo-1.docx |
| 1508 | GRAMNEXUS0000001264 | API-0024 ZHPCy17003 BB.docx |
| 1509 | GRAMNEXUS0000001265 | API-0024 ZHPCy17003 endo - 2.docx |
| 1510 | GRAMNEXUS0000001266 | API-0024 ZHPCy17004 BB.docx |
| 1511 | GRAMNEXUS0000001267 | API-0024 ZHPCy17004 BB.pdf |
| 1512 | GRAMNEXUS0000001268 | API-0024 ZHPCy17004 endo - 3.docx |
| 1513 | GRAMNEXUS0000001269 | CH14027 lot 0130-0696 BB.docx |
| 1514 | GRAMNEXUS0000001270 | CH14027 lot 0130-0705 BB.docx |
| 1515 | GRAMNEXUS0000001271 | CH14027 lot 0130-0705 BB.pdf |
| 1516 | GRAMNEXUS0000001272 | CH14027 lot 0130-0711 BB.docx |
| 1517 | GRAMNEXUS0000001273 | CH14027 lot 0130-0711BB.pdf |
| 1518 | GRAMNEXUS0000001274 | CH14027 lot 0130-0712 BB.docx |
| 1519 | GRAMNEXUS0000001275 | CH14027 lot 0130-0712BB.pdf |
| 1520 | GRAMNEXUS0000001276 | 012-119A I-17-088 BB.pdf |
| 1521 | GRAMNEXUS0000001277 | 012-119A I-17-089 BB.pdf |
| 1522 | GRAMNEXUS0000001278 | 012-119A I-17-090 BB.pdf |
| 1523 | GRAMNEXUS0000001279 | 012-119A lot I-17-088 BB.docx |
| 1524 | GRAMNEXUS0000001280 | 012-119A lot I-17-089 BB.docx |
| 1525 | GRAMNEXUS0000001281 | 012-119A lot I-17-090 BB.docx |
| 1526 | GRAMNEXUS0000001282 | 012-119A lot K-16-087.docx |
| 1527 | GRAMNEXUS0000001283 | 018-131A DEMDEV-JK08-04.pdf |
| 1528 | GRAMNEXUS0000001284 | 018-131A lot C-17-018 BB.docx |
| 1529 | GRAMNEXUS0000001285 | 018-131A lot C-17-018.pdf |
| 1530 | GRAMNEXUS0000001286 | 018-131A lot Client Batch DEMDEV-JK08-04 BB.docx |
| 1531 | GRAMNEXUS0000001287 | 018-136A GRAM lab batch BB.docx |
| 1532 | GRAMNEXUS0000001288 | 018-136A GRAM Lab Batch BB.pdf |
| 1533 | GRAMNEXUS0000001289 | 018-139A GRAM lab batch BB.docx |
| 1534 | GRAMNEXUS0000001290 | 018-139A Lab Batch BB.pdf |

| 1535 | GRAMNEXUS0000001291 | API-0018 lot 1510001693 BB.docx |
| 1536 | GRAMNEXUS0000001292 | API-0018 lot 1510001693.pdf |
| 1537 | GRAMNEXUS0000001293 | API-0020 lot 4007200416 BB.docx |
| 1538 | GRAMNEXUS0000001294 | API-0020 lot 4007200416 BB.pdf |
| 1539 | GRAMNEXUS0000001295 | API-0022 lot 15100350 BB v02.docx |
| 1540 | GRAMNEXUS0000001296 | API-0022 lot 15100350 BB v02.pdf |
| 1541 | GRAMNEXUS0000001297 | API-0022 lot 151350 BB.docx |
| 1542 | GRAMNEXUS0000001298 | API-0022 lot 151350 BB.pdf |
| 1543 | GRAMNEXUS0000001299 | 019-134A client batch 8216500001 BB.docx |
| 1544 | GRAMNEXUS0000001300 | 019-134A client batch 8216500001.pdf |
| 1545 | GRAMNEXUS0000001301 | 019-135A client batch 8219100001 BB.docx |
| 1546 | GRAMNEXUS0000001302 | 019-135A client batch 8219100001.pdf |
| 1547 | GRAMNEXUS0000001303 | 020-132A C-17-020 endo - 2.pdf |
| 1548 | GRAMNEXUS0000001304 | 020-132A C-17-020 endo V02 - 2.pdf |
| 1549 | GRAMNEXUS0000001305 | 020-132A Client Batch endo - 1.pdf |
| 1550 | GRAMNEXUS0000001306 | 020-132A Client Batch endo V02 - 1.pdf |
| 1551 | GRAMNEXUS0000001307 | 020-132A Endo C-17-020 V02-2.docx |
| 1552 | GRAMNEXUS0000001308 | 020-132A Endo C-17-020 V02.docx |
| 1553 | GRAMNEXUS0000001309 | 020-132A Endo C-17-020.docx |
| 1554 | GRAMNEXUS0000001310 | 020-132A Endo client batch V02-1.docx |
| 1555 | GRAMNEXUS0000001311 | 020-132A Endo client batch.docx |
| 1556 | GRAMNEXUS0000001312 | 020-132A Endo I-17-077 - 3.docx |
| 1557 | GRAMNEXUS0000001313 | 020-132A Endo I-17-077 V02 - 3.docx |
| 1558 | GRAMNEXUS0000001314 | 020-132A Endo I-17-078 routine.docx |
| 1559 | GRAMNEXUS0000001315 | 020-132A Endo I-17-078 V02 routine.docx |
| 1560 | GRAMNEXUS0000001316 | 020-132A Endo I-17-079 routine.docx |
| 1561 | GRAMNEXUS0000001317 | 020-132A Endo I-17-079 V02 routine.docx |
| 1562 | GRAMNEXUS0000001318 | 020-132A I-17-078 routine V02.pdf |
| 1563 | GRAMNEXUS0000001319 | 020-132A I-17-078 routine.pdf |
| 1564 | GRAMNEXUS0000001320 | 020-132A I-17-079 routine V02.pdf |
| 1565 | GRAMNEXUS0000001321 | 020-132A I-17-079 routine.pdf |
| 1566 | GRAMNEXUS0000001322 | 020-132A lot C-17-020 BB V02.docx |
| 1567 | GRAMNEXUS0000001323 | 020-132A lot C-17-020 BB V02.pdf |
| 1568 | GRAMNEXUS0000001324 | 020-132A lot C-17-020 BB.docx |
| 1569 | GRAMNEXUS0000001325 | 020-132A lot C-17-020 BB.pdf |
| 1570 | GRAMNEXUS0000001326 | 020-132A lot I-17-077 BB V02.docx |
| 1571 | GRAMNEXUS0000001327 | 020-132A lot I-17-077 BB V02.pdf |
| 1572 | GRAMNEXUS0000001328 | 020-132A lot I-17-077 BB.docx |
| 1573 | GRAMNEXUS0000001329 | 020-132A lot I-17-077 BB.pdf |
| 1574 | GRAMNEXUS0000001330 | 020-132A lot I-17-077 endo - 3.pdf |
| 1575 | GRAMNEXUS0000001331 | 020-132A lot I-17-077 endo V02- 3.pdf |
| 1576 | GRAMNEXUS0000001332 | 020-132A lot I-17-078 BB V02.docx |
| 1577 | GRAMNEXUS0000001333 | 020-132A lot I-17-078 BB V02.pdf |
| 1578 | GRAMNEXUS0000001334 | 020-132A lot I-17-078 BB.docx |
| 1579 | GRAMNEXUS0000001335 | 020-132A lot I-17-078 BB.pdf |
| 1580 | GRAMNEXUS0000001336 | 020-132A lot I-17-079 BB V02.docx |
| 1581 | GRAMNEXUS0000001337 | 020-132A lot I-17-079 BB V02.pdf |
| 1582 | GRAMNEXUS0000001338 | 020-132A lot I-17-079 BB.docx |
| 1583 | GRAMNEXUS0000001339 | 020-132A lot I-17-079 BB.pdf |
| 1584 | GRAMNEXUS0000001340 | API-0019 1610001478 BB.pdf |
| 1585 | GRAMNEXUS0000001341 | API-0019 1610001478 endo2.pdf |
| 1586 | GRAMNEXUS0000001342 | API-0019 1610001478 V02 BB.pdf |
| 1587 | GRAMNEXUS0000001343 | API-0019 1610001526 BB.pdf |
| 1588 | GRAMNEXUS0000001344 | API-0019 1610001526 endo1.pdf |
| 1589 | GRAMNEXUS0000001345 | API-0019 lot 1510000907 endo.docx |
| 1590 | GRAMNEXUS0000001346 | API-0019 lot 1510000907 endo.pdf |
| 1591 | GRAMNEXUS0000001347 | API-0019 lot 1610001478 BB V02.docx |
| 1592 | GRAMNEXUS0000001348 | API-0019 lot 1610001478 BB.docx |
| 1593 | GRAMNEXUS0000001349 | API-0019 lot 1610001478 endo.docx |
| 1594 | GRAMNEXUS0000001350 | API-0019 lot 1610001526 BB.docx |
| 1595 | GRAMNEXUS0000001351 | API-0019 lot 1610001526 endo.docx |
| 1596 | GRAMNEXUS0000001352 | API-0019 lot 1610002217 BB.docx |
| 1597 | GRAMNEXUS0000001353 | API-0019 lot 1610002217 BB.pdf |
| 1598 | GRAMNEXUS0000001354 | 020-148B lot I-18-095 BB.docx |

| 1599 | GRAMNEXUS0000001355 | 020-148B lot L-18-124 BB.docx |
| 1600 | GRAMNEXUS0000001356 | 020-148B lot L-18-125 BB.docx |
| 1601 | GRAMNEXUS0000001357 | API-0026 lot 101-18-013 BB-1.pdf |
| 1602 | GRAMNEXUS0000001358 | API-0026 lot 101-18-013 endo-1.docx |
| 1603 | GRAMNEXUS0000001359 | API-0026 lot 101-18-013 endo-1.pdf |
| 1604 | GRAMNEXUS0000001360 | API-0026 lot 101-18-13 BB-1.docx |
| 1605 | GRAMNEXUS0000001361 | 024-142A BB data.pdf |
| 1606 | GRAMNEXUS0000001362 | 024-142A Endo lot 122215B.docx |
| 1607 | GRAMNEXUS0000001363 | 024-142A Endo lot E-18-051 (2).docx |
| 1608 | GRAMNEXUS0000001364 | 024-142A Endo lot E-18-052 (3).docx |
| 1609 | GRAMNEXUS0000001365 | 024-142A IP Bioburden - 3 lots.pdf |
| 1610 | GRAMNEXUS0000001366 | 024-142A lot A-19-011 BB.docx |
| 1611 | GRAMNEXUS0000001367 | 024-142A lot A-19-012 BB.docx |
| 1612 | GRAMNEXUS0000001368 | 024-142A lot J-18-108 BB.docx |
| 1613 | GRAMNEXUS0000001369 | 09042018151302-0001.pdf |
| 1614 | GRAMNEXUS0000001370 | API-0029 BB - 2 lots.pdf |
| 1615 | GRAMNEXUS0000001371 | API-0029 BB data.pdf |
| 1616 | GRAMNEXUS0000001372 | API-0029 Endo data.pdf |
| 1617 | GRAMNEXUS0000001373 | API-0029 Endo-2.pdf |
| 1618 | GRAMNEXUS0000001374 | Current Forecast (Shortage) - 02.18.20.pdf |
| 1619 | GRAMNEXUS0000001375 | Expansion Schedule for GRAM Presentation.pptx |
| 1620 | GRAMNEXUS0000001376 | 023-157A Tech Transfer Plan 9.19.19 (SAS).docx |
| 1621 | GRAMNEXUS0000001376.0001 | Microsoft_Visio_Drawing.vsdx |
| 1622 | GRAMNEXUS0000001377 | 17596528.PNG |
| 1623 | GRAMNEXUS0000001378 | 48D09BED.PNG |
| 1624 | GRAMNEXUS0000001379 | 87FEADEC.PNG |
| 1625 | GRAMNEXUS0000001380 | Arginine COA.pdf |
| 1626 | GRAMNEXUS0000001381 | contcop.PNG |
| 1627 | GRAMNEXUS0000001382 | DA32D340.PNG |
| 1628 | GRAMNEXUS0000001383 | L_1914.tmp.PNG |
| 1629 | GRAMNEXUS0000001384 | L_1C3C.tmp.PNG |
| 1630 | GRAMNEXUS0000001385 | L_362E.tmp.PNG |
| 1631 | GRAMNEXUS0000001386 | L_4A20.tmp.PNG |
| 1632 | GRAMNEXUS0000001387 | L_54EB.tmp.PNG |
| 1633 | GRAMNEXUS0000001388 | L_67BD.tmp.PNG |
| 1634 | GRAMNEXUS0000001389 | L_7AC1.tmp.PNG |
| 1635 | GRAMNEXUS0000001390 | L_F7E3.tmp.PNG |
| 1636 | GRAMNEXUS0000001391 | desktop.ini |
| 1637 | GRAMNEXUS0000001392 | folder.ico |
| 1638 | GRAMNEXUS0000001393 | 2018 Copy of Increase Planning Worksheet - Sherri Scott.xlsx |
| 1639 | GRAMNEXUS0000001394 | 2018 Goals and Metrics.xlsx |
| 1640 | GRAMNEXUS0000001395 | Cody training.xlsx |
| 1641 | GRAMNEXUS0000001396 | Copy of 2018 - Sherri Scott.xlsx |
| 1642 | GRAMNEXUS0000001397 | Fill Equipment Monitoring.docx |
| 1643 | GRAMNEXUS0000001398 | Goals.xlsx |
| 1644 | GRAMNEXUS0000001399 | Job Description - Shared QC Lab Technician (CCH)(RB)(AMP)(SAS).docx |
| 1645 | GRAMNEXUS0000001400 | Micro Contractor.docx |
| 1646 | GRAMNEXUS0000001401 | Micro I exp req.docx |
| 1647 | GRAMNEXUS0000001402 | Micro job task list.xlsx |
| 1648 | GRAMNEXUS0000001403 | Micro Tech Expansion 2.docx |
| 1649 | GRAMNEXUS0000001404 | Micro Tech Expansion.docx |
| 1650 | GRAMNEXUS0000001405 | Micro Tech Job Description revised.docx |
| 1651 | GRAMNEXUS0000001406 | Microbiologist EIR new format.docx |
| 1652 | GRAMNEXUS0000001407 | Microbiologist I Description revised.docx |
| 1653 | GRAMNEXUS0000001408 | Microbiologist I exp.docx |
| 1654 | GRAMNEXUS0000001409 | Microbiologist I new format.docx |
| 1655 | GRAMNEXUS0000001410 | Microbiologist II Description revised.docx |
| 1656 | GRAMNEXUS0000001411 | Microbiologist II expansion.docx |
| 1657 | GRAMNEXUS0000001412 | Microbiologist II new format.docx |
| 1658 | GRAMNEXUS0000001413 | Microbiologist III new format.docx |
| 1659 | GRAMNEXUS0000001414 | Microbiology Intern new format.docx |
| 1660 | GRAMNEXUS0000001415 | Microbiology Technician Expansion.docx |
| 1661 | GRAMNEXUS0000001416 | Microbiology Technician new format 2nd shift.docx |
| 1662 | GRAMNEXUS0000001417 | Microbiology Technician new format.docx |

| 1663 | GRAMNEXUS0000001418 | Offer Letter - Weidenfeller.docx |
|------|---------------------|-----------------------------------|
| 1664 | GRAMNEXUS0000001419 | Position Request and Approval Form - Micro II 2019Q3.docx |
| 1665 | GRAMNEXUS0000001420 | Position Request and Approval Form - Micro Tech 2019Q2 - 2nd shift.docx |
| 1666 | GRAMNEXUS0000001421 | Position Request and Approval Form - Micro Tech 2019Q2.docx |
| 1667 | GRAMNEXUS0000001422 | Position Request and Approval Form DP.docx |
| 1668 | GRAMNEXUS0000001423 | Position Request and Approval Form JW.docx |
| 1669 | GRAMNEXUS0000001424 | Position Request and Approval Form Sr Mic.docx |
| 1670 | GRAMNEXUS0000001425 | Position Request and Approval Form Supervisor.docx |
| 1671 | GRAMNEXUS0000001426 | Position Request and Approval Form.docx |
| 1672 | GRAMNEXUS0000001427 | Position Request and Approval Micro I or II EIR.docx |
| 1673 | GRAMNEXUS0000001428 | Senior Microbiologist job description.docx |
| 1674 | GRAMNEXUS0000001429 | Senior Microbiologist new format.docx |
| 1675 | GRAMNEXUS0000001430 | Sr Micro Position Justification Form.docx |
| 1676 | GRAMNEXUS0000001431 | Supervisor Interview Questions.docx |
| 1677 | GRAMNEXUS0000001432 | Supervisor new format.docx |
| 1678 | GRAMNEXUS0000001433 | 09202018085050-0001.pdf |
| 1679 | GRAMNEXUS0000001434 | 20181005065434237.pdf |
| 1680 | GRAMNEXUS0000001435 | AJP counsel conduct.doc |
| 1681 | GRAMNEXUS0000001436 | AJP Counsel time card.doc |
| 1682 | GRAMNEXUS0000001437 | AJP Counsel.doc |
| 1683 | GRAMNEXUS0000001438 | Discipline for AJP.docx |
| 1684 | GRAMNEXUS0000001439 | GRAM Counseling.Disciplinary Form VJ (jaq edits).docx |
| 1685 | GRAMNEXUS0000001440 | GRAM Counseling.Disciplinary Form VJ Written.docx |
| 1686 | GRAMNEXUS0000001441 | GRAM Counseling.Disciplinary Form VJ.docx |
| 1687 | GRAMNEXUS0000001442 | Increase Planning Worksheet - Sherri Scott.xlsx |
| 1688 | GRAMNEXUS0000001443 | Cody offer.docx |
| 1689 | GRAMNEXUS0000001444 | 2018 Goals - SAS.docx |
| 1690 | GRAMNEXUS0000001445 | CK attachment.docx |
| 1691 | GRAMNEXUS0000001446 | Core Competency Continuum.pdf |
| 1692 | GRAMNEXUS0000001447 | Performance Review Template (CCH).docx |
| 1693 | GRAMNEXUS0000001448 | Amanda 2016 Review DRAFT (SAS).docx |
| 1694 | GRAMNEXUS0000001449 | Susana 2016 Review FINAL.docx |
| 1695 | GRAMNEXUS0000001450 | 2017 Performance Assessment SV.docx |
| 1696 | GRAMNEXUS0000001451 | Johnson - 2017 Performance Assessment (DRAFT).docx |
| 1697 | GRAMNEXUS0000001452 | Koetje - 2017 Performance Assessment (DRAFT).docx |
| 1698 | GRAMNEXUS0000001453 | Mercado - 2017 Performance Assessment (DRAFT).docx |
| 1699 | GRAMNEXUS0000001454 | Plavcic - 2017 Performance Assessment (DRAFT).docx |
| 1700 | GRAMNEXUS0000001455 | villagomez - 2017 Performance Assessment (DRAFT).docx |
| 1701 | GRAMNEXUS0000001456 | Walco-Ybarra - 2017 Performance Assessment (DRAFT).docx |
| 1702 | GRAMNEXUS0000001457 | Weidenfeller - 2017 Performance Assessment (DRAFT).docx |
| 1703 | GRAMNEXUS0000001458 | 2018 Performance Assessment - CK.docx |
| 1704 | GRAMNEXUS0000001459 | 2018 Performance Assessment - Template.docx |
| 1705 | GRAMNEXUS0000001460 | 2018 Performance Assessment - CLK.docx |
| 1706 | GRAMNEXUS0000001461 | 2018 Performance Assessment - DE.docx |
| 1707 | GRAMNEXUS0000001462 | 2018 Performance Assessment - DP.docx |
| 1708 | GRAMNEXUS0000001463 | 2018 Performance Assessment - EWY.docx |
| 1709 | GRAMNEXUS0000001464 | 2018 Performance Assessment - JW.docx |
| 1710 | GRAMNEXUS0000001465 | 2018 Performance Assessment - SV.docx |
| 1711 | GRAMNEXUS0000001466 | 2018 Performance Assessment - VJ.docx |
| 1712 | GRAMNEXUS0000001467 | 2018 Self-Assessment Review DP.docx |
| 1713 | GRAMNEXUS0000001468 | 2018 Self-Assessment JW.docx |
| 1714 | GRAMNEXUS0000001469 | ███████ Self-Assessment 2018.docx |
| 1715 | GRAMNEXUS0000001470 | DE Self-Assessment Form.docx |
| 1716 | GRAMNEXUS0000001471 | Self Assessment 2018 SV.docx |
| 1717 | GRAMNEXUS0000001472 | Self-Assessment Form 2018 CLK.docx |
| 1718 | GRAMNEXUS0000001473 | Self-Assessment Form 2018 EWY.docx |
| 1719 | GRAMNEXUS0000001474 | Self-Assessment Form 2018 VJ.docx |
| 1720 | GRAMNEXUS0000001475 | Scott - 2017 Performance Assessment (DRAFT).docx |
| 1721 | GRAMNEXUS0000001476 | Self-Assessment Form SAS 2017.docx |
| 1722 | GRAMNEXUS0000001477 | Self-Assessment Form SAS 2018.docx |
| 1723 | GRAMNEXUS0000001478 | Self-Assessment Form SAS.docx |
| 1724 | GRAMNEXUS0000001479 | EIR Dec 2018 unfavorable memo.doc |
| 1725 | GRAMNEXUS0000001480 | EIR Jan 2019 unfavorable memo.doc |
| 1726 | GRAMNEXUS0000001481 | EIR June 2017 unfavorable memo.doc |

| | | |
|---|---|---|
| 1727 | GRAMNEXUS0000001482 | EIR Nov 2017 unfavorable memo.doc |
| 1728 | GRAMNEXUS0000001483 | EIR Sep 2017 unfavorable memo.doc |
| 1729 | GRAMNEXUS0000001484 | EIR Sep 2017.pdf |
| 1730 | GRAMNEXUS0000001485 | EIR Sep 2019 unfavorable memo.doc |
| 1731 | GRAMNEXUS0000001486 | Feb 2018 EIR.docx |
| 1732 | GRAMNEXUS0000001486.0001 | Microsoft_Excel_Worksheet1.xlsx |
| 1733 | GRAMNEXUS0000001487 | Feb 2018 isolates.docx |
| 1734 | GRAMNEXUS0000001488 | July 2017 EIR's by type.docx |
| 1735 | GRAMNEXUS0000001489 | June 2017 EIR by type.docx |
| 1736 | GRAMNEXUS0000001489.0001 | Microsoft_Excel_Worksheet1.xlsx |
| 1737 | GRAMNEXUS0000001490 | June 2017 Isolates.docx |
| 1738 | GRAMNEXUS0000001491 | March 2018 EIR by type.docx |
| 1739 | GRAMNEXUS0000001492 | March 2018 Isolates.docx |
| 1740 | GRAMNEXUS0000001493 | May 2017 KPI EIR.docx |
| 1741 | GRAMNEXUS0000001493.0001 | oleObject1 |
| 1742 | GRAMNEXUS0000001494 | May 2017 KPI EM Isolates.docx |
| 1743 | GRAMNEXUS0000001495 | Oct 2017 EIR.docx |
| 1744 | GRAMNEXUS0000001496 | Oct 2017 Isolates.docx |
| 1745 | GRAMNEXUS0000001497 | PM June 2017.doc |
| 1746 | GRAMNEXUS0000001498 | Q4 EM Treding 2016 for QMR.xlsx |
| 1747 | GRAMNEXUS0000001499 | Sept 2017 EIR.docx |
| 1748 | GRAMNEXUS0000001500 | Sept 2017 Isolates.docx |
| 1749 | GRAMNEXUS0000001501 | Annual Summary Report 2019(SAS)(JW)1.docx |
| 1750 | GRAMNEXUS0000001502 | Annual Summary Report 2019(SAS).docx |
| 1751 | GRAMNEXUS0000001503 | BTR_FIRST_QC_LYT_001-1308.pdf |
| 1752 | GRAMNEXUS0000001504 | BTR_FIRST_QC_LYT_001-1314.pdf |
| 1753 | GRAMNEXUS0000001505 | BTR_FIRST_QC_LYT_001-1321.pdf |
| 1754 | GRAMNEXUS0000001506 | BTR_FIRST_QC_LYT_001-1323.pdf |
| 1755 | GRAMNEXUS0000001507 | BTR_FIRST_QC_LYT_001-1324.pdf |
| 1756 | GRAMNEXUS0000001508 | BTR_FIRST_QC_LYT_001-1325.pdf |
| 1757 | GRAMNEXUS0000001509 | BTR_FIRST_QC_LYT_001-1326-1.pdf |
| 1758 | GRAMNEXUS0000001510 | BTR_FIRST_QC_LYT_001-1328.pdf |
| 1759 | GRAMNEXUS0000001511 | BTR_FIRST_QC_LYT_001-1329.pdf |
| 1760 | GRAMNEXUS0000001512 | BTR_FIRST_QC_LYT_001-1330.pdf |
| 1761 | GRAMNEXUS0000001513 | BTR_FIRST_QC_LYT_001-1331.pdf |
| 1762 | GRAMNEXUS0000001514 | BTR_FIRST_QC_LYT_001-1332.pdf |
| 1763 | GRAMNEXUS0000001515 | BTR_FIRST_QC_LYT_001-1333.pdf |
| 1764 | GRAMNEXUS0000001516 | BTR_FIRST_QC_LYT_001-1334.pdf |
| 1765 | GRAMNEXUS0000001517 | BTR_FIRST_QC_LYT_001-1335.pdf |
| 1766 | GRAMNEXUS0000001518 | BTR_FIRST_QC_LYT_001-1339.pdf |
| 1767 | GRAMNEXUS0000001519 | BTR_FIRST_QC_LYT_001-1340.pdf |
| 1768 | GRAMNEXUS0000001520 | BTR_FIRST_QC_LYT_001-1341.pdf |
| 1769 | GRAMNEXUS0000001521 | BTR_FIRST_QC_LYT_001-1342.pdf |
| 1770 | GRAMNEXUS0000001522 | BTR_FIRST_QC_LYT_001-1344.pdf |
| 1771 | GRAMNEXUS0000001523 | BTR_FIRST_QC_LYT_001-1345.pdf |
| 1772 | GRAMNEXUS0000001524 | BTR_FIRST_QC_LYT_001-1346.pdf |
| 1773 | GRAMNEXUS0000001525 | BTR_FIRST_QC_LYT_001-1347.pdf |
| 1774 | GRAMNEXUS0000001526 | BTR_FIRST_QC_LYT_001-1348.pdf |
| 1775 | GRAMNEXUS0000001527 | BTR_FIRST_QC_LYT_001-1350.pdf |
| 1776 | GRAMNEXUS0000001528 | GRAM-TM-0004 Train FP1.docx |
| 1777 | GRAMNEXUS0000001529 | GRAM-TM-0004 Train FP2.docx |
| 1778 | GRAMNEXUS0000001530 | GRAM-TM-0004 Train FP3.docx |
| 1779 | GRAMNEXUS0000001531 | GRAM-TM-0004 Train FP4.docx |
| 1780 | GRAMNEXUS0000001532 | GRAM-TM-0004 Train RM 1.docx |
| 1781 | GRAMNEXUS0000001533 | GRAM-TM-0004 Train RM 2.docx |
| 1782 | GRAMNEXUS0000001534 | GRAM-TM-0004 Train RM 3.docx |
| 1783 | GRAMNEXUS0000001535 | GRAM-TM-0004 Train RM 4.docx |
| 1784 | GRAMNEXUS0000001536 | GRAM-TM-0016 training - standard prep.docx |
| 1785 | GRAMNEXUS0000001537 | Training Outline GRAM-TM-0004.docx |
| 1786 | GRAMNEXUS0000001538 | Training Outline GRAM-TM-0016.docx |
| 1787 | GRAMNEXUS0000001539 | desktop.ini |
| 1788 | GRAMNEXUS0000001540 | Desktop.lnk |
| 1789 | GRAMNEXUS0000001541 | Downloads.lnk |
| 1790 | GRAMNEXUS0000001542 | Favorites - Shortcut.lnk |

| 1791 | GRAMNEXUS0000001543 | OneDrive.lnk |
| 1792 | GRAMNEXUS0000001544 | desktop.ini |
| 1793 | GRAMNEXUS0000001545 | 1211 TDS SporKlenz RTU.pdf |
| 1794 | GRAMNEXUS0000001546 | AI-0362.doc |
| 1795 | GRAMNEXUS0000001547 | API-0017 VAL-1074_Report (SAS).docx |
| 1796 | GRAMNEXUS0000001548 | Bioburden Re-Valdiation Letter to Clients(SAS).docx |
| 1797 | GRAMNEXUS0000001549 | CAPA CA Log working.xlsx |
| 1798 | GRAMNEXUS0000001550 | CHM-0015 VAL-1071_Report (SAS) changed.docx |
| 1799 | GRAMNEXUS0000001551 | CHM-0015 VAL-1071_Report (SAS).docx |
| 1800 | GRAMNEXUS0000001552 | Cisco Webex Meetings.lnk |
| 1801 | GRAMNEXUS0000001553 | Cody Resume.docx |
| 1802 | GRAMNEXUS0000001554 | Copy of GRAM Expense Report_2013.xlsx |
| 1803 | GRAMNEXUS0000001555 | Copy of Ion Lab Equipment and Personnel for Expansion.xlsx |
| 1804 | GRAMNEXUS0000001556 | Current CAPAs.xlsx |
| 1805 | GRAMNEXUS0000001557 | DCR for CORP-SOP-0051.docx |
| 1806 | GRAMNEXUS0000001558 | endo doc changes.docx |
| 1807 | GRAMNEXUS0000001559 | Endotoxin Validation List (SAS).docx |
| 1808 | GRAMNEXUS0000001560 | GoToAssist Customer.lnk |
| 1809 | GRAMNEXUS0000001561 | GRAM Bios.docx |
| 1810 | GRAMNEXUS0000001562 | ID Trending.xlsx |
| 1811 | GRAMNEXUS0000001563 | INTCAPA and Audit Commitments Log working.xlsx |
| 1812 | GRAMNEXUS0000001564 | Microsoft Teams.lnk |
| 1813 | GRAMNEXUS0000001565 | MRI order.pdf |
| 1814 | GRAMNEXUS0000001566 | MSDS Online.url |
| 1815 | GRAMNEXUS0000001567 | My CAPAs for review.xlsx |
| 1816 | GRAMNEXUS0000001568 | PA-150012 NEW NAMES.xlsx |
| 1817 | GRAMNEXUS0000001569 | Polycom RealPresence Desktop.lnk |
| 1818 | GRAMNEXUS0000001570 | Purchase Order Microworks.xlsx |
| 1819 | GRAMNEXUS0000001571 | ActivatorClientClassLibrary.dll |
| 1820 | GRAMNEXUS0000001572 | appIcon32.ico |
| 1821 | GRAMNEXUS0000001573 | Aspose.Pdf.Kit.dll |
| 1822 | GRAMNEXUS0000001574 | Aspose.Pdf.Kit.xml |
| 1823 | GRAMNEXUS0000001575 | DicomNet.Common.SCPVerification.xml |
| 1824 | GRAMNEXUS0000001576 | Reviewer.xml |
| 1825 | GRAMNEXUS0000001577 | DataDictionary.ImplicitVR.xml |
| 1826 | GRAMNEXUS0000001578 | DicomNet.Config.xml |
| 1827 | GRAMNEXUS0000001579 | DicomNet.Logger.LogLevels.xml |
| 1828 | GRAMNEXUS0000001580 | MAS.Oem.config |
| 1829 | GRAMNEXUS0000001581 | Reviewer.Modality.CR.config |
| 1830 | GRAMNEXUS0000001582 | Reviewer.Modality.CT.config |
| 1831 | GRAMNEXUS0000001583 | Reviewer.Modality.Default.config |
| 1832 | GRAMNEXUS0000001584 | Reviewer.Modality.DX.config |
| 1833 | GRAMNEXUS0000001585 | Reviewer.Modality.IO.config |
| 1834 | GRAMNEXUS0000001586 | Reviewer.Modality.MG.config |
| 1835 | GRAMNEXUS0000001587 | Reviewer.Modality.MR.config |
| 1836 | GRAMNEXUS0000001588 | Reviewer.Modality.NM.config |
| 1837 | GRAMNEXUS0000001589 | Reviewer.Modality.OP.config |
| 1838 | GRAMNEXUS0000001590 | Reviewer.Modality.OT.config |
| 1839 | GRAMNEXUS0000001591 | Reviewer.Modality.PT.config |
| 1840 | GRAMNEXUS0000001592 | Reviewer.Modality.RF.config |
| 1841 | GRAMNEXUS0000001593 | Reviewer.Modality.RG.config |
| 1842 | GRAMNEXUS0000001594 | Reviewer.Modality.SC.config |
| 1843 | GRAMNEXUS0000001595 | Reviewer.Modality.US.config |
| 1844 | GRAMNEXUS0000001596 | Reviewer.Modality.XA.config |
| 1845 | GRAMNEXUS0000001597 | Reviewer.Modality.XC.config |
| 1846 | GRAMNEXUS0000001598 | Reviewer.OverlayTag.CR.config |
| 1847 | GRAMNEXUS0000001599 | Reviewer.OverlayTag.CT.config |
| 1848 | GRAMNEXUS0000001600 | Reviewer.OverlayTag.Default.config |
| 1849 | GRAMNEXUS0000001601 | Reviewer.OverlayTag.DX.config |
| 1850 | GRAMNEXUS0000001602 | Reviewer.OverlayTag.IO.config |
| 1851 | GRAMNEXUS0000001603 | Reviewer.OverlayTag.MG.config |
| 1852 | GRAMNEXUS0000001604 | Reviewer.OverlayTag.MR.config |
| 1853 | GRAMNEXUS0000001605 | Reviewer.OverlayTag.NM.config |
| 1854 | GRAMNEXUS0000001606 | Reviewer.OverlayTag.OP.config |

| 1855 | GRAMNEXUS0000001607 | Reviewer.OverlayTag.OT.config |
| 1856 | GRAMNEXUS0000001608 | Reviewer.OverlayTag.PT.config |
| 1857 | GRAMNEXUS0000001609 | Reviewer.OverlayTag.RF.config |
| 1858 | GRAMNEXUS0000001610 | Reviewer.OverlayTag.RG.config |
| 1859 | GRAMNEXUS0000001611 | Reviewer.OverlayTag.SC.config |
| 1860 | GRAMNEXUS0000001612 | Reviewer.OverlayTag.US.config |
| 1861 | GRAMNEXUS0000001613 | Reviewer.OverlayTag.XA.config |
| 1862 | GRAMNEXUS0000001614 | Reviewer.OverlayTag.XC.config |
| 1863 | GRAMNEXUS0000001615 | Reviewer.Application.config |
| 1864 | GRAMNEXUS0000001616 | Reviewer.Display.config |
| 1865 | GRAMNEXUS0000001617 | Reviewer.Oem.config |
| 1866 | GRAMNEXUS0000001618 | Reviewer.StudyExplorer.config |
| 1867 | GRAMNEXUS0000001619 | Reviewer.User.config |
| 1868 | GRAMNEXUS0000001620 | design.std |
| 1869 | GRAMNEXUS0000001621 | oemLogo.png |
| 1870 | GRAMNEXUS0000001622 | Rev Quik Steps.pdf |
| 1871 | GRAMNEXUS0000001623 | Reviewer EMR User Guide.pdf |
| 1872 | GRAMNEXUS0000001624 | Thumbs.db |
| 1873 | GRAMNEXUS0000001625 | DicomNet.Common.CLib.dll |
| 1874 | GRAMNEXUS0000001626 | DicomNet.Common.DcmJpegAsm.dll |
| 1875 | GRAMNEXUS0000001627 | DicomNet.Common.DCommon.dll |
| 1876 | GRAMNEXUS0000001628 | DicomNet.Common.DicomStreams.DcmJpeg.dll |
| 1877 | GRAMNEXUS0000001629 | DicomNet.Common.DicomStreams.dll |
| 1878 | GRAMNEXUS0000001630 | DicomNet.Common.DicomStreams.OpenJpeg.dll |
| 1879 | GRAMNEXUS0000001631 | DicomNet.Common.Lib.dll |
| 1880 | GRAMNEXUS0000001632 | DicomNet.Common.Media.dll |
| 1881 | GRAMNEXUS0000001633 | DicomNet.Common.SCU.dll |
| 1882 | GRAMNEXUS0000001634 | DicomNet.Config.Lib.dll |
| 1883 | GRAMNEXUS0000001635 | DicomNet.Display.CLib.dll |
| 1884 | GRAMNEXUS0000001636 | DicomNet.Display.dll |
| 1885 | GRAMNEXUS0000001637 | DicomNet.Logger.dll |
| 1886 | GRAMNEXUS0000001638 | DotNetMagic2005.dll |
| 1887 | GRAMNEXUS0000001639 | openjp2.dll |
| 1888 | GRAMNEXUS0000001640 | Reviewer.Common.dll |
| 1889 | GRAMNEXUS0000001641 | Reviewer.DataStructure.dll |
| 1890 | GRAMNEXUS0000001642 | Reviewer.exe |
| 1891 | GRAMNEXUS0000001643 | Sorna.Crypto.dll |
| 1892 | GRAMNEXUS0000001644 | Sorna.License.exml |
| 1893 | GRAMNEXUS0000001645 | sqlite3.dll |
| 1894 | GRAMNEXUS0000001646 | SQLiteWrapper.dll |
| 1895 | GRAMNEXUS0000001647 | Autorun.inf |
| 1896 | GRAMNEXUS0000001648 | DICOMDIR |
| 1897 | GRAMNEXUS0000001649 | Launch.exe |
| 1898 | GRAMNEXUS0000001650 | Launch.ico |
| 1899 | GRAMNEXUS0000001651 | copy.html |
| 1900 | GRAMNEXUS0000001652 | data.xml |
| 1901 | GRAMNEXUS0000001653 | logo.JPG |
| 1902 | GRAMNEXUS0000001654 | style.css |
| 1903 | GRAMNEXUS0000001655 | IN000001 |
| 1904 | GRAMNEXUS0000001656 | IN000002 |
| 1905 | GRAMNEXUS0000001657 | IN000001 |
| 1906 | GRAMNEXUS0000001658 | IN000002 |
| 1907 | GRAMNEXUS0000001659 | IN000003 |
| 1908 | GRAMNEXUS0000001660 | IN000004 |
| 1909 | GRAMNEXUS0000001661 | IN000005 |
| 1910 | GRAMNEXUS0000001662 | IN000006 |
| 1911 | GRAMNEXUS0000001663 | IN000007 |
| 1912 | GRAMNEXUS0000001664 | IN000008 |
| 1913 | GRAMNEXUS0000001665 | IN000009 |
| 1914 | GRAMNEXUS0000001666 | IN000010 |
| 1915 | GRAMNEXUS0000001667 | IN000011 |
| 1916 | GRAMNEXUS0000001668 | IN000012 |
| 1917 | GRAMNEXUS0000001669 | IN000013 |
| 1918 | GRAMNEXUS0000001670 | IN000014 |

| 1919 | GRAMNEXUS0000001671 | IN000015 |
|------|---------------------|----------|
| 1920 | GRAMNEXUS0000001672 | IN000016 |
| 1921 | GRAMNEXUS0000001673 | IN000017 |
| 1922 | GRAMNEXUS0000001674 | IN000018 |
| 1923 | GRAMNEXUS0000001675 | IN000019 |
| 1924 | GRAMNEXUS0000001676 | IN000020 |
| 1925 | GRAMNEXUS0000001677 | IN000021 |
| 1926 | GRAMNEXUS0000001678 | IN000022 |
| 1927 | GRAMNEXUS0000001679 | IN000023 |
| 1928 | GRAMNEXUS0000001680 | IN000024 |
| 1929 | GRAMNEXUS0000001681 | IN000025 |
| 1930 | GRAMNEXUS0000001682 | IN000026 |
| 1931 | GRAMNEXUS0000001683 | IN000027 |
| 1932 | GRAMNEXUS0000001684 | IN000028 |
| 1933 | GRAMNEXUS0000001685 | IN000029 |
| 1934 | GRAMNEXUS0000001686 | IN000030 |
| 1935 | GRAMNEXUS0000001687 | IN000031 |
| 1936 | GRAMNEXUS0000001688 | IN000032 |
| 1937 | GRAMNEXUS0000001689 | IN000033 |
| 1938 | GRAMNEXUS0000001690 | IN000034 |
| 1939 | GRAMNEXUS0000001691 | IN000035 |
| 1940 | GRAMNEXUS0000001692 | IN000036 |
| 1941 | GRAMNEXUS0000001693 | IN000037 |
| 1942 | GRAMNEXUS0000001694 | IN000038 |
| 1943 | GRAMNEXUS0000001695 | IN000039 |
| 1944 | GRAMNEXUS0000001696 | IN000040 |
| 1945 | GRAMNEXUS0000001697 | IN000041 |
| 1946 | GRAMNEXUS0000001698 | IN000042 |
| 1947 | GRAMNEXUS0000001699 | IN000043 |
| 1948 | GRAMNEXUS0000001700 | IN000044 |
| 1949 | GRAMNEXUS0000001701 | IN000045 |
| 1950 | GRAMNEXUS0000001702 | IN000046 |
| 1951 | GRAMNEXUS0000001703 | IN000047 |
| 1952 | GRAMNEXUS0000001704 | IN000048 |
| 1953 | GRAMNEXUS0000001705 | IN000049 |
| 1954 | GRAMNEXUS0000001706 | IN000050 |
| 1955 | GRAMNEXUS0000001707 | IN000051 |
| 1956 | GRAMNEXUS0000001708 | IN000052 |
| 1957 | GRAMNEXUS0000001709 | IN000053 |
| 1958 | GRAMNEXUS0000001710 | IN000054 |
| 1959 | GRAMNEXUS0000001711 | IN000055 |
| 1960 | GRAMNEXUS0000001712 | IN000056 |
| 1961 | GRAMNEXUS0000001713 | IN000057 |
| 1962 | GRAMNEXUS0000001714 | IN000058 |
| 1963 | GRAMNEXUS0000001715 | IN000059 |
| 1964 | GRAMNEXUS0000001716 | IN000060 |
| 1965 | GRAMNEXUS0000001717 | IN000061 |
| 1966 | GRAMNEXUS0000001718 | IN000062 |
| 1967 | GRAMNEXUS0000001719 | IN000063 |
| 1968 | GRAMNEXUS0000001720 | IN000064 |
| 1969 | GRAMNEXUS0000001721 | IN000065 |
| 1970 | GRAMNEXUS0000001722 | IN000066 |
| 1971 | GRAMNEXUS0000001723 | IN000067 |
| 1972 | GRAMNEXUS0000001724 | IN000068 |
| 1973 | GRAMNEXUS0000001725 | IN000069 |
| 1974 | GRAMNEXUS0000001726 | IN000070 |
| 1975 | GRAMNEXUS0000001727 | IN000071 |
| 1976 | GRAMNEXUS0000001728 | IN000072 |
| 1977 | GRAMNEXUS0000001729 | IN000073 |
| 1978 | GRAMNEXUS0000001730 | IN000074 |
| 1979 | GRAMNEXUS0000001731 | IN000075 |
| 1980 | GRAMNEXUS0000001732 | IN000076 |
| 1981 | GRAMNEXUS0000001733 | IN000077 |
| 1982 | GRAMNEXUS0000001734 | IN000078 |

| 1983 | GRAMNEXUS0000001735 | IN000079 |
|------|---------------------|----------|
| 1984 | GRAMNEXUS0000001736 | IN000080 |
| 1985 | GRAMNEXUS0000001737 | IN000081 |
| 1986 | GRAMNEXUS0000001738 | IN000082 |
| 1987 | GRAMNEXUS0000001739 | IN000083 |
| 1988 | GRAMNEXUS0000001740 | IN000084 |
| 1989 | GRAMNEXUS0000001741 | IN000085 |
| 1990 | GRAMNEXUS0000001742 | IN000086 |
| 1991 | GRAMNEXUS0000001743 | IN000087 |
| 1992 | GRAMNEXUS0000001744 | IN000088 |
| 1993 | GRAMNEXUS0000001745 | IN000089 |
| 1994 | GRAMNEXUS0000001746 | IN000090 |
| 1995 | GRAMNEXUS0000001747 | IN000091 |
| 1996 | GRAMNEXUS0000001748 | IN000092 |
| 1997 | GRAMNEXUS0000001749 | IN000093 |
| 1998 | GRAMNEXUS0000001750 | IN000094 |
| 1999 | GRAMNEXUS0000001751 | IN000095 |
| 2000 | GRAMNEXUS0000001752 | IN000096 |
| 2001 | GRAMNEXUS0000001753 | IN000097 |
| 2002 | GRAMNEXUS0000001754 | IN000098 |
| 2003 | GRAMNEXUS0000001755 | IN000099 |
| 2004 | GRAMNEXUS0000001756 | IN000100 |
| 2005 | GRAMNEXUS0000001757 | IN000101 |
| 2006 | GRAMNEXUS0000001758 | IN000102 |
| 2007 | GRAMNEXUS0000001759 | IN000103 |
| 2008 | GRAMNEXUS0000001760 | IN000104 |
| 2009 | GRAMNEXUS0000001761 | IN000105 |
| 2010 | GRAMNEXUS0000001762 | IN000106 |
| 2011 | GRAMNEXUS0000001763 | IN000107 |
| 2012 | GRAMNEXUS0000001764 | IN000108 |
| 2013 | GRAMNEXUS0000001765 | IN000109 |
| 2014 | GRAMNEXUS0000001766 | IN000110 |
| 2015 | GRAMNEXUS0000001767 | IN000111 |
| 2016 | GRAMNEXUS0000001768 | IN000112 |
| 2017 | GRAMNEXUS0000001769 | IN000113 |
| 2018 | GRAMNEXUS0000001770 | IN000114 |
| 2019 | GRAMNEXUS0000001771 | IN000115 |
| 2020 | GRAMNEXUS0000001772 | IN000116 |
| 2021 | GRAMNEXUS0000001773 | IN000117 |
| 2022 | GRAMNEXUS0000001774 | IN000118 |
| 2023 | GRAMNEXUS0000001775 | IN000119 |
| 2024 | GRAMNEXUS0000001776 | IN000120 |
| 2025 | GRAMNEXUS0000001777 | IN000121 |
| 2026 | GRAMNEXUS0000001778 | IN000122 |
| 2027 | GRAMNEXUS0000001779 | IN000123 |
| 2028 | GRAMNEXUS0000001780 | IN000124 |
| 2029 | GRAMNEXUS0000001781 | IN000125 |
| 2030 | GRAMNEXUS0000001782 | IN000126 |
| 2031 | GRAMNEXUS0000001783 | IN000127 |
| 2032 | GRAMNEXUS0000001784 | IN000128 |
| 2033 | GRAMNEXUS0000001785 | IN000129 |
| 2034 | GRAMNEXUS0000001786 | IN000130 |
| 2035 | GRAMNEXUS0000001787 | IN000131 |
| 2036 | GRAMNEXUS0000001788 | IN000132 |
| 2037 | GRAMNEXUS0000001789 | IN000133 |
| 2038 | GRAMNEXUS0000001790 | IN000134 |
| 2039 | GRAMNEXUS0000001791 | IN000135 |
| 2040 | GRAMNEXUS0000001792 | IN000136 |
| 2041 | GRAMNEXUS0000001793 | IN000137 |
| 2042 | GRAMNEXUS0000001794 | IN000138 |
| 2043 | GRAMNEXUS0000001795 | IN000139 |
| 2044 | GRAMNEXUS0000001796 | IN000140 |
| 2045 | GRAMNEXUS0000001797 | IN000141 |
| 2046 | GRAMNEXUS0000001798 | IN000142 |

| 2047 | GRAMNEXUS0000001799 | IN000143 |
|------|---------------------|----------|
| 2048 | GRAMNEXUS0000001800 | IN000144 |
| 2049 | GRAMNEXUS0000001801 | IN000145 |
| 2050 | GRAMNEXUS0000001802 | IN000146 |
| 2051 | GRAMNEXUS0000001803 | IN000147 |
| 2052 | GRAMNEXUS0000001804 | IN000148 |
| 2053 | GRAMNEXUS0000001805 | IN000149 |
| 2054 | GRAMNEXUS0000001806 | IN000150 |
| 2055 | GRAMNEXUS0000001807 | IN000151 |
| 2056 | GRAMNEXUS0000001808 | IN000152 |
| 2057 | GRAMNEXUS0000001809 | IN000153 |
| 2058 | GRAMNEXUS0000001810 | IN000154 |
| 2059 | GRAMNEXUS0000001811 | IN000155 |
| 2060 | GRAMNEXUS0000001812 | IN000156 |
| 2061 | GRAMNEXUS0000001813 | IN000157 |
| 2062 | GRAMNEXUS0000001814 | IN000158 |
| 2063 | GRAMNEXUS0000001815 | IN000159 |
| 2064 | GRAMNEXUS0000001816 | IN000160 |
| 2065 | GRAMNEXUS0000001817 | IN000161 |
| 2066 | GRAMNEXUS0000001818 | IN000162 |
| 2067 | GRAMNEXUS0000001819 | IN000163 |
| 2068 | GRAMNEXUS0000001820 | IN000164 |
| 2069 | GRAMNEXUS0000001821 | IN000165 |
| 2070 | GRAMNEXUS0000001822 | IN000166 |
| 2071 | GRAMNEXUS0000001823 | IN000167 |
| 2072 | GRAMNEXUS0000001824 | IN000168 |
| 2073 | GRAMNEXUS0000001825 | IN000169 |
| 2074 | GRAMNEXUS0000001826 | IN000170 |
| 2075 | GRAMNEXUS0000001827 | IN000171 |
| 2076 | GRAMNEXUS0000001828 | IN000172 |
| 2077 | GRAMNEXUS0000001829 | IN000173 |
| 2078 | GRAMNEXUS0000001830 | IN000174 |
| 2079 | GRAMNEXUS0000001831 | IN000175 |
| 2080 | GRAMNEXUS0000001832 | IN000176 |
| 2081 | GRAMNEXUS0000001833 | IN000177 |
| 2082 | GRAMNEXUS0000001834 | IN000178 |
| 2083 | GRAMNEXUS0000001835 | IN000179 |
| 2084 | GRAMNEXUS0000001836 | IN000180 |
| 2085 | GRAMNEXUS0000001837 | IN000181 |
| 2086 | GRAMNEXUS0000001838 | IN000182 |
| 2087 | GRAMNEXUS0000001839 | IN000183 |
| 2088 | GRAMNEXUS0000001840 | IN000184 |
| 2089 | GRAMNEXUS0000001841 | IN000185 |
| 2090 | GRAMNEXUS0000001842 | IN000186 |
| 2091 | GRAMNEXUS0000001843 | IN000187 |
| 2092 | GRAMNEXUS0000001844 | IN000188 |
| 2093 | GRAMNEXUS0000001845 | IN000189 |
| 2094 | GRAMNEXUS0000001846 | IN000190 |
| 2095 | GRAMNEXUS0000001847 | IN000191 |
| 2096 | GRAMNEXUS0000001848 | IN000192 |
| 2097 | GRAMNEXUS0000001849 | IN000193 |
| 2098 | GRAMNEXUS0000001850 | IN000194 |
| 2099 | GRAMNEXUS0000001851 | IN000195 |
| 2100 | GRAMNEXUS0000001852 | IN000196 |
| 2101 | GRAMNEXUS0000001853 | IN000197 |
| 2102 | GRAMNEXUS0000001854 | IN000198 |
| 2103 | GRAMNEXUS0000001855 | IN000199 |
| 2104 | GRAMNEXUS0000001856 | IN000200 |
| 2105 | GRAMNEXUS0000001857 | IN000201 |
| 2106 | GRAMNEXUS0000001858 | IN000202 |
| 2107 | GRAMNEXUS0000001859 | IN000203 |
| 2108 | GRAMNEXUS0000001860 | IN000204 |
| 2109 | GRAMNEXUS0000001861 | IN000205 |
| 2110 | GRAMNEXUS0000001862 | IN000206 |

| | | |
|---|---|---|
| 2111 | GRAMNEXUS0000001863 | IN000207 |
| 2112 | GRAMNEXUS0000001864 | IN000208 |
| 2113 | GRAMNEXUS0000001865 | IN000209 |
| 2114 | GRAMNEXUS0000001866 | IN000210 |
| 2115 | GRAMNEXUS0000001867 | IN000211 |
| 2116 | GRAMNEXUS0000001868 | IN000212 |
| 2117 | GRAMNEXUS0000001869 | IN000213 |
| 2118 | GRAMNEXUS0000001870 | IN000214 |
| 2119 | GRAMNEXUS0000001871 | IN000001 |
| 2120 | GRAMNEXUS0000001872 | IN000001 |
| 2121 | GRAMNEXUS0000001873 | IN000002 |
| 2122 | GRAMNEXUS0000001874 | IN000003 |
| 2123 | GRAMNEXUS0000001875 | IN000004 |
| 2124 | GRAMNEXUS0000001876 | IN000005 |
| 2125 | GRAMNEXUS0000001877 | IN000006 |
| 2126 | GRAMNEXUS0000001878 | IN000007 |
| 2127 | GRAMNEXUS0000001879 | IN000008 |
| 2128 | GRAMNEXUS0000001880 | IN000009 |
| 2129 | GRAMNEXUS0000001881 | IN000010 |
| 2130 | GRAMNEXUS0000001882 | IN000011 |
| 2131 | GRAMNEXUS0000001883 | IN000012 |
| 2132 | GRAMNEXUS0000001884 | IN000013 |
| 2133 | GRAMNEXUS0000001885 | IN000014 |
| 2134 | GRAMNEXUS0000001886 | IN000015 |
| 2135 | GRAMNEXUS0000001887 | IN000016 |
| 2136 | GRAMNEXUS0000001888 | IN000017 |
| 2137 | GRAMNEXUS0000001889 | IN000018 |
| 2138 | GRAMNEXUS0000001890 | IN000019 |
| 2139 | GRAMNEXUS0000001891 | IN000020 |
| 2140 | GRAMNEXUS0000001892 | IN000021 |
| 2141 | GRAMNEXUS0000001893 | IN000022 |
| 2142 | GRAMNEXUS0000001894 | IN000023 |
| 2143 | GRAMNEXUS0000001895 | IN000024 |
| 2144 | GRAMNEXUS0000001896 | IN000025 |
| 2145 | GRAMNEXUS0000001897 | IN000026 |
| 2146 | GRAMNEXUS0000001898 | IN000027 |
| 2147 | GRAMNEXUS0000001899 | IN000028 |
| 2148 | GRAMNEXUS0000001900 | IN000029 |
| 2149 | GRAMNEXUS0000001901 | IN000030 |
| 2150 | GRAMNEXUS0000001902 | IN000031 |
| 2151 | GRAMNEXUS0000001903 | IN000032 |
| 2152 | GRAMNEXUS0000001904 | IN000033 |
| 2153 | GRAMNEXUS0000001905 | IN000034 |
| 2154 | GRAMNEXUS0000001906 | IN000035 |
| 2155 | GRAMNEXUS0000001907 | IN000036 |
| 2156 | GRAMNEXUS0000001908 | IN000037 |
| 2157 | GRAMNEXUS0000001909 | IN000038 |
| 2158 | GRAMNEXUS0000001910 | IN000039 |
| 2159 | GRAMNEXUS0000001911 | IN000040 |
| 2160 | GRAMNEXUS0000001912 | IN000041 |
| 2161 | GRAMNEXUS0000001913 | IN000042 |
| 2162 | GRAMNEXUS0000001914 | IN000043 |
| 2163 | GRAMNEXUS0000001915 | IN000044 |
| 2164 | GRAMNEXUS0000001916 | IN000045 |
| 2165 | GRAMNEXUS0000001917 | IN000046 |
| 2166 | GRAMNEXUS0000001918 | IN000047 |
| 2167 | GRAMNEXUS0000001919 | IN000048 |
| 2168 | GRAMNEXUS0000001920 | IN000049 |
| 2169 | GRAMNEXUS0000001921 | IN000050 |
| 2170 | GRAMNEXUS0000001922 | IN000051 |
| 2171 | GRAMNEXUS0000001923 | IN000052 |
| 2172 | GRAMNEXUS0000001924 | IN000053 |
| 2173 | GRAMNEXUS0000001925 | IN000054 |
| 2174 | GRAMNEXUS0000001926 | IN000055 |

| | | |
|---|---|---|
| 2175 | GRAMNEXUS0000001927 | IN000056 |
| 2176 | GRAMNEXUS0000001928 | IN000057 |
| 2177 | GRAMNEXUS0000001929 | IN000058 |
| 2178 | GRAMNEXUS0000001930 | IN000059 |
| 2179 | GRAMNEXUS0000001931 | IN000060 |
| 2180 | GRAMNEXUS0000001932 | IN000061 |
| 2181 | GRAMNEXUS0000001933 | IN000062 |
| 2182 | GRAMNEXUS0000001934 | IN000063 |
| 2183 | GRAMNEXUS0000001935 | IN000064 |
| 2184 | GRAMNEXUS0000001936 | IN000065 |
| 2185 | GRAMNEXUS0000001937 | IN000066 |
| 2186 | GRAMNEXUS0000001938 | IN000067 |
| 2187 | GRAMNEXUS0000001939 | IN000068 |
| 2188 | GRAMNEXUS0000001940 | IN000069 |
| 2189 | GRAMNEXUS0000001941 | IN000070 |
| 2190 | GRAMNEXUS0000001942 | IN000071 |
| 2191 | GRAMNEXUS0000001943 | IN000072 |
| 2192 | GRAMNEXUS0000001944 | IN000073 |
| 2193 | GRAMNEXUS0000001945 | IN000074 |
| 2194 | GRAMNEXUS0000001946 | IN000075 |
| 2195 | GRAMNEXUS0000001947 | IN000076 |
| 2196 | GRAMNEXUS0000001948 | IN000077 |
| 2197 | GRAMNEXUS0000001949 | IN000078 |
| 2198 | GRAMNEXUS0000001950 | IN000079 |
| 2199 | GRAMNEXUS0000001951 | IN000080 |
| 2200 | GRAMNEXUS0000001952 | IN000081 |
| 2201 | GRAMNEXUS0000001953 | IN000082 |
| 2202 | GRAMNEXUS0000001954 | IN000083 |
| 2203 | GRAMNEXUS0000001955 | IN000084 |
| 2204 | GRAMNEXUS0000001956 | IN000085 |
| 2205 | GRAMNEXUS0000001957 | IN000086 |
| 2206 | GRAMNEXUS0000001958 | IN000087 |
| 2207 | GRAMNEXUS0000001959 | IN000088 |
| 2208 | GRAMNEXUS0000001960 | IN000089 |
| 2209 | GRAMNEXUS0000001961 | IN000090 |
| 2210 | GRAMNEXUS0000001962 | IN000091 |
| 2211 | GRAMNEXUS0000001963 | IN000092 |
| 2212 | GRAMNEXUS0000001964 | IN000093 |
| 2213 | GRAMNEXUS0000001965 | IN000094 |
| 2214 | GRAMNEXUS0000001966 | IN000095 |
| 2215 | GRAMNEXUS0000001967 | IN000096 |
| 2216 | GRAMNEXUS0000001968 | IN000097 |
| 2217 | GRAMNEXUS0000001969 | IN000098 |
| 2218 | GRAMNEXUS0000001970 | IN000099 |
| 2219 | GRAMNEXUS0000001971 | IN000100 |
| 2220 | GRAMNEXUS0000001972 | IN000101 |
| 2221 | GRAMNEXUS0000001973 | IN000102 |
| 2222 | GRAMNEXUS0000001974 | IN000103 |
| 2223 | GRAMNEXUS0000001975 | IN000104 |
| 2224 | GRAMNEXUS0000001976 | IN000105 |
| 2225 | GRAMNEXUS0000001977 | IN000106 |
| 2226 | GRAMNEXUS0000001978 | IN000107 |
| 2227 | GRAMNEXUS0000001979 | IN000108 |
| 2228 | GRAMNEXUS0000001980 | IN000109 |
| 2229 | GRAMNEXUS0000001981 | IN000110 |
| 2230 | GRAMNEXUS0000001982 | IN000111 |
| 2231 | GRAMNEXUS0000001983 | IN000112 |
| 2232 | GRAMNEXUS0000001984 | IN000113 |
| 2233 | GRAMNEXUS0000001985 | IN000114 |
| 2234 | GRAMNEXUS0000001986 | IN000115 |
| 2235 | GRAMNEXUS0000001987 | IN000116 |
| 2236 | GRAMNEXUS0000001988 | IN000117 |
| 2237 | GRAMNEXUS0000001989 | IN000118 |
| 2238 | GRAMNEXUS0000001990 | IN000119 |

| 2239 | GRAMNEXUS0000001991 | IN000120 |
| 2240 | GRAMNEXUS0000001992 | IN000121 |
| 2241 | GRAMNEXUS0000001993 | IN000122 |
| 2242 | GRAMNEXUS0000001994 | IN000123 |
| 2243 | GRAMNEXUS0000001995 | IN000124 |
| 2244 | GRAMNEXUS0000001996 | IN000125 |
| 2245 | GRAMNEXUS0000001997 | IN000126 |
| 2246 | GRAMNEXUS0000001998 | IN000127 |
| 2247 | GRAMNEXUS0000001999 | IN000128 |
| 2248 | GRAMNEXUS0000002000 | IN000129 |
| 2249 | GRAMNEXUS0000002001 | IN000130 |
| 2250 | GRAMNEXUS0000002002 | IN000131 |
| 2251 | GRAMNEXUS0000002003 | IN000132 |
| 2252 | GRAMNEXUS0000002004 | IN000133 |
| 2253 | GRAMNEXUS0000002005 | IN000134 |
| 2254 | GRAMNEXUS0000002006 | IN000135 |
| 2255 | GRAMNEXUS0000002007 | IN000136 |
| 2256 | GRAMNEXUS0000002008 | IN000137 |
| 2257 | GRAMNEXUS0000002009 | IN000138 |
| 2258 | GRAMNEXUS0000002010 | IN000139 |
| 2259 | GRAMNEXUS0000002011 | IN000140 |
| 2260 | GRAMNEXUS0000002012 | IN000141 |
| 2261 | GRAMNEXUS0000002013 | IN000142 |
| 2262 | GRAMNEXUS0000002014 | IN000143 |
| 2263 | GRAMNEXUS0000002015 | IN000144 |
| 2264 | GRAMNEXUS0000002016 | IN000145 |
| 2265 | GRAMNEXUS0000002017 | IN000146 |
| 2266 | GRAMNEXUS0000002018 | IN000147 |
| 2267 | GRAMNEXUS0000002019 | IN000148 |
| 2268 | GRAMNEXUS0000002020 | IN000149 |
| 2269 | GRAMNEXUS0000002021 | IN000150 |
| 2270 | GRAMNEXUS0000002022 | IN000151 |
| 2271 | GRAMNEXUS0000002023 | IN000152 |
| 2272 | GRAMNEXUS0000002024 | IN000153 |
| 2273 | GRAMNEXUS0000002025 | IN000154 |
| 2274 | GRAMNEXUS0000002026 | IN000155 |
| 2275 | GRAMNEXUS0000002027 | IN000156 |
| 2276 | GRAMNEXUS0000002028 | IN000157 |
| 2277 | GRAMNEXUS0000002029 | IN000158 |
| 2278 | GRAMNEXUS0000002030 | IN000159 |
| 2279 | GRAMNEXUS0000002031 | IN000160 |
| 2280 | GRAMNEXUS0000002032 | IN000161 |
| 2281 | GRAMNEXUS0000002033 | IN000162 |
| 2282 | GRAMNEXUS0000002034 | IN000163 |
| 2283 | GRAMNEXUS0000002035 | IN000164 |
| 2284 | GRAMNEXUS0000002036 | IN000165 |
| 2285 | GRAMNEXUS0000002037 | IN000166 |
| 2286 | GRAMNEXUS0000002038 | IN000167 |
| 2287 | GRAMNEXUS0000002039 | IN000168 |
| 2288 | GRAMNEXUS0000002040 | IN000169 |
| 2289 | GRAMNEXUS0000002041 | IN000170 |
| 2290 | GRAMNEXUS0000002042 | IN000171 |
| 2291 | GRAMNEXUS0000002043 | IN000172 |
| 2292 | GRAMNEXUS0000002044 | IN000173 |
| 2293 | GRAMNEXUS0000002045 | IN000174 |
| 2294 | GRAMNEXUS0000002046 | IN000175 |
| 2295 | GRAMNEXUS0000002047 | IN000176 |
| 2296 | GRAMNEXUS0000002048 | IN000177 |
| 2297 | GRAMNEXUS0000002049 | IN000178 |
| 2298 | GRAMNEXUS0000002050 | IN000179 |
| 2299 | GRAMNEXUS0000002051 | IN000180 |
| 2300 | GRAMNEXUS0000002052 | IN000181 |
| 2301 | GRAMNEXUS0000002053 | IN000182 |
| 2302 | GRAMNEXUS0000002054 | IN000183 |

| | | |
|---|---|---|
| 2303 | GRAMNEXUS0000002055 | IN000184 |
| 2304 | GRAMNEXUS0000002056 | IN000185 |
| 2305 | GRAMNEXUS0000002057 | IN000186 |
| 2306 | GRAMNEXUS0000002058 | IN000187 |
| 2307 | GRAMNEXUS0000002059 | IN000188 |
| 2308 | GRAMNEXUS0000002060 | IN000189 |
| 2309 | GRAMNEXUS0000002061 | IN000190 |
| 2310 | GRAMNEXUS0000002062 | IN000191 |
| 2311 | GRAMNEXUS0000002063 | IN000192 |
| 2312 | GRAMNEXUS0000002064 | IN000193 |
| 2313 | GRAMNEXUS0000002065 | IN000194 |
| 2314 | GRAMNEXUS0000002066 | IN000195 |
| 2315 | GRAMNEXUS0000002067 | IN000196 |
| 2316 | GRAMNEXUS0000002068 | IN000001 |
| 2317 | GRAMNEXUS0000002069 | IN000002 |
| 2318 | GRAMNEXUS0000002070 | IN000003 |
| 2319 | GRAMNEXUS0000002071 | IN000004 |
| 2320 | GRAMNEXUS0000002072 | IN000005 |
| 2321 | GRAMNEXUS0000002073 | IN000006 |
| 2322 | GRAMNEXUS0000002074 | IN000007 |
| 2323 | GRAMNEXUS0000002075 | IN000008 |
| 2324 | GRAMNEXUS0000002076 | IN000009 |
| 2325 | GRAMNEXUS0000002077 | IN000010 |
| 2326 | GRAMNEXUS0000002078 | IN000011 |
| 2327 | GRAMNEXUS0000002079 | IN000012 |
| 2328 | GRAMNEXUS0000002080 | IN000013 |
| 2329 | GRAMNEXUS0000002081 | IN000014 |
| 2330 | GRAMNEXUS0000002082 | IN000015 |
| 2331 | GRAMNEXUS0000002083 | IN000016 |
| 2332 | GRAMNEXUS0000002084 | IN000017 |
| 2333 | GRAMNEXUS0000002085 | IN000018 |
| 2334 | GRAMNEXUS0000002086 | IN000019 |
| 2335 | GRAMNEXUS0000002087 | IN000020 |
| 2336 | GRAMNEXUS0000002088 | IN000021 |
| 2337 | GRAMNEXUS0000002089 | IN000022 |
| 2338 | GRAMNEXUS0000002090 | IN000023 |
| 2339 | GRAMNEXUS0000002091 | IN000024 |
| 2340 | GRAMNEXUS0000002092 | IN000025 |
| 2341 | GRAMNEXUS0000002093 | IN000026 |
| 2342 | GRAMNEXUS0000002094 | IN000027 |
| 2343 | GRAMNEXUS0000002095 | IN000028 |
| 2344 | GRAMNEXUS0000002096 | IN000029 |
| 2345 | GRAMNEXUS0000002097 | IN000030 |
| 2346 | GRAMNEXUS0000002098 | IN000031 |
| 2347 | GRAMNEXUS0000002099 | IN000032 |
| 2348 | GRAMNEXUS0000002100 | IN000033 |
| 2349 | GRAMNEXUS0000002101 | IN000034 |
| 2350 | GRAMNEXUS0000002102 | IN000035 |
| 2351 | GRAMNEXUS0000002103 | IN000036 |
| 2352 | GRAMNEXUS0000002104 | IN000037 |
| 2353 | GRAMNEXUS0000002105 | IN000038 |
| 2354 | GRAMNEXUS0000002106 | IN000039 |
| 2355 | GRAMNEXUS0000002107 | IN000040 |
| 2356 | GRAMNEXUS0000002108 | IN000041 |
| 2357 | GRAMNEXUS0000002109 | IN000042 |
| 2358 | GRAMNEXUS0000002110 | IN000043 |
| 2359 | GRAMNEXUS0000002111 | IN000044 |
| 2360 | GRAMNEXUS0000002112 | IN000045 |
| 2361 | GRAMNEXUS0000002113 | IN000046 |
| 2362 | GRAMNEXUS0000002114 | IN000047 |
| 2363 | GRAMNEXUS0000002115 | IN000048 |
| 2364 | GRAMNEXUS0000002116 | IN000049 |
| 2365 | GRAMNEXUS0000002117 | IN000050 |
| 2366 | GRAMNEXUS0000002118 | IN000051 |

| | | |
|---|---|---|
| 2367 | GRAMNEXUS0000002119 | IN000052 |
| 2368 | GRAMNEXUS0000002120 | IN000053 |
| 2369 | GRAMNEXUS0000002121 | IN000054 |
| 2370 | GRAMNEXUS0000002122 | IN000055 |
| 2371 | GRAMNEXUS0000002123 | IN000056 |
| 2372 | GRAMNEXUS0000002124 | IN000057 |
| 2373 | GRAMNEXUS0000002125 | IN000058 |
| 2374 | GRAMNEXUS0000002126 | IN000059 |
| 2375 | GRAMNEXUS0000002127 | IN000060 |
| 2376 | GRAMNEXUS0000002128 | IN000061 |
| 2377 | GRAMNEXUS0000002129 | IN000062 |
| 2378 | GRAMNEXUS0000002130 | IN000063 |
| 2379 | GRAMNEXUS0000002131 | IN000064 |
| 2380 | GRAMNEXUS0000002132 | IN000065 |
| 2381 | GRAMNEXUS0000002133 | IN000066 |
| 2382 | GRAMNEXUS0000002134 | IN000067 |
| 2383 | GRAMNEXUS0000002135 | IN000068 |
| 2384 | GRAMNEXUS0000002136 | IN000069 |
| 2385 | GRAMNEXUS0000002137 | IN000070 |
| 2386 | GRAMNEXUS0000002138 | IN000071 |
| 2387 | GRAMNEXUS0000002139 | IN000072 |
| 2388 | GRAMNEXUS0000002140 | IN000073 |
| 2389 | GRAMNEXUS0000002141 | IN000074 |
| 2390 | GRAMNEXUS0000002142 | IN000075 |
| 2391 | GRAMNEXUS0000002143 | IN000076 |
| 2392 | GRAMNEXUS0000002144 | IN000077 |
| 2393 | GRAMNEXUS0000002145 | IN000078 |
| 2394 | GRAMNEXUS0000002146 | IN000079 |
| 2395 | GRAMNEXUS0000002147 | IN000080 |
| 2396 | GRAMNEXUS0000002148 | IN000081 |
| 2397 | GRAMNEXUS0000002149 | IN000082 |
| 2398 | GRAMNEXUS0000002150 | IN000083 |
| 2399 | GRAMNEXUS0000002151 | IN000084 |
| 2400 | GRAMNEXUS0000002152 | IN000085 |
| 2401 | GRAMNEXUS0000002153 | IN000086 |
| 2402 | GRAMNEXUS0000002154 | IN000087 |
| 2403 | GRAMNEXUS0000002155 | IN000088 |
| 2404 | GRAMNEXUS0000002156 | IN000089 |
| 2405 | GRAMNEXUS0000002157 | IN000090 |
| 2406 | GRAMNEXUS0000002158 | IN000091 |
| 2407 | GRAMNEXUS0000002159 | IN000092 |
| 2408 | GRAMNEXUS0000002160 | IN000093 |
| 2409 | GRAMNEXUS0000002161 | IN000094 |
| 2410 | GRAMNEXUS0000002162 | IN000095 |
| 2411 | GRAMNEXUS0000002163 | IN000096 |
| 2412 | GRAMNEXUS0000002164 | IN000097 |
| 2413 | GRAMNEXUS0000002165 | IN000098 |
| 2414 | GRAMNEXUS0000002166 | IN000099 |
| 2415 | GRAMNEXUS0000002167 | IN000100 |
| 2416 | GRAMNEXUS0000002168 | IN000101 |
| 2417 | GRAMNEXUS0000002169 | IN000102 |
| 2418 | GRAMNEXUS0000002170 | IN000103 |
| 2419 | GRAMNEXUS0000002171 | IN000104 |
| 2420 | GRAMNEXUS0000002172 | IN000105 |
| 2421 | GRAMNEXUS0000002173 | IN000106 |
| 2422 | GRAMNEXUS0000002174 | IN000107 |
| 2423 | GRAMNEXUS0000002175 | IN000108 |
| 2424 | GRAMNEXUS0000002176 | IN000109 |
| 2425 | GRAMNEXUS0000002177 | IN000110 |
| 2426 | GRAMNEXUS0000002178 | IN000111 |
| 2427 | GRAMNEXUS0000002179 | IN000112 |
| 2428 | GRAMNEXUS0000002180 | IN000113 |
| 2429 | GRAMNEXUS0000002181 | IN000114 |
| 2430 | GRAMNEXUS0000002182 | IN000115 |

| | | |
|---|---|---|
| 2431 | GRAMNEXUS0000002183 | IN000116 |
| 2432 | GRAMNEXUS0000002184 | IN000117 |
| 2433 | GRAMNEXUS0000002185 | IN000118 |
| 2434 | GRAMNEXUS0000002186 | IN000119 |
| 2435 | GRAMNEXUS0000002187 | IN000120 |
| 2436 | GRAMNEXUS0000002188 | IN000121 |
| 2437 | GRAMNEXUS0000002189 | IN000122 |
| 2438 | GRAMNEXUS0000002190 | IN000123 |
| 2439 | GRAMNEXUS0000002191 | IN000124 |
| 2440 | GRAMNEXUS0000002192 | IN000125 |
| 2441 | GRAMNEXUS0000002193 | IN000126 |
| 2442 | GRAMNEXUS0000002194 | IN000127 |
| 2443 | GRAMNEXUS0000002195 | IN000128 |
| 2444 | GRAMNEXUS0000002196 | IN000129 |
| 2445 | GRAMNEXUS0000002197 | IN000130 |
| 2446 | GRAMNEXUS0000002198 | IN000131 |
| 2447 | GRAMNEXUS0000002199 | IN000132 |
| 2448 | GRAMNEXUS0000002200 | IN000133 |
| 2449 | GRAMNEXUS0000002201 | IN000134 |
| 2450 | GRAMNEXUS0000002202 | IN000135 |
| 2451 | GRAMNEXUS0000002203 | IN000136 |
| 2452 | GRAMNEXUS0000002204 | IN000137 |
| 2453 | GRAMNEXUS0000002205 | IN000138 |
| 2454 | GRAMNEXUS0000002206 | IN000139 |
| 2455 | GRAMNEXUS0000002207 | IN000140 |
| 2456 | GRAMNEXUS0000002208 | IN000141 |
| 2457 | GRAMNEXUS0000002209 | IN000142 |
| 2458 | GRAMNEXUS0000002210 | IN000143 |
| 2459 | GRAMNEXUS0000002211 | IN000144 |
| 2460 | GRAMNEXUS0000002212 | IN000145 |
| 2461 | GRAMNEXUS0000002213 | IN000146 |
| 2462 | GRAMNEXUS0000002214 | IN000147 |
| 2463 | GRAMNEXUS0000002215 | IN000148 |
| 2464 | GRAMNEXUS0000002216 | IN000149 |
| 2465 | GRAMNEXUS0000002217 | IN000150 |
| 2466 | GRAMNEXUS0000002218 | IN000151 |
| 2467 | GRAMNEXUS0000002219 | IN000152 |
| 2468 | GRAMNEXUS0000002220 | IN000153 |
| 2469 | GRAMNEXUS0000002221 | IN000154 |
| 2470 | GRAMNEXUS0000002222 | IN000155 |
| 2471 | GRAMNEXUS0000002223 | IN000156 |
| 2472 | GRAMNEXUS0000002224 | IN000157 |
| 2473 | GRAMNEXUS0000002225 | IN000158 |
| 2474 | GRAMNEXUS0000002226 | IN000159 |
| 2475 | GRAMNEXUS0000002227 | IN000160 |
| 2476 | GRAMNEXUS0000002228 | IN000161 |
| 2477 | GRAMNEXUS0000002229 | IN000162 |
| 2478 | GRAMNEXUS0000002230 | IN000163 |
| 2479 | GRAMNEXUS0000002231 | IN000164 |
| 2480 | GRAMNEXUS0000002232 | IN000165 |
| 2481 | GRAMNEXUS0000002233 | IN000166 |
| 2482 | GRAMNEXUS0000002234 | IN000167 |
| 2483 | GRAMNEXUS0000002235 | IN000168 |
| 2484 | GRAMNEXUS0000002236 | IN000169 |
| 2485 | GRAMNEXUS0000002237 | IN000170 |
| 2486 | GRAMNEXUS0000002238 | IN000171 |
| 2487 | GRAMNEXUS0000002239 | IN000172 |
| 2488 | GRAMNEXUS0000002240 | IN000173 |
| 2489 | GRAMNEXUS0000002241 | IN000174 |
| 2490 | GRAMNEXUS0000002242 | IN000175 |
| 2491 | GRAMNEXUS0000002243 | IN000176 |
| 2492 | GRAMNEXUS0000002244 | IN000177 |
| 2493 | GRAMNEXUS0000002245 | IN000178 |
| 2494 | GRAMNEXUS0000002246 | IN000179 |

| | | |
|---|---|---|
| 2495 | GRAMNEXUS0000002247 | IN000180 |
| 2496 | GRAMNEXUS0000002248 | IN000181 |
| 2497 | GRAMNEXUS0000002249 | IN000182 |
| 2498 | GRAMNEXUS0000002250 | IN000183 |
| 2499 | GRAMNEXUS0000002251 | IN000184 |
| 2500 | GRAMNEXUS0000002252 | IN000185 |
| 2501 | GRAMNEXUS0000002253 | IN000186 |
| 2502 | GRAMNEXUS0000002254 | IN000187 |
| 2503 | GRAMNEXUS0000002255 | IN000188 |
| 2504 | GRAMNEXUS0000002256 | IN000189 |
| 2505 | GRAMNEXUS0000002257 | IN000190 |
| 2506 | GRAMNEXUS0000002258 | IN000191 |
| 2507 | GRAMNEXUS0000002259 | IN000192 |
| 2508 | GRAMNEXUS0000002260 | IN000193 |
| 2509 | GRAMNEXUS0000002261 | IN000194 |
| 2510 | GRAMNEXUS0000002262 | IN000195 |
| 2511 | GRAMNEXUS0000002263 | IN000001 |
| 2512 | GRAMNEXUS0000002264 | IN000002 |
| 2513 | GRAMNEXUS0000002265 | IN000003 |
| 2514 | GRAMNEXUS0000002266 | IN000004 |
| 2515 | GRAMNEXUS0000002267 | IN000005 |
| 2516 | GRAMNEXUS0000002268 | IN000006 |
| 2517 | GRAMNEXUS0000002269 | IN000007 |
| 2518 | GRAMNEXUS0000002270 | IN000008 |
| 2519 | GRAMNEXUS0000002271 | IN000009 |
| 2520 | GRAMNEXUS0000002272 | IN000010 |
| 2521 | GRAMNEXUS0000002273 | IN000011 |
| 2522 | GRAMNEXUS0000002274 | IN000012 |
| 2523 | GRAMNEXUS0000002275 | IN000013 |
| 2524 | GRAMNEXUS0000002276 | IN000014 |
| 2525 | GRAMNEXUS0000002277 | IN000015 |
| 2526 | GRAMNEXUS0000002278 | IN000016 |
| 2527 | GRAMNEXUS0000002279 | IN000017 |
| 2528 | GRAMNEXUS0000002280 | IN000018 |
| 2529 | GRAMNEXUS0000002281 | IN000019 |
| 2530 | GRAMNEXUS0000002282 | IN000020 |
| 2531 | GRAMNEXUS0000002283 | IN000021 |
| 2532 | GRAMNEXUS0000002284 | IN000022 |
| 2533 | GRAMNEXUS0000002285 | IN000023 |
| 2534 | GRAMNEXUS0000002286 | IN000024 |
| 2535 | GRAMNEXUS0000002287 | IN000025 |
| 2536 | GRAMNEXUS0000002288 | IN000026 |
| 2537 | GRAMNEXUS0000002289 | IN000027 |
| 2538 | GRAMNEXUS0000002290 | IN000028 |
| 2539 | GRAMNEXUS0000002291 | IN000029 |
| 2540 | GRAMNEXUS0000002292 | IN000030 |
| 2541 | GRAMNEXUS0000002293 | IN000031 |
| 2542 | GRAMNEXUS0000002294 | IN000032 |
| 2543 | GRAMNEXUS0000002295 | IN000033 |
| 2544 | GRAMNEXUS0000002296 | IN000034 |
| 2545 | GRAMNEXUS0000002297 | IN000035 |
| 2546 | GRAMNEXUS0000002298 | IN000036 |
| 2547 | GRAMNEXUS0000002299 | IN000037 |
| 2548 | GRAMNEXUS0000002300 | IN000038 |
| 2549 | GRAMNEXUS0000002301 | IN000039 |
| 2550 | GRAMNEXUS0000002302 | IN000040 |
| 2551 | GRAMNEXUS0000002303 | IN000041 |
| 2552 | GRAMNEXUS0000002304 | IN000042 |
| 2553 | GRAMNEXUS0000002305 | IN000043 |
| 2554 | GRAMNEXUS0000002306 | IN000044 |
| 2555 | GRAMNEXUS0000002307 | IN000045 |
| 2556 | GRAMNEXUS0000002308 | IN000046 |
| 2557 | GRAMNEXUS0000002309 | IN000047 |
| 2558 | GRAMNEXUS0000002310 | IN000048 |

| 2559 | GRAMNEXUS0000002311 | IN000049 |
|------|---------------------|----------|
| 2560 | GRAMNEXUS0000002312 | IN000050 |
| 2561 | GRAMNEXUS0000002313 | IN000051 |
| 2562 | GRAMNEXUS0000002314 | IN000052 |
| 2563 | GRAMNEXUS0000002315 | IN000053 |
| 2564 | GRAMNEXUS0000002316 | IN000054 |
| 2565 | GRAMNEXUS0000002317 | IN000055 |
| 2566 | GRAMNEXUS0000002318 | IN000056 |
| 2567 | GRAMNEXUS0000002319 | IN000057 |
| 2568 | GRAMNEXUS0000002320 | IN000058 |
| 2569 | GRAMNEXUS0000002321 | IN000059 |
| 2570 | GRAMNEXUS0000002322 | IN000060 |
| 2571 | GRAMNEXUS0000002323 | IN000061 |
| 2572 | GRAMNEXUS0000002324 | IN000062 |
| 2573 | GRAMNEXUS0000002325 | IN000063 |
| 2574 | GRAMNEXUS0000002326 | IN000064 |
| 2575 | GRAMNEXUS0000002327 | IN000065 |
| 2576 | GRAMNEXUS0000002328 | IN000066 |
| 2577 | GRAMNEXUS0000002329 | IN000067 |
| 2578 | GRAMNEXUS0000002330 | IN000068 |
| 2579 | GRAMNEXUS0000002331 | IN000069 |
| 2580 | GRAMNEXUS0000002332 | IN000070 |
| 2581 | GRAMNEXUS0000002333 | IN000071 |
| 2582 | GRAMNEXUS0000002334 | IN000072 |
| 2583 | GRAMNEXUS0000002335 | IN000073 |
| 2584 | GRAMNEXUS0000002336 | IN000074 |
| 2585 | GRAMNEXUS0000002337 | IN000075 |
| 2586 | GRAMNEXUS0000002338 | IN000076 |
| 2587 | GRAMNEXUS0000002339 | IN000077 |
| 2588 | GRAMNEXUS0000002340 | IN000078 |
| 2589 | GRAMNEXUS0000002341 | IN000079 |
| 2590 | GRAMNEXUS0000002342 | IN000080 |
| 2591 | GRAMNEXUS0000002343 | IN000081 |
| 2592 | GRAMNEXUS0000002344 | IN000082 |
| 2593 | GRAMNEXUS0000002345 | IN000083 |
| 2594 | GRAMNEXUS0000002346 | IN000084 |
| 2595 | GRAMNEXUS0000002347 | IN000085 |
| 2596 | GRAMNEXUS0000002348 | IN000086 |
| 2597 | GRAMNEXUS0000002349 | IN000087 |
| 2598 | GRAMNEXUS0000002350 | IN000088 |
| 2599 | GRAMNEXUS0000002351 | IN000089 |
| 2600 | GRAMNEXUS0000002352 | IN000090 |
| 2601 | GRAMNEXUS0000002353 | IN000091 |
| 2602 | GRAMNEXUS0000002354 | IN000092 |
| 2603 | GRAMNEXUS0000002355 | IN000093 |
| 2604 | GRAMNEXUS0000002356 | IN000094 |
| 2605 | GRAMNEXUS0000002357 | IN000095 |
| 2606 | GRAMNEXUS0000002358 | IN000096 |
| 2607 | GRAMNEXUS0000002359 | IN000097 |
| 2608 | GRAMNEXUS0000002360 | IN000098 |
| 2609 | GRAMNEXUS0000002361 | IN000099 |
| 2610 | GRAMNEXUS0000002362 | IN000100 |
| 2611 | GRAMNEXUS0000002363 | IN000101 |
| 2612 | GRAMNEXUS0000002364 | IN000102 |
| 2613 | GRAMNEXUS0000002365 | IN000103 |
| 2614 | GRAMNEXUS0000002366 | IN000104 |
| 2615 | GRAMNEXUS0000002367 | IN000105 |
| 2616 | GRAMNEXUS0000002368 | IN000106 |
| 2617 | GRAMNEXUS0000002369 | IN000107 |
| 2618 | GRAMNEXUS0000002370 | IN000108 |
| 2619 | GRAMNEXUS0000002371 | IN000109 |
| 2620 | GRAMNEXUS0000002372 | IN000110 |
| 2621 | GRAMNEXUS0000002373 | IN000111 |
| 2622 | GRAMNEXUS0000002374 | IN000112 |

| 2623 | GRAMNEXUS0000002375 | IN000113 |
|------|---------------------|----------|
| 2624 | GRAMNEXUS0000002376 | IN000114 |
| 2625 | GRAMNEXUS0000002377 | IN000115 |
| 2626 | GRAMNEXUS0000002378 | IN000116 |
| 2627 | GRAMNEXUS0000002379 | IN000117 |
| 2628 | GRAMNEXUS0000002380 | IN000118 |
| 2629 | GRAMNEXUS0000002381 | IN000119 |
| 2630 | GRAMNEXUS0000002382 | IN000120 |
| 2631 | GRAMNEXUS0000002383 | IN000121 |
| 2632 | GRAMNEXUS0000002384 | IN000122 |
| 2633 | GRAMNEXUS0000002385 | IN000123 |
| 2634 | GRAMNEXUS0000002386 | IN000124 |
| 2635 | GRAMNEXUS0000002387 | IN000125 |
| 2636 | GRAMNEXUS0000002388 | IN000126 |
| 2637 | GRAMNEXUS0000002389 | IN000127 |
| 2638 | GRAMNEXUS0000002390 | IN000128 |
| 2639 | GRAMNEXUS0000002391 | IN000129 |
| 2640 | GRAMNEXUS0000002392 | IN000130 |
| 2641 | GRAMNEXUS0000002393 | IN000131 |
| 2642 | GRAMNEXUS0000002394 | IN000132 |
| 2643 | GRAMNEXUS0000002395 | IN000133 |
| 2644 | GRAMNEXUS0000002396 | IN000134 |
| 2645 | GRAMNEXUS0000002397 | IN000135 |
| 2646 | GRAMNEXUS0000002398 | IN000136 |
| 2647 | GRAMNEXUS0000002399 | IN000137 |
| 2648 | GRAMNEXUS0000002400 | IN000138 |
| 2649 | GRAMNEXUS0000002401 | IN000139 |
| 2650 | GRAMNEXUS0000002402 | IN000140 |
| 2651 | GRAMNEXUS0000002403 | IN000141 |
| 2652 | GRAMNEXUS0000002404 | IN000142 |
| 2653 | GRAMNEXUS0000002405 | IN000143 |
| 2654 | GRAMNEXUS0000002406 | IN000144 |
| 2655 | GRAMNEXUS0000002407 | IN000145 |
| 2656 | GRAMNEXUS0000002408 | IN000146 |
| 2657 | GRAMNEXUS0000002409 | IN000147 |
| 2658 | GRAMNEXUS0000002410 | IN000148 |
| 2659 | GRAMNEXUS0000002411 | IN000149 |
| 2660 | GRAMNEXUS0000002412 | IN000150 |
| 2661 | GRAMNEXUS0000002413 | IN000151 |
| 2662 | GRAMNEXUS0000002414 | IN000152 |
| 2663 | GRAMNEXUS0000002415 | IN000153 |
| 2664 | GRAMNEXUS0000002416 | IN000154 |
| 2665 | GRAMNEXUS0000002417 | IN000155 |
| 2666 | GRAMNEXUS0000002418 | IN000156 |
| 2667 | GRAMNEXUS0000002419 | IN000157 |
| 2668 | GRAMNEXUS0000002420 | IN000158 |
| 2669 | GRAMNEXUS0000002421 | IN000159 |
| 2670 | GRAMNEXUS0000002422 | IN000160 |
| 2671 | GRAMNEXUS0000002423 | IN000161 |
| 2672 | GRAMNEXUS0000002424 | IN000162 |
| 2673 | GRAMNEXUS0000002425 | IN000163 |
| 2674 | GRAMNEXUS0000002426 | IN000164 |
| 2675 | GRAMNEXUS0000002427 | IN000165 |
| 2676 | GRAMNEXUS0000002428 | IN000166 |
| 2677 | GRAMNEXUS0000002429 | IN000167 |
| 2678 | GRAMNEXUS0000002430 | IN000168 |
| 2679 | GRAMNEXUS0000002431 | IN000169 |
| 2680 | GRAMNEXUS0000002432 | IN000170 |
| 2681 | GRAMNEXUS0000002433 | IN000171 |
| 2682 | GRAMNEXUS0000002434 | IN000172 |
| 2683 | GRAMNEXUS0000002435 | IN000173 |
| 2684 | GRAMNEXUS0000002436 | IN000174 |
| 2685 | GRAMNEXUS0000002437 | IN000175 |
| 2686 | GRAMNEXUS0000002438 | IN000176 |

| 2687 | GRAMNEXUS0000002439 | IN000177 |
| 2688 | GRAMNEXUS0000002440 | IN000178 |
| 2689 | GRAMNEXUS0000002441 | IN000179 |
| 2690 | GRAMNEXUS0000002442 | IN000180 |
| 2691 | GRAMNEXUS0000002443 | IN000181 |
| 2692 | GRAMNEXUS0000002444 | IN000182 |
| 2693 | GRAMNEXUS0000002445 | IN000183 |
| 2694 | GRAMNEXUS0000002446 | IN000184 |
| 2695 | GRAMNEXUS0000002447 | IN000185 |
| 2696 | GRAMNEXUS0000002448 | IN000186 |
| 2697 | GRAMNEXUS0000002449 | IN000187 |
| 2698 | GRAMNEXUS0000002450 | IN000188 |
| 2699 | GRAMNEXUS0000002451 | IN000189 |
| 2700 | GRAMNEXUS0000002452 | IN000190 |
| 2701 | GRAMNEXUS0000002453 | IN000191 |
| 2702 | GRAMNEXUS0000002454 | IN000192 |
| 2703 | GRAMNEXUS0000002455 | IN000193 |
| 2704 | GRAMNEXUS0000002456 | IN000194 |
| 2705 | GRAMNEXUS0000002457 | IN000195 |
| 2706 | GRAMNEXUS0000002458 | IN000196 |
| 2707 | GRAMNEXUS0000002459 | IN000197 |
| 2708 | GRAMNEXUS0000002460 | IN000198 |
| 2709 | GRAMNEXUS0000002461 | IN000199 |
| 2710 | GRAMNEXUS0000002462 | IN000200 |
| 2711 | GRAMNEXUS0000002463 | IN000201 |
| 2712 | GRAMNEXUS0000002464 | IN000202 |
| 2713 | GRAMNEXUS0000002465 | IN000203 |
| 2714 | GRAMNEXUS0000002466 | IN000204 |
| 2715 | GRAMNEXUS0000002467 | IN000205 |
| 2716 | GRAMNEXUS0000002468 | IN000206 |
| 2717 | GRAMNEXUS0000002469 | IN000207 |
| 2718 | GRAMNEXUS0000002470 | IN000208 |
| 2719 | GRAMNEXUS0000002471 | IN000209 |
| 2720 | GRAMNEXUS0000002472 | IN000210 |
| 2721 | GRAMNEXUS0000002473 | IN000211 |
| 2722 | GRAMNEXUS0000002474 | IN000212 |
| 2723 | GRAMNEXUS0000002475 | IN000213 |
| 2724 | GRAMNEXUS0000002476 | IN000214 |
| 2725 | GRAMNEXUS0000002477 | IN000215 |
| 2726 | GRAMNEXUS0000002478 | IN000216 |
| 2727 | GRAMNEXUS0000002479 | IN000217 |
| 2728 | GRAMNEXUS0000002480 | IN000218 |
| 2729 | GRAMNEXUS0000002481 | IN000219 |
| 2730 | GRAMNEXUS0000002482 | IN000220 |
| 2731 | GRAMNEXUS0000002483 | IN000221 |
| 2732 | GRAMNEXUS0000002484 | IN000222 |
| 2733 | GRAMNEXUS0000002485 | IN000223 |
| 2734 | GRAMNEXUS0000002486 | IN000224 |
| 2735 | GRAMNEXUS0000002487 | IN000225 |
| 2736 | GRAMNEXUS0000002488 | IN000226 |
| 2737 | GRAMNEXUS0000002489 | IN000227 |
| 2738 | GRAMNEXUS0000002490 | IN000228 |
| 2739 | GRAMNEXUS0000002491 | IN000229 |
| 2740 | GRAMNEXUS0000002492 | IN000230 |
| 2741 | GRAMNEXUS0000002493 | IN000231 |
| 2742 | GRAMNEXUS0000002494 | IN000232 |
| 2743 | GRAMNEXUS0000002495 | IN000233 |
| 2744 | GRAMNEXUS0000002496 | IN000001 |
| 2745 | GRAMNEXUS0000002497 | reviewer.bat |
| 2746 | GRAMNEXUS0000002498 | reviewer.exe |
| 2747 | GRAMNEXUS0000002499 | studies.exe |
| 2748 | GRAMNEXUS0000002500 | merge.txt |
| 2749 | GRAMNEXUS0000002501 | SP_Sorna.tdd |
| 2750 | GRAMNEXUS0000002502 | RingCentral Meetings.lnk |

| 2751 | GRAMNEXUS0000002503 | RM Endo DR.docx |
| 2752 | GRAMNEXUS0000002504 | SCOTT L XRAY.docx |
| 2753 | GRAMNEXUS0000002505 | SCOTT MRI ORDER.docx |
| 2754 | GRAMNEXUS0000002506 | SCOTT SCOLLIO XRAY.docx |
| 2755 | GRAMNEXUS0000002507 | Sterility - Endo LIRs.xlsx |
| 2756 | GRAMNEXUS0000002508 | Syringe Media Study.xlsx |
| 2757 | GRAMNEXUS0000002509 | u223_457679.pdf |
| 2758 | GRAMNEXUS0000002510 | VAL-1141 Sum.docm |
| 2759 | GRAMNEXUS0000002511 | Validation Summary Template.docm |
| 2760 | GRAMNEXUS0000002512 | Virtue_Cider_40.9_mile_route.fit |
| 2761 | GRAMNEXUS0000002513 | ~$cro Tech Job Description revised.docx |
| 2762 | GRAMNEXUS0000002514 | ~WRL0003.tmp |
| 2763 | GRAMNEXUS0000002515 | ~WRL0005.tmp |
| 2764 | GRAMNEXUS0000002516 | ~WRL3311.tmp |
| 2765 | GRAMNEXUS0000002517 | ▯ My MasterControl.url |
| 2766 | GRAMNEXUS0000002518 | 211.png |
| 2767 | GRAMNEXUS0000002519 | basement.jpg |
| 2768 | GRAMNEXUS0000002520 | broken floof.jpg |
| 2769 | GRAMNEXUS0000002521 | cleanroom.jpg |
| 2770 | GRAMNEXUS0000002522 | cleanroom.png |
| 2771 | GRAMNEXUS0000002523 | Colony_morphology_svg.png |
| 2772 | GRAMNEXUS0000002524 | doggos.jpg |
| 2773 | GRAMNEXUS0000002525 | dogs.jpg |
| 2774 | GRAMNEXUS0000002526 | ID2.jpg |
| 2775 | GRAMNEXUS0000002527 | id3.jpg |
| 2776 | GRAMNEXUS0000002528 | IDs.jpg |
| 2777 | GRAMNEXUS0000002529 | IMG_4723.JPG |
| 2778 | GRAMNEXUS0000002530 | Lab PPE.jpg |
| 2779 | GRAMNEXUS0000002531 | lab sketch.jpg |
| 2780 | GRAMNEXUS0000002532 | microbes.jpg |
| 2781 | GRAMNEXUS0000002533 | middle.jpg |
| 2782 | GRAMNEXUS0000002534 | mold.png |
| 2783 | GRAMNEXUS0000002535 | pinky.jpg |
| 2784 | GRAMNEXUS0000002536 | pointer.jpg |
| 2785 | GRAMNEXUS0000002537 | qc lab.PNG |
| 2786 | GRAMNEXUS0000002538 | receipt1.jpg |
| 2787 | GRAMNEXUS0000002539 | receipt2.jpg |
| 2788 | GRAMNEXUS0000002540 | receipt3.jpg |
| 2789 | GRAMNEXUS0000002541 | ring.jpg |
| 2790 | GRAMNEXUS0000002542 | stan.jpg |
| 2791 | GRAMNEXUS0000002543 | tacomemedidsomeonesay.jpg |
| 2792 | GRAMNEXUS0000002544 | thumb.jpg |
| 2793 | GRAMNEXUS0000002545 | Trends.PNG |
| 2794 | GRAMNEXUS0000002546 | VW.jpg |
| 2795 | GRAMNEXUS0000002547 | mapi15--{S-1-5-21-558651068-1390397249-3264284442-2120}-.searchconnector-ms |
| 2796 | GRAMNEXUS0000002548 | Sticky Notes (Windows Sticky Notes).searchconnector-ms |
| 2797 | GRAMNEXUS0000002549 | '$4A612DEE.jpg |
| 2798 | GRAMNEXUS0000002550 | '$BDE18270.doc |
| 2799 | GRAMNEXUS0000002551 | '$D02E3D0B.xls |
| 2800 | GRAMNEXUS0000002552 | '$FF14F4D0.pptx |
| 2801 | GRAMNEXUS0000002553 | GRAM SOP Administration of the Vitek 2 Compact System.docx |
| 2802 | GRAMNEXUS0000002554 | VITEK 2 COMPACT URS VAL-00270 (GrandRiver) _Sequence Signed.pdf |
| 2803 | GRAMNEXUS0000002555 | VITEK 2 Compact IOPQ _VAL-00273_(Grand River)_25Mar2010_Sequence Signed.pdf |
| 2804 | GRAMNEXUS0000002556 | GRAM Vitek 2 Compact Identification Result Form (1).docx |
| 2805 | GRAMNEXUS0000002557 | GRAM Vitek 2 Compact Analyst Qualification Form (1).docx |
| 2806 | GRAMNEXUS0000002558 | GRAM Vitek 2 Compact QC Card Release Form.docx |
| 2807 | GRAMNEXUS0000002559 | CORP-0558 GRAM Operation and Maintenance of the Vitek 2 Compact System.docx |
| 2808 | GRAMNEXUS0000002560 | VITEK 2 Compact Validation Summary Report (GrandRiver).pdf |
| 2809 | GRAMNEXUS0000002561 | VITEK 2 Compact 30 Schedule (GR).pdf |
| 2810 | GRAMNEXUS0000002562 | VITEK 2 System Validation Plan VAL-00272 (GrandRiver) _Sequence Signed 23Mar20.pdf |
| 2811 | GRAMNEXUS0000002563 | VAL-1383-SUM(SAS).docm |
| 2812 | GRAMNEXUS0000002564 | Template-0044.docm |
| 2813 | GRAMNEXUS0000002565 | EIR-180001.docx |
| 2814 | GRAMNEXUS0000002565.0001 | Microsoft_Visio_Drawing1.vsdx |

| 2815 | GRAMNEXUS0000002566 | EIR-170090.docx |
| 2816 | GRAMNEXUS0000002566.0001 | Microsoft_Visio_Drawing1.vsdx |
| 2817 | GRAMNEXUS0000002567 | EIR-170089.docx |
| 2818 | GRAMNEXUS0000002567.0001 | Microsoft_Visio_Drawing1.vsdx |
| 2819 | GRAMNEXUS0000002568 | EIR-170086.docx |
| 2820 | GRAMNEXUS0000002568.0001 | Microsoft_Visio_Drawing1.vsdx |
| 2821 | GRAMNEXUS0000002569 | EIR-170082.docx |
| 2822 | GRAMNEXUS0000002569.0001 | Microsoft_Visio_Drawing1.vsdx |
| 2823 | GRAMNEXUS0000002570 | EIR-170084.docx |
| 2824 | GRAMNEXUS0000002570.0001 | Microsoft_Visio_Drawing1.vsdx |
| 2825 | GRAMNEXUS0000002571 | EIR-170085.docx |
| 2826 | GRAMNEXUS0000002572 | EIR-170081.docx |
| 2827 | GRAMNEXUS0000002573 | EIR-170079.docx |
| 2828 | GRAMNEXUS0000002573.0001 | Microsoft_Visio_Drawing1.vsdx |
| 2829 | GRAMNEXUS0000002574 | EIR-170074.docx |
| 2830 | GRAMNEXUS0000002574.0001 | Microsoft_Visio_Drawing1.vsdx |
| 2831 | GRAMNEXUS0000002575 | CORP-LOG-0005 - Equipment Tracking Log.xlsx |
| 2832 | GRAMNEXUS0000002576 | CORP-LOG-0070 - Master Calibration List.xlsx |
| 2833 | GRAMNEXUS0000002577 | PPO (4A)SBC (11.13).pdf |
| 2834 | GRAMNEXUS0000002578 | I-16-068 CofA Ver02.pdf |
| 2835 | GRAMNEXUS0000002579 | Compressed Gas Trending 2016.xlsx |
| 2836 | GRAMNEXUS0000002580 | Water Trending Q4 2016.xlsx |
| 2837 | GRAMNEXUS0000002581 | LIR Extension Template.docx |
| 2838 | GRAMNEXUS0000002582 | DR-170039.docx |
| 2839 | GRAMNEXUS0000002583 | EIR-160076.docx |
| 2840 | GRAMNEXUS0000002584 | EIR-160077.docx |
| 2841 | GRAMNEXUS0000002585 | EIR-160078.docx |
| 2842 | GRAMNEXUS0000002586 | EIR-160084.docx |
| 2843 | GRAMNEXUS0000002587 | EIR-160085.docx |
| 2844 | GRAMNEXUS0000002588 | EIR-160088.docx |
| 2845 | GRAMNEXUS0000002589 | EIR-170002.docx |
| 2846 | GRAMNEXUS0000002590 | EIR-170003.docx |
| 2847 | GRAMNEXUS0000002591 | EIR-170004.docx |
| 2848 | GRAMNEXUS0000002592 | EIR-170005.docx |
| 2849 | GRAMNEXUS0000002593 | EIR-170006.docx |
| 2850 | GRAMNEXUS0000002594 | EIR-170007.docx |
| 2851 | GRAMNEXUS0000002595 | EIR-170008.docx |
| 2852 | GRAMNEXUS0000002596 | EIR-170009.docx |
| 2853 | GRAMNEXUS0000002597 | EIR-170010.docx |
| 2854 | GRAMNEXUS0000002598 | EIR-170011.docx |
| 2855 | GRAMNEXUS0000002599 | EIR-170012.docx |
| 2856 | GRAMNEXUS0000002600 | EIR-170013.docx |
| 2857 | GRAMNEXUS0000002601 | EIR-170014.docx |
| 2858 | GRAMNEXUS0000002602 | EIR-170015.docx |
| 2859 | GRAMNEXUS0000002602.0001 | Microsoft_Visio_Drawing1.vsdx |
| 2860 | GRAMNEXUS0000002603 | EIR-170016.docx |
| 2861 | GRAMNEXUS0000002604 | EIR-170019.docx |
| 2862 | GRAMNEXUS0000002605 | EIR-170021 SWBv1(SAS).docx |
| 2863 | GRAMNEXUS0000002606 | EIR-170021.docx |
| 2864 | GRAMNEXUS0000002607 | EIR-170022.docx |
| 2865 | GRAMNEXUS0000002608 | EIR-170023.docx |
| 2866 | GRAMNEXUS0000002609 | EIR-170024.docx |
| 2867 | GRAMNEXUS0000002610 | EIR-170025.docx |
| 2868 | GRAMNEXUS0000002611 | EIR-170026.docx |
| 2869 | GRAMNEXUS0000002612 | EIR-170028.docx |
| 2870 | GRAMNEXUS0000002613 | EIR-170031.docx |
| 2871 | GRAMNEXUS0000002614 | EIR-170032.docx |
| 2872 | GRAMNEXUS0000002615 | EIR-170034.docx |
| 2873 | GRAMNEXUS0000002616 | EIR-170035.docx |
| 2874 | GRAMNEXUS0000002617 | EIR-170036.docx |
| 2875 | GRAMNEXUS0000002618 | EIR-170037.docx |
| 2876 | GRAMNEXUS0000002619 | EIR-170038.docx |
| 2877 | GRAMNEXUS0000002620 | EIR-170039.docx |
| 2878 | GRAMNEXUS0000002621 | EIR-170040.docx |

| 2879 | GRAMNEXUS0000002622 | EIR-170041.docx |
| 2880 | GRAMNEXUS0000002623 | EIR-170042.docx |
| 2881 | GRAMNEXUS0000002624 | EIR-170043.docx |
| 2882 | GRAMNEXUS0000002625 | EIR-170045.docx |
| 2883 | GRAMNEXUS0000002626 | EIR-170046 (1).docx |
| 2884 | GRAMNEXUS0000002627 | EIR-170046.docx |
| 2885 | GRAMNEXUS0000002628 | EIR-170048.docx |
| 2886 | GRAMNEXUS0000002629 | EIR-170049.docx |
| 2887 | GRAMNEXUS0000002629.0001 | Microsoft_Visio_Drawing1.vsdx |
| 2888 | GRAMNEXUS0000002630 | EIR-170050.docx |
| 2889 | GRAMNEXUS0000002631 | EIR-170051.docx |
| 2890 | GRAMNEXUS0000002631.0001 | Microsoft_Visio_Drawing101010101011.vsdx |
| 2891 | GRAMNEXUS0000002632 | EIR-170055.docx |
| 2892 | GRAMNEXUS0000002633 | EIR-170056.docx |
| 2893 | GRAMNEXUS0000002634 | EIR-170057.docx |
| 2894 | GRAMNEXUS0000002635 | EIR-170060.docx |
| 2895 | GRAMNEXUS0000002636 | EIR-170062.docx |
| 2896 | GRAMNEXUS0000002637 | EIR-170063.docx |
| 2897 | GRAMNEXUS0000002637.0001 | Microsoft_Visio_Drawing1.vsdx |
| 2898 | GRAMNEXUS0000002638 | EIR-170066.docx |
| 2899 | GRAMNEXUS0000002639 | EIR-170067.docx |
| 2900 | GRAMNEXUS0000002640 | EIR-170070.docx |
| 2901 | GRAMNEXUS0000002640.0001 | Microsoft_Visio_Drawing1.vsdx |
| 2902 | GRAMNEXUS0000002641 | EIR-170071.docx |
| 2903 | GRAMNEXUS0000002642 | EIR-170073.docx |
| 2904 | GRAMNEXUS0000002642.0001 | Microsoft_Visio_Drawing1.vsdx |
| 2905 | GRAMNEXUS0000002643 | TeamExport.pdf |
| 2906 | GRAMNEXUS0000002644 | ATL-Our Values.pdf |
| 2907 | GRAMNEXUS0000002645 | ATL New Hire Benefits Booklet 2020.pptx |
| 2908 | GRAMNEXUS0000002646 | Wed_Night_Gravel_Ride.fit |
| 2909 | GRAMNEXUS0000002647 | BTR_FIRST_QC_LYT_002-1326-1 (fix).pdf |
| 2910 | GRAMNEXUS0000002648 | BTR_FIRST_QC_LYT_002-1340 (fix).pdf |
| 2911 | GRAMNEXUS0000002649 | MicrosoftTeams-image.png |
| 2912 | GRAMNEXUS0000002650 | WPT_Butterfly_Century.tcx |
| 2913 | GRAMNEXUS0000002651 | Awesome_fun_route_but_4_flat_tires_messes_with_your_data_.gpx |
| 2914 | GRAMNEXUS0000002652 | SOS Online-7516660-05042020-141111.PDF |
| 2915 | GRAMNEXUS0000002653 | Under Counter Freezer RA (approved copy).pdf |
| 2916 | GRAMNEXUS0000002654 | Refrigerator Double Door RA (approved copy).pdf |
| 2917 | GRAMNEXUS0000002655 | Refrigerator Single Door RA (approved copy).pdf |
| 2918 | GRAMNEXUS0000002656 | Single Door Full Size Incubator RA (approved copy).pdf |
| 2919 | GRAMNEXUS0000002657 | BSC RA (approved copy).pdf |
| 2920 | GRAMNEXUS0000002658 | NCR-0287.docx |
| 2921 | GRAMNEXUS0000002659 | NCR-0286.docx |
| 2922 | GRAMNEXUS0000002660 | unifying250.exe |
| 2923 | GRAMNEXUS0000002661 | NCR-0229.docx |
| 2924 | GRAMNEXUS0000002661.0001 | Microsoft_Visio_Drawing.vsdx |
| 2925 | GRAMNEXUS0000002662 | TGA - Cleaning and Contamination Control - Regulatory Perspective.pdf |
| 2926 | GRAMNEXUS0000002663 | 20190606_PC_auto.pdf |
| 2927 | GRAMNEXUS0000002664 | BX-GA-001.025-B - PMF version 3.pdf |
| 2928 | GRAMNEXUS0000002665 | Engineering batch testing.pdf |
| 2929 | GRAMNEXUS0000002666 | SVV-10P-PMF.pdf |
| 2930 | GRAMNEXUS0000002667 | batch-analyses PSMA.pdf |
| 2931 | GRAMNEXUS0000002668 | NCR-0088.docx |
| 2932 | GRAMNEXUS0000002669 | NCR-0087.docx |
| 2933 | GRAMNEXUS0000002670 | NCR-0072.docx |
| 2934 | GRAMNEXUS0000002670.0001 | Microsoft_Visio_Drawing.vsdx |
| 2935 | GRAMNEXUS0000002671 | NCR-0044.docx |
| 2936 | GRAMNEXUS0000002672 | NCR-0042.docx |
| 2937 | GRAMNEXUS0000002673 | STA-0005 Approval.pdf |
| 2938 | GRAMNEXUS0000002674 | QC Lab Supervisor.pdf |
| 2939 | GRAMNEXUS0000002675 | SV-GA-001.025-PMF.pdf |
| 2940 | GRAMNEXUS0000002676 | EIR-180098.docx |
| 2941 | GRAMNEXUS0000002677 | EIR-180070.docx |
| 2942 | GRAMNEXUS0000002677.0001 | Microsoft_Visio_Drawing.vsdx |

| | | |
|---|---|---|
| 2943 | GRAMNEXUS0000002678 | EIR-180069.docx |
| 2944 | GRAMNEXUS0000002678.0001 | Microsoft_Visio_Drawing.vsdx |
| 2945 | GRAMNEXUS0000002679 | EIR-180068.docx |
| 2946 | GRAMNEXUS0000002680 | EIR-180066.docx |
| 2947 | GRAMNEXUS0000002681 | EIR-180065.docx |
| 2948 | GRAMNEXUS0000002681.0001 | Microsoft_Visio_Drawing.vsdx |
| 2949 | GRAMNEXUS0000002682 | EIR-180064.docx |
| 2950 | GRAMNEXUS0000002683 | EIR-180062.docx |
| 2951 | GRAMNEXUS0000002684 | EIR-180061.docx |
| 2952 | GRAMNEXUS0000002684.0001 | Microsoft_Visio_Drawing.vsdx |
| 2953 | GRAMNEXUS0000002685 | iTunes64Setup.exe |
| 2954 | GRAMNEXUS0000002686 | VAL-1343 WFI System URS (CAM).docx |
| 2955 | GRAMNEXUS0000002687 | VAL-1315 EMS URS r0.1.docm |
| 2956 | GRAMNEXUS0000002688 | Scott.2018-07-27.pdf |
| 2957 | GRAMNEXUS0000002689 | EIR-180058.docx |
| 2958 | GRAMNEXUS0000002690 | EIR-180057.docx |
| 2959 | GRAMNEXUS0000002691 | EIR-180055.docx |
| 2960 | GRAMNEXUS0000002692 | EIR-180053.docx |
| 2961 | GRAMNEXUS0000002693 | EIR-180052.docx |
| 2962 | GRAMNEXUS0000002694 | Scott.2018-07-13.pdf |
| 2963 | GRAMNEXUS0000002695 | EIR-180049.docx |
| 2964 | GRAMNEXUS0000002696 | EIR-180041.docx |
| 2965 | GRAMNEXUS0000002696.0001 | Microsoft_Visio_Drawing.vsdx |
| 2966 | GRAMNEXUS0000002697 | EIR-180036.docx |
| 2967 | GRAMNEXUS0000002698 | EIR-180034.docx |
| 2968 | GRAMNEXUS0000002698.0001 | Microsoft_Visio_Drawing.vsdx |
| 2969 | GRAMNEXUS0000002699 | EIR-180033.docx |
| 2970 | GRAMNEXUS0000002699.0001 | Microsoft_Visio_Drawing1.vsdx |
| 2971 | GRAMNEXUS0000002700 | EIR-180032.docx |
| 2972 | GRAMNEXUS0000002700.0001 | Microsoft_Visio_Drawing1.vsdx |
| 2973 | GRAMNEXUS0000002701 | EIR-180038.docx |
| 2974 | GRAMNEXUS0000002701.0001 | Microsoft_Visio_Drawing1.vsdx |
| 2975 | GRAMNEXUS0000002702 | EIR-180031.docx |
| 2976 | GRAMNEXUS0000002702.0001 | Microsoft_Visio_Drawing1.vsdx |
| 2977 | GRAMNEXUS0000002703 | EIR-180030.docx |
| 2978 | GRAMNEXUS0000002703.0001 | Microsoft_Visio_Drawing1.vsdx |
| 2979 | GRAMNEXUS0000002704 | EIR-180027.docx |
| 2980 | GRAMNEXUS0000002705 | LIR-160038.pdf |
| 2981 | GRAMNEXUS0000002706 | LIR-160049.pdf |
| 2982 | GRAMNEXUS0000002707 | EIR-180028.docx |
| 2983 | GRAMNEXUS0000002708 | LOG Template.docm |
| 2984 | GRAMNEXUS0000002709 | EIR-180026.docx |
| 2985 | GRAMNEXUS0000002709.0001 | Microsoft_Visio_Drawing1.vsdx |
| 2986 | GRAMNEXUS0000002710 | EIR-180023.docx |
| 2987 | GRAMNEXUS0000002710.0001 | Microsoft_Visio_Drawing1.vsdx |
| 2988 | GRAMNEXUS0000002711 | EIR-180025.docx |
| 2989 | GRAMNEXUS0000002712 | EIR-180029.docx |
| 2990 | GRAMNEXUS0000002713 | EIR-180022.docx |
| 2991 | GRAMNEXUS0000002713.0001 | Microsoft_Visio_Drawing.vsdx |
| 2992 | GRAMNEXUS0000002714 | EIR-180021.docx |
| 2993 | GRAMNEXUS0000002715 | EIR-180020.docx |
| 2994 | GRAMNEXUS0000002716 | EIR-180015 (1).docx |
| 2995 | GRAMNEXUS0000002716.0001 | Microsoft_Visio_Drawing1.vsdx |
| 2996 | GRAMNEXUS0000002717 | EIR-180018.docx |
| 2997 | GRAMNEXUS0000002718 | EIR-180017.docx |
| 2998 | GRAMNEXUS0000002719 | GRAM Logo.jpg |
| 2999 | GRAMNEXUS0000002720 | EIR-180015.docx |
| 3000 | GRAMNEXUS0000002720.0001 | Microsoft_Visio_Drawing1.vsdx |
| 3001 | GRAMNEXUS0000002721 | EIR-180014.docx |
| 3002 | GRAMNEXUS0000002721.0001 | Microsoft_Visio_Drawing1111111111111111111.vsdx |
| 3003 | GRAMNEXUS0000002722 | EIR-180008.docx |
| 3004 | GRAMNEXUS0000002722.0001 | Microsoft_Visio_Drawing3.vsdx |
| 3005 | GRAMNEXUS0000002722.0002 | Microsoft_Visio_Drawing1.vsdx |
| 3006 | GRAMNEXUS0000002722.0003 | Microsoft_Visio_Drawing2.vsdx |

| 3007 | GRAMNEXUS0000002723 | EIR-180009.docx |
| 3008 | GRAMNEXUS0000002723.0001 | Microsoft_Visio_Drawing1.vsdx |
| 3009 | GRAMNEXUS0000002724 | EIR-180004.docx |
| 3010 | GRAMNEXUS0000002724.0001 | Microsoft_Visio_Drawing1.vsdx |
| 3011 | GRAMNEXUS0000002725 | EIR-170096.docx |
| 3012 | GRAMNEXUS0000002725.0001 | Microsoft_Visio_Drawing1.vsdx |
| 3013 | GRAMNEXUS0000002726 | EIR-170095.docx |
| 3014 | GRAMNEXUS0000002726.0001 | Microsoft_Visio_Drawing1.vsdx |
| 3015 | GRAMNEXUS0000002727 | EIR-180002.docx |
| 3016 | GRAMNEXUS0000002727.0001 | Microsoft_Visio_Drawing1.vsdx |
| 3017 | GRAMNEXUS0000002728 | GRAM Directions (2).pdf |
| 3018 | GRAMNEXUS0000002729 | FW_ ISO 8573-1 2010_04_15_pdf.msg |
| 3019 | GRAMNEXUS0000002729.0001 | ISO 8573-1 2010.04.15.pdf |
| 3020 | GRAMNEXUS0000002730 | PQ Strategy Spreadsheet.msg |
| 3021 | GRAMNEXUS0000002730.0001 | Butterworth PQ Sampling Plan.xlsx |
| 3022 | GRAMNEXUS0000002731 | FW_ SKAN EM Qualification of Isolators - High Level Overview .msg |
| 3023 | GRAMNEXUS0000002731.0001 | Definition of the CD MBQ points.pdf |
| 3024 | GRAMNEXUS0000002731.0002 | Overview of Cycle Development and microbiological Qualification Offered by SKAN.pdf |
| 3025 | GRAMNEXUS0000002732 | Process Gases - ISPE Good Practice Guidance.msg |
| 3026 | GRAMNEXUS0000002732.0001 | ISPE Good Practices Guide_Process Gases.pdf |
| 3027 | GRAMNEXUS0000002733 | Draft of Sterilizer SOP with updates.msg |
| 3028 | GRAMNEXUS0000002733.0001 | Draft Sterilizer SOP 051220 dm.docx |
| 3029 | GRAMNEXUS0000002734 | RE_ VITEK Training.msg |
| 3030 | GRAMNEXUS0000002734.0001 | 048640-02 Procedure_-_VITEK_2_Systems_-_Network_Configuration_Guide_-_Win10 MAR_4259.pdf |
| 3031 | GRAMNEXUS0000002735 | Grand River Aseptic Grand Rapids Mu 527987.msg |
| 3032 | GRAMNEXUS0000002735.0001 | SA-499556_V1.pdf |
| 3033 | GRAMNEXUS0000002735.0002 | ATT00001.txt |
| 3034 | GRAMNEXUS0000002736 | Re_ Contact List_ Vitek 2 Compact Installation Summary.msg |
| 3035 | GRAMNEXUS0000002736.0001 | VITEK 2 Compact Traceabilty Matrix VAL-00271 (GrandRiver)_Corrected.pdf |
| 3036 | GRAMNEXUS0000002737 | Performance Solutions_Grand River Vitek 2 Compact IOPQ - Travel Restrictions.msg |
| 3037 | GRAMNEXUS0000002738 | Vitek SOPs and Forms.msg |
| 3038 | GRAMNEXUS0000002738.0001 | CORP-0558 GRAM Operation and Maintenance of the Vitek 2 Compact System.docx |
| 3039 | GRAMNEXUS0000002738.0002 | GRAM SOP Administration of the Vitek 2 Compact System.docx |
| 3040 | GRAMNEXUS0000002738.0003 | GRAM Vitek 2 Compact QC Card Release Form.docx |
| 3041 | GRAMNEXUS0000002738.0004 | GRAM Vitek 2 Compact Analyst Qualification Form (1).docx |
| 3042 | GRAMNEXUS0000002738.0005 | GRAM Vitek 2 Compact Identification Result Form (1).docx |
| 3043 | GRAMNEXUS0000002739 | Re_ Performance Solutions - Grand River.msg |
| 3044 | GRAMNEXUS0000002739.0001 | VITEK 2 Client Survey.pdf |
| 3045 | GRAMNEXUS0000002740 | RE_ Contact List_ Vitek 2 Compact Installation Summary (1).msg |
| 3046 | GRAMNEXUS0000002741 | RE_ Contact List_ Vitek 2 Compact Installation Summary (2).msg |
| 3047 | GRAMNEXUS0000002741.0001 | 9315662-002-US-A WHITE PAPER VILINK - HD version US.pdf |
| 3048 | GRAMNEXUS0000002741.0002 | SecureLink_WhitePaper_RemoteSupportNetwork.pdf |
| 3049 | GRAMNEXUS0000002741.0003 | SL_WhitePaper_ComplianceAndRegulations.pdf |
| 3050 | GRAMNEXUS0000002742 | Contact List_ Vitek 2 Compact Installation Summary.msg |
| 3051 | GRAMNEXUS0000002743 | Updated Quote.msg |
| 3052 | GRAMNEXUS0000002743.0001 | GRAMV2C30Quote.pdf |
| 3053 | GRAMNEXUS0000002743.0002 | Vitek 2 Compact SLOER Rev 02.A.pdf |
| 3054 | GRAMNEXUS0000002744 | CORP-SOP-0548.msg |
| 3055 | GRAMNEXUS0000002744.0001 | CORP-SOP-0548 EM of Isolator at Butterworth Facility.docx |
| 3056 | GRAMNEXUS0000002745 | RE_ Isolator EMPQ Facilitated Review.msg |
| 3057 | GRAMNEXUS0000002745.0001 | VAL-1817 Butterworth Isolator EMPQ with comments dm.docx |
| 3058 | GRAMNEXUS0000002746 | RE_ Quarter 1 report.msg |
| 3059 | GRAMNEXUS0000002746.0001 | Q1 2020 EM.docx |
| 3060 | GRAMNEXUS0000002746.0001.0001 | Microsoft_Excel_Worksheet.xlsx |
| 3061 | GRAMNEXUS0000002746.0001.0002 | Microsoft_Excel_Worksheet1.xlsx |
| 3062 | GRAMNEXUS0000002746.0001.0003 | Microsoft_Excel_Worksheet2.xlsx |
| 3063 | GRAMNEXUS0000002746.0001.0004 | Microsoft_Excel_Worksheet3.xlsx |
| 3064 | GRAMNEXUS0000002747 | pH SOP with conductivity added.msg |
| 3065 | GRAMNEXUS0000002747.0001 | GRAM Operation and Maintenance of the SymPhony pH Meter (with conductivity) 070620.docx |
| 3066 | GRAMNEXUS0000002748 | VAL-1817 Butterworth Isolator EMPQ with comments_JR_12JUL2020.docx |
| 3067 | GRAMNEXUS0000002749 | VAL-1817 Butterworth Isolator EMPQ with comments_JR_14JUL2020.docx |

| 3068 | GRAMNEXUS0000002750 | BTR wfi pq deviation 1.docx |
|------|---------------------|------------------------------|
| 3069 | GRAMNEXUS0000002751 | WPSettings.dat |
| 3070 | GRAMNEXUS0000002752 | IndexerVolumeGuid |
| 3071 | GRAMNEXUS0000002753 | CORP-SOP-0071 7-02-18(SAS).docx |
| | | |
| | | |

# Action Tracking

| InfoCard Number | Document Title | Revision | Last Action Date | Done By | Last Action | First Name | Last Name |
|---|---|---|---|---|---|---|---|
| CORP-SOP-0548 | Environmental Monitoring of the Isolator Fill Line | 03 | 06 Jan 2021 6:26:06 PM | JWEIDENFELLER | View File | Jerrod | Weidenfeller |
| CORP-SOP-0558 | Operation and Maintenance of the BMT Laboratory Sterilizer | 02 | 06 Jan 2021 4:54:08 PM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0071 | Microbiology Control Culture Handling | 11 | 05 Jan 2021 1:38:27 PM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0071 | Microbiology Control Culture Handling | 11 | 05 Jan 2021 11:12:37 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-FRM-0106 | On-the-Job Training Form | 02 | 05 Jan 2021 11:00:39 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-FRM-0106 | On-the-Job Training Form | 02 | 05 Jan 2021 11:00:34 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CHM-0031 | Sodium Chloride Multi-Compendial | 01 | 05 Jan 2021 10:13:55 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CHM-0031 | Sodium Chloride Multi-Compendial | 01 | 05 Jan 2021 10:13:55 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CHM-0007 | Sodium Chloride, Granular USP | 04 | 05 Jan 2021 10:13:37 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| VAL-1641 | Butterworth Pure Steam System PQ | 01 | 05 Jan 2021 10:01:56 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| VAL-1640 | Butterworth WFI System (WFI-001) PQ | 01 | 05 Jan 2021 10:00:17 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| VAL-1595 | Butterworth WFI System (WFI-001) IOQ | 01 | 05 Jan 2021 9:59:06 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| VAL-1595 | Butterworth WFI System (WFI-001) IOQ | 01 | 05 Jan 2021 9:59:06 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0568 | O & M of the Mueller WFI Still (STIL-001) and Distribution System (WFI-001) Butterworth | 01 | 05 Jan 2021 9:58:19 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0568 | O & M of the Mueller WFI Still (STIL-001) and Distribution System (WFI-001) Butterworth | 01 | 05 Jan 2021 9:58:19 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0027 | Water and Pure Steam Sampling | 21 | 05 Jan 2021 9:57:39 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CHM-0064 | Sodium Chloride, USP/EP/JP | 02 | 05 Jan 2021 9:39:49 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CHM-0064 | Sodium Chloride, USP/EP/JP | 02 | 05 Jan 2021 9:39:49 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CHM-0058 | Sodium Chloride, Low Endotoxins, Multi-Compendial | 01 | 05 Jan 2021 9:39:06 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CHM-0058 | Sodium Chloride, Low Endotoxins, Multi-Compendial | 01 | 05 Jan 2021 9:39:06 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CHM-0059 | Sodium Hydroxide Pellets, NF/EP/JP | 01 | 05 Jan 2021 9:35:31 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CHM-0059 | Sodium Hydroxide Pellets, NF/EP/JP | 01 | 05 Jan 2021 9:35:31 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0249 | Annual Requalification of Clean Rooms (Environmental Monitoring) | 04 | 05 Jan 2021 8:34:50 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0010 | Microbiology Media Handling and Controls | 10 | 04 Jan 2021 3:37:10 PM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0071 | Microbiology Control Culture Handling | 11 | 04 Jan 2021 3:35:53 PM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0010 | Microbiology Media Handling and Controls | 10 | 04 Jan 2021 3:30:34 PM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CAPA-0049 | To address the need for sterile printer paper as well as creating a course for QC microbiology for importance of control and mitigation of potential contamination. | 1 | 04 Jan 2021 10:24:14 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0045 | Operation and Maintenance of the Met One Particle Counters and PortAll Software | 10 | 04 Jan 2021 10:22:28 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0097 | Non-Viable Air Particulate Sampling | 10 | 04 Jan 2021 10:21:33 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0074 | Environmental Monitoring Program | 25 | 04 Jan 2021 10:20:37 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0555 | Aseptic Fill Line (FIL-070) and Lyophilization (LYO-007) Environmental Monitoring | 03 | 04 Jan 2021 10:19:17 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |

| CORP-SOP-0074 | Environmental Monitoring Program | 25 | 04 Jan 2021 10:18:57 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
|---|---|---|---|---|---|---|---|
| CORP-SOP-0549 | Classified Area Environmental Monitoring | 03 | 04 Jan 2021 10:17:38 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0074 | Environmental Monitoring Program | 25 | 04 Jan 2021 10:16:22 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0045 | Non-Viable Air Particulate Sampling | 10 | 04 Jan 2021 10:14:33 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0097 | Non-Viable Air Particulate Sampling | 10 | 04 Jan 2021 10:13:10 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CAPA-0049 | To address the need for sterile printer paper as well as creating a course for QC microbiology for importance of control and mitigation of potential contamination. | 1 | 04 Jan 2021 9:29:53 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CAPA-0049 | To address the need for sterile printer paper as well as creating a course for QC microbiology for importance of control and mitigation of potential contamination. | 1 | 04 Jan 2021 9:25:03 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CAPA TASK-0142 | Order sterile printer tape and author material specification. | 1 | 04 Jan 2021 9:24:19 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CAPA TASK-0142 | Order sterile printer tape and author material specification. | 1 | 04 Jan 2021 9:24:19 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0067 | Laboratory Chemical and Solution Inventory and Handling | 06 | 04 Jan 2021 9:06:30 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0067 | Laboratory Chemical and Solution Inventory and Handling | 06 | 04 Jan 2021 9:06:30 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0051 | Environmental Investigation Reports | 11 | 04 Jan 2021 9:05:54 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0577 | Filling Line #1 (Butterworth) Operations | 02 | 04 Jan 2021 9:05:02 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0577 | Filling Line #1 (Butterworth) Operations | 02 | 04 Jan 2021 9:05:02 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0517 | Operation of the FILL-001 Filling Machine | 02 | 04 Jan 2021 9:04:18 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0517 | Operation of the FILL-001 Filling Machine | 02 | 04 Jan 2021 9:04:18 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0080 | Receiving, Releasing, and Maintaining Incoming Materials | 23 | 04 Jan 2021 9:03:27 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| CORP-SOP-0080 | Receiving, Releasing, and Maintaining Incoming Materials | 23 | 04 Jan 2021 9:03:27 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| MDA20011 | Millipore TSA w/ LTHTh - ICR 30 mL | 01 | 04 Jan 2021 9:02:49 AM | JWEIDENFELLER | View PDF | Jerrod | Weidenfeller |
| | | | | | | | |